# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In Re: David J. Buchanan | : | No. |
| Debtor below, Appellant | : |  |
|  | : |  |
|  | : |  |
|  | : | Court Below: The United States |
|  | : | Bankruptcy Court for the District of |
|  | : | Delaware, C.A. No. 04-12419-JKF |
|  | : |  |
|  | : |  |

## APPEAL

**COUNSEL:**

Michael B. Joseph, Esquire, 824 Market Street, P.O. Box 1351, Wilmington, DE 19899-

1351, Phone 302-656-0123.

TRUSTEE.

APPELLANT IS PRO SE.

James B. Tyler, III, Esquire, 211 E. Market Street, P.O. Box 555, Georgetown, DE

19947, 302-856-6397.

ATTORNEY FOR APPELLEE (No Claim Filed).

### BRIEF OF APPELLANT

**Jurisdictional Statement**

The United States District Court For The District Of Delaware has jurisdiction to hear

this matter pursuant to 28 U.S.C. 158(a)(1) and 28 U.S.C. 158(b)(1), following entry of

the Bankruptcy Court's order Regarding Motion for Sale of Real Estate (Doc. 174).

**Statement of Issues Presented and Standards of Review**

1. Whether the bankruptcy court erred in determining that ex-wife has a right to motion

the court in absence of filed claim pursuant to Bankruptcy Court Rule 3002(a) and

3002(c)(3), placing question on defining ex-wife as "Appellee". The Panel reviews this

matter *de novo*.

2. Whether the bankruptcy court erred in dismissing the Debtor's bankruptcy to allow distribution of assets to ex-wife on ex-wife's motion, and other non-claiming creditors that would otherwise be not allowed pursuant to Bankruptcy Court Rule 3002(c)(3). The Panel reviews this matter *de novo*.

3. Whether the bankruptcy court erred in determining the debt owed to ex-wife (Appellee) to be other than an unsecured, non-priority debt, in the absence of a filed claim, or vested value in the Delaware Family Court, gives cause to dismiss. The Panel reviews this matter *de novo*.

4. Whether the bankruptcy court erred in denying confirmation of the plan gives cause to dismiss, where objecting creditor, equity security holder, or ex-wife, failed to assert any proper basis for such denial, claim, and where wife's "objection" was in the form of a Delaware Family Court Orders, resultant from the ex-wife failing to establish a equitable value, vest a value, and failing to state a claim pursuant to Rule 12(b)(6) of civil procedure. The Panel reviews this matter *de novo*.

5.   Whether the bankruptcy court erred in dismissing the Debtor's bankruptcy to allow distribution of assets to ex-wife, and other non-claiming creditors, on ex-wife's motion, without proper notice of hearing, where court ordered distribution would otherwise be discharged pursuant to Title 11 § 524, and or not allowed pursuant to Rule 3002(c)(3). The Panel reviews this matter *de novo*.

6. Whether the bankruptcy court erred in dismissing the Debtor's bankruptcy to allow distribution of assets to ex-wife, and other non-claiming creditors in the interest of ex-wife, on ex-wife's motion, where such matters were cut off by Debtor filing a

2

bankruptcy petition after divorce, and prior to any equitable distribution hearing, contract, agreement, or judicial order pertaining to matters of property, where property of the bankrupt estate is in sole control of the Debtor pursuant to Title 11 § 541. *See HASSLER v. HASSLER, 2004 Bankr. LEXIS 412*, and HINES v. HINES, No. 05-8065, 2006 Bankr. LEXIS 1160  The Panel reviews this matter *de novo.*

7.  Whether the bankruptcy court erred in dismissing the Debtor's bankruptcy to allow distribution of assets to ex-wife, and other non-claiming creditors (lawyers) in the interest of ex-wife, on ex-wife's motion, where the lawyers for ex-wife vested a value for fees through Family Court Order, in violation of Title 11 § 362, and beyond the scope of any relief of stay provided by the Bankruptcy Court (Doc. 63), where a request by counsel for attorney fees is beyond property division between the "parties" of divorce, and requires a determination by the Family Court that exceeds the scope of relief of stay. *See CORTELLESSA v. CORTELLESSA2006 **Bankr. LEXIS 1435.*** The Panel reviews this matter *de novo.*

8. Whether the bankruptcy court erred in dismissing the Debtor's bankruptcy to allow distribution of assets to ex-wife, and other non-claiming creditors (lawyers) in the interest of ex-wife, on ex-wife's motion, where dismissal prejudices the Debtor, and allowed creditors pursuant to Title 11 § 502, by voiding on dismissal, benefits of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses, pursuant to Title 11 § 558. The Panel reviews this matter *de novo.*

9. Whether the bankruptcy court erred in dismissing the Debtor's bankruptcy to allow distribution of assets to ex-wife, to satisfy debts to be owed to ex-wife, and/or

owed by ex-wife, in the absence of a claim, that are not a condition of support, intended support, or in lieu of support, to be non-dischargeable. As discussed above, the ex-wife failed to state a "claim", and/or vest a value for which she desired the Appellant to owe her, where it is further averred that all Family Court orders are independent of any support obligation, due to the dismissal of all support claims filed with the Family Court, prior to commencing the property separation hearings, making such debt expected by ex-wife dischargeable pursuant to 11 USCS § 523, and/or resultant of proceedings in violation of 11 USCS § 362(a)(4). The Panel reviews this matter *de novo.*

**Statement of Case**

**I. Procedural Posture**

The within case was filed on August 24, 2004 (Doc. 1) constituting an order for relief under 11U.S.C § 301. Debtor's first plan (Doc. 12) was filed on September 9, 2004. Ex-wife, Barbara H. Buchanan, filed an Objection to Confirmation (Doc. 25) on November 8, 2004, after which Debtor filed a Response of Debtor to Objection to Confirmation (Doc. 28) on November 17, 2004  Hearing Held on December 21, 2004 (Doc 40), Court identified the "Plan Is Not Confirmable", where the State Court has not adjudicated property division. *Motion for Relief of Stay* filed on February 10, 2005, by ex-wife (Doc. 46). Motion to Dismiss Case filed by ex-wife on April 14, 2005, (Doc. 57). Objection to the Repeated filing of Motion, Pleading by co-Debtor, filed by Debtor on April 18, 2005, (Doc. 60). Hearing held on April 26, 2005, (Doc 63) requiring *Certification of Counsel* with proposed order due on both motion by attorneys that will grant relief from stay to Family Court to make the property division, but not to effectuate any distribution. Ordered Debtor must file amended plan by December 20, 2005. Order for *Relief From*

*the Automatic Stay by Barbara H. Buchanan,* (Doc. 68) signed on May 19, 2005, <u>without</u> <u>compliance of Court Ordered Certification of Counsel</u> (Doc. 63). Debtor filed on August 19, 2005, an *Amended Chapter 13 Plan* (Doc. 79). Confirmation hearing continued to Special hearing scheduled for January 31, 2006 (Doc. 95). Motion to allow Family Court Order on Property Division filed on April 18, 2006 (Doc. 117) by ex-wife. *Second Amended Plan* filed on July 19, 2006 (Doc. 139) by Debtor. *Motion to Disallow Claims and for Respondent to Show Cause, Contempt,* filed on July 19, 2006 (Doc. 140), Exhibits (Doc. 141). Objection to Confirmation filed on August 14, 2006, (Doc. 144) by ex-wife. Motion to Approve Filed Family Court Order-Attorney Fees and Costs, filed on August 21, 2006 (Doc. 145) by ex-wife. *Response to Barbara H. Buchanan's Objection to Confirmation,* filed on August 22, 2006 (Doc. 147) by Debtor. *Motion to Sell Property Free and Clear of Liens,* filed on November 1, 2006 (Doc. 162) by ex-wife. *Motion to Strike Motion to Sell Real Estate related docket #162,* (Doc. 163) filed on November 15, 2006, by Debtor, hearing scheduled for December 19, 2006. Hearing held on November 21, 2006, allowing modified order to be entered that grants relief from the stay as to Barbara H. Buchanan, dismiss case with prejudice with a bar to refilling for 2 years, and lifts the stay of the relief of stay to MERS (Doc. 167). *Motion to Reconsider Dismissal of Case* (Doc. 168), filed on November 27, 2006. *Motion to Allow Confirmation of Bankruptcy,* (Doc. 171), filed on November 30, 2006, by Debtor. Order regarding Motion for Sale of Real Estate signed December 1, 2006, by the Honorable Judge Judith K. Fitzgerald, (Doc. 174). Notice of mailing of Order docket #174, filed on December 3, 2006 (Doc. 178).

**II. Facts Relevant to Appeal**

Appellant and ex-wife were divorced on August 6, 2003. On that date, a Certificate of Divorce was entered in the Family Court of Sussex County, Delaware, terminating the parties' marriage and <u>not</u> making certain orders relating to support and property division. *See BRYANT v. BRYANT 1999 Del. Fam. Ct. LEXIS 22.*

The Decree provided in pertinent part:

No conditions pertaining to property, equitable division of property, support, or agreement between the parties, but allowed for the loss of Federal Health Care Benefits (TRICARE), used by Appellant for the treatment of cancer, which were attached to Appellant as a condition of marriage to a military member (ex-wife).

No conditions excusing the performance of contractual mortgage obligation, financial responsibility to support a spouse pursuant to 13 Del. C. § 502, and § 506, and/or agreement to access marital funds enjoined by stay pursuant to 13 Del. C. § 1509.

Appellant was born December 5, 1959, and was 44 years of age on the date of filing of the bankruptcy petition. He continues to work as a self employed farmer, generating some off farm income, he is retired from the United States Air Force Reserves, and receives no retirement or pension income until his 60th birthday. The Appellant has been forced to file for bankruptcy protection following the onset of cancer, immediately followed by a divorce which canceled the health care for which he relied on to receive chemo treatments, and testing.

The plan which underlies this appeal provided for refinancing all debt associated with the marital property, removing any debt encumbrance on ex-wife, Barbara H. Buchanan, and further discharge, and/or not allow non-claims of ex-wife as non-priority, and unsecured, where ex-wife and counsel have failed to vest a value, or make claim in

Family Court pursuant to civil rule 12(b)(6), as well as bankruptcy rule 3002, where even exempt property under 11 USCS § 522 must initially be regarded as property of estate under 11 USCS § 541 and then claimed and distributed as exempt.

Ex-wife abused the legal process by objecting to confirmation on grounds, based on hearsay and conjecture. (Doc. 25). *See HENRIKSEN v. HENRIKSEN, C.A. No. 87C-MR-2, 1987 Del. Super. LEXIS 1361* The first ground of the objection declares the plan as "not feasible because it presumes to use the jointly owned real estate by living on it"… The second objection presumes that: "All the real estate on Debtor's Schedule A must be sold to pay the debts of the Debtor in a feasible Plan." The other objections mostly object to the use of the Bankruptcy code, and how it can be applied to the "Plan'. At no time before or after the objection has the ex-wife filed a "claim".

Following the deadline to file a "claim" of January 3, 2005, ex-wife filed a motion to dismiss on April 14, 2005 (Doc. 57), mostly claiming that "The Plan is not Confirmable", where ex-wife has not joined the Debtor as co-debtor to be able to motion for dismissal pursuant to Title 11 § 1307, and has not filed a "claim" for consideration under the Bankruptcy code.

Following the special hearing on confirmation, the Court determined that ex-wife, Barbara H. Buchanan, would be allowed a conditional relief of stay so that the Debtor and ex-wife can return to the Family Court so that the Family Court could determine an equitable division opinion of the marital property, but not to effectuate any distribution (Doc. 63). On February 7, 2006 an evidentiary hearing in Family Court, concluded that Ms. Buchanan would be required to produce appraisals of all property she wished to be divided, where her counsel (Thomas E. Gay, Esquire), stated that such appraisals would

7

be conducted by Huston Appraisal Co.. Prior to conducting Court on March 21, 2006,
the Family Court served an order dismissing all alimony and support petitions with
prejudice. On March 21 and 22, 2006, a hearing was conducted by the Family Court to
determine property separation, where Ms. Buchanan was seeking division of property
based on values nearly 3 years after the parties separated, then failed to provide
appraisals as directed by the Family Court on February 7, 2006, and further failed to state
a claim upon which relief may be granted pursuant to civil rule 12(b)(6), motivating the
Family Court to issue an order of sale of the properties to determine the value. On April
18, 2006, ex-wife filed Family Court Order on Property Division (Doc. 117) with the
Bankruptcy Court for consideration. On May 30, 2006, the Debtor filed a complaint
against ex-wife, with the Court of Chancery of the State of Delaware, alleging; Impairing
the Obligation of Contract, Tort, and Interference with land use, case No. 2190-S, in an
attempt to finalize matters of contractual impairment on real estate of the Bankruptcy.
On June 27, 2006, the matters of Chancery Court case file 2190-S where filed in Superior
Court of Delaware in and for Sussex County, due to lack of jurisdiction concerns noted
by the Court of Chancery. The Superior Court then dismissed the complaint stating that
"Family Court has jurisdiction over the division of the marital property". *See Buchanan
v. Buchanan, 2006 Del. Super. LEXIS 279.* On August 21, 2006, ex-wife filed for
consideration with the Bankruptcy Court (Doc. 145), Family Court Order-Attorney Fees,
dated July 12, 2006. On August 28, 2006, Debtor filed a special petition with the
Delaware Supreme Court to stay Family Court orders on appeal of property division,
attorney fees, and costs, referencing the Family Court File No. CS94-3107, Chancery
Case No. 2190-S, and Superior Court Case No. 06C-06-041 ESB, where the Supreme

Court dismissed the petition for matters of Case No. 558, 2004, were closed.  On October

24, 2006, ex-wife's attorney (James B. Tyler, III) returned to Bankruptcy Court to answer

Debtor's motion for sanction for violation of stay (Doc. 151), and again requested that the

Court consider the Family Court orders pertaining to the selling of real property, and for

attorney fees and costs in the amount of $36,240, at which time the Debtor again argued

that ex-wife, nor her attorneys have filed a "claim", and pursuant to Bankruptcy Rule

3002(a) and 3002(c)(3), where an "unsecured claim which arises in favor of an entity or

becomes allowable as a result of a judgment may be filed within 30 days after the

judgment becomes final", where the latest Family Court order was dated July 12, 2006,

and the time to file an appeal had expired on August 12, 2006.  Following such argument,

the presiding Judge Fitzgerald, inquired ex-wife's counsel "if they had filed a claim".

After informing the Court that a "claim" had not been formally filed, Judge Fitzgerald

instructed counsel to file a "claim", even if it would be considered a non-priority,

unsecured claim, where a "claim" must be filed to enjoy in any distribution of the estate.

Following a hearing on November 21, 2006, where an arrest warrant issued in

Washington D.C. on October 24, 2006, on a complaint by ex-wife, caused Debtor's

absence for the Bankruptcy proceedings, the Bankruptcy Court issued an order to

Dismiss, and order to sell real estate (Doc. 174) dated December 1, 2006.

**Argument**

I.      **The bankruptcy court erred in determining that ex-wife has a right to motion the court in absence of filed claim.**

Bankruptcy Court Rules 3002(a) and 3002(c)(3), give direction as to the requirement

to file a claim, that a claim shall not be allowed unless a claim is filed, and where the

12(b)(6) of the federal rules of civil procedure also give cause to dismiss a matter before the court for failing to state a claim, then the court has erred by determining that ex-wife has a right to motion the court in absence of a filed claim, or to be considered an "Appellee".

**II.    The bankruptcy court erred in dismissing the Debtor's bankruptcy to allow distribution of assets to ex-wife, and other non-claiming creditors.**

At the time of filing a petition the notice to creditors and ex-wife was timely made, where ex-wife and any potential creditor that may arise from litigation had ample time to file a claim to be considered as having a right to payment. Where creditors that have filed a claim pursuant to rule 3002(a) have a right to payment under the plan, any consideration of a non-claiming party goes to prejudice both the Debtor and the creditors with allowed claims pursuant to 3002(c)(3). Therefore pursuant to § 1307 a notice to creditors and an opportunity for hearing is required because, if for no other reason, the court may condition the dismissal as provided by § 349, where a dismissal re-vests the property of the estate in the entity in which such property was vested immediately before the commencement of the case, and further prejudices the Debtor's right to due process of law by rewarding ex-wife with value in the **absence of a "claim"** in any court. *See DAVIS v. DAVIS, Chapter 13, Case No. 06-02808-dd, 2006 Bankr. LEXIS 2837*

**III.    The bankruptcy court erred in determining the debt owed to ex-wife to be other than an unsecured, non-priority debt, in the absence of a filed claim.**

Ms Buchanan's claim for equitable distribution, once quantified, will become an entitlement against the Debtor's bankruptcy estate, subject to the distribution and priorities of the Bankruptcy Code. Since the Bankruptcy Code gives her no right of distribution superior to that of any other unsecured creditor, she will be entitled to a

prorata distribution along with other unsecured creditors if she files a claim. *See*

*POLLIARD v. POLLIARD, 152 B.R. 51; 1993 Bankr. LEXIS 442.* At the time the court

dismissed the case at the request of ex-wife, the ex-wife had failed to file a claim, or vest

a value in any court where her interest would be allowed pursuant to § 502, where by

dismissing the bankruptcy improved the ex-wife's interest in all property from claims not

allowed pursuant to 3002(c)(3), to a full equitable share with the intent to liquidate, and

force Debtor out of his home, and business, which goes to violate the intent of 11 U.S.C.

§ 305(a)(1), and gives cause for appeal. *See Benyola v. Benyola 136 B.R. 646; 1992*

*Bankr. LEXIS 297.*

### IV.  The bankruptcy court erred in denying/delaying confirmation of the plan.

The bankruptcy court erred in denying confirmation of the plan, where objecting ex-

wife attempting to be considered as creditor, equity security holder, failed to assert any

proper basis for such denial, and/or vest an equitable share by filing a claim pursuant to

3002(a), and/or § 509, where she has failed to join the bankruptcy as a co-debtor, or

creditor. *See ROBERGE v. ROBERGE 188 B.R. 366; 1995 U.S. Dist. LEXIS 16832.*

### V.  The bankruptcy court erred in due process of law by dismissing the Debtor's bankruptcy to allow distribution of assets to ex-wife and other non-claiming creditors, resultant of a hearing conducted without proper notice or timely notice.

On a motion from ex-wife the bankruptcy court conducted a hearing without proper

notice, or timely notice, to all creditors, or Debtor (Doc. 167), pursuant to Rule 9006(d),

then dismissed the Debtor's bankruptcy to allow distribution of assets to ex-wife, and

other non-claiming creditors, where the assets of the estate will not fully pay such debts

resulting from family court orders, and strips debtor of all assets, money, and ability to

11

continue any business to support himself.

**VI.    The bankruptcy court erred in dismissing the Debtor's bankruptcy to allow distribution of assets to ex-wife, and other non-claiming creditors in the interest of ex-wife, where such interest have not been made Choate.**

The divorce decree underlying this controversy does not order Appellant-Debtor to pay ex-wife, at the time the Debtor filed the petition for Bankruptcy, where the petition cuts off any action against the Debtor and his estate, where property of the bankrupt estate is in sole control of the Debtor pursuant to Title 11 § 541. *See HASSLER v. HASSLER, 2004 Bankr. LEXIS 412.* The Family Court orders pertaining to property distribution and attorney fees, fail to vest a value for which can be considered a Choate component of the Debtor's estate. The ex-wife has failed to file a "claim" pursuant to B.R. Rule 3002(a), 3002(c)(3), and therefore is not entitled to priority status under 11 U.S.C. § 507(a)(7), or any "right to payment" in the absence of a claim. It should also be recalled that the lien of the home mortgage against the Wife was not affected by Debtor's Chapter 13 Case, thus, if the ex-wife wanted to retain possession of any value, she was obligated to see that the mortgage against it was paid. *See Bryer, v. Bryer, 216 B.R. 755; 1998 Bankr. LEXIS 10.* The bankruptcy court erroneously found that the ex-wife had a right to receive payment from the sale of the real estate, even in the absence of a claim, and dismissed the Bankruptcy to effectuate the ex-wife's desires. *See ROBERGE v. ROBERGE 188 B.R. 366; 1995 U.S. Dist. LEXIS 16832.*

**B. Language of Divorce Decree Presented Precludes any Property Division.**

Again, the Decree provided in pertinent part:

The clear and unambiguous language of State law empowers the divorce decree, and provides that Appellant assume sole and exclusive ownership of all the property included

in the bankrupt estate at the time of filing the bankruptcy petition, unless otherwise

determined by timely claim filed, or agreement between Debtor and ex-wife. *See*

*ROBERGE v. ROBERGE 188 B.R. 366; 1995 U.S. Dist. LEXIS 16832, and HINES v.*

*HINES, No. 05-8065, 2006 Bankr. LEXIS 1160*

### VII.    The bankruptcy court erred in dismissing the Debtor's bankruptcy to allow value of attorney fees vested in Family Court in violation of Stay 362.

After long delays in Family Court due to repeated requests for continuance by ex-wife,

the bankruptcy court provided a conditional relief of stay (Doc. 68), without certification

of council as directed in (Doc. 63), which allowed the relief from stay to Family Court to

make the property division, but not to effectuate any distribution.  The definition of

"parties" of a divorce is that of Husband and Wife, and do not include that of counsel, or

the interest of counsel, which limit the scope of the relief of stay to matters of property

owned by the "parties", not giving opportunity to create, perfect, or enforce any lien

against property of the estate by lawyers outside the bankruptcy.  Dismissing the Debtor's

bankruptcy to allow distribution of assets to ex-wife, and other non-claiming creditors

(lawyers) in the interest of ex-wife, on ex-wife's motion, where the lawyers for ex-wife

vested a value for fees through Family Court Order, and affidavit maliciously prosecuted

beyond any property distribution hearing, in violation of Title 11 § 362(a)(4), and beyond

the scope of any relief of stay provided by the Bankruptcy Court (Doc. 63), where a

request by counsel for attorney fees is beyond property division between the "parties" of

divorce, and requires a determination by the Family Court that exceeds the scope of relief

of stay, for which is noted in paragraph 2 of the Family Court order filed with the court

(Doc. 117).  *See CORTELLESSA v. CORTELLESSA 2006 Bankr. LEXIS 1435, See*

*ROBERGE v. ROBERGE 188 B.R. 366; 1995 U.S. Dist. LEXIS 16832.*

**VIII.    The bankruptcy court erred by prejudicing the Debtor's right to due process of law when dismissing the Debtor's bankruptcy, resultant of untimely hearing, and where dismissal prejudices the Debtor, and allowed creditors pursuant to Title 11 § 502, and Rule 3002.**

Dismissing the Debtor's bankruptcy to allow distribution of assets to ex-wife, and

other non-claiming creditors (lawyers) in the interest of ex-wife, on ex-wife's untimely

motion, where ex-wife has not joined the bankruptcy as a co-debtor, nor filed a claim

allowing the court's jurisdiction to dismiss pursuant to Title 11 § 1307, prejudices the

Debtor, and allowed creditors rights to due process of law pursuant to Title 11 § 502, and

rules of bankruptcy, by voiding on dismissal, benefits of any defense available to the

debtor as against any entity other than the estate, including statutes of limitation, statutes

of frauds, usury, and other personal defenses, pursuant to Title 11 § 558. *See DAVIS v.*

*DAVIS, Chapter 13, Case No. 06-02808-dd, 2006 Bankr. LEXIS 2837*

**IX.    The bankruptcy court erred and prejudiced the Debtor's right to due process of law by determining a debt to be owed to ex-wife in the absence of a claim, and not a condition of support, to be non-dischargeable.**

As discussed above, the ex-wife failed to state a "claim", and/or vest a value for which

she desired the Appellant to owe her, where it is further averred that all Family Court

orders are independent of any support obligation, due to the dismissal of all support

claims filed with the Family Court, prior to commencing the property separation

hearings, making such debt expected by ex-wife dischargeable pursuant to 11 USCS §

523, and where the Debtor is on a fixed income as noted in the filed schedules, the debtor

does not have the ability to pay such debt from income or property of the debtor or

debtor's estate, in addition to the debtor being engaged in a farming business, for which

payment of expenditures is necessary for the continuation, preservation, and operation of that farming business, and where discharging of such debt would not result in a benefit to the debtor that outweighs the detrimental consequences to a former spouse, then any debt owed to ex-wife is dischargeable pursuant to the Consumer Credit Protection Act;" substituted paragraph. (5), codified by 11 U.S.C § 507(a)(7), and should not be cause to dismiss the bankruptcy, or delay confirmation, where doing so prejudices the Debtor's right to due process of law. *See HASSLER v. HASSLER, 2004 Bankr. LEXIS 412.*

**Conclusion**

The bankruptcy court in dismissing the Appellant-Debtor's bankruptcy, following denials of confirmation of Plan, First Amended Plan, and Second Amended Plan, due to delays in matters before the Family Court, in the light that ex-wife has failed to file a "claim" pursuant to Rule 3002, and where she has motioned the court in lieu of a directive by the court to file such "claim", has prejudiced the Debtor's right to equal protection under the law guaranteed by the section one of the 14th amendment, codified by 42 U.S.C.S. §1983, and right to due process of law guaranteed by the 14th Amendment.  Where it seems that counsel for ex-wife in bankruptcy proceedings, counsel for ex-wife in family court proceedings, and counsel representing the mortgage company (MERS), have filed documents to interfere with such bankruptcy without providing service of foreclosure proceedings by MERS to ex-wife, while in close contact with ex-wife, then conspiracy by counsel to interfere with civil rights pursuant to 42 U.S.C.S. §1985 becomes a matter of consideration.  Pursuant to 42 U.S.C.S. §1981, the Debtor has a right to make and enforce contracts, as well as to reorganize under Chapter 13 bankruptcy, where any impairment

either intentional, or unintentional, which so impairs such reorganization gives cause for enforcement by the court. As stated in this appeal, the ex-wife has impaired the confirmation of this bankruptcy, without filing a claim, without filing a late "claim", and even when directed by the court failed to file a "claim", loosing any right to move the court for relief including relief of stay, dismissal, and/or objection to confirmation. In this case, where the ex-wife, and/or her counsel, have failed to file a "claim" within the time allowed to do so, and where ex-wife has failed to vest a value in Family Court, where such issues have been brought before the court early in these proceedings, any motion or order granting relief of stay to allow Barbara H. Buchanan to return to court for property division issued on a date over four months after the requirement to file a "claim" expired, should make any distribution as a result of such family court hearing mute, for failing to file a "claim", pursuant to Rule 3002(c)(3), and where the ex-wife failed to vest a value in family court, or file a "claim" in bankruptcy court, one year after receiving relief of stay to proceed in family court, there should be no question as to disallowing all of ex-wife's motions, claims, or entries on the bankruptcy docket, which include any right to distribution of assets of the Debtor's bankruptcy estate. Rules pertaining to "claim" govern the courts jurisdiction to allow right to payment, allow creditors, and qualify an entity to have the right to move the court. In this case it appears that the court violated procedure due process of law, when dismissing the Debtor's bankruptcy without providing notice of a hearing on a motion from a disallowed creditor pursuant to Rule 3002(c)(3).

WHEREFORE, Appellant respectfully requests that the Panel overrule the bankruptcy court's order dismissing the Appellant-Debtor's bankruptcy, that the Panel overrule the

aforesaid determinations of the bankruptcy court which have allowed ex-wife to continue to move the bankruptcy court in the absence of a "claim", and that the case be remanded for further proceedings, with appropriate instructions pertaining to confirmation, and allowance of "claims".

Respectfully submitted by;

Date: December 18, 2006

David J. Buchanan
34606 Hudson Road
Laurel, Delaware 19956
(302) 875-1362

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

In Re: David J. Buchanan          :          No.
Debtor below, Appellant           :
                                  :
                                  :          Court Below: The United States
                                  :          Bankruptcy Court for the District of
                                  :          Delaware, C.A. No. 04-12419-JKF
                                  :
                                  :

## COMPENDIOUS OF DECISIONS CITED IN APPELLANT'S APPEAL

David J. Buchanan
34806 Hudson Road
Laurel, Delaware 19956

Dated: December 18, 2006

1

# TABLE OF CONTENTS

**Case Name**

**Tab #**

BENYOLA v. BENYOLA
BANKRUPTCY CASE No. 90-33743-S,
ADVERSARY PROCEEDING No. 91-3039-S
136 B.R. 646; 1992 Bankr. LEXIS 297……………………………………… 1

BRYANT v. BRYANT
FILE NO. CN97-08832
1999 Del. Fam. Ct. LEXIS 22……………………………………… 2

BUCHANAN v. BUCHANAN
C.A. No. 06C-06-041 ESB
2006 Del. Super. LEXIS 279……………………………………… 3

CORTELLESSA v. CORTELLESSA
Chapter 13, Bankruptcy Case No. 05-24258 REF
Adversary No. 06-2082 REF
2006 Bankr. LEXIS 1435……………………………………… 4

DAVIS v. DAVIS
Chapter 13, Case No. 06-02808-dd
2006 Bankr. LEXIS 2837……………………………………… 5

HASSLER v. HASSLER
CASE NO. BK03-81714
A03-8061, CH. 7
2004 Bankr. LEXIS 412……………………………………… 6

HENRIKSEN v. HENRIKSEN
C.A. No. 87C-MR-2
1987 Del. Super. LEXIS 1361……………………………………… 7

HINES v. HINES
No. 05-8065
2006 Bankr. LEXIS 1160……………………………………… 8

POLLIARD v. POLLIARD
152 B.R. 51; 1993 Bankr. LEXIS 442
28 Collier Bankr. Cas. 2d (MB) 1067……………………………………… 9

ROBERGE v. ROBERGE
Case No. 3:95CV488
188 B.R. 366; 1995 U.S. Dist. LEXIS 16832……………………………………… 10

**Search Terms: 136 B.R. 646**

FOCUS™     Search Within Results    Edit Search

Print    Email

Full    **Document 1 of 1.**

IN RE: PAUL BENYOLA, JR., Debtor. JOHN F. AMES, TRUSTEE, Plaintiff. v. PAUL BENYOLA, JR., SUZANNE E. BENYOLA, FRANKLIN FIRST FEDERAL SAVINGS, and FRANK RALICK, Defendants.

BANKRUPTCY CASE No. 90-33743-S, ADVERSARY PROCEEDING No. 91-3039-S

UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA, RICHMOND DIVISION

**136 B.R. 646;** 1992 Bankr. LEXIS 297

February 3, 1992, Decided

**OPINION:** [**1]

[*647] MEMORANDUM OPINION

This matter comes on before this Court upon the filing of a complaint by John F. Ames, Trustee in Bankruptcy for the debtor, to sell property owned by the debtor and the debtor's spouse, as tenants in common, free and clear of liens and interest pursuant to 11 U.S.C. § 363(h).

Upon consideration of the evidence and arguments of counsel presented at trial on November 22, 1991, the Court makes the following findings of facts and conclusions of law.

STATEMENT OF FACTS

Paul Benyola, Jr. and Suzanne Elizabeth Benyola are co-owners of a single family residence located in the Pocono Mountains of Pennsylvania ("the Property"). Mr. and Mrs. Benyola hold title to the Property as tenants in common each owning a one-half undivided interest in the Property. The Property was purchased by them in 1979 prior to their marriage and at that time it was the intent of the parties to title the Property as tenants in common. The improvements consist of a single family dwelling on a single building site which is not subject to partition, due to land covenants and thus is not divisible in kind. Additionally, the sale of the debtor's undivided one-half interest in the Property [**2] is not practicable nor would that interest equate to one-half of the value of the whole if it were sold separately.

The evidence presented at trial places a fair market value on the Property of approximately $ 172,000. It appears that the Property is encumbered by a first deed of trust held by Franklin First Federal Savings in the amount of $ 36,000, and a second deed of trust held by Frank Ralick, Mrs. Benyola's father. Mrs. Benyola places a value of approximately $ 22,000 on the balance due on the obligation secured by the second deed of trust whereas Mr. Benyola places its value at $ 8,500. Although the issue of the value, extent and priority of the Ralick debt is not presently before the Court, for the sole purpose of

determining if equity exists in the Property the Court will accept the amount of $ 22,000 as owing on the second deed of trust. Therefore, it appears that there is approximately $ 112,000 of equity in the Property.

Although the parties are presently married, they are currently separated and a divorce proceeding is pending before the Superior Court of New Jersey, Chancery Division, Monmouth County. Over the years the parties have sometimes occupied the house [**3] and have at other times rented the Property for extended periods, primarily while they were residing in Texas. Mrs. Benyola is currently residing in the Property.

[*648] By Order of the New Jersey court, Mr. Benyola is responsible for making the mortgage payments on the Property. It appears at the time of this hearing the mortgage payments are approximately eight months in arrears.

CONCLUSIONS OF LAW

I.

Mrs. Benyola's motion for voluntary abstention, made during argument before this Court on November 22, 1991, is denied. The Court, after notice and a hearing, may voluntarily abstain from hearing a case at any time if the interests of creditors and the interests of the debtor would best be served by such dismissal. 11 U.S.C. § 305(a)(1). "Under this test, abstention is appropriate only if it will not impair the interest of any of the parties involved." (emphasis added). Farmer v. First Virginia Bank of Fairfax City, VA, 22 Bankr. 488 (D.C.E.D. VA 1982). The Court must therefore consider any detrimental effect a voluntary abstention may have upon Mr. Benyola, Mrs. Benyola, the secured creditors or the unsecured creditors.

The Court cannot find, from the [**4] evidence before it, that the interests of the creditors of the debtor would not be impaired by an abstention. If an abstention was granted and the New Jersey Court were to award the Property to Mrs. Benyola in satisfaction of delinquent maintenance and support payments, the estate would receive none of the debtor's share of the equity in the Property. While such a distribution would obviously be to Mrs. Benyola's benefit, such an award would impair the interests of the other unsecured creditors thereby subverting the intent of the Bankruptcy Code to create equality of distribution. Were this Court to decline to act, the New Jersey Court could also order a continuation of the status quo whereby Mr. Benyola would continue to be responsible for paying the mortgage payments and Mrs. Benyola would retain possession of the Property. Again, the unsecured creditors would receive no distribution of the debtor's equity in the Property and, additionally, the creditors with a security interest in the Property may be hindered in collecting the arrearages presently owed them. Equally as speculative as the type of distribution to be made by the New Jersey Court is the time frame within [**5] which that Court might render a decision. A delayed ruling would unnecessarily postpone distribution, if any, to the creditors of the bankruptcy estate.

Normally, a debtor's liquidated interest in property is distributed through the bankruptcy estate, by the Trustee, to creditors filing timely proofs of claim. If Mrs. Benyola has timely filed a proof of claim, she would share in the liquidated estate. Additionally, any claim Mrs. Benyola might have against Mr. Benyola for support may be nondischargeable thereby surviving bankruptcy and allowing her to have an additional and separate opportunity to collect from Mr. Benyola at some future date. In contrast, this proceeding is the sole opportunity which other general creditors have for receiving any payment from Mr. Benyola, as all unsecured dischargeable debts will be discharged in bankruptcy.

For these reasons, the Court finds that it would not be in the best interests of the creditors or the debtor for this Court to abstain from hearing the matter now before it.

II.

The sale of property owned by the estate as a tenant in common with a third party is governed by 11 U.S.C. § 363(h) which allows the Property to be sold only if [**6] (1) partition in kind is impractical; (2) the estate would realize significantly less by selling its undivided interest rather than selling the Property as a whole; (3) the benefit to the estate outweighs the detriment to of the co-owner; and (4) the Property is not involved in the production, transmission or distribution of electricity or gas for heat, light or power.

The Court finds that the nature of the Property as a single family dwelling prohibits the partition in kind of the Property therefore, rending such a partition impracticable and the Court additionally finds [*649] that the estate's undivided interest in the Property is not marketable and consequently the sale of the estate's undivided interest would realize significantly less for the estate than the sale of the Property as a whole. The Court further finds that the Property is not involved in the manufacture or transmission of energy.

Although Mrs. Benyola will be dispossessed by a sale of the property, that sale would clearly benefit the estate by providing funds from which general creditors could be paid. Upon sale of the Property, pursuant to an order of this Court, Mrs. Benyola would receive an amount equivalent to [**7] her interest in the Property less her share of the sale expenses and fees. The balance of the net proceeds would be available to pay creditors of the estate, which would include Mrs. Benyola if she is a timely claimant. The creditors whose debts are dischargeable will have no further recourse against the debtor or his after acquired property. Because Mrs. Benyola will have her proceeds forthcoming from the sale of this asset, which she can apply to the acquisition of another residence, the benefits to the estate outweigh the detriment to the co-owner.

Additionally, the Court finds that the benefit to the estate of using Mr. Benyola's proceeds of the sale to pay general creditors outweighs the detriment, if any, to the co-owner because Mrs. Benyola would receive payment for her interest in the Property and any claim for support or maintenance resulting from the divorce proceeding would be preserved in full since any claim Mrs. Benyola might have for alimony, maintenance or support would be nondischargeable to the extent it meets the test of 11 U.S.C. § 523(a)(5).

The Court therefore finds that the Trustee should be granted authority to sell the Property free and clear of all liens [**8] and encumbrances, such liens and encumbrances to attach to the proceeds of sale, after which the bankruptcy estate and Mrs. Benyola should each receive a one-half interest in the proceeds of the sale less the expenses, commissions and fees incurred in such sale.

The Court further finds that the ordered sale of the Property will render moot Mrs. Benyola's counterclaim for relief from the automatic stay and said counterclaim should be DISMISSED.

The plaintiff is directed to prepare and submit an order in conformity with this opinion pursuant to Local Rule 112.

ENTER:

Blackwell N. Shelley

United States Bankruptcy Judge

February 3, 1992

Richmond, Virginia

**Document 1 of 1.**

Terms and Conditions | Privacy

Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

Search Terms:           , Bryant

FOCUS™

Document 2 of 2.

## LORI Z. **BRYANT**, PETITIONER v. JAMES G. **BRYANT**, JR., RESPONDENT

### FILE NO. CN97-08832

### FAMILY COURT OF DELAWARE, NEW CASTLE

### 1999 Del. Fam. Ct. LEXIS 22

February 17, 1999, Date Submitted
March 17, 1999, Date Decided

**PRIOR HISTORY:**    [*1]  PETITION NO. 97-27293.

**COUNSEL:**

FRANCINE R. SOLOMON, ESQ., FOR PETITIONER.

JENNIFER A. HARTNETT, ESQ., FOR RESPONDENT.

**JUDGES:** BUCKWORTH, J.

**OPINION BY:** BUCKWORTH

**OPINION:** This is the Court's decision concerning property division and alimony, matters ancillary to the divorce of the parties, as a result of the divorce petition brought by Lori Z. **Bryant** ("Wife") versus James G. **Bryant** Jr. ("Husband"). Present in Court for the hearing on February 17, 1999 were Wife, represented by Francine R. Solomon, Esquire, and Husband, represented by Jennifer Hartnett, Esquire. The Court also heard testimony from James G. **Bryant**, Sr., Husband's father.

FINDINGS

1. Petitioner ("Wife") and Respondent ("Husband") married on March 10, 1979; separated on July 20, 1997; and were divorced on July 16, 1998, ending a marriage of nineteen years and four months.

2. There are two children of the marriage: [TEXT REDACTED BY THE COURT.] **Bryant** III, born July [TEXT REDACTED BY THE COURT.] 1979, and [TEXT REDACTED BY THE COURT.] M. **Bryant**, born January [TEXT REDACTED BY THE COURT.], 1981. A child support order is currently in place for the support of the child who is still a minor, requiring Husband to pay  [*2]  $ 600 per month ($ 540 current support plus $ 60 towards arrears). n1

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 **Bryant** v. **Bryant**, Del. Fam., File No. CN97-08832, Sackovich, M. (February 19, 1998).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

3. This was the first marriage for both Husband and Wife. Husband has remarried, although he separated from his present wife approximately two weeks after their marriage and remains separated.

4. Husband was 42 years of age at the time of the hearing; he is now 43 years of age and is in good health. He is presently employed by BE&K, earning $ 4,050 gross per month. Husband is a college graduate who has an Associates Degree. He was the primary wage earner during the parties' marriage.

5. Wife is 39 years old and is in average health. She is a high school graduate, with no vocational training and no occupational skills, who worked only part-time during the marriage. Wife is currently unemployed but anticipates starting employment in the immediate future at Bob Evans. Between hourly wage and tip income she should average approximately $ 7.80 per hour. If [*3] Wife's estimated average hourly income is computed for a 40 hour work week, she should gross $ 1,352 per month. Wife had previously filed two motions for Interim Alimony, both of which were denied. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 **Bryant** v. **Bryant**, Del. Fam. File No. CN97-08832, Buckworth, J. (November 24, 1998); **Bryant** v. **Bryant**, Del. Fam., File No. CN97-08832, Buckworth, J. (June 10, 1998).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

6. The assets of the parties are as follows:

a) [TEXT REDACTED BY THE COURT.] Chandler Circle, Bear, Delaware 19701. The parties stipulate that this marital residence shall be sold. Wife shall choose a realtor and shall have the property listed within 30 days. The net proceeds from the sale of the marital residence will be distributed pursuant to the percentage distribution set forth in this opinion.

b) 1986 Camaro. This automobile was sold by Wife for $ 500 post separation and the proceeds were used to buy the 1988 Buick Skylark. The parties stipulate that the Skylark was purchased post separation and shall not be considered in the distribution. [*4]

c) Husband's 401(k). The parties stipulate that there have been no post separation contributions to Husband's 401(k) Plan. It was valued at $ 43,973 as of August 31, 1998. The current balance (as of February 17, 1999) of the 401(k) shall be distributed pursuant to the percentage distribution set forth hereafter.

d) Personal Property. Husband has provided a Master List to Wife's Counsel. If the parties can not agree on distribution then a two list method shall be utilized.

e) Husband's Vehicles. Testimony was presented that Husband owned a 1965 Chevrolet Corvette

during the marriage as well as a Harley Davidson Motor Cycle that was acquired during the marriage. Husband disputes this and states that both of those vehicles are titled in his father's name. Mr. **Bryant** Sr. corroborated Husband's testimony. Husband testified that his father lets him and his brother-in-law use the vehicles, so long as they maintain the vehicles and pay the insurance on the vehicles. Evidence was submitted regarding the motorcycle ownership card and insurance card, both of which were in Husband's name. (See Petitioner's Exhibit 4). Evidence was also submitted regarding insurance cards on the Corvette that [*5] were in Husband's name. (See Petitioner's Exhibit 2). No evidence of the title on either the Corvette or the Harley was presented.

7. Debts. The parties stipulate that the marital debts are as follows:

| | | |
|---|---|---|
| a) | Mainline Mortgage | $ 70,238.17 |
| b) | Sears | 1,992.49 |
| c) | Bell Atlantic | 265.75 |
| d) | Advanta | 5,699.19 |
| e) | Strawbridge's | 487.29 |
| f) | Mobile | 163.54 |
| g) | Artesian | 77.29 |
| h) | Comcast Cellular One | 213.01 |
| I) | Exxon | 306.84 |
| j) | Beneficial | 1,883.42 |
| k) | Macey's | 266.39 |

Husband argues that the Sears debt was for a washer and dryer purchased by Wife at or around the time of separation and should be treated differently than the other debts. Wife's position is that the washer and dryer were bought prior to separation, with Husband's knowledge, because the old ones broke. The washer and dryer also appear on the Master List of personal property submitted by Husband. (See Respondent's Exhibit 2). Husband also argues that the balance on the Beneficial account stems from purchases of food products shortly prior to separation of the parties and should also be treated separately from the other debts. Wife argues that the food products bought on the Beneficial account [*6] were bought several months prior to separation and that the majority of the food was consumed by the parties and their children prior to separation.

The parties stipulate that Husband paid two post separation debts of Wife: Delmarva Power in the amount of $ 588.04 and Bell Atlantic in the amount of $ 361.63.

CONCLUSIONS

1. The marital residence located at [TEXT REDACTED BY THE COURT.] Chandler Circle, Bear, Delaware 19701 shall be listed for sale within 30 days of the date of this Order. Wife shall choose the realtor. Both parties are to fully cooperate with the realtor to ensure that the home is sold as quickly as possible. The net proceeds after settlement shall be distributed pursuant to the percentage distribution set forth in this opinion.

There is a large amount of arrears owed on the mortgage, above and beyond the $ 70,238.17 balance as of the date of separation. Wife has retained exclusive use and enjoyment of the marital residence since separation. Under the Interim Alimony Orders, Wife was determined to have sufficient income to make the monthly payments. Neither party has made payments on the mortgage since separation. In the

Court's Order of June 10, 1998, counsel [*7] for both parties were ordered to negotiate on the issue of mortgage foreclosure. n3 It is clear that this part of the Court's directive was not followed. The home has not been sold and payment arrangements have not been made. When Husband moved out of the home, Wife did not have the ability to immediately begin to make the full mortgage payments and child support was not immediately in place. Wife continued to have this expense, while by all accounts Husband has had minimal rental expenses, as he has lived for the majority of the time with his parents. While Wife enjoyed the exclusive use of the home, and thus should bear more of the responsibility for the accrued arrears, the Court finds that the responsibility for the arrears rests with both parties. Other, responsible options, instead of refusing to pay the mortgage, were available to both parties. Therefore, the arrears will be treated outside of the percentage distribution set forth herein. Wife is responsible for 65% of any arrears above and beyond the $ 70,238.17 balance and Husband is responsible for 35% of such arrears.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 **Bryant** v. **Bryant**, Del. Fam., File No. CN97-08832, Buckworth, J. (June 10, 1998).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*8]

2. Wife shall retain the 1988 Skylark, which is not subject to distribution. Wife, however, shall be credited with retaining $ 500 from the sale of the 1986 Camaro.

3. The value of Husband's 401(k) as of February 17, 1999 shall be distributed pursuant to the percentage distribution to be set forth in this opinion. Husband is to provide both counsel with the balance of the 401(k) as of February 17, 1999 within fourteen (14) days of the date of this Order. The parties may elect to distribute the 401(k) pursuant to a Qualified Domestic Relations Order (QDRO).

4. The household furnishings shall be divided by a two list method, with Husband preparing the two lists and forwarding them to Wife within two weeks of receipt of this Order. The lists are to include all marital property, regardless of the label attached by Husband on the Master List and regardless of who currently has possession of the items. Wife shall have fourteen (14) days to chose one list, and should she fail to do so, Husband then has the right to choose one list. After the list is chosen, the parties shall make arrangements, within ten (10) days, to distribute the items.

5. The 1965 Chevrolet Corvette and the Harley [*9] Davidson motorcycle shall not be subject to distribution, as insufficient evidence was presented to determine that they are property bought during the marriage.

6. The marital debt shall be determined as follows:

Mainline Mortgage   $ 70,238.17, which will be liquidated at the time of the sale of the marital residence;

| | |
|---|---|
| Sears | $ 1,992.49 |
| Bell Atlantic | $ 265.75 |
| Advanta | $ 5,699.19 |
| Strawbridge's | $ 487.29 |
| Mobile | $ 163.54 |

| | |
|---|---|
| Artesian | $ 77.29 |
| Comcast Cellular One | $ 213.01 |
| Exxon | $ 306.84; |
| Beneficial | $ 1,883.42. |
| Macey's | $ 266.39 |

The Court shall not treat the Sears debt or the Beneficial debt separately as they were debts incurred for the benefit of both parties prior to the parties' separation; the washer and dryer are included on the list of personal property and the food products were consumed by the whole family. In his 52(d) submission, Husband requests credit for making payments on the parties' marital debt. As no evidence was submitted by either party with regard to any payments on the marital debts, neither party shall receive credit for any payments on the marital debts listed above.

7. Husband shall receive credit for the [*10] payment of two post separation debts of Wife: Delmarva Power in the amount of $ 588.04 and Bell Atlantic in the amount of $ 361.63.

8. Counsel and the parties are directed to cooperate in implementation of the distribution of this estate, with the Court determining that the percentage distribution shall be 65/35 in favor of Wife. Wife is entitled to 65% of the assets and Husband to 35% of the assets. Except for the mortgage arrears, which have been addressed in paragraph (1), Wife is be responsible for 35% of the debts and Husband for 65% of the debts.

REASONS

Pursuant to 13 Del. C. § 1513, the Court in dividing the marital property and allocating the marital debts has considered the following factors.

1. The length of the marriage.

This nineteen year and four month marriage was of long duration under current standards.

2. Any prior marriage of the party.

This was the first marriage for both parties. Husband has remarried, although he separated from his present wife shortly after their marriage and remains separated.

3. The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties [*11] .

It is undisputed that Husband's financial situation is superior to Wife's. He presently earns approximately $ 4,050 per month and has been the primary wage earner throughout the parties' marriage. Wife is currently unemployed but anticipates starting work in the immediate future, with an anticipated income of $ 1,350 gross per month. Husband has incurred the burden of the debts of the parties, with the exception of the mortgage, on which neither party has made payments since separation. The Court notes that Wife and the parties' children have resided in the household since separation.

Husband is a college graduate and has maintained steady employment. He has thus been able to build a career with pension and savings benefits. Wife is a high school graduate with no vocational skills or

occupational training. It is unlikely that she will obtain such training in the near future. Neither party submitted documentation regarding their present monthly living expenses.

4. Whether the property award is in lieu of or in addition to alimony.

The property award will be in lieu of alimony. Wife has requested alimony of $ 1.00 per year, in order to preserve an alimony claim for the future. [*12] This Court has previously determined that Wife was not in need of interim alimony. Wife, however, argues that the Court's determination was based partially on child support income that she is presently receiving. Wife anticipates that once that child support order terminates, she will be in need of alimony. Aside from the request of $ 1.00 per year alimony, Wife presented no evidence regarding her present dependency. Wife's request for alimony will be discussed in more detail herein.

5. The opportunity of each for future acquisitions of capital assets and income.

Although the parties are approximately the same age, Husband has a significantly greater work history and a greater earning capacity than Wife. Given Husband's superior earning capacity, he has greater opportunity for future acquisition of capital assets and income, even if Wife becomes fully employed at her new job.

6. The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker or husband.

Both parties contributed toward the marital estate, although the Court notes that the estate itself [*13] is limited. Aside from their personal property, the only assets of the parties are the marital residence and Husband's 401(k) Plan. Husband contributed financially to the marriage and, while Wife made less financial contribution, she contributed as a homemaker and as the caretaker of the parties' children. Although Husband disputes that the parties agreed that Wife should remain home with the children, it is undisputed that she did so.

Husband further argues that Wife has dissipated marital assets. Husband testified that Wife has kept a set of manifolds and wheels from the Corvette. Husband attempted to get them back himself but Wife called the Police. In addition, Husband argues that Wife has caused the dissipation in the equity in the marital residence. According to Husband, he made efforts to sell the residence by having it listed and, at one point, he believed that buyers were available but Wife withdrew the listing. Husband testified that his credit has been harmed by the failure to make mortgage payments. The Court has addressed the issue of the mortgage payments and, while Wife bears more responsibility for the arrears, as she had exclusive use of the home, both parties are [*14] responsible for the accumulation of the arrears. Husband also indicated that the only notice he ever received with regard to Wife's bankruptcy action was a notice that she had withdrawn it. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 At one point, Wife filed a Petition in Bankruptcy Court but subsequently withdrew it.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

7. The value of property set apart to each party.

The marital residence shall be sold and the proceeds distributed. There will also be a distribution of Husband's 401(k) Plan. The Court further finds that Husband's use of vehicles owned by his Father constitutes additional property available to him. Were it not for the use of those vehicles, Husband argued that he would have had to purchase vehicles for his own use; however, he never did and most likely will not have to in the future.

8. The economic circumstances of each party at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the party with whom any children [*15] of the marriage will live.

The specific economic circumstances of the parties have been discussed above, with the exception of their monthly living expenses, which were not detailed by the parties at trial. Since the Court has ordered, pursuant to the parties' stipulation, that the marital residence be sold, the issue of awarding it to the party to whom the children of the marriage will live is moot.

9. Whether the property was acquired by gift.

Husband's father testified that he provided the down payment for the purchase of the marital residence, totaling approximately $ 15,000. Wife testified that this was a loan that the parties had repaid from the proceeds of settlement of an accident claim. Both Husband and his father, however, disagreed. Husband testified that he had made some payments on this loan from the settlement and several payments consisting of interest on the loan over the years but none on the principle. No documentary evidence was presented of the exact amount of money or that this money constituted a loan that was to be repaid. The Court notes that Husband's credibility was damaged by the testimony of his father, who said "not one penny" has been paid on [*16] the loan. It was also of note that Husband's father doubts that he'll ever be repaid.

10. The debts of the parties.

The debts of the parties have been addressed above.

11. Tax consequences.

There are no consequences except for distribution to Wife of her share of Husband's 401(k), which may be avoided by use of a QDRO.

ALIMONY

The Court finds that Wife is not dependent upon Husband for support, as is required for an award of alimony under 13 Del. C. § 1512(b). n5 Husband is not contractually obligated to provide for Wife's support after the divorce and, while Wife does not have sufficient property, including the award of marital property made by this opinion and Order, to provide for all her needs, she should have been able to support herself through appropriate employment. The Court's most recent denial of interim alimony for Wife speaks to that issue. n6 Wife had previously filed two motions for Interim Alimony, both of which were denied. n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 13 Del. C. § 1512(b) provides:

A party may be awarded alimony only if he or she is a dependent party after consideration of all relevant factor contained in subsection (c) of this section in that he or she:

(1) Is dependent upon the other party for support and the other party is not contractually or otherwise obligated to provide that support after the entry of a decree of divorce or annulment;

(2) Lacks sufficient property, including any award of marital property made by the Court, to provide for his or her reasonable needs; and

(3) Is unable to support himself or herself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that he or she not be required to seek employment.

[*17]

n6 As the Supreme Court noted in Gregory J.M. v. Carolyn A.M., "dependency, while not defined by the Statute, means more than a minimal existence or subsistence level. Its meaning is to be 'measured against the standard of living established by the parties during their marriage.'" Gregory J.M. v. Carolyn A.M., Del. Supr., 442 A.2d 1373, 1375 (1982) (quoting Husband J. v. Wife J., Del. Fam., 413 A.2d 1267, 1269 n.2 (1979)).

n7 **Bryant** v. **Bryant**, Del. Fam. File No. CN97-08832, Buckworth, J. (November 24, 1998); **Bryant** v. **Bryant**, Del. Fam., File No. CN97-08832, Buckworth, J. (June 10, 1998).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In order for the Court to determine whether Wife is entitled to alimony, the Court must examine 13 Del. C. § 1512(c). In the instant case, however, the Court will not detail the factors in the statute, since Wife has requested, pro forma, $ 1.00 per year in order to preserve future alimony claims. Since Wife presented no evidence of her present monthly living expenses or shortfalls, the only conclusion the Court can draw is that she is currently not dependent. [*18] Therefore, the Court respectfully denies Wife's request for $ 1.00 per year alimony. The Court notes that, pursuant to Romano v. Romano, Del. Supr., 494 A.2d 161 (1985), Wife may seek a modification in the future upon a showing of a substantial change in circumstances. n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n8 In Romano, the Delaware Supreme Court addressed the issue of whether a former spouse may bring a petition in Family Court to modify, on the basis of change in circumstances, a prior order denying

application for alimony. 494 A.2d at 161. In Romano, Wife petitioned for an alimony award and the Court found Wife dependent but, as the future earning capacities of the parties could not be calculated, awarded Wife $ 1.00 in alimony to preserve her claim. Id. More than two years later, Wife petitioned for a hearing concerning alimony and the Court found that she was not entitled to alimony under 13 Del. C. § 1512. Id. (citing 13 Del C. § 1512). One month later, wife petitioned Family Court for a modification of its order, based upon a change in circumstances. 494 A.2d at 162. The Supreme Court found that, since the former spouse requesting alimony had not remarried, Family court had jurisdiction to reconsider alimony where real and substantial change in circumstances was alleged. 494 A.2d at 162-163.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*19]

## LITIGATION COSTS

Wife argues that Husband should pay her reasonable counsel fees due, in part, to his superior financial resources but more importantly due to his actions that escalated litigation costs. Wife argues that Husband's position in challenging the legality and validity of their marriage caused her to incur additional attorney's fees in order to proceed with the divorce. Wife further argues that Husband's testimony has raised significant credibility issues. She cites Husband's position regarding ownership of motor vehicles that he used during the marriage and his testimony regarding his second marriage, by which he implied that he supported his stepchildren; Husband contradicted himself on cross-examination when he testified that he was living with his parents and was separated from his second wife, having separated approximately two weeks after their marriage. The Court has previously noted Husband's testimony regarding payments on the alleged loans from his Father as grounds for questioning Husband's credibility.

Husband, on the other hand, argues that Wife should pay his reasonable counsel fees because she has dissipated marital assets and protracted the litigation. [*20] He argues that Wife should bear added responsibility for her failure to pay the mortgage since the date of separation, even though she has been residing in the former marital residence. Husband argues that Wife should be responsible for all arrears, interest and penalty above the mortgage balance as of the date of separation. The Court has addressed the issue of the mortgage arrears. With regard to legal costs stemming from the question of the legality of the marriage, Husband argues that the Court agreed with his position that statutory requirements had not been met and, therefore, the additional legal expenses were necessary. Husband stated that he had to retain a New York attorney in order to defend the marriage legality issue. Husband argues that both parties artificially increased attorney's fees, with Wife having two attorneys, filing a bankruptcy action but withdrawing it, and then filing two motions for Interim Alimony.

Section 1515 of Title 13 of the Delaware Code authorizes the Court, after considering the financial resources of both parties, to order one party to pay all or part of the costs to the other party of maintaining or defending any divorce proceeding and counsel [*21] fees, including sums for legal services rendered and costs incurred prior to the commencement of the divorce proceeding or after the entry of judgment. n9

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 13 Del. C. § 1515 provides:

The Court from time to time after considering the financial resources of both parties may order a party to pay all or part of the cost to the other party of maintaining or defending any proceeding under this title and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after the entry of judgment. The Court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Court has broad discretion in awarding fees and costs under 13 Del. C. § 1515, which specifically ties the awarding of fees and costs to the financial condition of the parties. n10 The underlying purpose of the statute in question is to equalize the positions of the parties by providing a financially disadvantaged party with [*22] the financial means to prosecute or defend a divorce action. n11 Further, a party seeking an award of fees and costs need not be totally without assets or income in order to be eligible for such an award. n12

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 Husband B.W.D. v. Wife B.A.D., Del. Supr., 405 A.2d 123, 125 (1979).

n11 Husband F. v. Wife F., Del. Supr., 432 A.2d 331 (1981).

n12 G.S.G. v. P.S.G., Del. Supr., 412 A.2d 319 (1980).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

While the right to an award of fees and costs is normally based upon the financial circumstances of the parties at the commencement of a divorce proceeding, section 1515 authorizes the Court to enter an award throughout the litigation. n13

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n13 Husband S. v. Wife S., Del. Supr., 294 A.2d 89 (1972).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Family Court Civil Rule 88 requires the Court, in determining the reasonableness [*23] of litigation costs incurred by the parties, to consider:

(1) time and effort expended;
(2) an itemization of services rendered;
(3) relevant hourly rates;
(4) itemization of disbursements claimed;
(5) any sums received or that will be received with respect to legal services and/or disbursements; and
(6) any information that will enable the Court to properly weigh the relevant factors set forth in the Rules of Professional Conduct, Rule 1.5. n14

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n14 Delaware Lawyers' Rules of Professional Conduct, Rule 1.5 provides:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyers performing the service; and
(8) whether the fee is fixed or contingent.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*24]

After reviewing the relative financial circumstances of the parties as required by section 1515 and the case law interpreting this statute as noted above, as well as the factors set forth in Family Court Civil Rule 88 and the litigation costs in light of Rule 1.5(a), the Court deems it appropriate to order both parties to pay their own respective attorney's fees and costs. With regard to the arguments concerning the litigation over the legality of the parties' marriage, Husband correctly noted that his position regarding the required legal procedures was accepted by the Court. The Court notes, however, that he

could have cooperated with Wife in obtaining documents to verify the legality of the marriage from the State of New York. As for the other arguments, this case should not have come to trial. The parties acknowledge that there were very few assets acquired, despite a lengthy marriage, and, fortunately, there were no significant debts. The issues remaining in dispute were not ones that should have required a full hearing before the Court for resolution. The Court finds both parties at fault for increasing fees beyond that which should have occurred in this case. Therefore, the [*25] parties shall be responsible for their own respective counsel fees.

ORDER

1) The foregoing is hereby entered as an Order of the Court.

2) Counsel are directed to prepare all documentation necessary to implement this Order.

*IT IS SO ORDERED.*

**Document 2 of 2.**

2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

Search Terms:          , Bryant

FOCUS™

Document 1 of 2,

DAVID J. BUCHANAN, Plaintiff, v. BARBARA H. BUCHANAN, Defendant.

C.A. No. 06C-06-041 ESB

SUPERIOR COURT OF DELAWARE, SUSSEX

2006 Del. Super. LEXIS 279

July 7, 2006, Decided

**NOTICE:** [*1]  THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**PRIOR HISTORY:** Buchanan v. Buchanan, 2006 Del. Ch. LEXIS 106 (Del. Ch., May 31, 2006)

**OPINION:** DECISIONS ON MOTION TO PROCEED IN FORMA PAUPERIS AND UPON REVIEW OF COMPLAINT

1) Pending before the Court is a motion to proceed *in forma pauperis* which plaintiff David J. Buchanan ("plaintiff") has filed in connection with the above-captioned complaint.

2) Plaintiff's filings in support of his motion to proceed *in forma pauperis* establish he is indigent. Consequently, the Court grants his motion to proceed *in forma pauperis*. The Court now is required to review the complaint and allow the litigation to proceed only if it finds the action is not legally frivolous. 10 Del. C. § 8803(b).

3) Plaintiff originally filed a complaint in the Court of Chancery which apparently made the same allegations as are contained in the pending matter. Buchanan v. Buchanan, Del. Ch., C.A. No. 2190, Chandler, C. (May 31, 2006). That Court ruled that Superior Court and not this Court has jurisdiction over the matter.

4) On June 27, 2006, plaintiff filed the pending complaint. In that complaint, he asserts the following.

He and Barbara H. Buchanan [*2]  ("defendant") were divorced on August 6, 2003. On or about March 18, 2003, defendant filed a petition with the Family Court to list and sell the parties' real estate.

On July 28, 2004, the mortgage holder on the marital home filed foreclosure due to nonpayment of the mortgage. The Court takes judicial notice of this foreclosure action filed with this Court, Mortgage Electronic Registration Systems, Inc. v. Buchanan, Del. Super., C.A. No. 04L-06-001. n1

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 The proceedings have been stayed due to plaintiff's filing of a bankruptcy petition. The mortgage company never has obtained personal jurisdiction over Barbara Buchanan; consequently, she has yet to file an answer in the case.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

On August 24, 2004, plaintiff filed a petition in bankruptcy under Chapter 13.

On March 21 and 22, 2006, the Family Court conducted a hearing regarding the division of marital property. At some point, the date of which is unclear, the Family Court ordered the sale of the properties to determine the value thereof.

On April 18, 2006, the [*3] Bankruptcy Court:

> held a hearing pertinent to matters of property, and issued an order allowing Mr. Buchanan to refinance said properties, where in the process of the refinance Ms. Buchanan would be given consideration of her equitable share, and further directed Ms. Buchanan to sign the USDA forms required of Mr. Buchanan's farming operation, as well as advised Ms. Buchanan that she is responsible to ensure that her mortgages are paid, where failing to do so subjects the properties to loss due to foreclosure.

Complaint at paragraph 19.

On or about May 7, 2006, another lender contacted plaintiff and informed him that due to late payments, it may be forced to foreclose on the parties' farm.

In paragraph 21 of the complaint, defendant alleges:

> As of May 16, 2006, Barbara H. Buchanan, well represented by Counsel in all Court proceedings has failed to file a proof of claim with the Bankruptcy Court, (Deadline to file claim 1/3/05), has not answered any foreclosure action, nor made any attempt to service her contractual mortgage obligations following divorce, and an order of property separation, and has further impaired the obligation of mortgage contracts by interfering [*4] with income paid to Mr. Buchanan to support mortgages through governmental subsidy, by refusing to sign USDA forms.

Under the caption "Impairing the Obligation of Contract", he asserts the following. Defendant has failed to honor her obligations on the contracts secured by the mortgages, thereby resulting in litigation and causing "equitable loss to Plaintiff in the way of imposed fines, fees, legal costs." By not timely signing the USDA forms, she has caused a loss of income used to pay the mortgages.

Under the caption "Tort", plaintiff asserts defendant has defrauded him in the following ways. "She

never intended to pay or otherwise honor her contractual mortgage guarantees, even in the event where her husband became ill." She withdrew monies that could have been used to support the mortgages and used those monies to pay for attorneys and purchase other things. She fraudulently removed assets from the marital estate and hid it in other properties owned by her mother. She has refused to comply with the Federal Bankruptcy Judge's instructions to pay monies due on the real property and to sign the USDA form. Finally:

> She has filed a fraudulent financial statement with the [*5] Family Court, failed to provide financial information requested by Subpoena, failed to account for money paid to others, failed to account for the source of funds for which she paid attorneys, and has sought an emergency list and sale of property in Family Court after causing default of mortgages.

He maintains he has suffered damages as a result of her fraud, misrepresentations, contractual defaults, failures to appear in Court, and bad faith. He asks for general and punitive damages.

Count Three is captioned "Interference with land use". He alleges that defendant should have filed a proof of claim with the Bankruptcy Court so that the land could be valued and he could start to refinance. He further alleges she has interfered with plaintiff's right to farm and subjected the real property to loss due to interruption of income and she maliciously has interfered with his right to use the property.

He asks for money damages (general and punitive) and a partition of the property which would result, not in a partitioning of the property, but in placing the property solely in plaintiff's name. He also asks for costs and attorneys' fees incurred in the foreclosure and bankruptcy [*6] matters.

5) This Court does not have jurisdiction over this complaint. Plaintiff's forum for filing these complaints and seeking remedies is within the Family Court. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The exception to this conclusion would be if an order of the Bankruptcy Court does exist instructing defendant to pay the mortgage or take any other steps with regard to the marital property. In such a case, plaintiff may file a Rule to Show Cause with the Bankruptcy Court requiring defendant to explain why she should not be held in contempt of Court for failing to comply with that Court's orders.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Plaintiff's complaint clarifies that Family Court is exercising jurisdiction over the marital property. The allegations which plaintiff makes concern him, his ex-wife, her alleged wrongful actions in connection with those proceedings, and mortgages and procedures related to their marital property. The Family Court has exclusive jurisdiction over the complaints plaintiff makes here. 10 Del. C. § 921(14); 13 Del. C. § 507 [*7] . Plaintiff must seek his remedies within that Court. For example, if there is no order instructing defendant to pay the mortgage and/or to sign appropriate documentation so that plaintiff can farm the land, then plaintiff must go to Family Court to request that relief. If there is a Family Court order instructing defendant to pay the mortgage, then plaintiff can file a Rule to Show Cause with Family Court regarding her failure to pay that mortgage. See Imperial v. Imperial, 1999 Del. Fam. Ct.

LEXIS 3 (Del. Fam. Ct.) (Petitioner's petition seeking a rule to show cause because his wife refused to pay the mortgage was dismissed because there was no order in effect requiring she do so). Plaintiff also has the option of seeking an order from the Family Court requiring defendant to reimburse him for expenses and fees he has incurred as a result of mortgage foreclosure proceedings if defendant is violating a Family Court order. In re Scholl, 621 A.2d 808, 813 (Del. Fam. Ct. 1992). Plaintiff can request that Family Court consider the failure to pay the mortgage in its decision regarding the distribution of the assets. **Bryant** v. **Bryant**, 1999 Del. Fam. Ct. LEXIS 22 [*8] (Del. Fam. Ct.).

Plaintiff's request for a "partition" of the property transferring title into his name alone is not an option available to him. First, a "partition" is a dividing of the property between the various owners; it is not a taking of the property from one owner and giving it to the other owner. Furthermore, as noted above, Family Court has jurisdiction over the division of the marital property. Even if the Family Court had not yet exercised jurisdiction and plaintiff actually was seeking a partition of the property, he would have to file such an action with the Family Court. 10 Del. C. § 921(14); Nero v. Littleton, 1998 Del. Ch. LEXIS 57 (Del. Ch.).

Finally, I address plaintiff's contention regarding defendant's failure to file an answer in the case of Mortgage Electronic Registration Systems, Inc. v. Buchanan, C.A. No. 04L-06-001. Since defendant has not been served in that case, she has no duty to file an answer.

6) For the foregoing reasons, I dismiss the complaint in this matter for lack of jurisdiction.

IT IS SO ORDERED.

**Document 1 of 2.**

2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

| | | | |

**Search Terms: 2006 Bankr. LEXIS 1435**

**FOCUS™**





**Document 1 of 1.**

IN RE: GREGORY P. CORTELLESSA, Debtor; GREGORY P. CORTELLESSA, Plaintiff v. LEE CORTELLESSA, Defendant

Chapter 13, Bankruptcy Case No. 05-24258 REF, Adversary No. 06-2082 REF

UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**2006 Bankr. LEXIS 1435**

June 9, 2006, Decided

**COUNSEL:** [*1] For Gregory P. Cortellessa, Plaintiff: DEXTER K. CASE, CASE, DIGIAMBERARDINO & LUTZ, P.C., Wyomissing, PA; JENNIFER R. ALDERFER, Wyomissing, PA.

For Lee Cortellessa, Defendant: MARK E. ZIMMER, Mogel, Speidel, Bobb & Kershner, P.C., Reading, PA.

Gregory P. Cortellessa, aka Gregory P. Cortellessa, DMD, Debtor: DEXTER K. CASE, CASE, DIGIAMBERARDINO & LUTZ, P.C., Wyomissing, PA.

FREDERICK L. REIGLE, Chapter 13 Trustee, Trustee, Reading, PA.

**JUDGES:** Richard E. Fehling, United States Bankruptcy Judge.

**OPINION BY:** Richard E. Fehling

**OPINION:** ORDER

AND NOW, this 9th day of June, 2006, upon my consideration of Wife's Motion for Summary Judgment (all capitalized terms in this Order shall have the meaning attributed to them in the accompanying Memorandum Opinion), the parties' agreement that no disputed material facts exist, my independent finding that no disputed material facts exist, the parties' agreement to submit this matter to the Court in the present procedural status (i.e., Wife has filed no answer to the complaint), as well as the entire file in the above-captioned matter:

IT IS HEREBY ORDERED that the Wife's Motion for Summary Judgment is denied in part (insofar as I rule that [*2] the September 27 Order did not permit Wife to initiate and prosecute the Special Relief Petition in state court) and is granted in part (insofar as I rule that Wife and her counsel are not subject to the imposition of sanctions).

IT IS FURTHER ORDERED, based upon the foregoing Memorandum Opinion, that the domestic relations litigation proceeding in the Berks County Court of Common Pleas, as it relates to Wife's efforts through the Special Relief Petition to impose a constructive trust upon and divest liens on the Former Marital Residence, now in the sole name of Husband, is prohibited by the automatic stay of Section 362(a)(3), 11 U.S.C. Section 362(a)(3), which was not modified by the September 27 Order, which allowed the state court domestic litigation to go forward.

IT IS FURTHER ORDERED, based upon the foregoing Memorandum Opinion that the request for sanctions by Husband against Wife is denied and dismissed.

IT IS FURTHER ORDERED that this adversary proceeding be closed upon the entry of this Order.

BY THE COURT

Richard E. Fehling

United States Bankruptcy Judge

MEMORANDUM OPINION INTERPRETING THE SEPTEMBER 27, 2005, ORDER OF THIS COURT GRANTING RELIEF [*3] FROM THE AUTOMATIC STAY OF SECTION 362

I. Background and Facts

This matter involves the interface of Pennsylvania state domestic relations law with the federal bankruptcy laws. Plaintiff is Gregory P. Cortellessa ("Husband") and defendant is Lee Cortellessa ("Wife"), who initiated divorce proceedings against Husband on March 21, 2002. Husband and Wife jointly transferred their interest in the marital residence at 15 Wyndam Hill Drive, Reading, Berks County, Pennsylvania (the "Former Marital Residence") to Husband in fee simple by deed dated May 23, 2003 (the "Deed"): n1 In exchange, Husband paid $ 15,000 to Wife and obtained a release of Wife's liability for two debt obligations totaling nearly $ 300,000. Husband filed his petition for bankruptcy under Chapter 13 of the United States Bankruptcy Code, Title 11 of the United States Code, on July 21, 2005. On August 11, 2005, Wife moved this Court for relief from the automatic stay (the "Stay Relief Motion") to allow her to proceed with her equitable distribution litigation against Husband in the Berks County, Pennsylvania Court of Common Pleas. n2 Specifically, Paragraph 9 of the Stay Relief Motion avers: "The parties are prepared [*4] to proceed with equitable distribution and have scheduled a hearing before the Divorce Master on October 12 and 19, 2005." The prayer for relief in the Stay Relief Motion prays for an order granting relief from the stay "to proceed with divorce, custody and support litigation" in the Berks County Court, without reference to specific sub-sections of Section 362(a).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 The Deed is Stipulated Exhibit No. 5. The Stipulated Exhibits are Document Number 20 on the docket of this adversary proceeding. The Stipulated Exhibits and all documents on the dockets of both the main case and this adversary proceeding are available to me by my taking judicial notice of the documents on the docket of a case pending before me. See In re Scholl, 1998 Bankr. LEXIS 1059, No. 97-32805DWS, p. 2, n. 1 (Bankr. E.D. Pa. Aug.26, 1998), in which Chief Judge Sigmund took judicial notice of the contents of documents on the docket, citing Nantucket Investors II v. California Federal Bank (In re Indian Palms Assocs.), 61 F.3d 197, 205 (3d Cir. 1995).

n2 Wife's Motion for Relief from the Automatic Stay (the "Stay Relief Motion") is Document Number 11 on the docket of Husband's Chapter 13 case.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*5]

At the hearing on the Stay Relief Motion on September 27, 2005, a brief colloquy (the "Colloquy") occurred among counsel for Husband, counsel for Wife, and Honorable Thomas M. Twardowski (my predecessor in this Reading Division of the Bankruptcy Court). n3 Following the Colloquy, Judge Twardowski signed an order with which the parties ultimately agreed (the "September 27 Order"). n4 The operative language of the September 27 Order follows:

> IT IS HEREBY ORDERED that Movant's Petition is GRANTED and Movant, Lee Cortellessa, is granted relief from the Stay so that Lee Cortellessa and Debtor may proceed with their domestic litigation in the Court of Common Pleas, Berks County, Pennsylvania in the following matters and docket numbers:
>
> Divorce -- Docket No. 02-3192
>
> Custody -- Docket No. 02-12085
>
> Support -- Docket No. 02-081000, PACSES No. 140104330.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The transcript of the Colloquy (the "Colloquy Transcript") among counsel and Judge Twardowski is Document Number 50 on the docket of Husband's Chapter 13 bankruptcy case.

n4 The September 27 Order is Document Number 24 on the docket of Husband's Chapter 13 bankruptcy case.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*6]

Three and a half months into the resumed state court proceeding (on January 10, 2006), Wife filed her Amended and Fully Restated Petition for Special Relief (the "Special Relief Petition") n5, through which Wife sought to impose a constructive trust on the Former Marital Residence, now titled solely in Husband's name and property of Husband's Chapter 13 estate, and to divest certain mortgage and judgment liens that encumber the Former Marital Residence. Husband returned to this Court n6 with his complaint in this adversary proceeding, filed on February 15, 2006, seeking a determination that Wife had violated the automatic stay by initiating the constructive trust action. Husband filed an amended

complaint on March 10, 2006. Husband claims that the Special Relief Petition is entirely outside the scope of the relief granted by the September 27 Order. Husband had also asserted the same argument in the state court action and Honorable Scott E. Lash ordered, on February 28, 2006, that this Court should determine the scope and limits of the September 27 Order. n7 Of particular importance is the following excerpt from Judge Lash's order:

> [I]t further appearing to this Count that [*7] interpretation of the automatic stay is within the sole purview of the United States Bankruptcy Court, it is hereby ORDERED that disposition of the Petition of Plaintiff, Lee C. Cortellessa, for Special Relief is deferred, pending a determination by the United States Bankruptcy Court on whether the issues raised in the Petition for Special Relief are encompassed by the relief from the automatic stay entered on September 27, 2005, or if not, whether the Bankruptcy Court would extend the scope of the stay to allow this Court to enter a disposition on the Petition for Special Relief.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 The Special Relief Petition is Stipulated Exhibit No. 11.

n6 Judge Twardowski had expressly refused to relinquish jurisdiction to allow the parties to "argue positions in the future." Colloquy Transcript, page 8, lines 8 -- 16.

n7 Judge Lash's February 28, 2006, Order deferring to this Court further consideration of the September 27 Order is Stipulated Exhibit No. 13.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

I appreciate Judge Lash's deferring to this Court's [*8] interpretation of the Section 362 automatic stay and the September 27 Order of this Court (although not of the undersigned) relating to Section 362. Just as this Court had and has the legal power and jurisdiction to determine matters of peculiarly state law, such as equitable distribution under Pennsylvania's Divorce Code, 23 Pa. C.S. §§ 3101 et seq., n8 so the state court has the power and concurrent jurisdiction to determine certain matters arising specifically under the Bankruptcy Code, such as the automatic stay of Section 362. In re Steward, 338 B.R. 654, 658 (Bankr. D.N.J. 2006) (citing In re Singleton, 230 B.R. 533, 538-39 (6th Cir. B.A.P. 1999)). Furthermore, state courts have the power to interpret both Section 362 and bankruptcy court orders interpreting it. Graziani v. Randolph, 2005 PA Super 378, 887 A.2d 1244, 1249 (Pa. Super. 2005); Department of Envtl. Resources, v. Ingram, 658 A.2d 435, 437-38 (Pa. Commw. Ct. 1995). As stated above, bankruptcy courts have the power to interpret state domestic relations law, particularly in matters of property distribution. In re Wilson, 85 B.R. 722, 727-28 (Bankr. E.D. Pa. 1988). [*9] But, as Judge Twardowski deferred to the state court's expertise in the realm of equitable distribution litigation by granting relief from the automatic stay to allow the parties to proceed in state court, so too did Judge Lash defer ruling on the relief from automatic stay issue arising under Section 362 of the Bankruptcy Code, referring the parties to this Court.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 The statutory basis for equitable distribution is found at 23 Pa. C.S. §§ 3501, et seq.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On March 10, 2006, Husband requested that I expedite this adversary proceeding and I ordered a hearing to be set for April 4, 2006. Prior to April 4, Wife filed her Amended Motion To Dismiss/Withdraw Document and for Summary Judgment, n9 to which Husband responded. n10 At the April 4, 2006, hearing and argument, n11 I considered the parties' agreement that they would submit a stipulated set of evidentiary exhibits for my consideration. Neither party felt the need to offer live testimony at the hearing, agreeing [*10] that the exhibits would accurately set forth all necessary information for me to make my determination. n12 On April 4, the parties presented extensive oral argument, answering and addressing many questions that I raised. Both parties filed their briefs on April 28, 2006. I regard this matter as now before me on Wife's motion for summary judgment, acknowledging counsels' statements that no disputed material facts face me as well as finding independently that no disputed material facts exist. n13 This matter is now ripe for my determination.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 Wife's Amended Motion To Dismiss/Withdraw Document and for Summary Judgment, filed March 27, 2006, is Document Number 11 on the docket of Husband's Chapter 13 bankruptcy case.

n10 Husband's Response to Amended Motion To Dismiss and for Summary Judgment, filed March 31, 2006, is Document Number 12 on the docket of Husband's Chapter 13 bankruptcy case.

n11 The transcript of the argument (the "Argument Transcript") among counsel and this Court is Document Number 23 on the docket of this adversary proceeding.

n12 Additional documents have been included in the Stipulated Exhibits, through my order of May 17, 2006 (Document 24 on the docket of this adversary proceeding), and through the filing of an additional exhibit on May 23, 2006 (Document 27 on the docket of this adversary proceeding). [*11]

n13 By bench order on April 4, 2006, I denied Wife's motion to dismiss for failure to state a claim for which relief might be granted because the record is clear that Husband's action is based upon Wife's alleged violation of the Section 362 automatic stay and therefore certainly states a claim for which relief might be granted. Argument Transcript, page 29, lines 21 – 24.

Wife also argued that, because the parties raised the issue of the interpretation of Section 362 and the September 27 Order before the state court (which has not ruled on the issue), the doctrine of issue preclusion (formerly know as collateral estoppel) bars me from hearing this matter. I rejected this

argument on April 4, 2006, see Argument Transcript, page 30, lines 8 – 14, and I reject it here. Wife is incorrect for two reasons. First, Judge Lash specifically declined to rule on Section 362 and the September 27 Order, referring them to me for consideration. See p. 3 and fn. 7, above. Second, Judge Lash never ruled on the stay relief issue and the cases are quite clear that one of the requisite elements of an effective issue preclusion argument is a showing of an actual adjudication of the issue claimed to be precluded. See Raytech Corp. v. White, 54 F.3d 187, 190 (3d Cir. 1995); Rashid v. United States (In re Rashid), 2002 U.S. Dist. LEXIS 118, No. Civ. A. 01-CV-2197, 2002 WL 15939, at *3 (E.D. Pa. Jan. 8, 2002).


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*12]

## II. SUMMARY

Based upon the discussion below, I have determined that Wife's proceeding to impose a constructive trust and avoid the liens on the Former Marital Residence was not included in the relief from the automatic stay granted by Judge Twardowski in his September 27 Order and it was inappropriately initiated and prosecuted in the state court. Despite that finding, however, I will deny Husband's request for sanctions because Wife's counsel reasonably believed that she had been granted permission to pursue the relief that she was seeking in state court.

## III. DISCUSSION

### A. Extent of the Relief Granted by the September 27 Order.

I do not believe that the September 27 Order granted relief from the automatic stay of Section 362 to permit Wife to initiate and prosecute the constructive trust relief and avoidance of liens sought in the Special Relief Petition as part of the equitable distribution proceeding in the Berks County Court.

Husband argues that the Stay Relief Motion, the Colloquy, and the September 27 Order are based on Section 362(a)(1), which prohibits continuation of judicial proceedings to establish or recover a claim, 11 U.S.C. § 362(a)(1) [*13] , but that nothing permitted any acts to obtain or exercise control over property of the estate, which is stayed by Section 362(a)(3), 11 U.S.C. § 362(a)(3). Husband argues therefore that Wife's initiation and prosecution of the Special Relief Petition violates Section 362(a)(3), because it constitutes an action against the Former Marital Residence, which is now clearly property of Husband's Chapter 13 estate. I reject Husband's argument insofar as it purports to point to any express distinction in the record between the two sub-sections of Section 362(a). My review of the Stay Relief Motion and the Colloquy failed to find any express reference limiting the scope of the September 27 Order to Section 362(a)(1). No differentiation between particular sub-sections of Section 362(a) is found in the record.

Although no express differentiation between sub-sections of Section 362(a) existed in either the Stay Relief Motion, the Colloquy, or the September 27 Order, I believe that such differentiation impliedly existed. In the Colloquy, Wife's counsel referred to Wife's need to return to state court as "not a complex case" and his comments to the Court in the Colloquy [*14] centered exclusively on Wife's need to proceed with "very few issues involved in the equitable distribution matter." Colloquy Transcript, page 4, lines 4 – 6. Judge Twardowski noted that the matter should be sent back "to state court for the equitable distribution issues to be resolved." Colloquy Transcript, page 5, lines 16 & 17. Wife's counsel declared their intent to proceed "with matters that are ripe to do so in state court." Colloquy Transcript, page 5, lines 19 & 20. As mentioned above, Paragraph 9 of Wife's Stay Relief

Motion clearly anticipates that the entire equitable distribution litigation would be completed before the Divorce Master by mid-October 2005. Wife's counsel made no reference to any other litigation that was or might be necessary and nothing was said about any need to initiate and prosecute constructive trust or avoidance of liens litigation against property of the Chapter 13 estate.

These cited comments and the entire Colloquy appear to limit the scope of the anticipated domestic litigation to a garden-variety determination of equitable distribution. Clearly, at least to my reading, the Special Relief Petition was not ripe for determination in the Berks County [*15] Court because the idea of the constructive trust and lien avoidance litigation had apparently not yet occurred to Wife's counsel.

If straying beyond standard equitable distribution was, however, within the contemplation of either counsel, they disguised it completely, making no reference to it whatsoever. If it was within the contemplation of Judge Twardowski, it was not memorialized in any way in his September 27 Order or his comments in the Colloquy. The discussion was exclusively related to determining the amount of Wife's claim against Husband in the nature of straight-forward equitable distribution and did not get into any description of carving up assets or avoiding liens to provide for payment to Wife. But in his argument on April 4, counsel for Wife acknowledged that the Special Relief Petition is primarily intended for collection efforts rather than for determining equitable distribution. Argument Transcript, page 48, line 23, through page 50, line 12. Therefore, I regard the extraordinary relief sought through the Special Relief Petition as being wholly outside the contemplation of the parties to the Colloquy on September 27, 2005, and therefore outside the permission granted [*16] in the September 27 Order. Judge Twardowski anticipated that the parties might return to him in the future to address "issues of ultimate allowance of claims, [and] ultimate distribution schemes under the Bankruptcy Code. . . ." Colloquy Transcript, page 3, lines 24 & 25.

I conclude, although Section 362(a)(3) is not expressly identified in either the Stay Relief Motion, the Colloquy, or the September 27 Order, that the Special Relief Petition was initiated contrary to the restrictions and prohibitions of Section 362(a)(3) of the Bankruptcy Code and is not authorized by the September 27 Order.

My determination that the Special Relief Petition was beyond the contemplation of the parties on September 27, 2005, and was not addressed by the September 27 Order, begs the question, of course, of what now to do with the Special Relief Petition. Do I somehow keep it before me for determination of the disposition of what is clearly property of the Chapter 13 estate or allow the parties to pursue the litigation in state court? n14 This appears to be the true lynchpin of this dispute, raising a difficult intersection of the two bodies of law — Pennsylvania domestic relations [*17] law and federal bankruptcy law — with no specific precedent that might provide me with guidance. n15 Nevertheless, judicial restraint dictates that I limit my analysis and decision to the two narrow issues expressly presented by the parties in their pleadings before me, which issues are limited to (1) a determination whether the September 27 Order did or did not permit Wife to proceed with the Special Relief Petition and (2) a request for a damages award in the event that the September 27 Order did not grant such permission. I have described my conclusion on the first issue above and will now look to the second issue.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n14 In his February 28 order, found at page 3, above, Judge Lash suggested that I might consider extending the scope of the relief from the automatic stay to allow him to address the Special Relief Petition, but neither party has requested that I do so.

n15 I do not believe that any of the decisions referred to me by either counsel address staying or permitting domestic relations law litigation of the nature faced in this matter, to wit, an apparently ancillary petition seeking a constructive trust and avoidance of liens, dealing directly (and adversely) with the interests of a debtor and secured creditors in property of a Chapter 13 estate. The cases of Scholl v. Scholl, 234 B.R. 636 (Bankr. E.D. Pa. 1999), and Fidelity Bank, N.A. v. Carroll, 539 Pa. 276, 652 A.2d 296 (Pa. 1994), relied upon heavily by Wife, are inapposite. The decision that provides more guidance for me is In re Wilson, supra, 85 B.R. 722 (Bankr. E.D. Pa. 1988), discussed briefly above.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*18]

B. Neither Wife Nor Wife's Counsel Should Be Sanctioned for Proceeding with the Special Relief Petition Without Specific Relief from the Automatic Stay To Do So.

Finding as I do that the September 27 Order did not grant Wife relief from the automatic stay of Section 362 to initiate and prosecute the Special Relief Petition, I turn next to Husband's well-pleaded demand for actual and punitive damages. Paragraph 16 of the Amended Complaint n16 explains in sufficient detail the nature of the actual damages and losses that Husband has experienced through Wife's presentation and prosecution of the Special Relief Petition. He has alleged the following damages: (1.) Attorneys' fees and costs; (2.) time (and therefore money) lost from his business as a dentist; (3.) the attorneys' fees and costs incurred by his lenders, who have been forced to put substantial time and effort into the defense of the liens securing their loans; and (4.) punitive damages for Wife's purported willful conduct. n17

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n16 Document Number 4 on the docket of the adversary proceeding.

n17 If I were to rule for the Husband on the issue of damages, I would be obliged to conduct a factual hearing on the specifics of the damages sought by Husband, but his pleading identifies the nature of the damages sufficiently for the purpose of this Memorandum Opinion.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*19]

Section 362(k) provides the statutory support for Husband's request for damages as follows:

> Except as provided in paragraph (2) [an exception not applicable here], an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1). Such damages may be awarded solely upon the "willful violation" of Section 362. I do not believe that a "willful violation" of the stay arises by pursuing litigation when the offending party believes that the Section 362 automatic stay has been modified specifically to permit the litigation. The Third Circuit Court of Appeals accepted a definition of "willful violation" established by the Ninth Circuit Court, which definition requires only that the offending party knew of the automatic stay and intended to do what it did by acting intentionally. Cuffee v. Atlantic Bus. and Cmty. Dev. Corp. (In re Atlantic Bus. and Cmty. Dev. Corp.), 901 F.2d 325, 329 (3d Cir. 1990) citing Goichman v. Bloom (In re Bloom), 875 F.2d 224, 227 (9th Cir. 1989). [*20] The Court in Cuffee further accepted the Bloom position that the offending party's good faith is not relevant. The Cuffee Court then went on to examine, and seemingly accept, certain bankruptcy courts' construction of "willful violation" as an intentional or deliberate act done with knowledge that the act is in violation of the stay. Id. The latter definition of "willful violation" was adopted very recently in this District from the Cuffee decision in In re Jester, 2006 Bankr. LEXIS 976, No. 05-32185DWS, 2006 WL 1495041, at *5 (Bankr. E.D. Pa. April 12, 2006). Under either of these definitions, I believe that Wife's actions were undertaken with a legitimate belief that no automatic stay existed to prevent the Special Relief Petition. Wife reasonably thought that the stay did not exist because, she believed, it had been modified specifically to allow all domestic litigation of whatever nature.

Another line of decisions defining "willful violation" in the context of Section 362(k) is similar. If the offending party has "persuasive legal authority" to support the actions, no damages will be awarded for violating the automatic stay of Section 362. University Medical Center v. Sullivan (In re University Medical Center), 973 F.2d 1065, 1088 (3d Cir. 1992); [*21] Montgomery Ward, LLC v. Wiseknit Factory, Ltd. (In re Montgomery Ward, LLC), 292 B.R. 49, 57 (Bankr. D. Del. 2003). I believe that Wife's persuasive legal authority in this matter was the text of the September 27 Order, which, on its face, supported the initiation and prosecution of the Special Relief Petition.

The absence of any reference to sub-sections (a)(1) or (a)(3) of Section 362 in the September 27 Order and the Colloquy could reasonably be construed to permit any and all litigation in the state court in any way related to the pending domestic relation cases. The September 27 Order expressly permitted Wife to proceed with her "domestic litigation," which could be (and apparently was) construed by Wife and her counsel to permit the Special Relief Petition as part and parcel of the pending equitable distribution litigation. I find, therefore, that Wife and Wife's counsel had persuasive authority to support their position that initiation and prosecution of the Special Relief Petition was permitted under the September 27 Order. Neither Wife nor Wife's counsel has willfully violated the automatic stay of Section 362 through the Special Relief Petition and I [*22] will deny and dismiss Husband's demands for damages under Section 362(k) to be awarded to him.

An appropriate Order will follow granting Husband's prayer for a limiting interpretation of the September 27 Order, but denying Husband's request for an award of damages.

**Document 1 of 1.**

2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

Search Terms:                      , claim

FOCUS™

Document 26 of 307.

In re: Kindley F. Davis and Ruby B. Davis, Debtors.

Chapter 13, Case No. 06-02808-dd

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF SOUTH CAROLINA

2006 Bankr. LEXIS 2837

October 3, 2006, Decided
October 2, 2006, Filed

**COUNSEL:** [*1] For Kindley F Davis, Gilbert, SC, dba, Columbia Welding Company, Debtor: J. Carolyn Stringer, Columbia, SC.

For Ruby B Davis, Gilbert, SC, Joint Debtor: J. Carolyn Stringer, Columbia, SC.

For Trustee: Joy S. Goodwin, Columbia, SC.

**JUDGES:** David R. Duncan, US Bankruptcy Court Judge.

**OPINION BY:** Duncan

**OPINION: ORDER DISMISSING CASE**

THIS MATTER is before the Court on the debtors' motion to dismiss this case, for confirmation of the chapter 13 plan, for dismissal of the case and an objection to the plan filed by Haiyan Lin, and for conversion of the case to chapter 7 on motion of Branch Banking and Trust Company of South Carolina. The issue here is whether the debtors' case should be dismissed or converted to chapter 7. The case is dismissed upon the conditions set forth.

Findings of Fact

1. Kindley F. Davis and Ruby B. Davis (hereinafter "Debtors") are husband and wife. They filed a joint, voluntary petition for relief under chapter 13 of the Bankruptcy Code on July 3, 2006. Debtors are represented in the bankruptcy case by J. Carolyn Stringer, Esq.

2. Debtors are indebted to Branch Banking and Trust Company of South Carolina (hereinafter "BB&T"), which debt is or was secured [*2] by a mortgage on real property located at 1311 Rosewood Drive, Columbia (Richland County), South Carolina and as to which a Confession of Judgment was signed April 26, 1996 and enrolled in Richland County, South Carolina on August 14, 1996. The

Richland County judgment was enrolled in Lexington County, South Carolina on September 24, 1996.

3. Debtors also own real property located at 2010 Shull Avenue (a/k/a Shull Island Road), Gilbert (Lexington County), South Carolina, which property is the subject of a mortgage in favor of JP Morgan Chase Bank.

4. Mr. Davis owned and operated Columbia Welding, a sole proprietorship, for many years.

5. Mr. Davis agreed, pre-petition to sell Columbia Welding as a going concern to Haiyan Lin (hereinafter "Ms. Lin") for the sum of $ 300,000.00. Mr. Davis testified that he intended the sale to include the real property on Rosewood Drive but that his wife, a co-owner of the real estate, later refused to sign a contract for the sale of the real estate. Mr. Davis received a $ 35,000.00 "down payment" on this contract of sale. He used the money to pay creditors. Mr. Davis told Ms. Lin that he would be unable to complete the transaction and that he would [*3] return the money to her. She refused to accept the money and demanded compliance with the contract. Mr. Davis has remained in control of the business and has continued to operate it.

6. Debtors have continued to market the Rosewood Drive real estate and had entered into a contract for the sale of the property to Toinette Reed. The sale did not close as provided in the contract.

7. The Debtors' petition was not accompanied by all of the required lists, schedules and statements. The Debtors later filed the schedules and a plan, but not a Statement of Financial Affairs. The proposed plan was filed July 18, 2006. The proposed plan would have paid all creditors in full. The Debtors requested and received a brief extension of time to file the statement of financial affairs. The Statement of Financial Affairs was filed July 28, 2006.

8. The Columbia Welding business has been in decline for a number of years. The health of Debtors, especially that of Mrs. Davis, is not good. Health problems of the Debtors have accelerated the decline of the business. The questioned, but un-controverted proof was that Mrs. Davis' health became worse following the filing of the bankruptcy case, that she was [*4] hospitalized and that Mr. Davis attended her. Mr. Davis was injured following the filing of the bankruptcy, further drawing his attention away from the business.

9. The reports of income for the business that were used to support the proposed plan were not accurate, current statements of income. The projected income levels had not been achieved for some time and Mr. Davis was aware or should have been aware of this. Mr. Davis testified to his hope that he could revive the business. Mr. and Mrs. Davis' son was responsible for the business for at least some period of time and he modernized the accounting process by implementing the use of computer software to track receivables, income and expenses. Mr. Davis retrieved some of this information in connection with the filing of a plan, however it was not reliable. The actual income of the Debtors will not fund the plan payments proposed by the Debtors. The Statement of Financial Affairs bears proof that the plan is not feasible based solely on the Debtors' Social Security income and the earnings from the business. Other income or income potential is available. The sale of the business and real property, whether to Ms. Lin, Toinette Reed [*5] or some other party, would generate cash or a stream of income that the Debtors could rely on in dealing with the creditors.

10. The bankruptcy filing was prompted by an order of sale of the Shull Island Road property, issued in the Court of Common Pleas for Lexington County, South Carolina by the Master in Equity. The property was to be sold on the morning of July 3, 2006, with the proceeds of sale applied to the judgment in favor of BB&T. The bankruptcy filing stayed the sale. At the time of the bankruptcy filing

the lien of the nearly 10 year old judgment was approaching the end of its life.

11. Ms. Lin filed a motion to extend time to file a **claim** and to object to the plan on August 16, 2006 and a motion to dismiss the plan of Debtors on August 18, 2006 (the actual relief sought appears to be dismissal of the case).

12. The Debtors attended a meeting of creditors and filed their motion to dismiss on August 24, 2006. BB&T objected to the motion and subsequently, but on the same day, filed a motion to convert.

Conclusions of Law

Before the Court are motions seeking competing relief, dismissal or conversion of the case. The Bankruptcy Code provides that "[o]n request of [*6] the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable." § 1307(b). The Court turns first to doctrines of statutory construction. "When interpreting a statute, [the court looks] first to the language." *Richardson v. United States,* 526 U.S. 813, 818, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999). "[I]n any case of statutory construction, [the] analysis begins with the language of the statute. . . . And where the statutory language provides a clear answer, it ends there as well." *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S. Ct. 755, 142 L. Ed. 2d 881 (1999)(citation and internal quotation marks omitted).

Despite the seemingly clear language, the courts, including Courts of Appeal, are split in the interpretation of § 1307. This division finds its genesis in another doctrine of statutory construction. "Courts must give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous." *Discover Bank v. Vaden,* 396 F.3d 366, 369 (4th Cir. 2005). [*7] Courts struggle with § 1307(b) and its "absolute" right to dismiss when juxtaposed to § 1307(c) n1 and the authority for permissive conversion or dismissal for cause on motion of a party in interest. The decision to convert or dismiss under subsection (c) requires the weighing of the interests of the estate and creditors.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

N1 "Except as provided in subsection (c), on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause. . . ." § 1307(c).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Second Circuit describes § 1307(b) as conferring an absolute right to dismiss, holding:

> We hold that a debtor has an absolute right to dismiss a Chapter 13 petition under § 1307 (b), subject only to the limitation explicitly stated in that provision. . . . The term 'shall' . . . generally is mandatory and leaves no room for [*8] the exercise of discretion by the trial court. . . . The mandatory nature of § 1307(b) becomes even clearer when the language of that provision is compared with the permissive language of § 1307(c). . . . This conclusion reflects the intention of Congress to create an entirely voluntary chapter of the Bankruptcy

Code.

*Barbieri v. RAJ Acquisition Corp. (In re Barbieri),* 199 F.3d 616, 619-20 (2d Cir. 1999). *See also, Regan v. Ross,* 691 F.2d. 81, 86 fn. 14 (2d Cir. 1982)("Moreover, chapter 13 is voluntary and at any time a debtor may opt out."); *Nash v. Kester,* 765 F.2d. 1410 (9th Cir. 1985); *Clearstory & Co. v. Blevins,* 225 B.R. 591 (D. Md. 1998)(Right to dismiss is absolute, even in the face of a previously filed motion to convert and allegations of bad faith); *In re Looney,* 90 B.R. 217 (Bankr. W.D. Va. 1988); *In re Beatty,* 162 B.R. 853 (9th Cir. BAP 1994); *In re Harper-Elder,* 184 B.R. 403 (Bankr. D. D.C. 1995).

The Eight Circuit describes and adopts the view that the authority of the court to convert or dismiss a case limits the debtor's absolute right to [*9]  dismiss, stating:

> We believe that same broad purpose as well as the principles of statutory construction employed in *Graven* apply equally well to the nearly identical provisions of Chapter 13 and the instant case. As in *Graven,* we are mindful that the purpose of the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts. As in *Graven,* we also look to the overall purpose and design of the statute as a whole rather than viewing one subsection in isolation. In this case, [debtor] failed to offer any defense whatsoever to the Appellee's allegations of bad faith. . . . To allow [debtor] to respond to a motion to convert by voluntarily dismissing his case with impunity would render section 1307(c) a dead letter and open up the bankruptcy courts to a myriad of potential abuses.

*In re Molitor,* 76 F.3d. 218, 220 (8th Cir. 1996)(citations omitted).(Following the Court's precedent in *In re Graven,* 936 F.2d. 378 (8th Cir. 1991) interpreting § 1208(b) of the Bankruptcy Code) *See also In re Tatsis,* 72 B.R. 908 (Bankr. W.D. N.C. 1987); [*10]  *Gaudet v. Kirshenbaum, Inv. Co. (In re Gaudet),* 132 B.R. 670 (D. R.I. 1991); *In re Cobb,* 2000 U.S. Dist. LEXIS 198, 2000 WL 17840 (E.D. La. Jan. 11, 2000); *In re Crowell,* 292 B.R. 541 (Bankr. E.D. Tx. 2002).

A Bankruptcy Court for the Southern District of Florida describes the competing views:

> The proper interplay between § 1307(b) and § 1307 (c) is unsettled in the courts. Granting a debtor's motion to dismiss pursuant to § 1307(b) necessarily renders a pending creditor's motion to convert moot and renders § 1307(c) a nullity. On the other hand, granting a creditor's motion to convert requires denying a chapter 13 debtor's right to dismiss, thereby rendering the absence in subsection (b) of any condition to dismissal a nullity. Courts are divided as to which subsection controls. Some courts hold that subsection (b) trumps subsection (c) making the debtor's right to dismiss a chapter 13 case absolute. Other courts prefer to read the subsections together and then rule on the merits of the competing motions. These courts reason that Congress did not intend to give the debtor unfettered power to prevent conversion by simply filing a motion to dismiss [*11]  whenever conversion was requested.

*In re Neiman*, 257 B.R. 105, 108 (Bankr. S.D. Fl. 2001)(citation and internal quotation marks omitted).

Despite the seemingly clear language of the statute, the courts have diverged in interpreting the language, creating ambiguity. A resort to legislative history is permitted to determine the meaning of an ambiguous statute. *See U.S. v. Ron Pair Enterp., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989). The legislative history confirms an absolute right to dismiss at any time:

> Subsections [1307](a) and (b) confirm, without qualification, the rights of a Chapter 13 debtor to convert the case to a liquidating bankruptcy case under Chapter 7 of title 11, at any time, or to have the Chapter 13 case dismissed. Waiver of any such right is unenforceable.

S. Rep. No. 95-989, at 141 (1978).

There is no controlling precedent in the Fourth Circuit. The issue has arisen in bankruptcy cases in South Carolina, but there are no published opinions. The District Court, in an unpublished order, affirmed the decision of the Bankruptcy Court and limited the debtor's right to dismiss a chapter 13 case in the face of a creditor's [*12] motion to convert based on the debtors' lack of eligibility for relief under § 109(e) and several continuances at the request of the debtors. When the debtors filed a motion to dismiss on the morning of the long delayed hearing to convert the case, the Court converted the case and determined that it would not rule on the motion to dismiss. The District Court stated, "[w]hile the right of the debtors' to dismiss their case 'at any time' no doubt exists within the parameters of Chapter 13, it should not be construed in derogation of the court's inherent power to prevent the abuse and misuse of the judicial process." *In re Couch*, C/A No. 81-2691-1 slip op. at 3. (D. S.C. May 7, 1982) *affirmed by unpublished opinion, sub. nom. Couch v. Center Brothers, Inc. (In re Couch)*, C/A No. 82-1485 (4th Cir. October 5, 1983). Unpublished opinions of the Court of Appeals are not binding precedent in the Fourth Circuit pursuant to its Local Rule of Court 36(c). Additionally, "[t]he reasoning of district judges is of course entitled to respect, but the decision of a district judge cannot be controlling precedent." *FutureSource LLC v. Reuters*, 312 F.3d. 281, 283 (7th Cir. 2002). [*13] "[T]he modern trend [is] that a bankruptcy court is not bound by *stare decisis* to follow the decision of a single district judge in a multi-judge district." *In re Baker*, 264 B.R. 759, 762 (Bankr. M.D. Fl. 2001); *In re Finley, Kumble et. al.*, 160 B.R. 882, 898 (Bankr. S.D. N.Y. 1993); *In re Shattuc Cable Corp.*, 138 B.R. 557, 566-67 (Bankr. N.D. Il. 1992).

*Couch* is persuasive but not binding authority. Its utility, if authoritative given its age and the fact that it has not been generally followed in the circuit, is limited to the facts of that case. To the extent that there is a limitation on the absolute right of a debtor to dismiss a case pursuant to § 1307(b) in this circuit, other than by virtue of a prior conversion of the case, it is limited to the unusual and limited circumstances of *Couch*. There the creditor filed a motion to dismiss the case and later amended the motion to seek conversion. The debtors delayed the administration of their case by seeking continuances to obtain appraisals and to amend documents that they never actually amended. The debtors' motion to dismiss was filed on the morning of the hearing [*14] on the creditor's motion to convert. The debtors did not contest that conversion was in the best interests of the creditors. The focus of *Couch* was abuse of the bankruptcy system and the timing of the motion to dismiss.

BB&T argues that the Debtors filed the petition in bad faith. This is Debtors' first bankruptcy filing.

The evidence before the Court is that Mr. and Mrs. Davis' plan proposal is not feasible, yet, while the business had been in decline for some time, there was a time when the business produced income sufficient to fund the plan, at least on paper. Mrs. Davis' health has continued to decline after the filing and she has required additional medical care. Mr. and Mrs. Davis painted the rosiest of pictures with their initial court filings and in their plan. The picture was not realistic but the demeanor of Mr. Davis as a witness did not support a finding of bad faith. BB&T chose the time to initiate the sale of property in satisfaction of its judgment, which is about to expire, and did not leave sufficient time for contests and appeals in state court nor for the potential that the Debtors might avail themselves of bankruptcy protection. See generally *Wells v. A.C. Sutton*, 299 S.C. 19, 382 S.E.2d 14 (1989) [*15] (Holding that execution is the only means to enforce a judgment. That a judgment is extinguished after 10 years from entry and that appeals do not extend the 10 year period. The Court notes that "it does not condone efforts . . . to secrete assets to avoid payment of judgments . . . . [and it] does not criticize appropriate use of the appellate process to obtain review of orders. . . ." Creditors should proceed expeditiously to conclude efforts to collect judgments within the 10 year period). The Debtors did not conceal assets, instead, the ownership of the real property was open and a matter of public record. While the Debtors' portrayal of their financial wherewithal is not exemplary, the proof falls short of establishing bad faith.

The clear language of § 1307(b) is that the court *shall* dismiss a Chapter 13 case on request of the debtor and that the debtor may make the request at any time. Waivers of the right to dismiss are not enforceable. While there may be some case of egregious conduct warranting a denial of a debtor's motion to dismiss based on proof of abuse of the bankruptcy system, the abusive timing of the filing of the motion to dismiss, or otherwise, this is not [*16] that case. This case should be dismissed on the motion of the Debtors.

Dismissal of the case, even as a matter of right, is not necessarily unconditioned in every circumstance. Counterbalancing the potential for abuse in timing the dismissal of cases is the fact that the debtor gives up the protection of the bankruptcy court and is subject to the provisions of state law. Where, as here, it is possible that a creditor's rights under state law may have changed, there are other remedies. A debtor can not invoke the dismissal of his Chapter 13 case pursuant to the authority of § 1307(b) by simply filing a notice of dismissal in the same fashion as a debtor converts to chapter 7 pursuant to § 1307(a). Notice to creditors and an opportunity for hearing is required because, if for no other reason, the court may condition the dismissal as provided by § 349. This is an important protection for creditors. Additionally, Congress has severely restricted serial filings and provided remedies for abuse of the bankruptcy system through the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 Pub. L. 109-8, (April 20, 2005), codified throughout Title 11 and otherwise.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*17]

BB&T and Ms. Lin held important rights against the Debtors immediately prior to the filing of the bankruptcy case. The statutory life of the BB&T judgment expired no later than August 14, 2006 n3, but for the stay and the provisions of § 108(c). Ms. Lin's rights, if any, to enforce her contract with Mr. Davis are also at issue. To the extent allowed under the statute, the re-vesting of property of the estate in Mr. and Mrs. Davis upon dismissal is subject to the interests of BB&T and Ms. Lin immediately prior to the filing, which by this order and pursuant to § 349(b)(3) are restored as if the case had not

been filed, although the extended time pursuant to § 108(c) shall be available to the creditors.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 This does not foreclose the pursuit by debtors of the contention in state court that the judgment expired April 26, 2006, 10 years following execution of the confession of judgment rather than 10 years following enrollment of the judgment.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Applicable nonbankruptcy law, i.e. South Carolina law, fixes the period [*18] for beginning and continuing the execution against the Debtors (and by bankruptcy definition, against property of debtors) and the period had not expired n4 before the filing of the petition. The period does not expire until the later of the two time periods set forth. The issue of the suspension of the running of the time period while the Debtors were in bankruptcy is for another day. *See* § 108(c)(1) and, for example, *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir. 1993); *Rogers v. Corrosion Products, Inc.*, 42 F.3d 292, 297 (5th Cir. 1995).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Again, without prejudice to the right of the Debtors to argue that the 10 year period had already expired.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Finally, the Debtors are prohibited from filing a subsequent petition under title 11 for a period of one year pursuant to the authority of this Court to otherwise order prejudice to re-filing. § 349(a) This bar to re-filing runs concurrently with § 109(g), if applicable. Cause for this additional relief [*19] exists in the Debtors' seeking dismissal at this juncture of the case and the expressed desire to have the issues resolved under state law. These additional protections may or may not be sufficient to permit BB&T to complete the judgment levy and execution process. BB&T bears some burden in its choice of the time to institute the sales process.

AND IT IS SO ORDERED.

ORDER DISMISSING CASE WITH PREJUDICE FOR ONE YEAR AND WITH OTHER CONDITIONS

The relief set forth on the following pages, for a total of 12 pages including this page, is hereby ORDERED.

David R. Duncan

US Bankruptcy Court Judge

District of South Carolina

Enterd: 10/03/2006

**Document 26 of 307.**

2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

| | | | |

**Search Terms:**                          , lexis 412

**FOCUS™**

**Document 1 of 1.**

IN THE MATTER OF: ROBERT HASSLER, Debtor(s). DEBORAH HASSLER, Plaintiff, vs. ROBERT HASSLER, Defendant.

CASE NO. BK03-81714, A03-8061, CH. 7

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEBRASKA

2004 Bankr. **LEXIS** 412

April 7, 2004, Decided

**DISPOSITION:** [*1] Judgment entered in favor of plaintiff. Debts at issue excepted from discharge under 11 U.S.C. § 523(a)(15)(B).

**COUNSEL:** Robert Charles Hassler aka TBS Massage Services, Debtor (03-81714), Pro se, Omaha, NE.

(03-81714): Richard D. Myers, Chapter 7 Trustee, Trustee, Omaha, NE.

(03-81714): Patricia Dugan, U.S. Trustee, U.S. Trustee's Office, Omaha, NE.

For Deborah L. Hassler, Plaintiff (03-08061): Michael B. Lustgarten, LEAD ATTORNEY, Lustgarten & Roberts, P.C., L.L.O., Omaha, NE.

Robert Hassler, Defendant (03-08061), Pro se, Omaha, NE.

**JUDGES:** Timothy J. Mahoney, Chief Judge.

**OPINION BY:** Timothy J. Mahoney

**OPINION: MEMORANDUM**

Trial was held in Omaha, Nebraska, on March 19, 2004, on the plaintiff's complaint to determine dischargeability of certain debts. Michael Lustgarten appeared for the plaintiff, and the debtor appeared on his own behalf. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I). [*2]

The parties were formerly married to each other. As part of the dissolution decree, certain marital debts were allocated between the parties. These included education-related loans and credit card obligations. The division of property was clarified on appeal, and an order was entered in that regard on May 6,

2003. The debtor filed his Chapter 7 petition on May 30, 2003.

Ms. Hassler filed this adversary proceeding to prevent the debtor from discharging his portion of those marital debts. She asserts that the detriment to her caused by such a discharge will outweigh the benefit to the debtor, pursuant to 11 U.S.C. § 523(a)(15)(B).

"Section 523(a)(15) excepts from discharge those debts arising out of marital dissolution proceedings that do not constitute nondischargeable alimony, maintenance or support under § 523(a)(5); i.e. property settlement awards." Moeder v. Moeder (In re Moeder), 220 B.R. 52, 54 (B.A.P. 8th Cir. 1998). In determining whether a non-support debt incurred in the course of a divorce is dischargeable, the first step is to determine that it is in fact a division of property rather than alimony, maintenance, or support. [*3] The non-debtor spouse bears the burden of establishing this. Upon such a showing, the debtor may prove that he does not have the ability to pay the debt, or, if he has the ability to pay, the benefit to him of a discharge is greater than the detriment to his former wife. Fellner v. Fellner (In re Fellner), 256 B.R. 898, 902-03 (B.A.P. 8th Cir. 2001) (citing Rush v. Rush (In re Rush), 237 B.R. 473 (B.A.P. 8th Cir. 1999)).

In this case, the debts at issue clearly arise from the division of property and not as maintenance or support. In addition, the debtor does not contest his ability to pay. He simply argues that Ms. Hassler is in a better financial position to pay those debts.

In balancing benefit and detriment, the court compares the relative living standards of the parties, and if the debtor's standard of living is greater than or equal to the creditor's, then discharge of the debt is not warranted. Witlach v. Allgor (In re Allgor), 276 B.R. 221, 225 (Bankr. N.D. Iowa 2002). This requires a comparison of each party's income and expenses, Brown v. Brown (In re Brown), 302 B.R. 637, 645 (Bankr. N.D. Iowa 2003), [*4] and not simply a comparison of the parties' net worth. Grunwald v. Beck (In re Beck), 298 B.R. 616, 625 (Bankr. W.D. Mo. 2003).

Here, Ms. Hassler testified that she is a hospital administrator in Washington state, earning $ 120,000 annually. The parties' 15-year-old daughter lives with her. Ms. Hassler is also paying part of their older daughter's college tuition and expenses. Mr. Hassler was ordered to pay $ 465 in child support each month, but has not paid it since August 2003. Ms. Hassler's monthly net income is approximately $ 6,933. Her monthly expenses, including debt service on some of the debts assigned to Mr. Hassler in the divorce decree, are $ 6,347. This leaves $ 586 in disposable income.

Mr. Hassler holds master's degrees in history and anthropology, and teaches at two local community colleges. His gross 2003 income was $ 56,038.40. He testified that his 2004 income will be less because he will be teaching fewer classes this year. Mr. Hassler did not provide any evidence of his current monthly expenses, but his Schedule J lists $ 6,625 in monthly expenditures at the date of filing. However, that amount includes expenses such as attorney fees and credit [*5] card payments which have now been discharged. He testified that he has not paid his state and federal income tax liability and his student loan installments since filing bankruptcy.

Both parties appear to have a negative net worth.

In the Allgor case, supra, the debtor failed to pay certain joint credit-card debt assigned to her in the divorce decree, so her former husband paid off the balance to protect his credit rating. He then sought to have the debt excepted from discharge in the bankruptcy case. In performing the § 523(a)(15)(B) analysis, the court found that the debtor had the ability to pay the debt, and would not suffer a decrease in her standard of living materially below that of her former husband if she were required to pay the

debt. 276 B.R. at 226. The court specifically noted that the property settlement agreement contained a "hold harmless" clause to protect each party from a default by the other. This tilted the balance in favor of a finding of non-dischargeability in Allgor. Id.

In this case, there is no evidence of a "hold harmless" clause in the decree. However, the debtor has not met his burden of proof establishing that the benefit [*6] to him is greater than the burden to his former wife. The Chapter 7 discharge has freed him from a significant amount of debt, making available funds with which he can pay non-dischargeable debts. Moreover, the debts at issue in this case were incurred so the debtor could further his education. The plaintiff did co-sign for those loans, but requiring her to pay those debts while the debtor, now and in the future, reaps the benefits of that education while bearing little or none of the burden of paying for it clearly is a undue detriment to her and her family. She has been forced to assume those joint debts which were assigned to the debtor as part of the divorce, which contravenes the intention of the property award in the divorce decree and places a disproportionate burden on the plaintiff. The debtor's financial difficulties have already deprived her of several child support payments; granting a discharge of these joint debts would cause an even more significant detrimental impact on her current and future standard of living. The debts are not discharged. Separate judgment will be entered in favor of the plaintiff.

DATED: April 7, 2004

BY THE COURT:

/s/ Timothy J. Mahoney [*7]

Chief Judge

JUDGMENT

Trial was held in Omaha, Nebraska, on March 19, 2004, on the plaintiff's complaint to determine dischargeability of certain debts. Michael Lustgarten appeared for the plaintiff, and the debtor appeared on his own behalf.

IT IS ORDERED: Judgment is hereby entered in favor of the plaintiff. The debts at issue are excepted from discharge under 11 U.S.C. § 523(a)(15)(B). See Order entered this date.

DATED: April 7, 2004

BY THE COURT:

/s/ Timothy J. Mahoney

Chief Judge

**Document 1 of 1.**

2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

Home | Sources | How Do I? | Site Map | What's New | Help

Search Terms: Henriksen, Henriksen v. Henriksen

**FOCUS™** [ ] Search Within Results

Edit Search

Print   Email

Document List   Expanded List   KWIC   Full

◄ previous Document 5 of 5.

## Henriksen v. Henriksen

C.A. No. 87C-MR-2

Superior Court of Delaware, New Castle

1987 Del. Super. LEXIS 1361

Submitted September 1, 1987
November 18, 1987, Decided

**DISPOSITION:** [*1]

For the foregoing reasons, the defendant's motion to dismiss is GRANTED and the plaintiff's motion to amend the complaint is DENIED. IT IS SO ORDERED.

**COUNSEL:** Bonnie Henriksen, Pro Se.

N. Maxon, Terry, Jr., Esq., Terry, Jackson, Terry & Wright.

**JUDGES:** VINCENT A. BIFFERATO, JUDGE.

**OPINIONBY:** BIFFERATO

**OPINION:** The defendant, John Henriksen, has moved to dismiss the complaint filed by the plaintiff, Bonnie Henriksen, pursuant to Superior Court Civil Rule 12(b)(6), for failure to state a claim upon which relief may be granted.

The parties in this case were married for nine years. On August 16, 1984, John Henriksen initially filed for divorce on the grounds of desertion and, in the alternative, for incompatibility. After a contested hearing on the matter where both parties were represented by counsel, the Family Court granted a divorce on the grounds of desertion. Bonnie Henriksen appealed the Family Court Order to the Supreme Court. Mr. Henriksen moved to dismiss the appeal as having been untimely filed. The parties agreed to have the Supreme Court remand the matter to Family Court where the decree of desertion would be vacated and Mr. Henriksen would file for an uncontested divorce on incompatibility. [*2] The Family Court granted the divorce on incompatibility and the appeal to the Supreme Court was dismissed.

Ms. Henriksen has filed an action against Mr. Henriksen for malicious prosecution and abuse of process claiming that he filed the divorce action on the grounds of desertion, knowing them to be false, and the proceedings terminated in her favor.

Mr. Henriksen moved to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The parties have submitted affidavits to supplement their memoranda. Therefore, under Superior Court Civil Rule 12(b), the motion to dismiss shall be treated as a motion for summary judgment. Shultz v. Delaware Trust Co., Del.Super., 360 A.2d 576 (1976). John Henriksen must show, taking the evidence in the light most favorable to Bonnie Henriksen, that there is no genuine issue of fact and that the case may be decided as a matter of law. Moore v. Sizemore, Del.Supr., 405 A.2d 679 (1979).

With respect to the cause of action for malicious prosecution, such a claim is viewed with disfavor by the Delaware courts and, therefore, is assessed with careful scrutiny. Kay v. Pantone, Inc., Del.Ch., 395 [*3]

A.2d 369 (1978). Five requisites must coexist in order to render such an action viable: (1) the institution of civil proceedings; (2) without probable cause; (3) with malice; (4) the termination of the proceedings in the aggrieved party's favor; and (5) damages which were inflicted upon the aggrieved party by seizure of property or other special injury. Nix v. Sawyer, Del.Super., 466 A.2d 407 (1983). The plaintiff's claim for malicious prosecution must fail since four of the essential elements are not present: (2) probable cause; (3) malice; (4) a result in Ms. Henriksen's favor; and (5) special damages.

A person has probable cause for bringing a civil suit if he reasonably believes that he has a good chance of establishing it to the satisfaction of the Court or the jury. Prosser, Torts § 120 at 85 (4th ed. 1971). Moreover, this definition is subject to the qualification that a judicial determination by a court of original jurisdiction in favor of the person who initiated the civil proceedings is generally held to be conclusive evidence of probable cause, even though that determination is ultimately reversed on appeal. Nagy v. McBurney, R.I.Supr., 392 A.2d 365 (1978). [*4]

Ms. Henriksen's argument that the divorce action was without probable cause fails since the Family Court granted the divorce on desertion grounds. After a contested hearing on the matter, Family Court Judge Horgan rendered his Opinion in which he reviewed the evidence and made findings of fact on the issue of desertion. The Court's Order and Opinion negate the argument that the divorce action was without probable cause.

Ms. Henriksen has not shown the malice required for malicious prosecution. Malice requires evidence that the action was taken by the defendant with a wrongful or improper motive or with wanton disregard of the rights of the plaintiff. Stidham v. Diamond State Brewery, Del.Super., 21 A.2d 283 (1941). A mere feeling of indignation or resentment toward the plaintiff does not establish malice on the part of the one who instigates a proceeding. Nix v. Sawyer, 466 A.2d at 412. While the Court recognizes that people who sue others, especially for divorce, harbor some ill will toward the adverse party, there is no evidence from which malice on the part of Mr. Henriksen could be founded.

Ms. Henriksen argues that the proceedings were resolved in her favor since the [*5] desertion grounds were dismissed. On the contrary, the divorce proceedings were not terminated in Ms. Henriksen's favor because a divorce was ultimately awarded. Alexander v. Petty, Del.Ch., 108 A.2d 575 (1954). The fact that the grounds were changed does not constitute a dismissal or resolution in Ms. Henriksen's favor. Moreover, the proceedings were resolved in Mr. Henriksen's favor when the divorce was granted on the revised grounds of incompatibility.

The plaintiff has also failed to allege special damages which were inflicted upon her by seizure of a property or other special injury. Delaware requires an interference with the person or property of the plaintiff. Kaye, 395 A.2d at 373. The special injury alleged by Ms. Henriksen is a violation of her constitutional rights. Specifically, she claims a violation of her right to leave her husband. The allegations are broad, vague and conclusory. Ms. Henriksen has failed to allege any special damages with the specificity required by Superior Court Civil Rule 9(g).

In sum, the plaintiff has failed to persuade the Court that the necessary elements for malicious prosecution exist. Furthermore, having determined the existence [*6] of probable cause, the claim of malicious prosecution must fail, the alleged malice and termination of the proceedings and special damages notwithstanding. Therefore, the defendant's motion to dismiss the claim is GRANTED.

The plaintiff also alleged an abuse of process in her complaint and the defendant has moved the Court to dismiss the claim.

Abuse of process requires: (1) an ulterior purpose, and (2) a willful act in the use of the process not proper in the regular conduct of the proceedings. Nix v. Sawyer, 466 A.2d at 412. Some form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, must be shown. Id. Ms. Henriksen has failed to allege a willful or improper act in the use of process; any form of coercion; or a collateral advantage to Mr. Henriksen arising from said coercion. Accordingly, the claim of abuse of process against the defendant is DISMISSED.

Ms. Henriksen finally requests the Court for leave to amend her complaint to add as a defendant the law firm of Mauli and Mauli. n1 She claims that Mr. Henriksen committed the malicious prosecution while acting within the scope of his employment with that firm. As noted above, [*7] the complaint has not alleged a cause of action against anyone for malicious prosecution in that the necessary elements do not exist. There is no evidence to warrant adding the law firm as an additional party; therefore, the plaintiff's motion to amend the

complaint is DENIED.

n1 The plaintiff has not formally moved the Court for leave to amend. Since Ms. Henricksen is acting as her own counsel, however, the Court will consider the request in her memorandum as a motion to amend the complaint.

◄ previous  Document 5 of 5.

Terms and Conditions | Privacy

Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

|  |  |  |  |

Search Terms: 152 B.R. 51

FOCUS™ 

Document 1 of 1.

IN RE JAMES POLLIARD, SR., DEBTOR; PAMELA POLLIARD, Movant v. JAMES POLLIARD, Respondent

BANKRUPTCY NO. 92-23263WB, MOTION NOS. RR-1 AND RR-2

UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**152 B.R. 51**; 1993 Bankr. LEXIS 442; 28 Collier Bankr. Cas. 2d (MB) 1067

March 23, 1993, Decided

**COUNSEL:** [**1] CARLOTA M. BOHM, ESQ., PITTSBURGH, PA, TRUSTEE AND ATTORNEY PRO SE.

CARMEN A. MARTUCCI, ESQ., PITTSBURGH, PA, ATTORNEY FOR MOVANT.

**JUDGES:** BENTZ

**OPINION BY:** WARREN W. BENTZ

**OPINION:** [*53] OPINION

Introduction

Presently before the Court are two motions filed by Pamela Polliard ("Mrs. Polliard"), the estranged wife of James Polliard ("Debtor"). Mrs. Polliard seeks to enjoin Carlota M. Bohm, Esq. ("Trustee"), the trustee in this Chapter 7 bankruptcy case from selling real property located at 456 Crestview Drive (the "Property") which is owned by Mrs. Polliard and the Debtor and is currently occupied by Mrs. Polliard. Mrs. Polliard further seeks relief from the automatic stay or, in the alternative, requests that we abstain so that she may continue with the divorce proceeding which she initiated in the Court of Common Pleas of Allegheny County on November 18, 1988. The Trustee opposes the Motions.

Factual Background

The Debtor filed his voluntary Petition under Chapter 7 of the Bankruptcy Code on July 21, 1992. At the time of the bankruptcy filing, Mrs. Polliard's counsel advises that she had not obtained a divorce decree and that all issues in the divorce proceeding, including equitable distribution, [**2] remain unresolved.

At issue are the interests of Mrs. Polliard and the Trustee in the Property. The parties agree that the

value of the Property is approximately $ 62,900 and that the Property is subject to a mortgage in the approximate amount of $ 6,000, leaving equity of $ 56,900.

Mrs. Polliard asserts that she obtained a vested interest in the entire Property upon the filing of the divorce action in 1988. She further asserts that she will be entitled to 100% of the Property under equitable distribution principles.

The Trustee asserts that there has been no disposition of the Property in the divorce proceeding; that the Debtor's interest in the Property is an asset of the bankruptcy estate; that the Debtor's interest in the Property should be sold for the benefit of the Debtor's creditors; and that this Court has absolute jurisdiction and should not abstain.

Issues

1. Whether Mrs. Polliard obtained a vested interest in the entire Property upon commencement of the divorce proceeding.

2. Whether Mrs. Polliard is entitled to relief from stay to have the amount of her equitable distribution claim fixed in the Court of Common Pleas.

3. Whether the Trustee may sell the  [**3] jointly held Property for the benefit of the estate.

Discussion

I. Vested Interest

The Debtor's bankruptcy schedules list some $ 94,000 in unsecured debt. The Debtor's interest in the Property is the only asset available for repayment to his creditors.

When the divorce proceeding was filed, the right to seek equitable distribution vested with Mrs. Polliard. She became "entitled to acquire" an interest in the Debtor's share of the Property. See, Perlow v. Perlow, 128 Bankr. 412, 415 (ED NC 1991); In re McCulley, 150 Bankr. 358, 1993 WL 35610 (Bankr. MD Pa. 1993); In re Wilson, 85 Bankr. 722 (Bankr. ED Pa. 1988). Mrs. Polliard did not, however, obtain a vested ownership interest in the entire Property upon commencement of the divorce proceeding. Rather, the Debtor continued to own his share of the Property, subject to Mrs. Polliard's claim of the right of equitable distribution. At the time the Debtor filed the within bankruptcy case, the Court of Common Pleas had made no determination which changed the Debtor's pre-divorce interest in the Property.

By virtue of the bankruptcy filing, the Debtor's [**4] interest in the Property became [*54] an asset of his bankruptcy estate. 11 U.S.C. § 541. That interest passes to the Trustee to be administered for the benefit of the Debtor's creditors.

The Sixth Circuit has adopted the position that the state domestic relations court must first determine the ownership rights of the debtor and his estranged spouse in an equitable distribution proceeding and then the bankruptcy court exercises exclusive jurisdiction over the property which is awarded to the debtor. In re White, 851 F.2d 170 (6th Cir. 1988); In re Hohenberg, 143 Bankr. 480, 485 (Bankr. WD Tenn. 1992). Under this scenario, the nondebtor spouse takes the marital property awarded to him or her free of the claims of the debtor-spouse's creditors -- a result which we find untenable. The evil in this resolution is that the division of assets between spouses may take place in the absence of any

consideration by any court of the impact upon creditors. In fact, spouses might intentionally give all of the property to the solvent spouse, leaving the insolvent spouse with nothing for his creditors.  [**5]

We believe the better view, expressed by numerous other courts, is that the non-debtor spouse's interests in the Debtor's share of the marital property, which are the subject of equitable distribution proceedings in a divorce action commenced prior to the bankruptcy filing, are cut off by the bankruptcy filing where the domestic relations court has not, at the time of the bankruptcy, fixed the equitable distribution rights by judgment. See, Perlow v. Perlow, 128 Bankr. 412 (ED NC 1991); In re Greenwald, 134 Bankr. 729, 731 (Bankr. SD NY 1991); In re Hilsen, 100 Bankr. 708, 711 (Bankr. SD NY 1989), rev'd on other grounds, 119 Bankr. 435 (SD NY 1990).

The right of the estranged spouse to equitable distribution is not barred. He or she has a general unsecured claim in the bankruptcy for an amount representing any equitable distribution award of an interest in the debtor's property. See, Perlow, 128 Bankr. at 415; In re Briglevich, 147 Bankr. 1015 (Bankr. ND Ga. 1992); In re Greenwald, 134 Bankr. at 731. [**6]

The Pennsylvania Superior Court has enunciated a bright line rule that the filing of a divorce wherein equitable distribution is requested automatically places all marital property in custodia legis, thus insulating it from claims of creditors. Weaver v. Weaver, 413 Pa. Super. 382, 605 A.2d 410 (1992); Fidelity Bank v. Carroll, 416 Pa. Super. 9, 610 A.2d 481 (1992).

In Fidelity Bank v. Carroll, however, the Court notes that the creditor had the right to force the husband into bankruptcy, where in "the divorce proceeding would have been stayed pending resolution of the claims of Mr. Carroll's various creditors." Thus, the bright line becomes blurred. We would have thought that bankruptcy law, enforcing state law where applicable, would give a trustee no more rights than a judgment or execution creditor -- yet apparently the Superior Court's analysis would deny a lien to a judgment creditor but would yield to the powers of a bankruptcy trustee. This is not altogether logical. We divine it to mean that the "custodia legis" proposition is somewhat weakened.

We also observe a weakening [**7] in the theory that the filing of a divorce requesting equitable distribution "vests" title in marital assets in the claiming spouse by Ibarra v. Prudential Property & Casualty Ins. Co., 402 Pa. Super. 27, 585 A.2d 1119 (1990). There, the wife was held not to be the "owner" of the husband's automobile, even though it was marital property, during the pendency of the divorce, for purposes of the Motor Vehicle Finance Responsibility Law.

Also, the "ownership rights" or "vested rights" in marital property by virtue of the Divorce Code becomes inapplicable when one of the spouses dies. Myers v. Myers, 397 Pa. Super. 450, 580 A.2d 384 (1990).

Thus, it would appear that Pennsylvania law does not, when one of the spouses becomes a bankrupt, insulate the marital property from claims of creditors whose interests are represented by the bankruptcy trustee.

Mrs. Polliard's claim for equitable distribution, once quantified, will become  [*55]  an entitlement against the Debtor's bankruptcy estate, subject to the distribution and priorities of the Bankruptcy Code. Since the Bankruptcy Code gives her no right [**8]  of distribution superior to that of any other unsecured creditor, she will be entitled to a prorata distribution along with other unsecured creditors. In re Palmer, 78 Bankr. 402 (Bankr. ED NY 1987).

II. Relief from Stay

Transfers of property interests under equitable distribution are subject to existing liens. 23 P.S. 3501(a) (7). Under Bankruptcy Code § 544, the Trustee has the rights of a judgment creditor who levies on the Debtor's property as of the date the bankruptcy Petition is filed. In re Becker, 136 Bankr. 113 (Bankr. D.NJ 1992); Perlow, 128 Bankr. at 415. Therefore, the equitable distribution process cannot alter the bankruptcy estate's right in property in which the debtor had an interest on the Petition date.

Although § 544 prevents the Court of Common Pleas from awarding the Debtor's share of the Property in kind to Mrs. Polliard, Mrs. Polliard may be entitled to a general unsecured claim against the Debtor's bankruptcy estate. The value of her claim has not yet been determined. Many courts have found that the determination of the amount of the non-debtor spouse's [**9] equitable distribution claim involves an interpretation of state domestic relations law and have accordingly granted relief from stay to have the amount of the claim fixed in state court while retaining jurisdiction over the subsequent distribution from the bankruptcy estate to be made on such claim. See, In re French, 139 Bankr. 485 (D.SD 1992); In re Palmer, 78 Bankr. 402 (Bankr. ED NY 1987); In re Fisher, 67 Bankr. 666 (Bankr. D.Colo. 1986).

As some measure of protection for other creditors of the bankruptcy estate, courts have suggested or instructed the creditors, the Trustee, or a representative to participate in the state court proceedings. In re Hohenberg, 143 Bankr. 480, 489-90 (Bankr. WD Tenn. 1992).

Courts have also prohibited consensual agreements between the Debtor and the ex-spouse to prevent collusion to the detriment of the other creditors. Hohenberg, 143 Bankr. at 488. In most every case, the Bankruptcy Court has retained jurisdiction over enforcement of the state court judgment and the distribution from the [**10] bankruptcy estate on account of such claim. In re Wilson, 85 Bankr. 722 (Bankr. ED Pa. 1988); In re Palmer, 78 Bankr. 402 (Bankr. ED NY 1987); In re Fisher, 67 Bankr. 666 (Bankr. D. Colo. 1986).

Such measures, however, provide only minimal protection to other creditors. There is a question as to whether the creditors have standing to participate in the state court proceeding. See, In re Wilson, 85 Bankr. 722, 729 (Bankr. ED Pa. 1988). Further, even though the Bankruptcy Court retains jurisdiction over the distribution, it is questionable whether it can review or reject the allocation of the marital estate once the automatic stay has been lifted and the state court has fixed the ex-spouse's rights. See In re White, 851 F.2d 170 (6th Cir. 1988); In re Becker, 136 Bankr. 113, 120 (Bankr. D NJ 1992).

These concerns about protection for the interests of other creditors have recently caused an expression of reservation as to whether it is ever appropriate to abstain or grant relief from stay to permit [**11] the amount of the ex-spouse's claim to be fixed in state court. In re Youmans, 117 Bankr. 113, 121, n.8 (Bankr. D. NJ 1990).

Although we share those concerns, we believe it appropriate in this case to grant Mrs. Polliard relief from the automatic stay to pursue a determination of the amount of her claim in the Court of Common pleas. The divorce action has been pending in the Court of Common Pleas for over four years. The Common Pleas Court's familiarity with equitable distribution principals far exceeds that of this Court. We believe the Debtor's creditors are properly protected by the requirement that Mrs. Polliard seek enforcement of any judgment through the claims process in the bankruptcy case. See In re Robbins, 964 F.2d 342 (4th Cir. 1992).

[*56] We suggest that the Trustee enter an appearance in the divorce proceeding to ensure that the Court of Common Pleas is apprised of the concerns of other creditors. We will retain jurisdiction over the distribution to be made on account of such claim (which Mrs. Polliard shall file as a proof of claim

in this case at the conclusion of the divorce proceeding). The right of [**12] the Trustee to object to such claim shall be preserved. Any review of the claim by this Court shall be subject to appropriate deference to the findings of the Common Pleas Court.

Sale of the Property

11 U.S.C. § 363(h) allows the Trustee to sell both the estate's interest and the interest of any co-owners in property if certain conditions are met, to-wit:

>   (1) partition in kind of such property among the estate and co-owners is impracticable;

>   (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

>   (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners, and

>   (4) [inapplicable]

11 U.S.C. § 363(h).

The Property in question is a single family residence. Thus, there can be no doubt that conditions (1) and (2) are met. However, condition (3) requires us to balance the detriment to Mrs. Polliard and the family residing in the residence with the benefit to the estate arising from a sale of [**13] the property.

We acknowledge that removing Mrs. Polliard from the family residence is a substantial hardship. However, there is substantial equity in the Property and from her share of that equity and from any distribution Mrs. Polliard is entitled to receive as an unsecured creditor of the Debtor's estate, Mrs. Polliard will readily be able to find substitute housing. Mrs. Polliard also has a right of first refusal. 11 U.S.C. § 363(i). She would also be entitled to one-half of the proceeds of sale, after payment of the existing mortgage and payment to joint creditors of the Debtor and Mrs. Polliard, less costs and expenses and without reduction for compensation of the trustee. 11 U.S.C. § 363(j).

In contrast, sale of this Property is the only way any funds will become available for distribution to the Debtor's creditors or to the joint creditors of the Debtor and Mrs. Polliard. Following the initial hearing on the matter, the Debtor was ordered to file an Affidavit which sets forth a listing of creditors holding claims against both the Debtor and his non-debtor spouse. Joint creditors hold claims in the [**14] amount of $ 7,933. An additional creditor asserts a joint claim in the amount of $ 3,081.29; however, the Debtor believes the additional claim is owed by him alone and is not a joint obligation. To the extent there are joint creditors, they will be entitled to payment from the proceeds generated from the sale of the Property. See Sumy v. Schlossberg, 777 F.2d 921 (4th Cir. 1985); In re Turner, 81 Bankr. 387 (Bankr. W.D. Pa. 1988); and In re Cotterman, 67 Bankr. 788 (Bankr. W.D. Pa. 1986).

Accordingly, we believe it appropriate for the Trustee to proceed with sale of the Property. Mrs. Polliard's request for an injunction prohibiting such sale will be denied.

Warren W. Bentz, United States Bankruptcy Judge

ORDER

This 23 day of March, 1993, in accordance with the accompanying OPINION, it shall be, and hereby is, ORDERED as follows:

1. The Motion of Pamela Polliard to enjoin the sale of marital real estate is REFUSED.

2. Pamela Polliard is granted relief from the automatic stay to proceed in the Court of Common Pleas to have fixed the amount, if any, of her equitable distribution [**15] claim against the Debtor.

3. The time in which Pamela Polliard may file a proof of claim in the within case is extended until 30 days following conclusion [*57] of the equitable distribution proceeding.

Warren W. Bentz, United States Bankruptcy Judge

**Document 1 of 1.**

2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

| | | | |

Search Terms: 188 B.R. 366

FOCUS™




Document 1 of 1.

In re: ROBERT ARNOLD ROBERGE, SR., Debtor, KAY M. ROBERGE, Appellant, v. ROBERT ARNOLD ROBERGE, SR., Appellee.

Case No. 3:95CV488

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, RICHMOND DIVISION

**188 B.R. 366;** 1995 U.S. Dist. LEXIS 16832

November 7, 1995, FILED

**PRIOR HISTORY:** [**1] Bankruptcy Case No. 94-32674-S.

**COUNSEL:** FOR APPELLANT: Bruce Edwin Arkema, Esq., Russell, Cantor, Arkema & Edmonds, Richmond, VA.

FOR APPELLEE: Bruce Howard Matson, Esq., LeClair, Ryan, Joynes, Epps & Framme, Richmond, VA. William Crenshaw Parkinson, Jr., Esq., Richmond, VA.

FOR J. STEPHEN BUIS, Trustee: Bruce Howard Matson, Esq., LeClair, Ryan, Joynes, Epps & Framme, Richmond, VA. William Crenshaw Parkinson, Jr., Esq., Richmond, VA.

**JUDGES:** Hon. Richard L. Williams

**OPINION BY:** Richard L. Williams

**OPINION:** [*367] MEMORANDUM OPINION

This matter is an appeal from a decision of the Bankruptcy Court denying Kay M. Roberge relief from the automatic stay in order to prosecute an equitable distribution suit against the debtor, Robert Arnold Roberge, Sr., in a Florida state court. Because the Bankruptcy Court's action constituted an abuse of discretion, the decision of that court is reversed, the automatic stay is lifted with respect to Ms. Roberge's equitable distribution proceeding in Florida, and the case is remanded for further proceedings consistent with this opinion.

I.

For a case as legally complicated as this one, the facts are remarkably simple. Robert and Kay Roberge lived in Florida as husband [**2] and wife for 36 years until 1991, when Robert Roberge left. Ms. Roberge continued to live in the marital residence, the principal asset of the marital estate, and to make

mortgage payments on it. In May of 1994, Mr. Roberge obtained an ex parte divorce in Virginia. Because an ex parte divorce is an in rem proceeding -- the marriage constituting the res -- the Virginia state court never established personal jurisdiction over Ms. Roberge, and thus could not effect equitable distribution of the marital estate. See Boyd v. Boyd, 2 Va. App. 16, 340 S.E.2d 578, 580 (Va. App. 1986) ("A divorce suit in which the pleadings seek only to terminate a marriage is an in rem proceeding, but a proceeding seeking the entry of a decree for spousal support and maintenance is in personam."). n1 Neither party sought an equitable distribution proceeding in Florida, the only state with personal jurisdiction over Kay Roberge, and their respective rights in the marital estate remain unresolved. The divorce decree itself, however, by virtue of Florida law, converted the nature of their interests in the marital residence from a tenancy by the entireties [*368] to a tenancy in common. [**3] See Fla. Stat. Ann. § 689.15.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 As the Virginia court in any case lacked in rem jurisdiction over the Florida realty in question, it could not have itself ordered the property sold, or granted title to it to one party or the other, even if it had obtained in personam jurisdiction over both Mr. and Ms. Roberge. If it had possessed such jurisdiction, however, it could have directed the parties to sell the property, or one party to convey his or her interest to the other.

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

On July 27, 1994, just two months after he obtained the divorce, Robert Roberge filed a petition for relief under Chapter 7 of the Bankruptcy Code in the Eastern District of Virginia. Kay Roberge subsequently filed an equitable distribution suit in Florida state court, seeking a determination of the parties' respective interests in the marital estate. Upon discovering that her suit was in violation of the automatic stay triggered by the bankruptcy filing, Ms. Roberge moved the Bankruptcy Court to lift the stay so as to allow her [**4] equitable distribution suit to proceed. The Bankruptcy Trustee opposed her motion, and the Bankruptcy Court denied it on April 25, 1995. See In re Roberge, 181 Bankr. 854 (Bankr. E.D. Va. 1995). It is from that order that Kay Roberge appeals. The standard of review is abuse of discretion. See In re Robbins, 964 F.2d 342, 345 (4th Cir. 1992).

II.

A bankruptcy filing creates an estate consisting of all the legal and equitable interests of the debtor in property as of the date of filing. See 11 U.S.C. § 541(a)(1). Thus, property co-owned with the non-debtor spouse is part of the bankruptcy estate. See In re Becker, 136 Bankr. 113, 115 (Bankr. D.N.J. 1992). The district court has "exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate." See 28 U.S.C.S. § 1334 (d) (Law. Co-op. 1986). n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 28 U.S.C.S. § 1334(d) as quoted is now subsection (e) of the statute. The amendment which renamed it subsection (e) and inserted a new subsection (d), which states that decisions to abstain or not to abstain with regard to certain proceedings related to the bankruptcy are not appealable to the Court of Appeals or to the Supreme Court, took affect October 22, 1994, after commencement of this case, and

so by its terms is inapplicable to it. See 28 U.S.C.S. § 1334 (Law. Co-op. Supp. 1995) (history; ancillary laws and directives).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**5]

The filing of a bankruptcy petition automatically stays the commencement or continuation of judicial proceedings against the debtor, with certain limited exceptions. See 11 U.S.C. § 362(a). Thus, equitable distribution of marital assets is stayed by the filing of a bankruptcy petition. See In re Robbins, 964 F.2d at 344. However, the bankruptcy court can lift the stay "for cause." 11 U.S.C. § 362(d)(1). "Because the [Bankruptcy] Code provides no definition of what constitutes 'cause,' courts must determine when discretionary relief is appropriate on a case-by-case basis." In re Robbins, 964 F.2d at 345. Additional authority to grant relief from the stay is found in 28 U.S.C. § 1334(c)(1), which states that

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Kay Roberge argues that she is entitled to relief from the automatic stay because equitable distribution fundamentally involves determination of state law issues in an area of [**6] traditional state concern -- domestic relations -- and thus it is best left to the expertise of a Florida court. The Bankruptcy Trustee argues that the filing of a bankruptcy petition cuts off equitable distribution rights, as such rights under Florida law are subject to the claims of prior creditors, see Fla. Stat. Ann. § 61.075, and the Trustee is a hypothetical lien creditor.

Thus, the question presented is this: Does the filing of a bankruptcy petition cut off a spouse's right to equitable distribution? The caselaw is evenly divided.

III.

A.

The principal case cited by the Bankruptcy Trustee in favor of the proposition that equitable distribution rights are cut off by a bankruptcy petition is In re Polliard, 152 Bankr. 51 (Bankr. W.D. Pa. 1993). That court concluded that while the wife's right to equitable distribution vested upon the filing of a divorce petition, she did not obtain a vested interest in the entire marital residence. Rather, the husband continued to own his [*369] share of the residence, subject to her equitable distribution claim. Thus, his interest in the property became part of the bankruptcy estate upon the filing of the petition. See id. at 53-54. [**7] Consequently, the bankruptcy filing cut off Ms. Polliard's interests in her husband's share of the marital property. n3 This logic has been followed by a number of different courts, including, in a recent opinion, one here in the Eastern District of Virginia. See In re Benyola, 1995 WL 777031 (E.D. Va. Mar. 19, 1993).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 The equitable distribution claim is converted into an unsecured claim in the bankruptcy. See id. at

54.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

This train of logic is dependent upon the transfer of property interests under the relevant equitable distribution statute being subject to prior perfected liens, as is the case in Florida. See Fla. Stat. Ann. § 61.075. If equitable distribution transfers are subject to prior perfected liens against one spouse's interest, then, according to the court in In re Benyola:

> Under [Bankruptcy] Code sections 544(a)(1) and (2), a bankruptcy trustee has the rights of a judgment creditor who levies on the debtor's property as of the date the bankruptcy petition is filed, whether [**8] or not such a creditor exists. The filing of a bankruptcy petition is therefore the legal equivalent of a levy by the trustee upon all of the debtor's property as of the petition date. It follows that equitable distribution cannot alter a bankruptcy estate's rights in property in which the debtor had an interest on the petition date, whether jointly owned or otherwise.

Id. at *3 (quoting In re Becker, 136 Bankr. at 118 (citations omitted)).

This reasoning is also dependent, however, on the debtor having retained his pre-equitable distribution interest in the property even though the right to equitable distribution has vested. Otherwise, the debtor's interest on the petition date would merely be his share following equitable distribution.

B.

With that proposition this Court disagrees. A vested right to equitable distribution is meaningless unless the spouse's interest in the property which is to be equitably distributed also vests. Thus, stating that the filing of a bankruptcy petition cuts off equitable distribution rights because the debtor has retained his pre-divorce interest in the property during the pendency of the divorce proceeding is the same as stating [**9] that vested equitable distribution rights are subject to divestment upon the filing of a bankruptcy petition.

While vested property rights can be subject to divestment, the mere filing of a bankruptcy petition does not divest otherwise vested equitable distribution rights. Once the right to equitable distribution vests, the parties to the divorce obtain inchoate equitable interests in the marital estate equivalent to the shares to which they are entitled under equitable distribution. The Bankruptcy Code provides that "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). Thus, in a bankruptcy proceeding which is commenced after the vesting of equitable distribution rights, only the debtor's inchoate equitable interest in the marital estate becomes part of the bankruptcy estate. The interest is then made choate by the equitable distribution proceeding. To hold otherwise would make the Bankruptcy [**10] Code a draconian tool in divorce litigation, because one could then avoid an anticipated unfavorable equitable distribution award by filing

bankruptcy.

C.

Whether a creditor who perfects a lien against marital assets after the vesting of equitable distribution rights but before an equitable distribution award is made cuts off those equitable distribution rights is a question of state law. A creditor of a wife who dockets a judgment against the marital residence [*370] after a divorce petition is filed but before an equitable distribution award is made may or may not have a lien against the wife's pre-divorce interest, depending upon the relevant state law. In addition, the Bankruptcy Code generally does not act as substantive law, but instead incorporates applicable state law. See Butner v. United States, 440 U.S. 48, 55, 59 L. Ed. 2d 136, 99 S. Ct. 914 (1979) ("Property rights are created and defined by state law."). The availability of bankruptcy, however, allows a party to create a hypothetical lien creditor, whether or not such a creditor exists. This fiction is the great advantage of bankruptcy as a method of debt extinguishment. The creation of such a creditor in order to avoid [**11] an equitable distribution award, however, perverts the intention of Congress in providing bankruptcy as an option for debtors. The intention of the debtor in such a case often is not debt extinguishment, but rather gaining a greater share of marital assets than one otherwise would be entitled to, by having them applied to outstanding debts.

Bankruptcy law, however, does not slavishly incorporate all state law without any thought to the consequences of that law as filtered through bankruptcy. As the Supreme Court said in Butner: "Unless some federal interest requires a different result, there is no reason why [property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." Id. (emphasis added). The Bankruptcy Court itself noted that "the question of what constitutes the property of a bankruptcy estate . . . is ultimately a federal question. " In re Roberge, 181 Bankr. at 857. Here, the federal interest is in not having bankruptcy used as a weapon in divorce proceedings. The Bankruptcy Code consistently tries to protect families and preserve the marital residence. See In re Hursa, 87 Bankr. 313, 315-16 [**12] (Bankr. D.N.J. 1988) (citing protection of alimony and child support rights and of the marital residence in bankruptcy). Consequently, policy concerns also mandate that vested equitable distribution rights not be divested by the filing of a bankruptcy petition.

D.

The principal case holding this way is In re White, 851 F.2d 170 (6th Cir. 1988). In that case, the Sixth Circuit held that it was not an abuse of discretion to lift the stay so that the relative interests in the property of the husband and wife could be determined. The court noted that lifting the stay "permit[s] the state court to exercise limited jurisdiction in the kind of matter that is traditionally exclusively reserved for state divorce courts." Id. at 173. As the court noted

> The Bankruptcy Code does not define a debtor's interest in property; the answer to that question must be made after reference to state law. With regard to the present pending state court divorce proceedings, the bankruptcy court has acted to permit the state court with expertise in such matters to decide questions that are an inherent part of the divorce process.

Id.

The opinion does not discuss the relevant state [**13] equitable distribution statute, in particular,

whether equitable distribution is subject to existing liens. n4 Rather, the court was concerned about the Bankruptcy Code being abused as a weapon in a divorce, as discussed above.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 The Ohio equitable distribution statute, it turns out, is silent on the matter. See Ohio Rev. Code Ann. § 3105.171.

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

Likewise, the Fourth Circuit has upheld the lifting of a stay to allow equitable distribution to proceed as not being an abuse of discretion. See In re Robbins, 964 F.2d 342 (4th Cir. 1992). In In re Robbins, the parties, as in the instant case, were a Florida couple who had divorced, with the husband eventually moving to North Carolina. The husband filed for divorce while the equitable distribution of the marital estate was still pending. The bankruptcy court lifted the stay, relying both on Fourth Circuit precedent that deference is owed to state courts in domestic affairs and on the efficiency considerations of having the equitable distribution proceeding [**14] conducted in a Florida state court. See id. at 344. The Fourth Circuit approved the bankruptcy [*371] court's consideration of these factors, especially the first. See id. at 344-45.

The Fourth Circuit then set forth the rubric for determining whether the automatic stay should be lifted in a particular case.

The factors that courts consider in deciding whether to lift the automatic stay include (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in the bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

Id. at 345. Applying those factors to the case before it, the Fourth Circuit found that state courts have a special expertise in equitable distribution matters. It held that judicial economy would be increased by allowing the state court to exercise that same expertise. Finally, [**15] it found that lifting the stay would not harm other creditors under the facts presented. See id. at 345-46.

E.

The argument in III. B. and C., supra, and the cases cited in III. D., supra, while persuasive in most cases, do not mandate a per se rule. As the Sixth Circuit noted, if equitable distribution rights are never cut off by bankruptcy, it would be easy for spouses to collude in entering an equitable distribution award that transferred essentially all the marital assets to the non-debtor spouse free and clear, leaving the bankruptcy estate empty. See In re White, 851 F.2d at 174. Similarly, the Fourth Circuit has

formulated the three-factor test quoted above to determine the appropriateness of a stay in these circumstances. Those courts following the logic of In re Becker, see III. A., supra, have also emphasized that such cases must be decided on a case-by-case basis rather than by a per se rule, with the treatment of the debtor's family being a principal concern. See In re Becker, 136 Bankr. at 119-20.

Because of the fact-sensitive nature of these cases, as the Fourth Circuit noted in In re Robbins, the granting or denial of relief [**16] from the automatic stay is reviewed for abuse of discretion. See In re Robbins, 964 F.2d at 345. Even given the difficult legal issues involved, and the conflicting policy interests concerning the use of bankruptcy as a weapon in divorce versus collusion to frustrate creditors, it remains possible for a bankruptcy court to abuse its discretion. That is what has occurred in the instant case.

IV.

A.

The Bankruptcy Trustee argues that this case is an easy one. Because the petition for equitable distribution was not filed until after the bankruptcy commenced, he maintains that Ms. Roberge's right to equitable distribution had not vested. In fact, he goes so far as to suggest that she comes before this Court with unclean hands, because the filing of her equitable distribution suit violated the automatic stay. See Trustee's Brief at 9.

The fact that the equitable distribution proceeding had not commenced when the bankruptcy petition was filed is a factor to be considered, even under the logic of In re Robbins and In re White. Because the facts in this case are so egregious, however, the Court finds excusable delay on the part of Ms. Roberge. Mr. Roberge obtained an [**17] ex parte divorce in Virginia: there is no evidence in the record that Ms. Roberge ever knew that she was no longer married. Unable to force her to litigate the distribution of marital property in a Virginia court, he proceeds to file bankruptcy within two months of the divorce decree, compelling her to come to Virginia to litigate issues that absent his bankruptcy only a Florida state court would have jurisdiction over. Furthermore, he has claimed as his homestead property in Henrico County, Virginia, thus protecting his property from creditors, but sacrificing marital property that likely would go to Ms. Roberge under Florida equitable distribution law. Ms. Roberge, since 1991, has made all the mortgage payments and tax payments on the marital residence, the principal piece of marital [*372] property in question. A strong inference appears from the timing of her equitable distribution petition that she did not know what was going on until after the bankruptcy suit was commenced. At that point she acted without delay to protect her rights.

To allow Mr. Roberge to get away with such conduct would be the height of inequity; it is he who has unclean hands. Ms. Roberge cannot be expected [**18] to have knowledge of the ex parte Virginia divorce. To say that in order to preserve her right to equitable distribution she had to have filed an equitable distribution petition before the filing of the bankruptcy petition is the same as saying that in order to preserve her right to equitable distribution she had to file a divorce petition against her husband after he abandoned her. Under the decision of the Bankruptcy Court, if she fails to file for divorce upon abandonment, she leaves herself open to the possibility that her husband will get an ex parte divorce in another state without her knowledge and then file for bankruptcy, cutting off her right to equitable distribution. The public policy of every state in this country favors the preservation of marriage. See, e.g., Ryan v. Griffin, 199 Va. 891, 103 S.E.2d 240, 243 (Va. 1958) (public policy of state to foster and protect marriage). A rule which favors the filing of divorce petitions after abandonment is a result not to be encouraged by federal courts. Therefore, Ms. Roberge's failure to file her equitable distribution petition prior to the filing of the bankruptcy petition is excusable delay, and does not prejudice [**19]

the vesting of her right to equitable distribution.

B.

Turning to the three part test of In re Robbins, binding upon this Court, Ms. Roberge is entitled to relief from the stay. The issues in an equitable distribution proceeding only implicate state law. Furthermore, the Fourth Circuit adheres to "the salutary principle that domestic matters, which include equitable distributions, are primarily for the state courts to decide." In re Robbins, 964 F.2d at 344-45.

Secondly, modifying the stay promotes judicial economy. Ms. Roberge has homestead rights in the portion of the property she holds as a tenant in common. n5 See Fla. Const. art. X, § 4. Therefore, any attempt to collect a bankruptcy award out of the property will require a partition proceeding to be brought in a Florida state court. Thus, Florida state courts will be involved no matter what.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 The Bankruptcy Court in its opinion makes frequent mention of the fact that prior to the equitable distribution suit, each of the parties held a one-half undivided interest as tenants in common. See In re Roberge, 181 Bankr. at 857. It cites no support for, and this Court has found no Florida law in support of, the proposition that if a tenancy by the entireties is converted to a tenancy in common, the parties are presumed to have equal undivided shares. As Ms. Roberge points out in her brief, all the phrase "tenancy in common" denotes is a "[a] form of ownership whereby each tenant . . . holds an undivided interest in property" which does not terminate upon the tenant's prior death. Black's Law Dictionary 1465 (6th ed. 1990). It indicates nothing about what share of the proceeds each tenant is entitled to upon partition of the property.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**20]

Finally, Mr. Roberge's creditors are not prejudiced by allowing the equitable distribution action to proceed. The posture of the case shows that no danger of collusion between the Roberges to the detriment of Mr. Roberge's creditors exists. Furthermore, had the property issues been settled contemporaneously with the divorce, Ms. Roberge would have obtained her equitable distribution share then, and the property would not be available to pay Mr. Roberge's creditors. "A trustee in bankruptcy stands in the shoes of the bankrupt and succeeds only to the bankrupt's interest in property." Angeles Real Estate Co. v. Kerxton, 737 F.2d 416, 418 (4th Cir. 1984). The Bankruptcy Trustee therefore should not be allowed to profit by Mr. Roberge's inequitable actions in obtaining an ex parte divorce to free himself from the marriage without any property settlement, and then filing bankruptcy to use marital property that would go to his wife under equitable distribution to pay his creditors.

V.

For all the foregoing reasons, and under the test enunciated in In re Robbins, the Bankruptcy Court abused its discretion in not lifting the automatic stay so that the [*373] equitable distribution [**21] action could proceed. Therefore, the decision of that court is reversed, the automatic stay is lifted with respect to Ms. Roberge's equitable distribution proceeding in Florida, and the case is remanded for further proceedings consistent with this opinion.

Let the Clerk send a copy of this Memorandum Opinion and the accompanying Order to all counsel of

record.

DATE

SENIOR UNITED STATES DISTRICT JUDGE

**Document 1 of 1.**

|

2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

## CERTIFICATE OF SERVICE

I David J. Buchanan, hereby certify that on December 19, 2006, caused true and correct copies of the attached Notice *of Appeal, Appeal, and Compendious of Decisions*, to be served upon the following people as indicated.

Clerk of the Bankruptcy Court
824 Market Street, 3rd Floor
Wilmington, DE 19899
*Via Hand Delivery*

Michael B. Joseph, Esquire, Trustee
824 Market Street, P.O. Box 1351
Wilmington, DE 19899-1351
*Via Hand Delivery*

James B. Tyler, III, Esquire
211E. Market Street
Georgetown, DE 19947
*Via 1st Class U.S. Mail*

David J. Buchanan
34806 Hudson Road
Laurel, Delaware 19956
302 875-1362

Search Terms: Henriksen, Henriksen v. Henriksen

**FOCUS™** [                    ]    [Search Within Results]                    Edit Search

[Print]  [Email]

[Document List] [Expanded List] [KWIC] [ Full ]    ◄previous Document 5 of 5.

### Henriksen v. Henriksen

C.A. No. 87C-MR-2

Superior Court of Delaware, New Castle

1987 Del. Super. LEXIS 1361

Submitted September 1, 1987
November 18, 1987, Decided

**DISPOSITION:** [*1]

For the foregoing reasons, the defendant's motion to dismiss is GRANTED and the plaintiff's motion to amend the complaint is DENIED. IT IS SO ORDERED.

**COUNSEL:** Bonnie Henriksen, Pro Se.

N. Maxon, Terry, Jr., Esq., Terry, Jackson, Terry & Wright.

**JUDGES:** VINCENT A. BIFFERATO, JUDGE.

**OPINIONBY:** BIFFERATO

**OPINION:** The defendant, John Henriksen, has moved to dismiss the complaint filed by the plaintiff, Bonnie Henriksen, pursuant to Superior Court Civil Rule 12(b)(6), for failure to state a claim upon which relief may be granted.

The parties in this case were married for nine years. On August 16, 1984, John Henriksen initially filed for divorce on the grounds of desertion and, in the alternative, for incompatibility. After a contested hearing on the matter where both parties were represented by counsel, the Family Court granted a divorce on the grounds of desertion. Bonnie Henriksen appealed the Family Court decree of desertion. Mr. Henriksen moved to dismiss the appeal as having been untimely filed. The parties agreed to have the Supreme Court remand the matter to Family Court where the decree of desertion would be vacated and Mr. Henriksen would file for an uncontested divorce on incompatibility. [*2] The Family Court granted the divorce on incompatibility and the appeal to the Supreme Court was dismissed.

Ms. Henriksen has filed an action against Mr. Henriksen for malicious prosecution and abuse of process claiming that he filed the divorce action on the grounds of desertion, knowing them to be false, and the proceedings terminated in her favor.

Mr. Henriksen moved to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The parties have submitted affidavits to supplement their memoranda. Therefore, under Superior Court Civil Rule 12(b), the motion to dismiss shall be treated as a motion for summary judgment. Shultz v. Delaware Trust Co., Del.Super., 360 A.2d 576 (1976). John Henriksen must show, taking the evidence in the light most favorable to Bonnie Henriksen, that there is no genuine issue of fact and that the case may be decided as a matter of law. Moore v. Sizemore, Del.Supr., 405 A.2d 679 (1979).

With respect to the cause of action for malicious prosecution, such a claim is viewed with disfavor by the Delaware courts and, therefore, is assessed with careful scrutiny. Kay v. Pantone, Inc., Del.Ch., 395 [*3]

A.2d 369 (1978). Five requisites must coexist in order to render such an action viable: (1) the institution of civil proceedings; (2) without probable cause; (3) with malice; (4) the termination of the proceedings in the aggrieved party's favor; and (5) damages which were inflicted upon the aggrieved party by seizure of property or other special injury. Nix v. Sawyer, Del.Super., 466 A.2d 407 (1983). The plaintiff's claim for malicious prosecution must fail since four of the essential elements are not present: (2) probable cause; (3) malice; (4) a result in Ms. Henriksen's favor; and (5) special damages.

A person has probable cause for bringing a civil suit if he reasonably believes that he has a good chance of establishing it to the satisfaction of the Court or the jury. Prosser, Torts § 120 at 85 (4th ed. 1971). Moreover, this definition is subject to the qualification that a judicial determination by a court of original jurisdiction in favor of the person who initiated the civil proceedings is generally held to be conclusive evidence of probable cause, even though that determination is ultimately reversed on appeal. Nagy v. McBurney, R.I.Supr., 392 A.2d 365 (1978). [*4]

Ms. Henriksen's argument that the divorce action was without probable cause fails since the Family Court granted the divorce on desertion grounds. After a contested hearing on the matter, Family Court Judge Horgan rendered his Opinion in which he reviewed the evidence and made findings of fact on the issue of desertion. The Court's Order and Opinion negate the argument that the divorce action was without probable cause.

Ms. Henriksen has not shown the malice required for malicious prosecution. Malice requires evidence that the action was taken by the defendant with a wrongful or improper motive or with wanton disregard of the rights of the plaintiff. Stidham v. Diamond State Brewery, Del.Super., 21 A.2d 283 (1941). A mere feeling of indignation or resentment toward the plaintiff does not establish malice on the part of the one who instigates a proceeding. Nix v. Sawyer, 466 A.2d at 412. While the Court recognizes that people who sue others, especially for divorce, harbor some ill will toward the adverse party, there is no evidence from which malice on the part of Mr. Henriksen could be founded.

Ms. Henriksen argues that the proceedings were resolved in her favor since the [*5] desertion grounds were dismissed. On the contrary, the divorce proceedings were not terminated in Ms. Henriksen's favor because a divorce was ultimately awarded. Alexander v. Petty, Del.Ch., 108 A.2d 575 (1954). The fact that the grounds were changed does not constitute a dismissal or resolution in Ms. Henriksen's favor. Moreover, the proceedings were resolved in Mr. Henriksen's favor when the divorce was granted on the revised grounds of incompatibility.

The plaintiff has also failed to allege special damages which were inflicted upon her by seizure of a property or other special injury. Delaware requires an interference with the person or property of the plaintiff. Kaye, 395 A.2d at 373. The special injury alleged by Ms. Henriksen is a violation of her constitutional rights. Specifically, she claims a violation of her right to leave her husband. The allegations are broad, vague and conclusory. Ms. Henriksen has failed to allege any special damages with the specificity required by Superior Court Civil Rule 9(g).

In sum, the plaintiff has failed to persuade the Court that the necessary elements for malicious prosecution exist. Furthermore, having determined the existence [*6] of probable cause, the claim of malicious prosecution must fail, the alleged malice and termination of the proceedings and special damages notwithstanding. Therefore, the defendant's motion to dismiss the claim is GRANTED.

The plaintiff also alleged an abuse of process in her complaint and the defendant has moved the Court to dismiss the claim.

Abuse of process requires: (1) an ulterior purpose, and (2) a willful act in the use of the process not proper in the regular conduct of the proceedings. Nix v. Sawyer, 466 A.2d at 412. Some form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, must be shown. Id. Ms. Henriksen has failed to allege a willful or improper act in the use of process; any form of coercion; or a collateral advantage to Mr. Henriksen arising from said coercion. Accordingly, the claim of abuse of process against the defendant is DISMISSED.

Ms. Henriksen finally requests the Court for leave to amend her complaint to add as a defendant the law firm of Maull and Maull. n1 She claims that Mr. Henriksen committed the malicious prosecution while acting within the scope of his employment with that firm. As noted above, [*7] the complaint has not alleged a cause of action against anyone for malicious prosecution in that the necessary elements do not exist. There is no evidence to warrant adding the law firm as an additional party; therefore, the plaintiff's motion to amend the

complaint is DENIED.

n1 The plaintiff has not formally moved the Court for leave to amend. Since Ms. Henricksen is acting as her own counsel, however, the Court will consider the request in her memorandum as a motion to amend the complaint.

◀ previous  Document 5 of 5.

Terms and Conditions | Privacy

Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.