# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF DELAWARE

In Re: David J. Buchanan        :     No. 07-34-SLR
Debtor below, Appellant      :

                       :

                       :     Court Below: The United States
                       :     Bankruptcy Court for the District of
                       :     Delaware, C.A. No. 04-12419-JKF

                       :

                       :

## TABLE OF CONTENTS

|  | Page No. |
|---|---|
| Table of Contents……………………………………… | i |
| Table of Authorities…………………………………… | ii-iii |
| Caption of Appeal………………………………….... | 1 |
| Brief of Appellant…………………………………... | 1-19 |
|     Jurisdictional Statement………………………… | 1 |
|     Statement of Issues Presented and Standard of Review.. | 1-4 |
|     Statement of Case……………………………… | 4-9 |
|         I. Procedural Posture………………………… | 4-5 |
|         II. Facts Relevant to Appeal………………… | 5-10 |
|     Argument…………………………………….. | 10-16 |
|     Conclusion…………………………………….… | 16-19 |



i

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                 <u>Page</u>


BENYOLA v. BENYOLA
BANKRUPTCY CASE No. 90-33743-S,
ADVERSARY PROCEEDING No. 91-3039-S
136 B.R. 646; 1992 Bankr. LEXIS 297……………………………………     11


BRYANT v. BRYANT
FILE NO. CN97-08832
1999 Del. Fam. Ct. LEXIS 22……………………………………………..     6


BRYER v. BRYER,
216 B.R. 755;
1998 Bankr. LEXIS 10……………………………………………………     13


BUCHANAN v. BUCHANAN
C.A. No. 06C-06-041 ESB
2006 Del. Super. LEXIS 279………………………………………………     8


CORTELLESSA v. CORTELLESSA
Chapter 13, Bankruptcy Case No. 05-24258 REF
Adversary No. 06-2082 REF
2006 Bankr. LEXIS 1435…………………………………………………     3, 15


COX v. DAVIS,
United States Court of Appeals For The First Circuit
356 F.3d 76; 2004 U.S. App. LEXIS 569……………………………………     13


DAVIS v. DAVIS
Chapter 13, Case No. 06-02808-dd
2006 Bankr. LEXIS 2837…………………………………………………     11, 15


HASSLER v. HASSLER
CASE NO. BK03-81714
A03-8061, CH. 7
2004 Bankr. LEXIS 412……………………………………………………     3, 13,
16


HENRIKSEN v. HENRIKSEN
C.A. No. 87C-MR-2
1987 Del. Super. LEXIS 1361………………………………………………     7

HINES v. HINES
No. 05-8065
2006 Bankr. LEXIS 1160……………………………………………………..    3, 14

POLLIARD v. POLLIARD
152 B.R. 51; 1993 Bankr. LEXIS 442
 28 Collier Bankr. Cas. 2d (MB) 1067…………………………………………...    11

ROBERGE v. ROBERGE
Case No. 3:95CV488
 188 B.R. 366; 1995 U.S. Dist. LEXIS 16832……………………………………12 -15

Statutes

28 U.S.C §158(a)(1)………………………………    1
28 U.S.C §158(b)(1)………………………………    1
42 U.S.C §1981……………………………………    17
42 U.S.C §1983……………………………………    17
42 U.S.C §1985……………………………………    17
Title 11 § 301……………………………………    4
Title 11 § 305……………………………………    11
Title 11 § 349……………………………………    11
Title 11 § 362……………………………………    3, 4, 14
Title 11 § 502……………………………………    3, 6, 15
Title 11 § 506……………………………………    6
Title 11 § 507……………………………………    13, 16
Title 11 § 509……………………………………    12
Title 11 § 522……………………………………    7
Title 11 § 523……………………………………    4, 16
Title 11 § 524……………………………………    2
Title 11 § 541……………………………………    3, 7
Title 11 § 558……………………………………    3
Title 11 § 1307……………………………………    7, 11, 15
13 Del. C. § 1509…………………………………    6
14th Amendment to the U.S. Constitution…………    19

Rules
Bankruptcy Rule 3002(a)……………………………    1, 8, 10-11, 13, 16
Bankruptcy Rule 3002(c)(3)…………………………..    1-2, 7-8, 10-11, 13, 18-19
Bankruptcy Rule 9006(d)……………………………    12
Rule of Civil Procedure 12(b)(6)………………………    2, 7, 8, 10, 13

# IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

In Re: David J. Buchanan       :    No. 07-34-SLR
Debtor below, Appellant      :

                           :

                           :    Court Below: The United States
                           :    Bankruptcy Court for the District of
                           :    Delaware, C.A. No. 04-12419-JKF

                           :

                           :

### APPEAL

**COUNSEL:**

Michael B. Joseph, Esquire, 824 Market Street, P.O. Box 1351, Wilmington, DE 19899-

1351, Phone 302-656-0123.

TRUSTEE.

APPELLANT IS PRO SE.

James B. Tyler, III, Esquire, 211 E. Market Street, P.O. Box 555, Georgetown, DE

19947, 302-856-6397.

ATTORNEY FOR APPELLEE (No Claim Filed in the absence of "Trust")

### BRIEF OF APPELLANT

**Jurisdictional Statement**

The United States District Court For The District Of Delaware has jurisdiction to hear

this matter pursuant to 28 U.S.C. 158(a)(1) and 28 U.S.C. 158(b)(1), following entry of

the Bankruptcy Court's order Regarding Motion for Sale of Real Estate (Doc. 174).

**Statement of Issues Presented and Standards of Review**

1. Whether the Bankruptcy Court erred in determining that Ex-wife has a right to motion

the court in absence of filed "claim" pursuant to Bankruptcy Court Rule 3002(a) and

3002(c)(3), placing question on defining ex-wife as "Appellee". The Panel reviews this

matter *de novo.*

2. Whether the Bankruptcy Court erred in dismissing the Debtor's bankruptcy to allow distribution of assets to Ex-wife on Ex-wife's motion, and other non-claiming creditors that would otherwise be not allowed pursuant to Bankruptcy Court Rule 3002(c)(3). The Panel reviews this matter *de novo.*

3. Whether the Bankruptcy Court erred in determining the debt owed to Ex-wife (Appellee) to be other than an unsecured, non-priority debt, in the absence of a filed "claim", or vested value in the Delaware Family Court, gives cause to dismiss. The Panel reviews this matter *de novo.*

4. Whether the Bankruptcy Court erred in denying confirmation of the plan gives cause to dismiss, where objecting creditor, equity security holder, or Ex-wife, failed to assert any proper basis for such denial, "claim", and where wife's "objection" was in the form of a Delaware Family Court Orders, resultant from the ex-wife failing to establish a equitable value, vest a value, and failing to state a "claim" pursuant to Rule 12(b)(6) of civil procedure. The Panel reviews this matter *de novo.*

5. Whether the Bankruptcy Court erred in dismissing the Debtor's bankruptcy to allow distribution of assets to Ex-wife, and other non-claiming creditors, on Ex-wife's motion, without proper notice of hearing, where court ordered distribution would otherwise be discharged pursuant to Title 11 § 524, and or not allowed pursuant to Rule 3002(c)(3). The Panel reviews this matter *de novo.*

6. Whether the Bankruptcy Court erred in dismissing the Debtor's bankruptcy to allow distribution of assets to Ex-wife, and other non-claiming creditors in the interest of Ex-wife, on Ex-wife's motion, where such matters were cut off by Debtor filing a

2

bankruptcy petition after divorce, and prior to any equitable distribution hearing, contract, agreement, or judicial order pertaining to matters of property establishing a "trust", where property of the bankrupt estate is in sole control of the Debtor pursuant to Title 11 § 541. *See HASSLER v. HASSLER, 2004 Bankr. LEXIS 412*, and HINES v. HINES, No. 05-8065, 2006 Bankr. LEXIS 1160 The Panel reviews this matter *de novo.*

7. Whether the Bankruptcy Court erred in dismissing the Debtor's bankruptcy to allow distribution of assets to Ex-wife, and other non-claiming creditors (lawyers) in the interest of Ex-wife, on Ex-wife's motion, where the lawyers for Ex-wife vested a value for fees through Family Court Order, in violation of Title 11 § 362, and beyond the scope of any relief of stay provided by the Bankruptcy Court (Doc. 63), where a request by counsel for attorney fees is beyond property division between the "parties" of divorce, and requires a determination by the Family Court that exceeds the scope of relief of stay. *See CORTELLESSA v. CORTELLESSA2006 Bankr. LEXIS 1435.* The Panel reviews this matter *de novo.*

8. Whether the Bankruptcy Court erred in dismissing the Debtor's bankruptcy to allow distribution of assets to Ex-wife, and other non-claiming creditors (lawyers) in the interest of ex-wife, on Ex-wife's motion, where dismissal prejudices the Debtor, and allowed creditors pursuant to Title 11 § 502, by voiding on dismissal, benefits of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses, pursuant to Title 11 § 558. The Panel reviews this matter *de novo.*

9. Whether the Bankruptcy Court erred in dismissing the Debtor's bankruptcy to allow distribution of assets to Ex-wife, to satisfy debts to be owed to Ex-wife, and/or

3

owed by Ex-wife, in the absence of a "claim", that are not a condition of support, intended support, or in lieu of support, to be non-dischargeable. As discussed above, the Ex-wife failed to state a "claim", and/or vest a value for which she desired the Appellant to owe her, where it is further averred that all Family Court orders are independent of any support obligation, due to the dismissal of all support claims filed with the Family Court, prior to commencing the property separation hearings, making such debt expected by ex-wife dischargeable pursuant to 11 USCS § 523, and/or resultant of proceedings in violation of 11 USCS § 362(a)(4). The Panel reviews this matter *de novo*.

## Statement of Case

### I. Procedural Posture

The within case was filed on August 24, 2004 (Doc. 1) constituting an order for relief under 11U.S.C § 301. Debtor's first plan (Doc. 12) was filed on September 9, 2004. Ex-wife, Barbara H. Buchanan, filed an Objection to Confirmation (Doc. 25) on November 8, 2004, after which Debtor filed a Response of Debtor to Objection to Confirmation (Doc. 28) on November 17, 2004. Hearing Held on December 21, 2004 (Doc 40), Court identified the "Plan Is Not Confirmable", where the State Court has not adjudicated property division. *Motion for Relief of Stay* filed on February 10, 2005, by ex-wife (Doc. 46). Motion to Dismiss Case filed by ex-wife on April 14, 2005, (Doc. 57). Objection to the Repeated filing of Motion, Pleading by co-Debtor, filed by Debtor on April 18, 2005, (Doc. 60). Hearing held on April 26, 2005, (Doc 63) requiring *Certification of Counsel* with proposed order due on both motion by attorneys that will grant relief from stay to Family Court to make the property division, but not to effectuate any distribution. Ordered Debtor must file amended plan by December 20, 2005. Order for *Relief From*

4

*the Automatic Stay by Barbara H. Buchanan*, (Doc. 68) signed on May 19, 2005, <u>without</u> <u>compliance of Court Ordered Certification of Counsel</u> (Doc. 63). Debtor filed on August 19, 2005, an *Amended Chapter 13 Plan* (Doc. 79). Confirmation hearing continued to Special hearing scheduled for January 31, 2006 (Doc. 95). Motion to allow Family Court Order on Property Division filed on April 18, 2006 (Doc. 117) by ex-wife. *Second Amended Plan* filed on July 19, 2006 (Doc. 139) by Debtor. *Motion to Disallow Claims and for Respondent to Show Cause, Contempt*, filed on July 19, 2006 (Doc. 140), Exhibits (Doc. 141). Objection to Confirmation filed on August 14, 2006, (Doc. 144) by ex-wife. Motion to Approve Filed Family Court Order-Attorney Fees and Costs, filed on August 21, 2006 (Doc. 145) by ex-wife. *Response to Barbara H. Buchanan's Objection to Confirmation*, filed on August 22, 2006 (Doc. 147) by Debtor. *Motion to Sell Property Free and Clear of Liens*, filed on November 1, 2006 (Doc. 162) by ex-wife. *Motion to Strike Motion to Sell Real Estate related docket #162*, (Doc. 163) filed on November 15, 2006, by Debtor, hearing scheduled for December 19, 2006. Hearing held on November 21, 2006, allowing modified order to be entered that grants relief from the stay as to Barbara H. Buchanan, dismiss case with prejudice with a bar to refilling for 2 years, and lifts the stay of the relief of stay to MERS (Doc. 167). *Motion to Reconsider Dismissal of Case* (Doc. 168), filed on November 27, 2006. *Motion to Allow Confirmation of Bankruptcy*, (Doc. 171), filed on November 30, 2006, by Debtor. Order regarding Motion for Sale of Real Estate signed December 1, 2006, by the Honorable Judge Judith K. Fitzgerald, (Doc. 174). Notice of mailing of Order docket #174, filed on December 3, 2006 (Doc. 178).

**II. Facts Relevant to Appeal**

Appellant and Ex-wife were divorced on August 6, 2003. On that date, a Certificate of Divorce was entered in the Family Court of Sussex County, Delaware, terminating the parties' marriage and not making certain orders relating to support and property division. *See BRYANT v. BRYANT 1999 Del. Fam. Ct. LEXIS 22.*

The Decree provided in pertinent part:

No conditions pertaining to property, equitable division of property, support, or agreement between the parties, but allowed for the loss of Federal Health Care Benefits (TRICARE), used by Appellant for the treatment of cancer, which were attached to Appellant as a condition of marriage to a military member (ex-wife).

No conditions excusing the performance of contractual mortgage obligation, financial responsibility to support a spouse pursuant to 13 Del. C. § 502, and § 506, and/or agreement to access marital funds enjoined by stay pursuant to 13 Del. C. § 1509.

Appellant was born December 5, 1959, and was 44 years of age on the date of filing of the bankruptcy petition. He continues to work as a self employed farmer, generating some off farm income, he is retired from the United States Air Force Reserves, and receives no retirement or pension income until his 60th birthday. The Appellant has been forced to file for bankruptcy protection following the onset of cancer, immediately followed by a divorce which canceled the health care for which he relied on to receive chemo treatments, and testing.

The plan which underlies this appeal provided for refinancing all debt associated with the marital property, removing any debt encumbrance on Ex-wife, Barbara H. Buchanan, and further discharge, and/or not allow non-claims of Ex-wife as non-priority, and unsecured, where Ex-wife and counsel have failed to vest a value, or make "claim" in

6

Family Court pursuant to civil rule 12(b)(6), as well as bankruptcy rule 3002, where even exempt property under 11 USCS § 522 must initially be regarded as property of estate under 11 USCS § 541 and then claimed and distributed as exempt.

Ex-wife abused the legal process by objecting to confirmation on grounds, based on hearsay and conjecture. (Doc. 25). *See HENRIKSEN v. HENRIKSEN, C.A. No. 87C-MR-2, 1987 Del. Super. LEXIS 1361* The first ground of the objection declares the plan as "not feasible because it presumes to use the jointly owned real estate by living on it"... The second objection presumes that: "All the real estate on Debtor's Schedule A must be sold to pay the debts of the Debtor in a feasible Plan." The other objections mostly object to the use of the Bankruptcy code, and how it can be applied to the "Plan". At no time before or after the objection has the Ex-wife filed a "claim".

Following the deadline to file a "claim" of January 3, 2005, ex-wife filed a motion to dismiss on April 14, 2005 (Doc. 57), mostly claiming that "The Plan is not Confirmable", where ex-wife has not joined the Debtor as co-debtor to be able to motion for dismissal pursuant to Title 11 § 1307, and has not filed a "claim" for consideration under the Bankruptcy code.

Following the special hearing on confirmation, the Court determined that ex-wife, Barbara H. Buchanan, would be allowed a conditional relief of stay so that the Debtor and Ex-wife can return to the Family Court so that the Family Court could determine an equitable division opinion of the marital property, but not to effectuate any distribution (Doc. 63). On February 7, 2006 an evidentiary hearing in Family Court, concluded that Ms. Buchanan would be required to produce appraisals of all property she wished to be divided, where her counsel (Thomas E. Gay, Esquire), stipulated that such appraisals

7

would be conducted by Huston Appraisal Co.. Prior to conducting Court on March 21, 2006, the Family Court served an order dismissing all alimony and support petitions with prejudice. On March 21 and 22, 2006, a hearing was conducted by the Family Court to determine property separation, where Ms. Buchanan was seeking division of property based on values nearly 3 years after the parties separated, then failed to provide appraisals as directed by the Family Court on February 7, 2006, and further failed to state a "claim" upon which relief may be granted pursuant to civil rule 12(b)(6), motivating the Family Court to issue an order of sale of the properties to determine the value. On April 18, 2006, Ex-wife filed Family Court Order on Property Division (Doc. 117) with the Bankruptcy Court for consideration. On May 30, 2006, the Debtor filed a complaint against Ex-wife, with the Court of Chancery of the State of Delaware, alleging; Impairing the Obligation of Contract, Tort, and Interference with land use, case No. 2190-S, in an attempt to finalize matters of contractual impairment on real estate of the Bankruptcy. On June 27, 2006, the matters of Chancery Court case file 2190-S where filed in Superior Court of Delaware in and for Sussex County, due to lack of jurisdiction concerns noted by the Court of Chancery. The Superior Court then dismissed the complaint stating that "Family Court has jurisdiction over the division of the marital property". *See Buchanan v. Buchanan, 2006 Del. Super. LEXIS 279.* On August 21, 2006, Ex-wife filed for consideration with the Bankruptcy Court (Doc. 145), Family Court Order-Attorney Fees, dated July 12, 2006. On August 28, 2006, Debtor filed a special petition with the Delaware Supreme Court to stay Family Court orders on appeal of property division, attorney fees, and costs, referencing the Family Court File No. CS94-3107, Chancery Case No. 2190-S, and Superior Court Case No. 06C-06-041 ESB, where the Supreme

8

Court dismissed the petition for matters of Case No. 558, 2004, were closed. On October

24, 2006, Ex-wife's attorney (James B. Tyler, III) returned to Bankruptcy Court to

answer Debtor's motion for sanction for violation of stay (Doc. 151), and again requested

that the Court consider the Family Court orders pertaining to the selling of real property,

and for attorney fees and costs in the amount of $36,240, at which time the Debtor again

argued that Ex-wife, nor her attorneys have filed a "claim", and pursuant to Bankruptcy

Rule 3002(a) and 3002(c)(3), where an "unsecured claim which arises in favor of an

entity or becomes allowable as a result of a judgment may be filed within 30 days after

the judgment becomes final", where the latest Family Court order was dated July 12,

2006, and the time to file an appeal had expired on August 12, 2006. Following such

argument, the presiding Judge Fitzgerald, inquired Ex-wife's counsel "if they had filed a

claim". After informing the Court that a "claim" had not been formally filed, Judge

Fitzgerald instructed counsel to file a "claim", even if it would be considered a non-

priority, unsecured "claim", where a "claim" must be filed to enjoy in any distribution of

the estate.

Following a hearing on November 21, 2006, where an arrest warrant issued in

Washington D.C. on October 24, 2006, on a complaint by Ex-wife alleging that Debtor

accessed her garbage on March 1, 2005, to obtain her identity, caused Debtor's absence

for the Bankruptcy proceedings, the Bankruptcy Court issued an order to Dismiss, and

order to sell real estate (Doc. 174) dated December 1, 2006.

During the coarse of these proceedings, the Debtor has attempted to avail himself

by requesting financial disclosure of Ex-wife, to include an accounting of funds used to

retain a gauntlet of lawyers, take vacations to Europe, purchase luxury automobile, and to

pay for unnecessary Christian education for Heidi, where the Family Court failed to

enforce subpoena subject to financial discovery, has failed to recognize funds belonging

to the parties on deposit for the parties deceased Son as marital funds subject to

injunction, has failed to require disclosure of funds paid to counsel that were on deposit

for the parties minor child Heidi, and has failed to enforce any issue of financial for

which would implicate opposing counsel furthering Ex-wife's fraudulent use of marital

funds, enjoined by the divorce petition, as well as the Bankruptcy petition, counsel's

willful intent to impair the performance of Ex-wife's contractual mortgage obligations,

duty to support, and to provide continued health care insurance otherwise available

during marriage, during Debtor's cancer treatments.

**Argument**

### I.    The bankruptcy court erred in determining that ex-wife has a right to motion the court in absence of filed claim.

Bankruptcy Court Rules 3002(a) and 3002(c)(3), give direction as to the requirement

to file a claim, that a claim shall not be allowed unless a claim is filed, and where the

12(b)(6) of the federal rules of civil procedure also give cause to dismiss a matter before

the court for failing to state a claim, then the court has erred by determining that ex-wife

has a right to motion the court in absence of a filed claim, or to be considered an

"Appellee".

### II.    The bankruptcy court erred in dismissing the Debtor's bankruptcy to allow distribution of assets to ex-wife, and other non-claiming creditors.

At the time of filing a petition the notice to creditors and ex-wife was timely made,

where ex-wife and any potential creditor that may arise from litigation had ample time to

file a claim to be considered as having a right to payment. Where creditors that have

10

filed a claim pursuant to rule 3002(a) have a right to payment under the plan, any

consideration of a non-claiming party goes to prejudice both the Debtor and the creditors

with allowed claims pursuant to 3002(c)(3). Therefore pursuant to § 1307 a notice to

creditors and an opportunity for hearing is required because, if for no other reason, the

court may condition the dismissal as provided by § 349, where a dismissal re-vests the

property of the estate in the entity in which such property was vested immediately before

the commencement of the case, and further prejudices the Debtor's right to due process

of law by rewarding ex-wife with value in the **absence of a "claim"** in any court. *See*

*DAVIS v. DAVIS, Chapter 13, Case No. 06-02808-dd, 2006 Bankr. LEXIS 2837*

## III.    The bankruptcy court erred in determining the debt owed to ex-wife to be other than an unsecured, non-priority debt, in the absence of a filed claim.

Ms Buchanan's claim for equitable distribution, once quantified, will become an

entitlement against the Debtor's bankruptcy estate, subject to the distribution and

priorities of the Bankruptcy Code. Since the Bankruptcy Code gives her no right of

distribution superior to that of any other unsecured creditor, she will be entitled to a

prorata distribution along with other unsecured creditors if she files a claim. *See*

*POLLIARD v. POLLIARD, 152 B.R. 51; 1993 Bankr. LEXIS 442.*    At the time the court

dismissed the case at the request of ex-wife, the ex-wife had failed to file a claim, or vest

a value in any court where her interest would be allowed pursuant to § 502, where by

dismissing the bankruptcy improved the ex-wife's interest in all property from claims not

allowed pursuant to 3002(c)(3), to a full equitable share with the intent to liquidate, and

force Debtor out of his home, and business, which goes to violate the intent of 11 U.S.C.

§ 305(a)(1), and gives cause for appeal. *See Benyola v. Benyola 136 B.R. 646; 1992*

11

*Bankr. LEXIS 297.*

**IV.    The bankruptcy court erred in denying/delaying confirmation of the plan.**

The bankruptcy court erred in denying confirmation of the plan, where objecting ex-

wife attempting to be considered as creditor, equity security holder, failed to assert any

proper basis for such denial, and/or vest an equitable share by filing a claim pursuant to

3002(a), and/or § 509, where she has failed to join the bankruptcy as a co-debtor, or

creditor.  *See ROBERGE v. ROBERGE 188 B.R. 366; 1995 U.S. Dist. LEXIS 16832.*

**V.    The bankruptcy court erred in due process of law by dismissing the Debtor's bankruptcy to allow distribution of assets to ex-wife and other non-claiming creditors, resultant of a hearing conducted without proper notice or timely notice.**

On a motion from ex-wife the bankruptcy court conducted a hearing without proper

notice, or timely notice, to all creditors, or Debtor (Doc. 167), pursuant to Rule 9006(d),

then dismissed the Debtor's bankruptcy to allow distribution of assets to ex-wife, and

other non-claiming creditors, where the assets of the estate will not fully pay such debts

resulting from family court orders, and strips debtor of all assets, money, and ability to

continue any business to support himself.

**VI.    The bankruptcy court erred in dismissing the Debtor's bankruptcy to allow distribution of assets to ex-wife, and other non-claiming creditors in the interest of ex-wife, where such interest have not been made Choate.**

The divorce decree underlying this controversy does not order Appellant-Debtor to pay

Ex-wife, at the time the Debtor filed the petition for Bankruptcy, and where the

Bankruptcy petition cuts off any action against the Debtor and his estate, where property

of the bankrupt estate in the absence of any "claim" forming a "constructive trust" in

Family Court beyond the issuance of a certificate of divorce, vests all property of the

12

Debtor into the bankrupt estate, encumbering any inchoate marital interest in property
listed in the Bankruptcy petition, and is then in sole control of the Debtor pursuant to
Title 11 § 541. *See HASSLER v. HASSLER, 2004 Bankr. LEXIS 412*, and *Davis v. Cox,
356 F.3d 76; 2004 U.S. App. LEXIS 569.* In the shadow of Ex-wife failing to file a
"claim" with the Family Court pursuant to Family Court Rule 12(b)(6), and Ex-wife's
counsel failing to request relief of stay from the Bankruptcy Court, to pursue attorney
fees from the Debtor, the resultant Family Court orders pertaining to property distribution
and attorney fees, <u>fail to vest</u> a value for which can be considered a Choate component of
the Debtor's estate, and where ex-wife and her counsel have failed to file a "claim"
pursuant to B.R. Rule 3002(a), 3002(c)(3), they are therefore not entitled to priority status
under 11 U.S.C. § 507(a)(7), or any "right to payment" in the absence of a "claim". It
should also be recalled that the liens of the home mortgage, and mortgage on farm
property against the Wife was not affected by Debtor's Chapter 13 Case, thus, if the Ex-
wife wanted to retain possession of any value, she was obligated to see that the mortgages
against the property were paid. *See Bryer, v. Bryer, 216 B.R. 755; 1998 Bankr. LEXIS 10.*
With the forgoing stated, the Bankruptcy Court erroneously found that the ex-wife had a
right to receive payment from the sale of the real estate, even in the absence of a "claim",
in any court, and dismissed the Bankruptcy to effectuate the Ex-wife's desires. *See
ROBERGE v. ROBERGE 188 B.R. 366; 1995 U.S. Dist. LEXIS 16832.*

**B. Language of Divorce Decree Presented Precludes any Property Division.**
Again, the Decree provided in pertinent part: The clear and unambiguous language of
State law empowers the divorce decree, and provides that Appellant assume sole and
exclusive ownership of all the property included in the bankrupt estate at the time of

13

filing the bankruptcy petition, unless otherwise determined by timely "claim" filed, or

agreement between Debtor and Ex-wife forming an "express" or "implied trust". *See*

*ROBERGE v. ROBERGE 188 B.R. 366; 1995 U.S. Dist. LEXIS 16832, Davis v. Cox,*

*356 F.3d 76; 2004 U.S. App. LEXIS 569, and HINES v. HINES, No. 05-8065, 2006*

*Bankr. LEXIS 1160*

### VII. The Bankruptcy Court erred in dismissing the Debtor's bankruptcy to allow value of attorney fees vested in Family Court in violation of Stay 362.

After long delays in Family Court due to repeated requests for continuance by Ex-wife,

the Bankruptcy Court provided a conditional relief of stay (Doc. 68), without certification

of council as directed in (Doc. 63), which allowed relief from stay to Family Court to

make the property division, but not to effectuate any distribution. Where the definition of

"parties" of a divorce is that of Husband and Wife, and do not include that of counsel, or

the interest of counsel, which limit the scope of the "relief of stay" to matters of property

owned by the "parties", and does not give opportunity to create, perfect, or enforce any

lien including that of counsel for a party not joined in the Bankruptcy, against property of

the bankrupt estate, by lawyers outside the bankruptcy, in the absence of any "claim"

timely filed with the Bankruptcy Court, is an error by the Bankruptcy Court that impairs

the Debtor's equitable resolve effectuated through equal protection of the law. Whereby

dismissing the Debtor's bankruptcy to allow distribution of assets to Ex-wife, and other

non-claiming creditors (lawyers) in the interest of Ex-wife, on Ex-wife's motion, where

the lawyers for Ex-wife vested a value for fees through Family Court Order, and affidavit

maliciously prosecuted beyond any property distribution hearing, in violation of Title 11

§ 362(a)(4), and beyond the scope of any "relief of stay" provided by the Bankruptcy

14

Court (Doc. 63), where a request by counsel for attorney fees is beyond property division between the "parties" of divorce, and requires an encumbering determination by the Family Court that exceeds the scope of relief of stay, for which is noted in paragraph 2 of the Family Court order filed with the court (Doc. 117), is an error by the Bankruptcy Court that impairs the Debtor's equitable resolve effectuated through equal protection of the law. *See CORTELLESSA v. CORTELLESSA 2006 Bankr. LEXIS 1435, See ROBERGE v. ROBERGE 188 B.R. 366; 1995 U.S. Dist. LEXIS 16832.*

**VIII.    The Bankruptcy Court erred by prejudicing the Debtor's right to due process of law when dismissing the Debtor's bankruptcy, resultant of untimely hearing, and where dismissal prejudices the Debtor, and allowed creditors pursuant to Title 11 § 502, and Rule 3002.**

Dismissing the Debtor's bankruptcy to allow distribution of assets to ex-wife, and other non-claiming creditors (lawyers) in the interest of ex-wife, on ex-wife's untimely motion, where ex-wife has not joined the bankruptcy as a co-debtor, nor filed a "claim" allowing the Bankruptcy Court's jurisdiction to dismiss pursuant to Title 11 § 1307, prejudices the Debtor, and allowed creditors rights to due process of law pursuant to Title 11 § 502, and rules of bankruptcy, by voiding on dismissal, benefits of any defense available to the Debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses, pursuant to Title 11 § 558. *See DAVIS v. DAVIS, Chapter 13, Case No. 06-02808-dd, 2006 Bankr. LEXIS 2837.*

**IX.    The Bankruptcy Court erred and prejudiced the Debtor's right to due process of law by determining a debt to be owed to ex-wife in the absence of a claim, and not a condition of support, to be non-dischargeable.**

As discussed above, the ex-wife failed to state a "claim", and/or vest a value for which

15

she desired the Appellant to owe her, where it is further averred that all Family Court

orders are independent of any support obligation, due to the dismissal of all support

claims filed with the Family Court, prior to commencing the property separation

hearings, and where Ex-wife's counsel failed to file an appeal as to the Family Court's

support determination, making such debt expected by ex-wife dischargeable pursuant to

11 USCS § 523, and where the Debtor is on a fixed income as noted in the filed

Bankruptcy schedules, the Debtor does not have the ability to pay such debt from income

or property of the Debtor or Debtor's estate, in addition to the Debtor being engaged in a

farming business, for which payment of expenditures is necessary for the continuation,

preservation, and operation of that farming business, and where discharging of such debt

would not result in a benefit to the Debtor that outweighs the detrimental consequences to

a former spouse, where Ex-wife has failed to request relief in the form of ongoing

financial support from any court or to otherwise state her financial reliance on property

jointly owned during marriage, then any debt owed to Ex-wife is dischargeable pursuant

to the Consumer Credit Protection Act;" substituted paragraph. (5), codified by 11 U.S.C

§ 507(a)(7), and should not be cause to dismiss the bankruptcy, or delay confirmation,

where doing so prejudices the Debtor's right to due process of law. *See HASSLER v.*

*HASSLER, 2004 Bankr. LEXIS 412.*

### Conclusion

The Bankruptcy Court in dismissing the Appellant-Debtor's bankruptcy,

following denials of confirmation of Plan, First Amended Plan, and Second Amended

Plan, due to delays in matters before the Family Court, in the shadow that Ex-wife has

failed to file a "claim" pursuant to Rule 3002, and where she has motioned the

16

Bankruptcy Court in lieu of a directive by the court to file such "claim", has prejudiced

the Debtor's right to avail himself of a remedy available by and through due process of

law, and equal protection under the law guaranteed by the section one of the 14th

amendment, codified by 42 U.S.C. §1983. Where it seems that counsel for Ex-wife in

bankruptcy proceedings, counsel for ex-wife in family court proceedings, and counsel

representing the mortgage company (MERS), have filed documents to interfere with such

bankruptcy without providing service of foreclosure proceedings by MERS to Ex-wife,

while in close contact with Ex-wife, and her counsel, shows that conspiracy by counsel to

interfere with civil rights pursuant to 42 U.S.C. §1985 is a matter that the Court should

give consideration.

   Pursuant to 42 U.S.C. §1981, the Debtor has a right to make and enforce

contracts, as well as to reorganize under Chapter 13 bankruptcy, where any impairment

either intentional, or unintentional, which so impairs such reorganization gives cause for

enforcement by the court. As stated within this appeal, as well as evidenced in litigation

before the Family Court and the Bankruptcy Court, the Ex-wife, and her counsel have

impaired the Confirmation of this Bankruptcy, as well as impaired the performance of

mortgage contracts in place before and during all matters before the courts, without filing

a "claim", without any stipulation, or agreement between the party's forming an

"express" or "implied" trust, without any "constructive trust" resultant of a "claim",

without filing a late "claim", and even when directed by the Bankruptcy Court failed to

file a late "claim" in order to share in distribution, is cause for Ex-wife and her counsel to

loose any right to move the Bankruptcy Court for relief, including relief of stay,

dismissal, and/or objection to confirmation, where dismissal of the Debtor's bankruptcy

following a directive for Ex-wife to file a late "claim", prejudices the Debtor's right for the Bankruptcy Court to enforce a prior court directive. In this case, where the Ex-wife, and/or her counsel, have failed to file a "claim" with the Bankruptcy Court within the time allowed to do so, and where Ex-wife has failed to vest a value or state a "claim" in Family Court for which the Family Court can determine Ex-wife's choate value of the bankrupt estate creating a "constructive trust", where such issues have been brought before the courts early in these proceedings, any motion or order granting relief, or relief of stay to allow Barbara H. Buchanan to return to Bankruptcy Court to effectuate Family Court orders on attorney fees, and property division, filed with the Bankruptcy Court for consideration in the absence of a filed "claim", on a date over four months after the requirement to file a "claim" had expired pursuant to Rule 3002(c)(3), should make any relief by way of; dismissal of Debtor's bankruptcy, consideration of Ex-wife's late claims, and/or distribution as a result of such Family Court hearing, mute for failing to file a "claim", pursuant to Rule 3002(c)(3) to effectuate or create a "trust", and where the Ex-wife failed to vest a value in Family Court, or file a "claim" in Bankruptcy Court, one year after receiving relief of stay to proceed in Family Court, there should be no question as to disallowing all of Ex-wife's motions, claims, or entries on the bankruptcy docket in an attempt to avail herself without filing a "claim", including any right to distribution of assets of the Debtor's bankruptcy estate.

Rules pertaining to "claim" govern the Bankruptcy court's jurisdiction to allow right to payment, allow creditors, and qualify an entity to have the right to move the court. In this case it appears that the Bankruptcy Court violated procedure due process of law, when dismissing the Debtor's bankruptcy without providing notice of a hearing on a

18

motion from disallowed creditors pursuant to Bankruptcy Rule 3002(c)(3), for which there was no established "trust", or "constructive trust" affording right to payment from a vested value in the bankrupt estate, whereby definition of "constructive trust" is that "found to exist by operation of law or by "construction" of the court, regardless of any lack of express agreement between or intent of the parties", wherefore the court must have a "claim" pursuant to Rule of Civil Procedure 12(b)(6) to have subject matter jurisdiction to "construct" a trust from which equitable relief can be afforded.

WHEREFORE, Appellant-Debtor respectfully requests that the District Court overrule the Bankruptcy Court's order dismissing the Appellant-Debtor's bankruptcy, that the District Court overrule the aforesaid determinations of the Bankruptcy Court which have allowed Ex-wife to continue to move the Bankruptcy Court in the absence of a "claim", and that the case be remanded for further proceedings, with appropriate instructions pertaining to confirmation, allowance and disallowance of "claims", and Debtor's right to equal protection, as well as due process of law guaranteed by the 14th amendment of the U.S. Constitution, as codified within this appeal.

Respectfully submitted by;

Date: April 1, 2007

David J. Buchanan
34806 Hudson Road
Laurel, Delaware 19956
(302) 875-1362

19

## **CERTIFICATE OF SERVICE**

I David J. Buchanan, hereby certify that on April 2, 2007, caused true and correct copies of the attached *Brief of Appellant* on Appeal of Bankruptcy final order, to be served upon the following people as indicated.

Clerk of the U.S District Court
844 North King St.,
Wilmington, DE 19899-3570
*Via Hand Delivery*

Michael B. Joseph, Esquire, Trustee
824 Market Street, P.O. Box 1351
Wilmington, DE 19899-1351
*Via Hand Delivery*

James B. Tyler, III, Esquire
211E. Market Street
Georgetown, DE 19947
*Via 1st Class U.S. Mail*

David J. Buchanan
34806 Hudson Road
Laurel, Delaware 19956
302 875-1362

Home | Sources | Site Map | What's New | Help

**Search Terms: 136 B.R. 646**

**FOCUS™**                    Search Within Results                    Edit Search

Print   Email

Document List   Expanded List   KWIC   Full                    **Document 1 of 1.**



IN RE: PAUL BENYOLA, JR., Debtor. JOHN F. AMES, TRUSTEE, Plaintiff. v. PAUL BENYOLA, JR., SUZANNE E. BENYOLA, FRANKLIN FIRST FEDERAL SAVINGS, and FRANK RALICK, Defendants.

BANKRUPTCY CASE No. 90-33743-S, ADVERSARY PROCEEDING No. 91-3039-S

UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA, RICHMOND DIVISION

**136 B.R. 646; 1992 Bankr. LEXIS 297**

February 3, 1992, Decided

**OPINION:** [**1]

[*647] MEMORANDUM OPINION

This matter comes on before this Court upon the filing of a complaint by John F. Ames, Trustee in Bankruptcy for the debtor, to sell property owned by the debtor and the debtor's spouse, as tenants in common, free and clear of liens and interest pursuant to 11 U.S.C. § 363(h).

Upon consideration of the evidence and arguments of counsel presented at trial on November 22, 1991, the Court makes the following findings of facts and conclusions of law.

STATEMENT OF FACTS

Paul Benyola, Jr. and Suzanne Elizabeth Benyola are co-owners of a single family residence located in the Pocono Mountains of Pennsylvania ("the Property"). Mr. and Mrs. Benyola hold title to the Property as tenants in common each owning a one-half undivided interest in the Property. The Property was purchased by them in 1979 prior to their marriage and at that time it was the intent of the parties to title the Property as tenants in common. The improvements consist of a single family dwelling on a single building site which is not subject to partition, due to land covenants and thus is not divisible in kind. Additionally, the sale of the debtor's undivided one-half interest in the Property [**2] is not practicable nor would that interest equate to one-half of the value of the whole if it were sold separately.

The evidence presented at trial places a fair market value on the Property of approximately $ 172,000. It appears that the Property is encumbered by a first deed of trust held by Franklin First Federal Savings in the amount of $ 36,000, and a second deed of trust held by Frank Ralick, Mrs. Benyola's father. Mrs. Benyola places a value of approximately $ 22,000 on the balance due on the obligation secured by the second deed of trust whereas Mr. Benyola places its value at $ 8,500. Although the issue of the value, extent and priority of the Ralick debt is not presently before the Court, for the sole purpose of

determining if equity exists in the Property the Court will accept the amount of $ 22,000 as owing on the second deed of trust. Therefore, it appears that there is approximately $ 112,000 of equity in the Property.

Although the parties are presently married, they are currently separated and a divorce proceeding is pending before the Superior Court of New Jersey, Chancery Division, Momouth County. Over the years the parties have sometimes occupied the house [**3] and have at other times rented the Property for extended periods, primarily while they were residing in Texas. Mrs. Benyola is currently residing in the Property.

[*648] By Order of the New Jersey court, Mr. Benyola is responsible for making the mortgage payments on the Property. It appears at the time of this hearing the mortgage payments are approximately eight months in arrears.

CONCLUSIONS OF LAW

I.

Mrs. Benyola's motion for voluntary abstention, made during argument before this Court on November 22, 1991, is denied. The Court, after notice and a hearing, may voluntarily abstain from hearing a case at any time if the interests of creditors and the interests of the debtor would best be served by such dismissal. 11 U.S.C. § 305(a)(1). "Under this test, abstention is appropriate only if it will not impair the interest of any of the parties involved." (emphasis added). Farmer v. First Virginia Bank of Fairfax City, VA, 22 Bankr. 488 (D.C.E.D.VA 1982). The Court must therefore consider any detrimental effect a voluntary abstention may have upon Mr. Benyola, Mrs. Benyola, the secured creditors or the unsecured creditors.

The Court cannot find, from the [**4] evidence before it, that the interests of the creditors of the debtor would not be impaired by an abstention. If an abstention was granted and the New Jersey Court were to award the Property to Mrs. Benyola in satisfaction of delinquent maintenance and support payments, the estate would receive none of the debtor's share of the equity in the Property. While such a distribution would obviously be to Mrs. Benyola's benefit, such an award would impair the interests of the other unsecured creditors thereby subverting the intent of the Bankruptcy Code to create equality of distribution. Were this Court to decline to act, the New Jersey Court could also order a continuation of the status quo whereby Mr. Benyola would continue to be responsible for paying the mortgage payments and Mrs. Benyola would retain possession of the Property. Again, the unsecured creditors would receive no distribution of the debtor's equity in the Property and, additionally, the creditors with a security interest in the Property may be hindered in collecting the arrearages presently owed them. Equally as speculative as the type of distribution to be made by the New Jersey Court is the time frame within [**5] which that Court might render a decision. A delayed ruling would unnecessarily postpone distribution, if any, to the creditors of the bankruptcy estate.

Normally, a debtor's liquidated interest in property is distributed through the bankruptcy estate, by the Trustee, to creditors filing timely proofs of claim. If Mrs. Benyola has timely filed a proof of claim, she would share in the liquidated estate. Additionally, any claim Mrs. Benyola might have against Mr. Benyola for support may be nondischargeable thereby surviving bankruptcy and allowing her to have an additional and separate opportunity to collect from Mr. Benyola at some future date. In contrast, this proceeding is the sole opportunity which other general creditors have for receiving any payment from Mr. Benyola, as all unsecured dischargeable debts will be discharged in bankruptcy.

For these reasons, the Court finds that it would not be in the best interests of the creditors or the debtor for this Court to abstain from hearing the matter now before it.

II.

The sale of property owned by the estate as a tenant in common with a third party is governed by 11 U.S.C. § 363(h) which allows the Property to be sold only if [**6] (1) partition in kind is impractical; (2) the estate would realize significantly less by selling its undivided interest rather than selling the Property as a whole; (3) the benefit to the estate outweighs the detriment to of the co-owner; and (4) the Property is not involved in the production, transmission or distribution of electricity or gas for heat, light or power.

The Court finds that the nature of the Property as a single family dwelling prohibits the partition in kind of the Property therefore, rending such a partition impracticable and the Court additionally finds [*649] that the estate's undivided interest in the Property is not marketable and consequently the sale of the estate's undivided interest would realize significantly less for the estate than the sale of the Property as a whole. The Court further finds that the Property is not involved in the manufacture or transmission of energy.

Although Mrs. Benyola will be dispossessed by a sale of the property, that sale would clearly benefit the estate by providing funds from which general creditors could be paid. Upon sale of the Property, pursuant to an order of this Court, Mrs. Benyola would receive an amount equivalent to [**7] her interest in the Property less her share of the sale expenses and fees. The balance of the net proceeds would be available to pay creditors of the estate, which would include Mrs. Benyola if she is a timely claimant. The creditors whose debts are dischargeable will have no further recourse against the debtor or his after acquired property. Because Mrs. Benyola will have her proceeds forthcoming from the sale of this asset, which she can apply to the acquisition of another residence, the benefits to the estate outweigh the detriment to the co-owner.

Additionally, the Court finds that the benefit to the estate of using Mr. Benyola's proceeds of the sale to pay general creditors outweighs the detriment, if any, to the co-owner because Mrs. Benyola would receive payment for her interest in the Property and any claim for support or maintenance resulting from the divorce proceeding would be preserved in full since any claim Mrs. Benyola might have for alimony, maintenance or support would be nondischargeable to the extent it meets the test of 11 U.S.C. § 523(a)(5).

The Court therefore finds that the Trustee should be granted authority to sell the Property free and clear of all liens [**8] and encumbrances, such liens and encumbrances to attach to the proceeds of sale, after which the bankruptcy estate and Mrs. Benyola should each receive a one-half interest in the proceeds of the sale less the expenses, commissions and fees incurred in such sale.

The Court further finds that the ordered sale of the Property will render moot Mrs. Benyola's counterclaim for relief from the automatic stay and said counterclaim should be DISMISSED.

The plaintiff is directed to prepare and submit an order in conformity with this opinion pursuant to Local Rule 112.

ENTER:

Blackwell N. Shelley

United States Bankruptcy Judge

February 3, 1992

Richmond, Virginia


**Document 1 of 1.**

Terms and Conditions | Privacy

Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

**Search Terms:**          , **Bryant**

**FOCUS™**

**Document 2 of 2.**

## LORI Z. **BRYANT**, PETITIONER v. JAMES G. **BRYANT**, JR., RESPONDENT

### FILE NO. CN97-08832

### FAMILY COURT OF DELAWARE, NEW CASTLE

### 1999 Del. Fam. Ct. LEXIS 22

### February 17, 1999, Date Submitted
### March 17, 1999, Date Decided

**PRIOR HISTORY:**    [*1] PETITION NO. 97-27293.

**COUNSEL:**

FRANCINE R. SOLOMON, ESQ., FOR PETITIONER.

JENNIFER A. HARTNETT, ESQ., FOR RESPONDENT.

**JUDGES:** BUCKWORTH, J.

**OPINION BY:** BUCKWORTH

**OPINION:** This is the Court's decision concerning property division and alimony, matters ancillary to the divorce of the parties, as a result of the divorce petition brought by Lori Z. **Bryant** ("Wife") versus James G. **Bryant** Jr. ("Husband"). Present in Court for the hearing on February 17, 1999 were Wife, represented by Francine R. Solomon, Esquire, and Husband, represented by Jennifer Hartnett, Esquire. The Court also heard testimony from James G. **Bryant,** Sr., Husband's father.

FINDINGS

1. Petitioner ("Wife") and Respondent ("Husband") married on March 10, 1979; separated on July 20, 1997; and were divorced on July 16, 1998, ending a marriage of nineteen years and four months.

2. There are two children of the marriage: [TEXT REDACTED BY THE COURT.] **Bryant** III, born July [TEXT REDACTED BY THE COURT.] 1979, and [TEXT REDACTED BY THE COURT.] M. **Bryant,** born January [TEXT REDACTED BY THE COURT.], 1981. A child support order is currently in place for the support of the child who is still a minor, requiring Husband to pay  [*2]  $ 600 per month ($ 540 current support plus $ 60 towards arrears). n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -



n1 **Bryant** v. **Bryant**, Del. Fam., File No. CN97-08832, Sackovich, M. (February 19, 1998).


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

3. This was the first marriage for both Husband and Wife. Husband has remarried, although he separated from his present wife approximately two weeks after their marriage and remains separated.

4. Husband was 42 years of age at the time of the hearing; he is now 43 years of age and is in good health. He is presently employed by BE&K, earning $ 4,050 gross per month. Husband is a college graduate who has an Associates Degree. He was the primary wage earner during the parties' marriage.

5. Wife is 39 years old and is in average health. She is a high school graduate, with no vocational training and no occupational skills, who worked only part-time during the marriage. Wife is currently unemployed but anticipates starting employment in the immediate future at Bob Evans. Between hourly wage and tip income she should average approximately $ 7.80 per hour. If [*3] Wife's estimated average hourly income is computed for a 40 hour work week, she should gross $ 1,352 per month. Wife had previously filed two motions for Interim Alimony, both of which were denied. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n2 **Bryant** v. **Bryant**, Del. Fam. File No. CN97-08832, Buckworth, J. (November 24, 1998); **Bryant** v. **Bryant**, Del. Fam., File No. CN97-08832, Buckworth, J. (June 10, 1998).


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

6. The assets of the parties are as follows:

a) [TEXT REDACTED BY THE COURT.] Chandler Circle, Bear, Delaware 19701. The parties stipulate that this marital residence shall be sold. Wife shall choose a realtor and shall have the property listed within 30 days. The net proceeds from the sale of the marital residence will be distributed pursuant to the percentage distribution set forth in this opinion.

b) 1986 Camaro. This automobile was sold by Wife for $ 500 post separation and the proceeds were used to buy the 1988 Buick Skylark. The parties stipulate that the Skylark was purchased post separation and shall not be considered in the distribution. [*4]

c) Husband's 401(k). The parties stipulate that there have been no post separation contributions to Husband's 401(k) Plan. It was valued at $ 43,973 as of August 31, 1998. The current balance (as of February 17, 1999) of the 401(k) shall be distributed pursuant to the percentage distribution set forth hereafter.

d) Personal Property. Husband has provided a Master List to Wife's Counsel. If the parties can not agree on distribution then a two list method shall be utilized.

e) Husband's Vehicles. Testimony was presented that Husband owned a 1965 Chevrolet Corvette

during the marriage as well as a Harley Davidson Motor Cycle that was acquired during the marriage. Husband disputes this and states that both of those vehicles are titled in his father's name. Mr. **Bryant** Sr. corroborated Husband's testimony. Husband testified that his father lets him and his brother-in-law use the vehicles, so long as they maintain the vehicles and pay the insurance on the vehicles. Evidence was submitted regarding the motorcycle ownership card and insurance card, both of which were in Husband's name. (See Petitioner's Exhibit 4). Evidence was also submitted regarding insurance cards on the Corvette that [*5] were in Husband's name. (See Petitioner's Exhibit 2). No evidence of the title on either the Corvette or the Harley was presented.

7. Debts. The parties stipulate that the marital debts are as follows:

| | | |
|---|---|---:|
| a) | Mainline Mortgage | $ 70,238.17 |
| b) | Sears | 1,992.49 |
| c) | Bell Atlantic | 265.75 |
| d) | Advanta | 5,699.19 |
| e) | Strawbridge's | 487.29 |
| f) | Mobile | 163.54 |
| g) | Artesian | 77.29 |
| h) | Comcast Cellular One | 213.01 |
| I) | Exxon | 306.84 |
| j) | Beneficial | 1,883.42 |
| k) | Macey's | 266.39 |

Husband argues that the Sears debt was for a washer and dryer purchased by Wife at or around the time of separation and should be treated differently than the other debts. Wife's position is that the washer and dryer were bought prior to separation, with Husband's knowledge, because the old ones broke. The washer and dryer also appear on the Master List of personal property submitted by Husband. (See Respondent's Exhibit 2). Husband also argues that the balance on the Beneficial account stems from purchases of food products shortly prior to separation of the parties and should also be treated separately from the other debts. Wife argues that the food products bought on the Beneficial account [*6] were bought several months prior to separation and that the majority of the food was consumed by the parties and their children prior to separation.

The parties stipulate that Husband paid two post separation debts of Wife: Delmarva Power in the amount of $ 588.04 and Bell Atlantic in the amount of $ 361.63.

CONCLUSIONS

1. The marital residence located at [TEXT REDACTED BY THE COURT.] Chandler Circle, Bear, Delaware 19701 shall be listed for sale within 30 days of the date of this Order. Wife shall choose the realtor. Both parties are to fully cooperate with the realtor to ensure that the home is sold as quickly as possible. The net proceeds after settlement shall be distributed pursuant to the percentage distribution set forth in this opinion.

There is a large amount of arrears owed on the mortgage, above and beyond the $ 70,238.17 balance as of the date of separation. Wife has retained exclusive use and enjoyment of the marital residence since separation. Under the Interim Alimony Orders, Wife was determined to have sufficient income to make the monthly payments. Neither party has made payments on the mortgage since separation. In the

Court's Order of June 10, 1998, counsel [*7] for both parties were ordered to negotiate on the issue of mortgage foreclosure. n3 It is clear that this part of the Court's directive was not followed. The home has not been sold and payment arrangements have not been made. When Husband moved out of the home, Wife did not have the ability to immediately begin to make the full mortgage payments and child support was not immediately in place. Wife continued to have this expense, while by all accounts Husband has had minimal rental expenses, as he has lived for the majority of the time with his parents. While Wife enjoyed the exclusive use of the home, and thus should bear more of the responsibility for the accrued arrears, the Court finds that the responsibility for the arrears rests with both parties. Other, responsible options, instead of refusing to pay the mortgage, were available to both parties. Therefore, the arrears will be treated outside of the percentage distribution set forth herein. Wife is responsible for 65% of any arrears above and beyond the $ 70,238.17 balance and Husband is responsible for 35% of such arrears.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 **Bryant** v. **Bryant**, Del. Fam., File No. CN97-08832, Buckworth, J. (June 10, 1998).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*8]

2. Wife shall retain the 1988 Skylark, which is not subject to distribution. Wife, however, shall be credited with retaining $ 500 from the sale of the 1986 Camaro.

3. The value of Husband's 401(k) as of February 17, 1999 shall be distributed pursuant to the percentage distribution to be set forth in this opinion. Husband is to provide both counsel with the balance of the 401(k) as of February 17, 1999 within fourteen (14) days of the date of this Order. The parties may elect to distribute the 401(k) pursuant to a Qualified Domestic Relations Order (QDRO).

4. The household furnishings shall be divided by a two list method, with Husband preparing the two lists and forwarding them to Wife within two weeks of receipt of this Order. The lists are to include all marital property, regardless of the label attached by Husband on the Master List and regardless of who currently has possession of the items. Wife shall have fourteen (14) days to chose one list, and should she fail to do so, Husband then has the right to choose one list. After the list is chosen, the parties shall make arrangements, within ten (10) days, to distribute the items.

5. The 1965 Chevrolet Corvette and the Harley [*9] Davidson motorcycle shall not be subject to distribution, as insufficient evidence was presented to determine that they are property bought during the marriage.

6. The marital debt shall be determined as follows:

Mainline Mortgage  $ 70,238.17, which will be liquidated at the time of the sale of the marital residence;

| | |
|---|---|
| Sears | $ 1,992.49 |
| Bell Atlantic | $ 265.75 |
| Advanta | $ 5,699.19 |
| Strawbridge's | $ 487.29 |
| Mobile | $ 163.54 |

| Artesian            | $   77.29   |
| Comcast Cellular One | $  213.01   |
| Exxon               | $  306.84;  |
| Beneficial          | $ 1,883.42. |
| Macey's             | $  266.39   |

The Court shall not treat the Sears debt or the Beneficial debt separately as they were debts incurred for the benefit of both parties prior to the parties' separation; the washer and dryer are included on the list of personal property and the food products were consumed by the whole family. In his 52(d) submission, Husband requests credit for making payments on the parties' marital debt. As no evidence was submitted by either party with regard to any payments on the marital debts, neither party shall receive credit for any payments on the marital debts listed above.

7. Husband shall receive credit for the [*10] payment of two post separation debts of Wife: Delmarva Power in the amount of $ 588.04 and Bell Atlantic in the amount of $ 361.63.

8. Counsel and the parties are directed to cooperate in implementation of the distribution of this estate, with the Court determining that the percentage distribution shall be 65/35 in favor of Wife. Wife is entitled to 65% of the assets and Husband to 35% of the assets. Except for the mortgage arrears, which have been addressed in paragraph (1), Wife is be responsible for 35% of the debts and Husband for 65% of the debts.

REASONS

Pursuant to 13 Del. C. § 1513, the Court in dividing the marital property and allocating the marital debts has considered the following factors.

1. The length of the marriage.

This nineteen year and four month marriage was of long duration under current standards.

2. Any prior marriage of the party.

This was the first marriage for both parties. Husband has remarried, although he separated from his present wife shortly after their marriage and remains separated.

3. The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties [*11] .

It is undisputed that Husband's financial situation is superior to Wife's. He presently earns approximately $ 4,050 per month and has been the primary wage earner throughout the parties' marriage. Wife is currently unemployed but anticipates starting work in the immediate future, with an anticipated income of $ 1,350 gross per month. Husband has incurred the burden of the debts of the parties, with the exception of the mortgage, on which neither party has made payments since separation. The Court notes that Wife and the parties' children have resided in the household since separation.

Husband is a college graduate and has maintained steady employment. He has thus been able to build a career with pension and savings benefits. Wife is a high school graduate with no vocational skills or

occupational training. It is unlikely that she will obtain such training in the near future. Neither party submitted documentation regarding their present monthly living expenses.

4. Whether the property award is in lieu of or in addition to alimony.

The property award will be in lieu of alimony. Wife has requested alimony of $ 1.00 per year, in order to preserve an alimony claim for the future. [*12] This Court has previously determined that Wife was not in need of interim alimony. Wife, however, argues that the Court's determination was based partially on child support income that she is presently receiving. Wife anticipates that once that child support order terminates, she will be in need of alimony. Aside from the request of $ 1.00 per year alimony, Wife presented no evidence regarding her present dependency. Wife's request for alimony will be discussed in more detail herein.

5. The opportunity of each for future acquisitions of capital assets and income.

Although the parties are approximately the same age, Husband has a significantly greater work history and a greater earning capacity than Wife. Given Husband's superior earning capacity, he has greater opportunity for future acquisition of capital assets and income, even if Wife becomes fully employed at her new job.

6. The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker or husband.

Both parties contributed toward the marital estate, although the Court notes that the estate itself [*13] is limited. Aside from their personal property, the only assets of the parties are the marital residence and Husband's 401(k) Plan. Husband contributed financially to the marriage and, while Wife made less financial contribution, she contributed as a homemaker and as the caretaker of the parties' children. Although Husband disputes that the parties agreed that Wife should remain home with the children, it is undisputed that she did so.

Husband further argues that Wife has dissipated marital assets. Husband testified that Wife has kept a set of manifolds and wheels from the Corvette. Husband attempted to get them back himself but Wife called the Police. In addition, Husband argues that Wife has caused the dissipation in the equity in the marital residence. According to Husband, he made efforts to sell the residence by having it listed and, at one point, he believed that buyers were available but Wife withdrew the listing. Husband testified that his credit has been harmed by the failure to make mortgage payments. The Court has addressed the issue of the mortgage payments and, while Wife bears more responsibility for the arrears, as she had exclusive use of the home, both parties are [*14] responsible for the accumulation of the arrears. Husband also indicated that the only notice he ever received with regard to Wife's bankruptcy action was a notice that she had withdrawn it. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 At one point, Wife filed a Petition in Bankruptcy Court but subsequently withdrew it.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

7. The value of property set apart to each party.

The marital residence shall be sold and the proceeds distributed. There will also be a distribution of Husband's 401(k) Plan. The Court further finds that Husband's use of vehicles owned by his Father constitutes additional property available to him. Were it not for the use of those vehicles, Husband argued that he would have had to purchase vehicles for his own use; however, he never did and most likely will not have to in the future.

8. The economic circumstances of each party at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the party with whom any children [*15] of the marriage will live.

The specific economic circumstances of the parties have been discussed above, with the exception of their monthly living expenses, which were not detailed by the parties at trial. Since the Court has ordered, pursuant to the parties' stipulation, that the marital residence be sold, the issue of awarding it to the party to whom the children of the marriage will live is moot.

9. Whether the property was acquired by gift.

Husband's father testified that he provided the down payment for the purchase of the marital residence, totaling approximately $ 15,000. Wife testified that this was a loan that the parties had repaid from the proceeds of settlement of an accident claim. Both Husband and his father, however, disagreed. Husband testified that he had made some payments on this loan from the settlement and several payments consisting of interest on the loan over the years but none on the principle. No documentary evidence was presented of the exact amount of money or that this money constituted a loan that was to be repaid. The Court notes that Husband's credibility was damaged by the testimony of his father, who said "not one penny" has been paid on [*16] the loan. It was also of note that Husband's father doubts that he'll ever be repaid.

10. The debts of the parties.

The debts of the parties have been addressed above.

11. Tax consequences.

There are no consequences except for distribution to Wife of her share of Husband's 401(k), which may be avoided by use of a QDRO.

### ALIMONY

The Court finds that Wife is not dependent upon Husband for support, as is required for an award of alimony under 13 Del. C. § 1512(b). n5 Husband is not contractually obligated to provide for Wife's support after the divorce and, while Wife does not have sufficient property, including the award of marital property made by this opinion and Order, to provide for all her needs, she should have been able to support herself through appropriate employment. The Court's most recent denial of interim alimony for Wife speaks to that issue. n6 Wife had previously filed two motions for Interim Alimony, both of which were denied. n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 13 Del. C. § 1512(b)provides:

A party may be awarded alimony only if he or she is a dependent party after consideration of all relevant factor contained in subsection (c) of this section in that he or she:

(1) Is dependent upon the other party for support and the other party is not contractually or otherwise obligated to provide that support after the entry of a decree of divorce or annulment;

(2) Lacks sufficient property, including any award of marital property made by the Court, to provide for his or her reasonable needs; and

(3) Is unable to support himself or herself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that he or she not be required to seek employment.

[*17]

n6 As the Supreme Court noted in Gregory J.M. v. Carolyn A.M., "dependency, while not defined by the Statute, means more than a minimal existence or subsistence level. Its meaning is to be 'measured against the standard of living established by the parties during their marriage.'" Gregory J.M. v. Carolyn A.M., Del. Supr., 442 A.2d 1373, 1375 (1982) (quoting Husband J. v. Wife J., Del. Fam., 413 A.2d 1267, 1269 n.2 (1979)).

n7 **Bryant** v. **Bryant**, Del. Fam. File No. CN97-08832, Buckworth, J. (November 24, 1998); **Bryant** v. **Bryant**, Del. Fam., File No. CN97-08832, Buckworth, J. (June 10, 1998).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In order for the Court to determine whether Wife is entitled to alimony, the Court must examine 13 Del. C. § 1512(c). In the instant case, however, the Court will not detail the factors in the statute, since Wife has requested, pro forma, $ 1.00 per year in order to preserve future alimony claims. Since Wife presented no evidence of her present monthly living expenses or shortfalls, the only conclusion the Court can draw is that she is currently not dependent. [*18] Therefore, the Court respectfully denies Wife's request for $ 1.00 per year alimony. The Court notes that, pursuant to Romano v. Romano, Del. Supr., 494 A.2d 161 (1985), Wife may seek a modification in the future upon a showing of a substantial change in circumstances. n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 In Romano, the Delaware Supreme Court addressed the issue of whether a former spouse may bring a petition in Family Court to modify, on the basis of change in circumstances, a prior order denying

application for alimony. 494 A.2d at 161. In Romano, Wife petitioned for an alimony award and the Court found Wife dependent but, as the future earning capacities of the parties could not be calculated, awarded Wife $ 1.00 in alimony to preserve her claim. Id. More than two years later, Wife petitioned for a hearing concerning alimony and the Court found that she was not entitled to alimony under 13 Del. C. § 1512. Id. (citing 13 Del C. § 1512). One month later, wife petitioned Family Court for a modification of its order, based upon a change in circumstances. 494 A.2d at 162. The Supreme Court found that, since the former spouse requesting alimony had not remarried, Family court had jurisdiction to reconsider alimony where real and substantial change in circumstances was alleged. 494 A.2d at 162-163.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*19]

## LITIGATION COSTS

Wife argues that Husband should pay her reasonable counsel fees due, in part, to his superior financial resources but more importantly due to his actions that escalated litigation costs. Wife argues that Husband's position in challenging the legality and validity of their marriage caused her to incur additional attorney's fees in order to proceed with the divorce. Wife further argues that Husband's testimony has raised significant credibility issues. She cites Husband's position regarding ownership of motor vehicles he used during the marriage and his testimony regarding his second marriage, by which he implied that he supported his stepchildren; Husband contradicted himself on cross-examination when he testified that he was living with his parents and was separated from his second wife, having separated approximately two weeks after their marriage. The Court has previously noted Husband's testimony regarding payments on the alleged loans from his Father as grounds for questioning Husband's credibility.

Husband, on the other hand, argues that Wife should pay his reasonable counsel fees because she has dissipated marital assets and protracted the litigation. [*20] He argues that Wife should bear added responsibility for her failure to pay the mortgage since the date of separation, even though she has been residing in the former marital residence. Husband argues that Wife should be responsible for all arrears, interest and penalty above the mortgage balance as of the date of separation. The Court has addressed the issue of the mortgage arrears. With regard to legal costs stemming from the question of the legality of the marriage, Husband argues that the Court agreed with his position that statutory requirements had not been met and, therefore, the additional legal expenses were necessary. Husband stated that he had to retain a New York attorney in order to defend the marriage legality issue. Husband argues that both parties artificially increased attorney's fees, with Wife having two attorneys, filing a bankruptcy action but withdrawing it, and then filing two motions for Interim Alimony.

Section 1515 of Title 13 of the Delaware Code authorizes the Court, after considering the financial resources of both parties, to order one party to pay all or part of the costs to the other party of maintaining or defending any divorce proceeding and counsel [*21] fees, including sums for legal services rendered and costs incurred prior to the commencement of the divorce proceeding or after the entry of judgment. n9

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n9 13 Del. C. § 1515 provides:

The Court from time to time after considering the financial resources of both parties may order a party to pay all or part of the cost to the other party of maintaining or defending any proceeding under this title and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after the entry of judgment. The Court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Court has broad discretion in awarding fees and costs under 13 Del. C. § 1515, which specifically ties the awarding of fees and costs to the financial condition of the parties. n10 The underlying purpose of the statute in question is to equalize the positions of the parties by providing a financially disadvantaged party with [*22] the financial means to prosecute or defend a divorce action. n11 Further, a party seeking an award of fees and costs need not be totally without assets or income in order to be eligible for such an award. n12

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 Husband B.W.D. v. Wife B.A.D., Del. Supr., 405 A.2d 123, 125 (1979).

n11 Husband F. v. Wife F., Del. Supr., 432 A.2d 331 (1981).

n12 G.S.G. v. P.S.G., Del. Supr., 412 A.2d 319 (1980).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

While the right to an award of fees and costs is normally based upon the financial circumstances of the parties at the commencement of a divorce proceeding, section 1515 authorizes the Court to enter an award throughout the litigation. n13

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n13 Husband S. v. Wife S., Del. Supr., 294 A.2d 89 (1972).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Family Court Civil Rule 88 requires the Court, in determining the reasonableness [*23] of litigation costs incurred by the parties, to consider:

(1) time and effort expended;
(2) an itemization of services rendered;
(3) relevant hourly rates;
(4) itemization of disbursements claimed;
(5) any sums received or that will be received with respect to legal services and/or disbursements; and
(6) any information that will enable the Court to properly weigh the relevant factors set forth in the Rules of Professional Conduct, Rule 1.5. n14

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n14 Delaware Lawyers' Rules of Professional Conduct, Rule 1.5 provides:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyers performing the service; and
(8) whether the fee is fixed or contingent.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*24]

After reviewing the relative financial circumstances of the parties as required by section 1515 and the case law interpreting this statute as noted above, as well as the factors set forth in Family Court Civil Rule 88 and the litigation costs in light of Rule 1.5(a), the Court deems it appropriate to order both parties to pay their own respective attorney's fees and costs. With regard to the arguments concerning the litigation over the legality of the parties' marriage, Husband correctly noted that his position regarding the required legal procedures was accepted by the Court. The Court notes, however, that he

could have cooperated with Wife in obtaining documents to verify the legality of the marriage from the State of New York. As for the other arguments, this case should not have come to trial. The parties acknowledge that there were very few assets acquired, despite a lengthy marriage, and, fortunately, there were no significant debts. The issues remaining in dispute were not ones that should have required a full hearing before the Court for resolution. The Court finds both parties at fault for increasing fees beyond that which should have occurred in this case. Therefore, the [*25] parties shall be responsible for their own respective counsel fees.

ORDER

1) The foregoing is hereby entered as an Order of the Court.

2) Counsel are directed to prepare all documentation necessary to implement this Order.

*IT IS SO ORDERED.*

**Document 2 of 2.**

2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

Home |           |           |           |

**Search Terms: 216 B.R. 755;1998 Bankr, Lexis 10**

**FOCUS™**

**Document 1 of 1.**

In re: ARTHUR GARY BRYER a/k/a A. Gary Bryer a/k/a Gary Bryer KIMBERLEY ANNE BRYER a/k/a Kimberley Anne Hetrick a/k/a K. A. Hetrick a/k/a K. A. Bryer, Debtors; A. GARY BRYER KIMBERLEY ANNE BRYER, Plaintiffs v. BARTON M. HETRICK, SR. and EDWARD SPARKMAN, Chapter 13 Standing Trustee, Defendants

Chapter 13, Bankruptcy No. 97-14255DAS, Adversary No. 97-1012DAS

UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**216 B.R. 755; 1998 Bankr. LEXIS 10;** Bankr. L. Rep. (CCH) P77,616

January 8, 1998, Decided

**DISPOSITION:** [**1] Judgment rendered in the Proceeding in favor of the Defendant in regard to the dischargeability of his claim, but in favor of the Debtors in deciding the claim's proper classification as a general unsecured claim instead of a priority claim.

**COUNSEL:** Arthur Gary Bryer, Debtor, pro se, Wayne, PA.

Kimberley Anne Bryer, Debtor, pro se, Wayne, PA.

Eugene Joseph Malady, Esq., Media, PA, for Barton M. Hetrick, Sr., Defendant.

Edward Sparkman, Esq., Phila., PA, Standing Chapter 13 Trustee.

**JUDGES:** BY: DAVID A. SCHOLL, CHIEF BANKRUPTCY JUDGE.

**OPINION BY:** DAVID A. SCHOLL

**OPINION:** [*756] OPINION

BY: DAVID A. SCHOLL, CHIEF BANKRUPTCY JUDGE

A. INTRODUCTION

The instant proceeding ("the Proceeding") is the latest in a series of disputes, and hopefully the final bankruptcy-related matter in this series, between co-debtor KIMBERLEY A. BRYER ("the Wife") and the Wife's former husband, Defendant BARTON M. HETRICK, SR. ("the Defendant"). The Proceeding, of which Co-Debtor ARTHUR GARY BRYER ("the Husband;" with the Wife, "the Debtors"), a former bankruptcy paralegal, is the draftsperson, is based upon a three-count complaint

embellished with numerous exhibits, which principally seeks to determine [**2] the dischargeability, in light of the Wife's discharge in a prior Chapter 7 case, of support-credit arrearages that became due to the Defendant pursuant to an agreement and order made on January 23, 1996 ("the Agreement"), before the Honorable Joseph Battle in the Court of Common Pleas of Delaware County, Domestic Relations Division ("the CCP"), and which were fixed at $ 5,427.21 in a June 27, 1997, order of the CCP.

We hold that the Defendant's claim against the Wife was not an obligation discharged in the Wife's prior Chapter 7 case for three separate reasons: (1) the obligation does not represent a dischargeable post-petition claim; (2) the Agreement was a voluntary agreement to repay, rather than a coercive reaffirmation; and (3) we are bound by the unappealed CCP order allowing the credit to be set off. However, pursuant to the parties' agreement that we should also determine whether the Defendant's claim for credit is entitled to priority status under 11 U.S.C. $\P$ 507(a)(7) at this juncture, we conclude that [*757] priority status is unwarranted. We make this determination principally due to our conclusion that the Defendant is in no sense a dependant spouse for whom such credits were [**3] in any sense reasonably necessary for the support of him and the dependant child in his custody.

## B. PROCEDURAL AND FACTUAL HISTORY

The procedural and factual history of the disputes between the Wife and the Defendant, apparently fueled by the Husband's urges to "play lawyer" for the Wife, is extremely lengthy and complicated. We will emphasize only the bankruptcy-related aspects.

The Wife and the Defendant were married on July 19, 1980. The Wife became involved with the Husband through their children's common membership in a cub scout troop. The Wife and the Defendant separated, and the Defendant ultimately filed a Complaint in Divorce in the CCP against the Wife on January 23, 1992. These parties had two children, Barton, Jr. (B.J.), age 16, who currently lives with the Wife, and Gregory, age 14, who resides with the Defendant.

On May 27, 1993, the Wife filed an individual voluntary Chapter 7 case in this court, at Bankr. No. 93-13177 ("the Chapter 7 Case"). A discharge was duly entered in this case on October 14, 1993. On February 1, 1994, an equitable distribution agreement was entered into by the parties in the CCP, and was incorporated into their divorce decree. Pursuant [**4] to this agreement, the Defendant assumed responsibility for all joint marital obligations.

Although this agreement seemingly resolved important disputes between the parties, it did not prevent a subsequent volley of legal actions. In this court, the Wife, on April 22, 1994, filed Adversary No. 94-0310 against the Defendant and his counsel, Eugene J. Malady, Esquire ("Counsel"), charging them with a violation of the automatic stay and the discharge injunction in the Chapter 7 case when Counsel argued before the CCP that the Wife's discharge should be considered in determining the support due to her. We note that some amount of support was concededly due to her because, despite the split custody of the parties' two children, the Defendant's income greatly exceeded hers. We dismissed the complaint in this proceeding in a short decision reported at 1994 WL 326378 (Bankr. E.D. Pa. June 23, 1994), holding that the discharge did not preclude Counsel's raising such arguments.

On April 29, 1994, the parents of the Wife, Patrick and Dale Robinson ("the Robinsons"), brought an action against the Defendant in the CCP, apparently principally to recover monies allegedly contributed by them to [**5] the purchase of real property owned by the Wife and the Defendant at 236 Willow Avenue, Wayne, Pennsylvania ("the Premises"), in which the Defendant then resided. In an attempt to settle this litigation, the Robinsons and the Defendant entered into a settlement agreement of January

27, 1995, signed, inter alia, by the Wife and her counsel at the time, Richard Mitchell, Esquire ("Mitchell"). The parties thereby agreed, inter alia, that the Defendant would vacate the Premises and would not be further obligated, financially or otherwise, on the mortgage thereon. The Defendant, who had made all mortgage payments through that date, vacated the Premises by agreement on April 7, 1995, and the Debtors moved in.

However, the Debtors did not, as the other parties to that agreement apparently contemplated, assume the mortgage payments, making only one such payment. The Wife, in her testimony at the trial of the Proceeding on November 13, 1997, attributes their failure to make these payments to her dissatisfaction with the Premises as a homestead and her belief that she was not obligated to make payments due to her chapter 7 Case discharge, even though she was a signatory to the January [**6] 27, 1995, agreement. Concerned that a failure of any party to make payments would adversely affect his credit rating, the Defendant resumed the mortgage payments, and thereafter filed a lawsuit against the Robinsons to, inter alia, resolve this dispute. The Defendant continued to make these payments to the mortgagee for several months after April 1995, even though the Debtors then occupied the residence.

[*758] On January 23, 1996, a hearing was held before Judge Battle, pursuant to an appeal from a master's recommendation regarding an increase in child support requested by the Wife. During the hearing, the Agreement at issue was reached. The principal pertinent features of the Agreement were that, although the Wife would receive an increase in support from $ 300 to $ 395 monthly, she would continue to receive only the current payments of $ 300 monthly, with the $ 95 balance to be applied as a credit to the Defendant for the payments he previously made by him upon the mortgage on the Premises.

At the trial of the Proceeding before us, the Wife testified that she was coerced into making this agreement by Mitchell, but did not actually mean to agree to same. The CCP transcript of the [**7] colloquy at which the Agreement was reached and recited reflects that, although both Debtors were present, neither voiced any objections thereto. No dissatisfaction of Mitchell's representation was expressed to the Defendant even as of a year later, when, on January 20, 1997, Mitchell sent a letter to Counsel indicating that the Wife would thereafter be representing herself, undoubtedly with the Husband's contemplated assistance.

On March 20, 1997, the Wife filed a petition to again increase the Defendant's child support payments to her. The Defendant responded with his own petition to remit arrears. Before a hearing could be held in the CCP on these matters, the Debtors, on April 8, 1997, filed the instant joint Chapter 13 bankruptcy case.

On May 14, 1997, the Defendant filed a motion in this court seeking relief from the automatic stay to assert all of his defenses and his petition to remit arrears in response to the Wife's petition in the CCP. At the hearing on this motion on June 5, 1997, the Debtors (in the person of the Husband), articulated most of the arguments set forth in more detail in the Proceeding, i.e., that the Defendant should be barred from asserting his credits [**8] for the mortgage payments in the CCP because the claims underlying the credits were discharged in the Chapter 7 Case.

However, this court issued an Order/Memorandum of June 6, 1997, granting the Defendant relief to proceed with his petition to remit arrears and to offer any defenses to the Wife's petition to increase her support. This decision noted that the issue of whether a non-debtor may effect a setoff against a debtor's prior obligation was within the jurisdictional power of the CCP, concurrently with this court, to decide, citing In re Ford, 188 B.R. 523, 526-27 (Bankr. E.D. Pa. 1995), aff'd, C.A. No. 95-7810 (E.D. Pa. Oct. 2, 1996), aff'd, 116 F.3d 467 (3d Cir. 1997). The order noted that the issue of setoff was "intertwined"

with the support issue which was solely within the CCP's province. However, we note with some regret, the order further stated that it did not foreclose a plenary determination of the dischargeability of any purported obligation of the Wife to the Defendant in this court if this issue was "distinctly" presented to us. This statement appears to have been the genesis of the Proceeding.

Subsequently a master's hearing was held in the CCP on [**9] all of the support-related issues on June 27, 1997. At that hearing the parties agreed to an increase in child support to the Wife to $ 424 per month, applied retroactively to January 1, 1997. An order of the CCP reflecting that agreement, which has not been appealed, further states that a "credit of $ 5,427.21" is allowed to the Defendant on account of the mortgage payments and that the Defendant's wage attachment is to apparently remain at $ 145 bi-weekly, with the amount due in excess of the support paid to be applied to the credit of $ 5,427.21.

The Defendant has apparently filed a proof of claim in this amount of $ 5,427.21, which he classifies as a priority claim pursuant to 11 U.S.C. ⊓ 507(a)(7). The confirmation hearing in this case was originally scheduled on September 23, 1997, on which date the Proceeding was filed. Before the court for confirmation is the Debtors' Second Amended Plan of Reorganization ("the Plan"), filed on September 16, 1997. The Plan provides for payments of $ 95.82 monthly for sixty (60) months, to be distributed to the Trustee's commissions, several holders of modest secured claims, and $ 2,990.39 to a priority claim of the Internal Revenue Service [**10] ("the [*759] IRS"). No distribution to general unsecured creditors is contemplated.

Objections to confirmation of the Plan have been filed by the IRS and by the Defendant. The IRS states that the Debtors did not file their 1996 income tax return, which the Debtors contend in the Plan was in fact done, and that the Plan is not sufficiently funded to pay its priority claim of $ 6,808.49 based on estimated taxes. The Defendant objects to the Plan's failure to provide for his priority claim and the failure of the Schedules to adequately disclose the Wife's income.

The confirmation hearing was continued to the date of the scheduled trial of the Proceeding, November 13, 1997. In addition to seeking declarations that the Defendant is not entitled to the mortgage credits due to the discharge in the Chapter 7 Case and that his claim be reclassified as a general unsecured claim, the Debtors also seek an affirmative recovery of "the approximate sum of $ 1,742.26" from the Defendant, apparently representing amounts already, allegedly improperly, credited against the Defendant's support payments. The request for affirmative relief prompted this court to enter an order of November 6, 1997, requiring [**11] the joinder of the Standing Chapter 13 Trustee, Edward Sparkman, Esquire ("the Trustee"), as party to the Proceeding. See 11 U.S.C. ⊓ 323; Richardson v. United Parcel Service, 195 B.R. 737 (E.D. Mo. 1996); Krank v. Utica Mutual Ins. Co., 109 B.R. 668 (E.D. Pa.), aff'd, 908 F.2d 962 (3d Cir. 1990); and Cain v. Hyatt, 101 B.R. 440, 442 (E.D. Pa. 1989). Although the Trustee seemingly should have been joined as a plaintiff, he was added as a defendant in an Amended Complaint filed on November 10, 1997.

After the trial, the parties were accorded until December 15, 1997, and December 29, 1997, to submit, respectively, opening and reply briefs addressing all claims in the Proceeding and, additionally, the proper classification of the Defendant's claim. Both parties filed opening submissions but only the Debtors submitted a reply. The confirmation hearing was continued until January 8, 1998, anticipating that resolution of at least the issue of proper classification of the Defendant's claim must precede confirmation. On November 21, 1997, the Trustee filed a motion to dismiss the case on the ground that the Plan was infeasible, which is also scheduled for a hearing on [**12] January 8, 1998. This decision is consciously filed prior to that date.

## C. DISCUSSION

1. The Wife's 1993 Chapter 7 Case Discharge Did Not Affect the Defendant's Right to Assert a Claim for Credits on Account of His Post-April, 1995 Mortgage Payments.

The question of when a claim arises for bankruptcy purposes has been determined, in this Circuit, by the decision in In re M. Frenville Co., 744 F.2d 332 (3d Cir. 1984), cert. denied sub nom. M. Frenville Co. v. Avellino & Bienes, 469 U.S. 1160, 83 L. Ed. 2d 925, 105 S. Ct. 911 (1985). Frenville holds that a claim arises when the obligee has a "right to payment" of same under applicable state law. 744 F.2d at 336-37. See In re Farley, 135 B.R. 493, 495-96 (Bankr. E.D. Pa. 1992); and In re McNeil, 128 B.R. 603, 610-11 (Bankr. E.D. Pa. 1991).

It appears to us that, under applicable Pennsylvania law, a right of payment on a contract claim arises at the time of a breach of a contract which provides the oblige with a cause of action against the obligor. See Selig v. Philadelphia Title Ins. Co., 380 Pa. 264, 272, 111 A.2d 147, 151 (1955); and Chittenholm v. Giffin, 357 Pa. 616, 619, 55 A.2d 324, 326 [**13] (1947).

The Debtors argue that the Wife's personal obligation on the mortgage was discharged in the Chapter 7 Case and that, because of this, the Defendant's efforts to hold her liable for any post-discharge mortgage payments is an attempt to collect from her a debt due on a pre-petition contractual obligation, citing, inter alia, McNeil, supra.

McNeil indeed does hold that a debtor's entire personal liability on an installment contract, including payments falling due post-petition, is discharged by a successful Chapter 7 case. 603 B.R. at 611-12. However, as Farley explains, 135 B.R. at 495, this holding must properly be taken as confined to the context of a situation involving "an installment [*760] contract, which inevitably contains an acceleration clause, [in which case] the right of the creditor to payment of the entire contract balance arises upon default." In Farley, we held that the discharge did not affect the rights of an obligee to a prepetition contract with a debtor to assert its rights to payments under that contract which arose solely from post-petition events. Id.

This is an easier case than Farley. The post-petition obligation at issue here does [**14] not even run to the obligee in the pre-petition contract at issue. Despite the fact that the Wife received a previous discharge from all joint marital obligations, including the mortgage on the Premises, the instant obligation is an obligation to a co-obligor arising solely as a result of actions between the co-obligors which occurred post-petition.

It should also be recalled that the lien of the home mortgage against the Wife was not affected by her Chapter 7 Case discharge. See McNeil, supra, 128 B.R. at 606-08, 611-12. Thus, if the Wife wanted to retain possession of the Premises, she was obligated to see that the mortgage against it was paid. This state of affairs can be compared to that in the condominium-fee cases cited in Farley, supra, 135 B.R. at 495-96; and McNeil, supra, 128 B.R. at 612-13, some of which hold that the issue of whether such fees are discharged is determined by whether the debtor retains possession of the condominium unit after the bankruptcy filing.

The Debtors appear to argue in response to this observation that the Wife's possession of the Premises after April 1995 should be discounted because she did not wish to live there. Suffice it to [**15] say that she did and does live there, thereby avoiding the necessity to pay for shelter elsewhere. That the Debtors might prefer to live in some other place were they able to do so financially appears totally beside the point, as many persons would prefer to live in better housing if they were able to do so.

It is therefore clear to us that the Wife's obligation to reimburse the Defendant for his gratuitous 1995 mortgage payments is an obligation having little or no relationship to her discharged pre-petition personal obligation to pay the mortgage on the Premises. Therefore, the Defendant's right to reimbursement for these payments was not, by any stretch of reasoning, discharged in the Wife's Chapter 7 Case.

The Debtors alternatively argue, even more tenuously, that this liability constitutes a reaffirmation of a debt discharged in the Chapter 7 Case which was not approved by this court and is hence unenforceable. As is noted above, in the Agreement, the Wife did not agree to assume her previous obligation to the mortgagee of the Premises. She was merely agreeing to compensate her co-obligor, the Defendant, for making certain of these payments. The Wife's obligation to [**16] compensate the Defendant for mortgage payments was thus a post-petition debt, not previously discharged in the Chapter 7 Case. Hence, her agreement to reimburse the Defendant was in no sense an illegal reaffirmation of a previously-discharged debt.

However, even if we were to hold that the Wife's obligation to the Defendant were an assumption of a previously-discharged debt, we note that a debtor may, at any time, make voluntary payments to creditors holding discharged debts pursuant to 11 U.S.C. ¶ 524(f). That Code section places no restrictions on a debtor's voluntarily paying off a discharged debt, nor does it provide that any particular procedures must be followed before a debtor may voluntarily pay off such a debt.

The Wife, citing to cases where creditors have lured debtors into agreements to pay discharged debts with promises of future credit-lines, e.g., Van Meter v. American State Bank, 89 B.R. 32, 34 (W.D. Ark. 1988); In re Armstead, Bankr. 1997 Bankr. LEXIS 2166, No. 96-10592DWS (Bankr. E.D. Pa. Nov. 7, 1997); and In re Bowling, 116 B.R. 659, 663-64 (Bankr. S.D. Ind. 1990), argues that suasion by Mitchell supplied the requisite coercion to overcome her voluntariness in making the [**17] Agreement. However, in most circumstances, a client is bound by the actions of his attorney on the client's behalf. See Pioneer Investment Services Co. v. Brunswick Associates, L.P., 507 U.S. 380, 396-97, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). Even if an attorney acts without authority, silence as to [*761] counsel's lack of authority by the client, particularly one so vigorously protected in legal matters as is the Wife by the Husband, for such a long period of time, e.g., greater than one year, constitutes ratification of the attorney's actions on the client's behalf. See Tiernan v. Devoe, 923 F.2d 1024, 1037 (3d Cir. 1991). As the Defendant established at trial, the Wife, far from disavowing the Agreement in every sense, invoked its provisions when it served her purposes to do so. In any event, the coercion at issue was not alleged to have been provided by the Defendant, or Counsel, as it was by the creditors in the foregoing cases. They have both been viewed by the Wife at all times as adversaries of the first order whose "advice" she was most unlikely to accept.

In sum, it appears to us that the Wife is unfairly invoking the reaffirmation issue to attempt to retroactively undo a portion of the Agreement [**18] into which she freely entered only at the juncture where that Agreement requires certain performances on her part. Thus, even were the Wife's obligations to credit the Defendant for the mortgage payments at issue otherwise dischargeable, we would conclude that the Agreement is not an illegal reaffirmation, but is in fact a voluntary agreement to repay pursuant to ¶ 524(f) which is at this time totally enforceable against her.

Finally, there is a third, independent reason why the Wife cannot extricate herself from her obligation to credit the Defendant for the mortgage payments at issue. That issue is described in Ford, supra, cited to the Debtors in our June 6, 1997, order, which is that, although this court has jurisdiction to decide the issue of whether a setoff against a debt arguably discharged can be asserted by a pre-petition claimant,

state courts have concurrent jurisdiction with bankruptcy courts to decide such issues. See also Cooper-Jarrett, Inc. v. Central Transport, Inc., 726 F.2d 93, 94-96 (3d Cir. 1984)(federal district court had jurisdiction concurrently with the applicable bankruptcy court to decide post-discharge, setoff-related issues).

In the present [**19] situation, after our order granting the Defendant relief from the automatic stay to raise this issue in the CCP, that court entered the order of June 27, 1997, accepting the master's recommendation that the Defendant could set off the $ 5,427.21 credit against his support obligation to the Wife. The issue of the dischargeability of that obligation in the Wife's Chapter 7 Case was apparently raised by the Wife and given due consideration by the CCP, but was decided against the Wife and not appealed further. In accordance with the principles set forth in Ford, of which the Debtors were clearly reminded by us in our June 6, 1997, order, prior to the CCP's order of June 27, 1997, this court must consider itself bound by the determination of the CCP on this issue, as it rightfully exercised its concurrent jurisdiction to decide same. Therefore, the fact remains that the Defendant, as of June 27, 1997, was due the $ 5,427.21 credit against the Wife.

We could probably accept the Wife's further assertions that the $ 5,427.21 amount of the claim has been reduced by post-June 27 support payments and credits to the Defendant, as the Debtors suggest. However, as we indicated at the November [**20] 13, 1997, trial, we will address only the issue of classification of the Defendant's proof of claim and not its liquidation, since the amount of the Defendant's claim is not an issue before us at this time. In light of our decision at pages 20-27 infra classifying the claim as unsecured and the provisions of the Plan providing no payments to unsecured creditors, it appears unlikely that we will ever have to decide that issue. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 To the extent that the complaint in this Proceeding can be read as requesting a determination that the Wife's indebtedness to the Defendant will be eliminated by the ultimate discharge in this case, we note that the Third Circuit Court of Appeals, in In re Johnson-Allen, 871 F.2d 421, 423 (3d Cir. 1989), aff'd sub nom. Pennsylvania Department of Public Welfare v. Davenport, 495 U.S. 552, 109 L. Ed. 2d 588, 110 S. Ct. 2126 (1990), held that dischargeability issues in Chapter 13 cases are not ripe for determination until the Chapter 13 plan has been concluded and it is known which Chapter 13 discharge provision of 11 U.S.C. ¶ 1328 will apply. See also In re Shervin, 112 B.R. 724, 729 (Bankr. E.D. Pa. 1990). But see In re Geiger, 112 B.R. 586, 591 (Bankr. E.D. Pa.), rev'd on other grounds, 143 B.R. 30 (E.D. Pa. 1992), aff'd, 993 F.2d 224 (3d Cir. 1993) (a bankruptcy court may determine whether a debt could possibly be dischargeable in a Chapter 13 case prior to the time of discharge). If pressed to decide the issue at this point, we would probably be compelled to conclude that, while the Defendant's right to the credit is not nondischargeable under 11 U.S.C. ¶ 523(a)(5), see pages 20-27 infra, it has been determined subject to setoff in a CCP order which is binding upon us in the context of the Chapter 13 discharge, just as it is in the context of the Chapter 7 case discharge. See pages 17-19 supra; and Ford, supra.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -[**21]

[*762] 2. The Credit Due to the Defendant Is Not in the Nature of Maintenance or Support, and Is Therefore Not Properly Classifiable as a Priority Claim Under 11 U.S.C. ¶ 507(a)(7).

The Defendant contends that the credit accorded to him by the CCP orders against his child-support

payment liability on account of the payments that he made to the mortgagee of the Premises constitutes a priority claim for child support in the Debtors' instant bankruptcy case. However, this argument lacks merit in that no pertinent factor indicates an obligation of the Wife to the Defendant for support, as is necessary to give rise to a ¶ 507(a)(7) claim.

The issue of proper classification of the claim at issue is significant to the issue of confirmation of the Plan and any Chapter 13 plan in this case. The Bankruptcy Code, at 11 U.S.C. ¶ 507, sets forth the exclusive listing of the types of claims which are entitled to priority and in what order. In a Chapter 13 proceeding, if a claim is entitled to priority under ¶ 507, the debtor's plan must provide for the full payment of that claim. 11 U.S.C. ¶ 1322(a)(2). However, if a claim is not entitled to priority status, it can and often will be treated [**22] as a general allowed unsecured claim entitled to the same treatment as other such claims. The instant Plan, as is common in plans of low-income individuals, provides for no payments at all to general unsecured claimants. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Whether such treatment of general unsecured claims is justified is determined by whether any objection to confirmation is asserted by the trustee or an unsecured creditor, pursuant to 11 U.S.C. ¶ 1325(b). No such objections have been asserted to date except possibly in a portion of the objections asserted by the Defendant. See page 10 supra.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The provision of 11 U.S.C. ¶ 507 pertinent here is ¶ 507(a)(7), which provides as follows:



(a) The following expenses and claims have priority in the following order:

. . .

Seventh, allowed claims for debts to a spouse, former spouse or child of the debtor, for alimony to, maintenance for, or support of such spouses or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination [**23] made in accordance with State or territorial law by a government unit, or property settlement agreement, but not to the extent that such debt--

(A) is assigned to another entity, voluntarily, by operations of law, or otherwise; or

(B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support . . . .

Whether a claim constitutes an obligation in the nature of alimony, maintenance, or support has been addressed in the context of a determination of dischargeability under 11 U.S.C. ¶ 523(a)(5) by the Third Circuit Court of Appeals in In re Gianakas, 917 F.2d 759, 762-64 (3d Cir. 1990). See, e.g., In re Borzillo, 130 B.R. 438, 443-45 (Bankr. E.D. Pa. 1991).

The parties, both referencing Gianakas at length, appear to agree that a ¶ 507(a)(7) determination should be guided by the same factors as a ¶ 523(a)(5) determination. See In re Chang, 210 B.R. 578, 581 n.11 (Bankr. 9th Cir. 1997); and In re Grady, 180 B.R. 461, 464 (Bankr. E.D. Va. 1995).

Gianakas held that a debtor's obligation to pay a second mortgage on the home of a nondebtor dependent spouse was, in the [**24] context of the facts of the case, in the nature of support and thus nondischargeable. 917 F.2d at 764. The court also posited that "the great weight of authority holds that an assumption of mortgage debts by one spouse so that the other could remain in the home is generally an obligation in the nature of support." Id.

[*763] In reaching its decision, the Gianakas court examined three principle factors which it believed synthesized as many as fifteen (15) factors referred to by various other courts on the question of determining the controlling intent of the parties to classify such debts. Id. at 762, citing Buccino v. Buccino, 397 Pa. Super. 241, 254, 580 A.2d 13, 19-20 (1990). The factors referenced in Gianakas are (1) the language and substance of the agreement; (2) the parties' relative financial circumstances; and (3) the function served by the obligation. 917 F.2d at 762, 763.

Considering first the issue of language used by the parties in the Agreement, we note that the Agreement is memorialized only by a transcript of an oral settlement between the parties at the hearing of January 23, 1996, before Judge Battle of the CCP, as well as a contemporaneous order from [**25] Judge Battle. The Agreement consisted of an increase in the child support for the Plaintiff, applied retroactively, as well as an offset against such for the payments at issue made by the Defendant on the home mortgage. No mention is made of a support obligation of the Wife to the Defendant. Statements made at the hearing by Counsel indicate that it was the intention of all parties involved to compensate the Defendant for making mortgage payments on a home in which he did not live at the time of the payments.

A desire to compensate the Defendant appears quite equitable under the circumstances, but is in no sense indicative of the credit's being classified as a support obligation. In fact, the substance of the Agreement constituted a net order for support from the Defendant to the Wife. Since the language utilized by the parties is not indicative of a support obligation from the Wife to the Defendant, but see Borzillo, supra, 130 B.R. at 441, 446 (although the husband-debtor's obligation to pay the mortgage in the parties' jointly-owned home resided in by the wife and all of the parties' children was written as a property distribution obligation rather than a support [**26] obligation, it was nevertheless determined to be, in effect, a provision for support), the Defendant can prevail only if he can demonstrate that the other two Gianakas factors are indicative that the obligation is properly classifiable as support.

The second Gianakas factor requires an analysis of the relative financial circumstances of the parties at the time of the Agreement. At the January 23, 1996, hearing it was stipulated that the Defendant earned approximately $ 81,000 a year and the Wife had the capacity to earn about $ 28,000 per year, although in fact her annual income was about $ 7,000. Each party had custody of one teenaged child. Although the Wife had remarried prior to the Agreement, the Husband's income, even when added to hers (and not considering his own dependents), reflected a disparity of income in favor of the Defendant.

The fact that the Defendant's support obligation to the Wife was, in net effect, increased at the hearing contradicts the Defendant's contention that his credit was in the nature of support. In fact, it was deducted from support otherwise payable from him to the Wife. Therefore, the financial circumstances of the respective parties did [**27] not and still do not, in light of the further increase in actual support to the Debtor on June 27, 1997, indicate any net support obligation of the Wife to the Defendant.

The final gauge of the parties' intent is the function served by the obligation at the time of the Agreement. An obligation that assists or maintains daily necessities such as lodging for a former spouse and dependant child have typically been held to indicate a support obligation. See Gianakas, supra, 917 F.2d at 763-64; and Borzillo, supra, 130 B.R. at 446-48. Although we appreciate the fact that the Defendant has custody of one of the parties' two children, nothing presented by the parties demonstrates that the Defendant needed the mortgage payments or the credits to obtain shelter for himself or his son living with him. Insofar as the Premises itself is concerned, the Defendant was quite willing to move out, allegedly into a more comfortable home owned by a new romantic interest on his part. The Defendant has not even claimed that the credit in any way assists him in maintaining shelter or any other necessities, and this court would be hard pressed to see how it could.

[*764] In his post-trial submission, the [**28] Defendant points only to the earning capacity of the Wife and the Husband, de-emphasizing that it is less than his actual income, and the function of the credit as a trade-off for the increase in support to the Wife as satisfying the Gianakas factors. To put it mildly, these are weak arguments.

Therefore, we rather easily conclude that the Defendant's claim for a credit against the Wife cannot be found to be in the nature of support or intended to be so, as to justify ifs classification as entitled to a priority under 11 U.S.C. ¶ 507(a)(7). We will therefore declare that the Defendant's claim is properly classified as an allowed general unsecured claim against the Debtors and will be treated accordingly in assessing the conformability of the Plan or any amendments thereto.

## D. CONCLUSION

An order consistent with this Opinion, rendering judgment in the Proceeding in favor of the Defendant in regard to the dischargeability of his claim, but in favor of the Debtors in deciding the claim's proper classification as a general unsecured claim instead of a priority claim will therefore be entered.

DAVID A. SCHOLL

CHIEF BANKRUPTCY JUDGE

900 Market Street, Suite 201

Philadelphia, [**29] PA 19107-4298

Dated at Philadelphia, PA,
this 8th day of January, 1998.

## ORDER

AND NOW, this 8th day of January, 1998, after a trial of the above-captioned proceeding ("the Proceeding") on November 13, 1997, which the parties agreed could also serve as the record for determining the proper classification of the proof of claim of Defendant BARTON M. HETRICK, SR. ("the Defendant") in the instant main bankruptcy case, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in the Proceeding in favor of the Defendant and against the Plaintiffs as to the dischargeability of the Defendant's debt to the Wife-Debtor.

2. It is DECLARED that the Defendant's claim against the Wife-Debtor was not discharged by her discharge in Bankr. No. 93-13177.

3. However, judgment is entered in favor of the Debtors and against the Defendant as to the proper classification of his proof of claim.

4. It is therefore further DECLARED that the claim of the Defendant in this bankruptcy case is property classified as a general unsecured claim and not as a priority claim pursuant to 11 U.S.C. $\eta$ 507(a)(7).

DAVID A. SCHOLL

CHIEF BANKRUPTCY JUDGE

900 Market Street, Suite 201

Philadelphia, [**30] PA 19107-4298


**Document 1 of 1.**


2007 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

|  | | | |

**Search Terms:** , Bryant

**FOCUS™**

**Document 1 of 2.**

DAVID J. BUCHANAN, Plaintiff, v. BARBARA H. BUCHANAN, Defendant.

C.A. No. 06C-06-041 ESB

SUPERIOR COURT OF DELAWARE, SUSSEX

2006 Del. Super. LEXIS 279

July 7, 2006, Decided

**NOTICE:** [*1] THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**PRIOR HISTORY:** Buchanan v. Buchanan, 2006 Del. Ch. LEXIS 106 (Del. Ch., May 31, 2006)

**OPINION:** DECISIONS ON MOTION TO PROCEED IN FORMA PAUPERIS AND UPON REVIEW OF COMPLAINT

1) Pending before the Court is a motion to proceed *in forma pauperis* which plaintiff David J. Buchanan ("plaintiff") has filed in connection with the above-captioned complaint.

2) Plaintiff's filings in support of his motion to proceed *in forma pauperis* establish he is indigent. Consequently, the Court grants his motion to proceed *in forma pauperis*. The Court now is required to review the complaint and allow the litigation to proceed only if it finds the action is not legally frivolous. 10 Del. C. § 8803(b).

3) Plaintiff originally filed a complaint in the Court of Chancery which apparently made the same allegations as are contained in the pending matter. Buchanan v. Buchanan, Del. Ch., C.A. No. 2190, Chandler, C. (May 31, 2006). That Court ruled that Superior Court and not this Court has jurisdiction over the matter.

4) On June 27, 2006, plaintiff filed the pending complaint. In that complaint, he asserts the following.

He and Barbara H. Buchanan [*2] ("defendant") were divorced on August 6, 2003. On or about March 18, 2003, defendant filed a petition with the Family Court to list and sell the parties' real estate.

On July 28, 2004, the mortgage holder on the marital home filed foreclosure due to nonpayment of the mortgage. The Court takes judicial notice of this foreclosure action filed with this Court, Mortgage Electronic Registration Systems, Inc. v. Buchanan, Del. Super., C.A. No. 04L-06-001. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The proceedings have been stayed due to plaintiff's filing of a bankruptcy petition. The mortgage company never has obtained personal jurisdiction over Barbara Buchanan; consequently, she has yet to file an answer in the case.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On August 24, 2004, plaintiff filed a petition in bankruptcy under Chapter 13.

On March 21 and 22, 2006, the Family Court conducted a hearing regarding the division of marital property. At some point, the date of which is unclear, the Family Court ordered the sale of the properties to determine the value thereof.

On April 18, 2006, the [*3] Bankruptcy Court:

> held a hearing pertinent to matters of property, and issued an order allowing Mr. Buchanan to refinance said properties, where in the process of the refinance Ms. Buchanan would be given consideration of her equitable share, and further directed Ms. Buchanan to sign the USDA forms required of Mr. Buchanan's farming operation, as well as advised Ms. Buchanan that she is responsible to ensure that her mortgages are paid, where failing to do so subjects the properties to loss due to foreclosure.

Complaint at paragraph 19.

On or about May 7, 2006, another lender contacted plaintiff and informed him that due to late payments, it may be forced to foreclose on the parties' farm.

In paragraph 21 of the complaint, defendant alleges:

> As of May 16, 2006, Barbara H. Buchanan, well represented by Counsel in all Court proceedings has failed to file a proof of claim with the Bankruptcy Court, (Deadline to file claim 1/3/05), has not answered any foreclosure action, nor made any attempt to service her contractual mortgage obligations following divorce, and an order of property separation, and has further impaired the obligation of mortgage contracts by interfering [*4] with income paid to Mr. Buchanan to support mortgages through governmental subsidy, by refusing to sign USDA forms.

Under the caption "Impairing the Obligation of Contract", he asserts the following. Defendant has failed to honor her obligations on the contracts secured by the mortgages, thereby resulting in litigation and causing "equitable loss to Plaintiff in the way of imposed fines, fees, legal costs." By not timely signing the USDA forms, she has caused a loss of income used to pay the mortgages.

Under the caption "Tort", plaintiff asserts defendant has defrauded him in the following ways. "She

never intended to pay or otherwise honor her contractual mortgage guarantees, even in the event where her husband became ill." She withdrew monies that could have been used to support the mortgages and used those monies to pay for attorneys and purchase other things. She fraudulently removed assets from the marital estate and hid it in other properties owned by her mother. She has refused to comply with the Federal Bankruptcy Judge's instructions to pay monies due on the real property and to sign the USDA form. Finally:

> She has filed a fraudulent financial statement with the [*5] Family Court, failed to provide financial information requested by Subpoena, failed to account for money paid to others, failed to account for the source of funds for which she paid attorneys, and has sought an emergency list and sale of property in Family Court after causing default of mortgages.

He maintains he has suffered damages as a result of her fraud, misrepresentations, contractual defaults, failures to appear in Court, and bad faith. He asks for general and punitive damages.

Count Three is captioned "Interference with land use". He alleges that defendant should have filed a proof of claim with the Bankruptcy Court so that the land could be valued and he could start to refinance. He further alleges she has interfered with plaintiff's right to farm and subjected the real property to loss due to interruption of income and she maliciously has interfered with his right to use the property.

He asks for money damages (general and punitive) and a partition of the property which would result, not in a partitioning of the property, but in placing the property solely in plaintiff's name. He also asks for costs and attorneys' fees incurred in the foreclosure and bankruptcy [*6] matters.

5) This Court does not have jurisdiction over this complaint. Plaintiff's forum for filing these complaints and seeking remedies is within the Family Court. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The exception to this conclusion would be if an order of the Bankruptcy Court does exist instructing defendant to pay the mortgage or take any other steps with regard to the marital property. In such a case, plaintiff may file a Rule to Show Cause with the Bankruptcy Court requiring defendant to explain why she should not be held in contempt of Court for failing to comply with that Court's orders.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Plaintiff's complaint clarifies that Family Court is exercising jurisdiction over the marital property. The allegations which plaintiff makes concern him, his ex-wife, her alleged wrongful actions in connection with those proceedings, and mortgages and procedures related to their marital property. The Family Court has exclusive jurisdiction over the complaints plaintiff makes here. 10 Del. C. § 921(14); 13 Del. C. § 507 [*7] . Plaintiff must seek his remedies within that Court. For example, if there is no order instructing defendant to pay the mortgage and/or to sign appropriate documentation so that plaintiff can farm the land, then plaintiff must go to Family Court to request that relief. If there is a Family Court order instructing defendant to pay the mortgage, then plaintiff can file a Rule to Show Cause with Family Court regarding her failure to pay that mortgage. See Imperial v. Imperial, 1999 Del. Fam. Ct.

LEXIS 3 (Del. Fam. Ct.) (Petitioner's petition seeking a rule to show cause because his wife refused to pay the mortgage was dismissed because there was no order in effect requiring she do so). Plaintiff also has the option of seeking an order from the Family Court requiring defendant to reimburse him for expenses and fees he has incurred as a result of mortgage foreclosure proceedings if defendant is violating a Family Court order. In re Scholl, 621 A.2d 808, 813 (Del. Fam. Ct. 1992). Plaintiff can request that Family Court consider the failure to pay the mortgage in its decision regarding the distribution of the assets. **Bryant** v. **Bryant**, 1999 Del. Fam. Ct. LEXIS 22 [*8] (Del. Fam. Ct.).

Plaintiff's request for a "partition" of the property transferring title into his name alone is not an option available to him. First, a "partition" is a dividing of the property between the various owners; it is not a taking of the property from one owner and giving it to the other owner. Furthermore, as noted above, Family Court has jurisdiction over the division of the marital property. Even if the Family Court had not yet exercised jurisdiction and plaintiff actually was seeking a partition of the property, he would have to file such an action with the Family Court. 10 Del. C. § 921(14); Nero v. Littleton, 1998 Del. Ch. LEXIS 57 (Del. Ch.).

Finally, I address plaintiff's contention regarding defendant's failure to file an answer in the case of Mortgage Electronic Registration Systems, Inc. v. Buchanan, C.A. No. 04L-06-001. Since defendant has not been served in that case, she has no duty to file an answer.

6) For the foregoing reasons, I dismiss the complaint in this matter for lack of jurisdiction.

IT IS SO ORDERED.

**Document 1 of 2.**

2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

Search Terms: 2006 Bankr. LEXIS 1435

FOCUS™

Document 1 of 1.

IN RE: GREGORY P. CORTELLESSA, Debtor; GREGORY P. CORTELLESSA, Plaintiff v. LEE CORTELLESSA, Defendant

Chapter 13, Bankruptcy Case No. 05-24258 REF, Adversary No. 06-2082 REF

UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**2006 Bankr. LEXIS 1435**

June 9, 2006, Decided

**COUNSEL:** [*1] For Gregory P. Cortellessa, Plaintiff: DEXTER K. CASE, CASE, DIGIAMBERARDINO & LUTZ, P.C., Wyomissing, PA; JENNIFER R. ALDERFER, Wyomissing, PA.

For Lee Cortellessa, Defendant: MARK E. ZIMMER, Mogel, Speidel, Bobb & Kershner, P.C., Reading, PA.

Gregory P. Cortellessa, aka Gregory P. Cortellessa, DMD, Debtor: DEXTER K. CASE, CASE, DIGIAMBERARDINO & LUTZ, P.C., Wyomissing, PA.

FREDERICK L. REIGLE, Chapter 13 Trustee, Trustee, Reading, PA.

**JUDGES:** Richard E. Fehling, United States Bankruptcy Judge.

**OPINION BY:** Richard E. Fehling

**OPINION:** ORDER

AND NOW, this 9th day of June, 2006, upon my consideration of Wife's Motion for Summary Judgment (all capitalized terms in this Order shall have the meaning attributed to them in the accompanying Memorandum Opinion), the parties' agreement that no disputed material facts exist, my independent finding that no disputed material facts exist, the parties' agreement to submit this matter to the Court in the present procedural status (i.e., Wife has filed no answer to the complaint), as well as the entire file in the above-captioned matter:

IT IS HEREBY ORDERED that the Wife's Motion for Summary Judgment is denied in part (insofar as I rule that [*2] the September 27 Order did not permit Wife to initiate and prosecute the Special Relief Petition in state court) and is granted in part (insofar as I rule that Wife and her counsel are not subject to the imposition of sanctions).

IT IS FURTHER ORDERED, based upon the foregoing Memorandum Opinion, that the domestic relations litigation proceeding in the Berks County Court of Common Pleas, as it relates to Wife's efforts through the Special Relief Petition to impose a constructive trust upon and divest liens on the Former Marital Residence, now in the sole name of Husband, is prohibited by the automatic stay of Section 362(a)(3), 11 U.S.C. Section 362(a)(3), which was not modified by the September 27 Order, which allowed the state court domestic litigation to go forward.

IT IS FURTHER ORDERED, based upon the foregoing Memorandum Opinion that the request for sanctions by Husband against Wife is denied and dismissed.

IT IS FURTHER ORDERED that this adversary proceeding be closed upon the entry of this Order.

BY THE COURT

Richard E. Fehling

United States Bankruptcy Judge

MEMORANDUM OPINION INTERPRETING THE SEPTEMBER 27, 2005, ORDER OF THIS COURT GRANTING RELIEF [*3] FROM THE AUTOMATIC STAY OF SECTION 362

I. Background and Facts

This matter involves the interface of Pennsylvania state domestic relations law with the federal bankruptcy laws. Plaintiff is Gregory P. Cortellessa ("Husband") and defendant is Lee Cortellessa ("Wife"), who initiated divorce proceedings against Husband on March 21, 2002. Husband and Wife jointly transferred their interest in the marital residence at 15 Wyndam Hill Drive, Reading, Berks County, Pennsylvania (the "Former Marital Residence") to Husband in fee simple by deed dated May 23, 2003 (the "Deed"): n1 In exchange, Husband paid $ 15,000 to Wife and obtained a release of Wife's liability for two debt obligations totaling nearly $ 300,000. Husband filed his petition for bankruptcy under Chapter 13 of the United States Bankruptcy Code, Title 11 of the United States Code, on July 21, 2005. On August 11, 2005, Wife moved this Court for relief from the automatic stay (the "Stay Relief Motion") to allow her to proceed with her equitable distribution litigation against Husband in the Berks County, Pennsylvania Court of Common Pleas. n2 Specifically, Paragraph 9 of the Stay Relief Motion avers: "The parties are prepared [*4] to proceed with equitable distribution and have scheduled a hearing before the Divorce Master on October 12 and 19, 2005." The prayer for relief in the Stay Relief Motion prays for an order granting relief from the stay "to proceed with divorce, custody and support litigation" in the Berks County Court, without reference to specific sub-sections of Section 362(a).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 The Deed is Stipulated Exhibit No. 5. The Stipulated Exhibits are Document Number 20 on the docket of this adversary proceeding. The Stipulated Exhibits and all documents on the dockets of both the main case and this adversary proceeding are available to me by my taking judicial notice of the documents on the docket of a case pending before me. See In re Scholl, 1998 Bankr. LEXIS 1059, No. 97-32805DWS, p. 2, n. 1 (Bankr. E.D. Pa. Aug.26, 1998), in which Chief Judge Sigmund took judicial notice of the contents of documents on the docket, citing Nantucket Investors II v. California Federal Bank (In re Indian Palms Assocs.), 61 F.3d 197, 205 (3d Cir. 1995).

n2 Wife's Motion for Relief from the Automatic Stay (the "Stay Relief Motion") is Document Number 11 on the docket of Husband's Chapter 13 case.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*5]

At the hearing on the Stay Relief Motion on September 27, 2005, a brief colloquy (the "Colloquy") occurred among counsel for Wife, counsel for Husband, and Honorable Thomas M. Twardowski (my predecessor in this Reading Division of the Bankruptcy Court). n3 Following the Colloquy, Judge Twardowski signed an order with which the parties ultimately agreed (the "September 27 Order"). n4 The operative language of the September 27 Order follows:

> IT IS HEREBY ORDERED that Movant's Petition is GRANTED and Movant, Lee Cortellessa, is granted relief from the Stay so that Lee Cortellessa and Debtor may proceed with their domestic litigation in the Court of Common Pleas, Berks County, Pennsylvania in the following matters and docket numbers:
>
> Divorce -- Docket No. 02-3192
>
> Custody -- Docket No. 02-12085
>
> Support -- Docket No. 02-081000, PACSES No. 140104330.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The transcript of the Colloquy (the "Colloquy Transcript") among counsel and Judge Twardowski is Document Number 50 on the docket of Husband's Chapter 13 bankruptcy case.

n4 The September 27 Order is Document Number 24 on the docket of Husband's Chapter 13 bankruptcy case.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*6]

Three and a half months into the resumed state court proceeding (on January 10, 2006), Wife filed her Amended and Fully Restated Petition for Special Relief (the "Special Relief Petition") n5, through which Wife sought to impose a constructive trust on the Former Marital Residence, now titled solely in Husband's name and property of Husband's Chapter 13 estate, and to divest certain mortgage and judgment liens that encumber the Former Marital Residence. Husband returned to this Court n6 with his complaint in this adversary proceeding, filed on February 15, 2006, seeking a determination that Wife had violated the automatic stay by initiating the constructive trust action. Husband filed an amended

complaint on March 10, 2006. Husband claims that the Special Relief Petition is entirely outside the scope of the relief granted by the September 27 Order. Husband had also asserted the same argument in the state court action and Honorable Scott E. Lash ordered, on February 28, 2006, that this Court should determine the scope and limits of the September 27 Order. n7 Of particular importance is the following excerpt from Judge Lash's order:

> [I]t further appearing to this Count that [*7] interpretation of the automatic stay is within the sole purview of the United States Bankruptcy Court, it is hereby ORDERED that disposition of the Petition of Plaintiff, Lee C. Cortellessa, for Special Relief is deferred, pending a determination by the United States Bankruptcy Court on whether the issues raised in the Petition for Special Relief are encompassed by the relief from the automatic stay entered on September 27, 2005, or if not, whether the Bankruptcy Court would extend the scope of the stay to allow this Court to enter a disposition on the Petition for Special Relief.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 The Special Relief Petition is Stipulated Exhibit No. 11.

n6 Judge Twardowski had expressly refused to relinquish jurisdiction to allow the parties to "argue positions in the future." Colloquy Transcript, page 8, lines 8 – 16.

n7 Judge Lash's February 28, 2006, Order deferring to this Court further consideration of the September 27 Order is Stipulated Exhibit No. 13.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

I appreciate Judge Lash's deferring to this Court's [*8] interpretation of the Section 362 automatic stay and the September 27 Order of this Court (although not of the undersigned) relating to Section 362. Just as this Court had and has the legal power and jurisdiction to determine matters of peculiarly state law, such as equitable distribution under Pennsylvania's Divorce Code, 23 Pa. C.S. §§ 3101 et seq., n8 so the state court has the power and concurrent jurisdiction to determine certain matters arising specifically under the Bankruptcy Code, such as the automatic stay of Section 362. In re Steward, 338 B.R. 654, 658 (Bankr. D.N.J. 2006) (citing In re Singleton, 230 B.R. 533, 538-39 (6th Cir. B.A.P. 1999)). Furthermore, state courts have the power to interpret both Section 362 and bankruptcy court orders interpreting it. Graziani v. Randolph, 2005 PA Super 378, 887 A.2d 1244, 1249 (Pa. Super. 2005); Department of Envtl. Resources, v. Ingram, 658 A.2d 435, 437-38 (Pa. Commw. Ct. 1995). As stated above, bankruptcy courts have the power to interpret state domestic relations law, particularly in matters of property distribution. In re Wilson, 85 B.R. 722, 727-28 (Bankr. E.D. Pa. 1988). [*9] But, as Judge Twardowski deferred to the state court's expertise in the realm of equitable distribution litigation by granting relief from the automatic stay to allow the parties to proceed in state court, so too did Judge Lash defer ruling on the relief from automatic stay issue arising under Section 362 of the Bankruptcy Code, referring the parties to this Court.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 The statutory basis for equitable distribution is found at 23 Pa. C.S. §§ 3501, et seq.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On March 10, 2006, Husband requested that I expedite this adversary proceeding and I ordered a hearing to be set for April 4, 2006. Prior to April 4, Wife filed her Amended Motion To Dismiss/Withdraw Document and for Summary Judgment, n9 to which Husband responded. n10 At the April 4, 2006, hearing and argument, n11 I considered the parties' agreement that they would submit a stipulated set of evidentiary exhibits for my consideration. Neither party felt the need to offer live testimony at the hearing, agreeing [*10] that the exhibits would accurately set forth all necessary information for me to make my determination. n12 On April 4, the parties presented extensive oral argument, answering and addressing many questions that I raised. Both parties filed their briefs on April 28, 2006. I regard this matter as now before me on Wife's motion for summary judgment, acknowledging counsels' statements that no disputed material facts face me as well as finding independently that no disputed material facts exist. n13 This matter is now ripe for my determination.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 Wife's Amended Motion To Dismiss/Withdraw Document and for Summary Judgment, filed March 27, 2006, is Document Number 11 on the docket of Husband's Chapter 13 bankruptcy case.

n10 Husband's Response to Amended Motion To Dismiss and for Summary Judgment, filed March 31, 2006, is Document Number 12 on the docket of Husband's Chapter 13 bankruptcy case.

n11 The transcript of the argument (the "Argument Transcript") among counsel and this Court is Document Number 23 on the docket of this adversary proceeding.

n12 Additional documents have been included in the Stipulated Exhibits, through my order of May 17, 2006 (Document 24 on the docket of this adversary proceeding), and through the filing of an additional exhibit on May 23, 2006 (Document 27 on the docket of this adversary proceeding). [*11]

n13 By bench order on April 4, 2006, I denied Wife's motion to dismiss for failure to state a claim for which relief might be granted because the record is clear that Husband's action is based upon Wife's alleged violation of the Section 362 automatic stay and therefore certainly states a claim for which relief might be granted. Argument Transcript, page 29, lines 21 − 24.

Wife also argued that, because the parties raised the issue of the interpretation of Section 362 and the September 27 Order before the state court (which has not ruled on the issue), the doctrine of issue preclusion (formerly know as collateral estoppel) bars me from hearing this matter. I rejected this

argument on April 4, 2006, see Argument Transcript, page 30, lines 8 -- 14, and I reject it here. Wife is incorrect for two reasons. First, Judge Lash specifically declined to rule on Section 362 and the September 27 Order, referring them to me for consideration. See p. 3 and fn. 7, above. Second, Judge Lash never ruled on the stay relief issue and the cases are quite clear that one of the requisite elements of an effective issue preclusion argument is a showing of an actual adjudication of the issue claimed to be precluded. See Raytech Corp. v. White, 54 F.3d 187, 190 (3d Cir. 1995); Rashid v. United States (In re Rashid), 2002 U.S. Dist. LEXIS 118, No. Civ. A. 01-CV-2197, 2002 WL 15939, at *3 (E.D. Pa. Jan. 8, 2002).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*12]

## II. SUMMARY

Based upon the discussion below, I have determined that Wife's proceeding to impose a constructive trust and avoid the liens on the Former Marital Residence was not included in the relief from the automatic stay granted by Judge Twardowski in his September 27 Order and it was inappropriately initiated and prosecuted in the state court. Despite that finding, however, I will deny Husband's request for sanctions because Wife's counsel reasonably believed that she had been granted permission to pursue the relief that she was seeking in state court.

## III. DISCUSSION

A. Extent of the Relief Granted by the September 27 Order.

I do not believe that the September 27 Order granted relief from the automatic stay of Section 362 to permit Wife to initiate and prosecute the constructive trust relief and avoidance of liens sought in the Special Relief Petition as part of the equitable distribution proceeding in the Berks County Court.

Husband argues that the Stay Relief Motion, the Colloquy, and the September 27 Order are based on Section 362(a)(1), which prohibits continuation of judicial proceedings to establish or recover a claim, 11 U.S.C. § 362(a)(1) [*13] , but that nothing permitted any acts to obtain or exercise control over property of the estate, which is stayed by Section 362(a)(3), 11 U.S.C. § 362(a)(3). Husband argues therefore that Wife's initiation and prosecution of the Special Relief Petition violates Section 362(a)(3), because it constitutes an action against the Former Marital Residence, which is now clearly property of Husband's Chapter 13 estate. I reject Husband's argument insofar as it purports to point to any express distinction in the record between the two sub-sections of Section 362(a). My review of the Stay Relief Motion and the Colloquy failed to find any express reference limiting the scope of the September 27 Order to Section 362(a)(1). No differentiation between particular sub-sections of Section 362(a) is found in the record.

Although no express differentiation between sub-sections of Section 362(a) existed in either the Stay Relief Motion, the Colloquy, or the September 27 Order, I believe that such differentiation impliedly existed. In the Colloquy, Wife's counsel referred to Wife's need to return to state court as "not a complex case" and his comments to the Court in the Colloquy [*14] centered exclusively on Wife's need to proceed with "very few issues involved in the equitable distribution matter." Colloquy Transcript, page 4, lines 4 -- 6. Judge Twardowski noted that the matter should be sent back "to state court for the equitable distribution issues to be resolved." Colloquy Transcript, page 5, lines 16 & 17. Wife's counsel declared their intent to proceed "with matters that are ripe to do so in state court." Colloquy Transcript, page 5, lines 19 & 20. As mentioned above, Paragraph 9 of Wife's Stay Relief

Motion clearly anticipates that the entire equitable distribution litigation would be completed before the Divorce Master by mid-October 2005. Wife's counsel made no reference to any other litigation that was or might be necessary and nothing was said about any need to initiate and prosecute constructive trust or avoidance of liens litigation against property of the Chapter 13 estate.

These cited comments and the entire Colloquy appear to limit the scope of the anticipated domestic litigation to a garden-variety determination of equitable distribution. Clearly, at least to my reading, the Special Relief Petition was not ripe for determination in the Berks County [*15] Court because the idea of the constructive trust and lien avoidance litigation had apparently not yet occurred to Wife's counsel.

If straying beyond standard equitable distribution was, however, within the contemplation of either counsel, they disguised it completely, making no reference to it whatsoever. If it was within the contemplation of Judge Twardowski, it was not memorialized in any way in his September 27 Order or his comments in the Colloquy. The discussion was exclusively related to determining the amount of Wife's claim against Husband in the nature of straight-forward equitable distribution and did not get into any description of carving up assets or avoiding liens to provide for payment to Wife. But in his argument on April 4, counsel for Wife acknowledged that the Special Relief Petition is primarily intended for collection efforts rather than for determining equitable distribution. Argument Transcript, page 48, line 23, through page 50, line 12. Therefore, I regard the extraordinary relief sought through the Special Relief Petition as being wholly outside the contemplation of the parties to the Colloquy on September 27, 2005, and therefore outside the permission granted [*16] in the September 27 Order. Judge Twardowski anticipated that the parties might return to him in the future to address "issues of ultimate allowance of claims, [and] ultimate distribution schemes under the Bankruptcy Code. . . ." Colloquy Transcript, page 3, lines 24 & 25.

I conclude, although Section 362(a)(3) is not expressly identified in either the Stay Relief Motion, the Colloquy, or the September 27 Order, that the Special Relief Petition was initiated contrary to the restrictions and prohibitions of Section 362(a)(3) of the Bankruptcy Code and is not authorized by the September 27 Order.

My determination that the Special Relief Petition was beyond the contemplation of the parties on September 27, 2005, and was not addressed by the September 27 Order, begs the question, of course, of what now to do with the Special Relief Petition. Do I somehow keep it before me for determination of the disposition of what is clearly property of the Chapter 13 estate or allow the parties to pursue the litigation in state court? n14 This appears to be the true lynchpin of this dispute, raising a difficult intersection of the two bodies of law — Pennsylvania domestic relations [*17] law and federal bankruptcy law -- with no specific precedent that might provide me with guidance. n15 Nevertheless, judicial restraint dictates that I limit my analysis and decision to the two narrow issues expressly presented by the parties in their pleadings before me, which issues are limited to (1) a determination whether the September 27 Order did or did not permit Wife to proceed with the Special Relief Petition and (2) a request for a damages award in the event that the September 27 Order did not grant such permission. I have described my conclusion on the first issue above and will now look to the second issue.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n14 In his February 28 order, found at page 3, above, Judge Lash suggested that I might consider extending the scope of the relief from the automatic stay to allow him to address the Special Relief Petition, but neither party has requested that I do so.

n15 I do not believe that any of the decisions referred to me by either counsel address staying or permitting domestic relations law litigation of the nature faced in this matter, to wit, an apparently ancillary petition seeking a constructive trust and avoidance of liens, dealing directly (and adversely) with the interests of a debtor and secured creditors in property of a Chapter 13 estate. The cases of Scholl v. Scholl, 234 B.R. 636 (Bankr. E.D. Pa. 1999), and Fidelity Bank, N.A. v. Carroll, 539 Pa. 276, 652 A.2d 296 (Pa. 1994), relied upon heavily by Wife, are inapposite. The decision that provides more guidance for me is In re Wilson, supra, 85 B.R. 722 (Bankr. E.D. Pa. 1988), discussed briefly above.

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - - [*18]

B. Neither Wife Nor Wife's Counsel Should Be Sanctioned for Proceeding with the Special Relief Petition Without Specific Relief from the Automatic Stay To Do So.

Finding as I do that the September 27 Order did not grant Wife relief from the automatic stay of Section 362 to initiate and prosecute the Special Relief Petition, I turn next to Husband's well-pleaded demand for actual and punitive damages. Paragraph 16 of the Amended Complaint n16 explains in sufficient detail the nature of the actual damages and losses that Husband has experienced through Wife's presentation and prosecution of the Special Relief Petition. He has alleged the following damages: (1.) Attorneys' fees and costs; (2.) time (and therefore money) lost from his business as a dentist; (3.) the attorneys' fees and costs incurred by his lenders, who have been forced to put substantial time and effort into the defense of the liens securing their loans; and (4.) punitive damages for Wife's purported willful conduct. n17

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n16 Document Number 4 on the docket of the adversary proceeding.

n17 If I were to rule for the Husband on the issue of damages, I would be obliged to conduct a factual hearing on the specifics of the damages sought by Husband, but his pleading identifies the nature of the damages sufficiently for the purpose of this Memorandum Opinion.

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - - [*19]

Section 362(k) provides the statutory support for Husband's request for damages as follows:

> Except as provided in paragraph (2) [an exception not applicable here], an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1). Such damages may be awarded solely upon the "willful violation" of Section 362. I do not believe that a "willful violation" of the stay arises by pursuing litigation when the offending party believes that the Section 362 automatic stay has been modified specifically to permit the litigation. The Third Circuit Court of Appeals accepted a definition of "willful violation" established by the Ninth Circuit Court, which definition requires only that the offending party knew of the automatic stay and intended to do what it did by acting intentionally. Cuffee v. Atlantic Bus. and Cmty. Dev. Corp. (In re Atlantic Bus. and Cmty. Dev. Corp.), 901 F.2d 325, 329 (3d Cir. 1990) citing Goichman v. Bloom (In re Bloom), 875 F.2d 224, 227 (9th Cir. 1989). [*20]  The Court in Cuffee further accepted the Bloom position that the offending party's good faith is not relevant. The Cuffee Court then went on to examine, and seemingly accept, certain bankruptcy courts' construction of "willful violation" as an intentional or deliberate act done with knowledge that the act is in violation of the stay. Id. The latter definition of "willful violation" was adopted very recently in this District from the Cuffee decision in In re Jester, 2006 Bankr. LEXIS 976, No. 05-32185DWS, 2006 WL 1495041, at *5 (Bankr. E.D. Pa. April 12, 2006). Under either of these definitions, I believe that Wife's actions were undertaken with a legitimate belief that no automatic stay existed to prevent the Special Relief Petition. Wife reasonably thought that the stay did not exist because, she believed, it had been modified specifically to allow all domestic litigation of whatever nature.

Another line of decisions defining "willful violation" in the context of Section 362(k) is similar. If the offending party has "persuasive legal authority" to support the actions, no damages will be awarded for violating the automatic stay of Section 362. University Medical Center v. Sullivan (In re University Medical Center), 973 F.2d 1065, 1088 (3d Cir. 1992); [*21]  Montgomery Ward, LLC v. Wiseknit Factory, Ltd. (In re Montgomery Ward, LLC), 292 B.R. 49, 57 (Bankr. D. Del. 2003). I believe that Wife's persuasive legal authority in this matter was the text of the September 27 Order, which, on its face, supported the initiation and prosecution of the Special Relief Petition.

The absence of any reference to sub-sections (a)(1) or (a)(3) of Section 362 in the September 27 Order and the Colloquy could reasonably be construed to permit any and all litigation in the state court in any way related to the pending domestic relation cases. The September 27 Order expressly permitted Wife to proceed with her "domestic litigation," which could be (and apparently was) construed by Wife and her counsel to permit the Special Relief Petition as part and parcel of the pending equitable distribution litigation. I find, therefore, that Wife and Wife's counsel had persuasive authority to support their position that initiation and prosecution of the Special Relief Petition was permitted under the September 27 Order. Neither Wife nor Wife's counsel has willfully violated the automatic stay of Section 362 through the Special Relief Petition and I [*22]  will deny and dismiss Husband's demands for damages under Section 362(k) to be awarded to him.

An appropriate Order will follow granting Husband's prayer for a limiting interpretation of the September 27 Order, but denying Husband's request for an award of damages.

                                                        **Document 1 of 1.**

2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

**Search Terms: property division, choate**

**FOCUS™** [                    ] Search Within Results          Edit Search

Print | Email

Document List · Expanded List · KWIC · **Full**          **Document 1 of 2.** next»

LAURIE DAVIS a/k/a LAURIE DAVIS COX, Appellant, Cross-Appellee, v. THOMAS COX, Debtor-Appellee, Cross-Appellant.

Nos. 02-1962, 02-1963

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

356 F.3d 76; 2004 U.S. App. LEXIS 569; 32 Employee Benefits Cas. (BNA) 2437; Bankr. L. Rep. (CCH) P80,033

January 15, 2004, Decided

**PRIOR HISTORY:** [**1] CROSS-APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE. [Hon. George Z. Singal, U.S. District Judge]. Davis v. Cox (In re Cox), 274 B.R. 13, 2002 Bankr. LEXIS 163 (Bankr. D. Me., 2002)

**DISPOSITION:** Affirmed in part, reversed in part, and remanded.

**COUNSEL:** Michael J. Pearce with whom Joshua R. Dow and Michael J. Pearce & Associates, LLC were on brief for appellant, cross-appellee.

George J. Marcus and Regan M. Hornney with whom Jennie L. Clegg and Marcus, Clegg & Mistretta, P.A. were on brief for cross-appellant, debtor-appellee.

**JUDGES:** Before Howard, Circuit Judge, Campbell and Cyr, Senior Circuit Judges. CYR, Senior Circuit Judge, dissenting.

**OPINION BY:** CAMPBELL

**OPINION:**

[*78] **CAMPBELL, Senior Circuit Judge.** These appeals challenge the bankruptcy court's resolution of an issue at the intersection of federal bankruptcy and Maine family law.

Sometime after his wife, appellant Laurie Davis, had sued him for divorce in the Maine state district court, Thomas Cox, the cross-appellant, filed for bankruptcy in the United States Bankruptcy Court for the District of Maine. Subsequently the state court allowed the divorce and divided the couple's [**2] marital property. As one part of the property disposition, the court awarded to Davis most of an Individual Retirement Account ("the Advest IRA") owned by Cox. The court also directed that sums being held in escrow pursuant to its prior order be used to pay the couple's taxes and other debts.

Davis then sought permission from the bankruptcy court to execute the divorce court's division of the marital property. The bankruptcy court, however, refused to let Davis recover against the Advest IRA. It ruled that because the Advest IRA was in Cox's name when Cox petitioned for bankruptcy, it became the property of his bankruptcy estate, hence was not subject to the later judgment of the divorce court. Instead, the divorce court's disposition relative to the IRA gave Davis merely a general unsecured claim for the relevant amount against the bankruptcy estate. Regarding the sums held in escrow, the bankruptcy court ruled that these could be disbursed according to the divorce judgment. The bankruptcy court concluded that the state court's order placing the funds in escrow had acted as a lien, effective at the time of bankruptcy, against those funds.

Davis and Cox both appeal from these orders [**3] of the bankruptcy court. While we affirm the bankruptcy court's decision on the escrow property, we reverse the court's decision as to the Advest IRA and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Laurie Davis and Thomas Cox were married on August 17, 1985. They have two minor children, ages 14 and 12. After the marriage, Davis was a homemaker and, for sometime, Cox was a successful commercial attorney. Since 1997, however, Cox has been classified as totally disabled with bipolar disorder.

[*79] On November 4, 1998, Davis filed for divorce in Maine's state district court. Upon commencement of the divorce action, the court was required by Maine law to issue, and did issue, a preliminary injunction enjoining either spouse from "transferring, encumbering, concealing, selling or otherwise disposing of property of either or both of the parties, except in the usual course of business or for the necessities of life." Me. Rev. Stat. Ann. tit. 19-A, § 903(1)(B)(1)(2000). The preliminary injunction was meant to keep intact, until ultimate division by the court, the divorcing couple's "marital property," a term Maine law describes [**4] as including (with certain exceptions) all property acquired by either party subsequent to the marriage -- property that, upon divorce, is equitably divided by the court between the divorcing pair irrespective of in whose name it was held. Id. at § 953(3). Davis also filed a notice of lis pendens in the Cumberland County Registry of Deeds giving notice of the pending divorce relative to any real estate transactions. Id. at § 953(6). In addition, Davis sent a letter to Advest, the entity maintaining an individual retirement account held in Cox's name, advising it of the pending divorce and the preliminary injunction. n1 The Advest IRA, valued at approximately $ 65,000 at the commencement of the divorce proceeding, n2 was titled in Cox's name only.

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Cox also maintained another IRA at Fleet Bank valued at approximately $ 1,500. Davis sent a letter to Fleet Bank advising it of the divorce proceedings. The Fleet Bank IRA is not at issue in this appeal.

n2 By the time the divorce decree was issued, the IRA's value had risen to approximately $ 90,000.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**5]

Despite the preliminary injunction, Cox withdrew funds from the Advest IRA and disposed of other marital assets in violation of the restrictions contained in the injunction. When Davis brought Cox's conduct to the divorce court's attention, it entered an interim order on May 24, 1999, providing among other things that "neither party may draw down funds from the IRA's or from other liquid or semi-liquid assets, whether or not characterized as for the necessities of life, without either prior written approval from the other party or order of the court." Cox ignored this order also and continued to make withdrawals from the IRA without Davis's prior approval or the court's order.

To avoid further dissipation of the marital assets, the Maine district court also ordered the parties' attorneys, Martin Ridge and Pamela Lawrason, to hold in escrow with their respective firms certain funds belonging to Cox and Davis. Those funds were not to be moved, used, or transferred absent a court order. Ms. Lawrason placed the funds in a separate interest bearing account ("Lawrason Account") and Mr. Ridge held the funds in his firm's trust account ("Ridge Account").

After several unsuccessful attempts [**6] at an agreed settlement, the parties requested the Maine district court to divide the marital property. Id. at § 953(4). Pursuant to Maine statute, the court is empowered to "set apart to each spouse the spouse's property and shall divide the marital property in proportions the court considers just after considering all relevant factors." Id. at § 953(1).

The divorce action was initially set for trial on February 28, 2000, but trial was postponed when Cox informed the court that he was filing a bankruptcy petition later that day. When the bankruptcy petition was not filed, the Maine district court rescheduled the trial for April 5, 2000. The trial was delayed again, however, when, on that date, Cox filed with United [*80] States Bankruptcy Court for the District of Maine a petition for bankruptcy under Chapter 13 of the Bankruptcy Code. 11 U.S.C. § 301 (2000). A stay under 11 U.S.C. § 362

automatically went into effect at this time preventing the state court from proceeding with the trial. But on June 1, 2000, the bankruptcy court in response to Davis's motion, relieved her from the automatic stay to the extent necessary for her to [**7] continue with the divorce in state court. In its order, the bankruptcy court noted that the state court divorce action was virtually ready to be tried, that it involved state law issues as to which the state court has special and everyday expertise not requiring the expertise of the bankruptcy court, and that the estate and creditors were protected by Trustee Fessenden's appearance in the divorce action. The court further stated that relief from stay was not granted to implement any property settlement issues absent its further order.

Fessenden, the trustee for the bankruptcy estate, filed a memorandum in the divorce proceeding setting forth "the trustee's position on the bankruptcy issues in the pending divorce." The trustee's position was not unlike that now asserted by Davis, that the Maine district court would determine the ownership rights of the marital property pursuant to state law and the state court's disposition of the property would establish what is "property of the debtor" and define the bankruptcy estate. The trustee recognized, however, that Maine law was unsettled "whether the eventual divorce judgment creates property rights or declares those rights which [**8] arose as of the filing of the divorce." (Emphasis in the original). As a result, the trustee urged the state court "to take this opportunity to address the fundamental issues of when divorcing parties' property rights arise as a matter of state law" and encouraged the court, if it needed guidance, to certify the question to the Supreme Judicial Court of Maine. The court held a four-day trial largely dealing with what disposition to make of marital assets and debt. After the trial, but before the court's judgment was issued, Cox, on October 30, 2000, converted his Chapter 13 petition to a Chapter 7 liquidation.

On November 21, 2000, the Maine district court entered its judgment. It granted the divorce, awarded parental rights to Davis, and made detailed orders concerning care of the children. Regarding disposition of the couple's property, the court inter alia found that the Advest IRA account, by then valued at $ 90,000, was a part of the couple's marital property. The court ordered that $ 10,500 of the Advest IRA be paid for guardian ad litem fees amassed during the divorce proceedings. It found it equitable to award $ 65,250 from the Advest IRA account to Davis, holding that [**9] Cox "was in contempt for violation of the preliminary injunction" and that $ 65,250 was a proper "sanction" for the contempt. The court stated that that sum "restores Plaintiff to the position she would have enjoyed had Defendant not put these funds to his own use." In making that and the other property dispositions in the divorce judgment, the court recited that it had considered the factors set forth in title 19-A, § 953 of the Maine Revised Statutes and found the dispositions to be equitable. n3

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n3 The court found that "both parties contributed to the acquisition of the marital property, Defendant through his successful law practice and Plaintiff through her employment outside the home as well as her contribution as a homemaker." Further noting that the court "has also given careful consideration to the parties' respective economic circumstances at this time," the court awarded the Peaks Island residence to Davis, and a substantial payment from his law firm to Cox. Cox was also given other real estate. The court noted Cox's contention that he needed the marital cash assets to pay bills and current expenses, including psychiatry not covered by insurance.

The court said that its property disposition "meets some of that need while providing funds for payment of the parties' joint tax liabilities and other joint debt."

The court declined Davis's request that Cox be ordered to pay her lump sum alimony, finding that because of Cox's disability and present economic circumstances, he lacked the ability to pay lump sum spousal support.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**10]

[*81] The court also ordered that the Lawrason Account, valued at approximately $ 36,000, be used to pay various tax debts. From the $ 36,000 balance, $ 10,850 was earmarked to pay the taxes on Cox's Advest IRA withdrawals, $ 10,210 was to pay for the couple's federal and state income tax debt from 1985 and 1986, and the balance was to be applied to a joint debt of the parties to Key Bank. The Ridge Account balance was approximately $ 8,400, $ 6,600 of which was to be paid to Davis for the support of their minor children, and the balance to be applied toward the satisfaction of their debt to Key Bank.

Neither party appealed from the divorce court's **property division** to a higher Maine court.

Although encouraged to do so by the trustee in bankruptcy, the Maine state district court said nothing about whether "the eventual divorce judgment creates property rights or declares those rights which arose as of filing of the divorce." See supra. Nor did it seek direction on these questions from the Supreme Judicial Court of Maine. Rather, noting the bankruptcy court's recognition of "the special and everyday expertise of this Court to address state law issues relative to the division [**11] of marital property," the divorce court simply undertook to fulfill its statutory role under § 953 and divide the marital property equitably between the divorcing spouses.

On March 26, 2001, Davis filed a motion in the federal bankruptcy court requesting that the court issue an order (1) granting her relief from the bankruptcy stay and (2) recognizing and giving full force and effect to the state court's divorce judgment. For purposes of the bankruptcy case, the parties stipulated that the Advest IRA was entirely exempt pursuant to title 14, § 4422 of the Maine Revised Statutes. n4 The trustee filed a response to Davis's motion. There, he consented to the granting to Davis of relief from the automatic stay, and he requested that the federal bankruptcy court enter an order recognizing the state court divorce judgment with the condition that the bankruptcy court refuse to adopt the portion of the judgment which set aside $ 10,850 in the Lawrason Account for tax obligations and, instead, order that those funds be paid to [*82] him for the benefit of the bankruptcy estate.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Under 11 U.S.C. § 522, a debtor is allowed to declare certain property as exempt from the bankruptcy estate. Once an exemption becomes effective, the exempt property is generally not liable for any debt of the debtor that arose pre-petition. See id. at § 522(c). A debtor may choose to claim the exemptions listed in § 522(d) or those provided for under state law. Cox followed the latter route, claiming exemption for the Advest IRA under title 14, section 4422(13)(E) of Maine law. As applicable to this case, section 4422(13)(E) exempts from attachment an "individual retirement account . . . to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." Id. Section 4422(13) was amended by 2001 Me. Laws c. 306, §§ 1-5 effective September 21, 2001. It does not appear, however, that this amendment applies here. See Steelstone Industries, Inc. v. McCrum, 2001 ME 171, 785 A.2d 1256, 1258, n.3 (2001) (concluding that amendment did not apply although it became effective during pendency of litigation). Even were the amendment applicable, its language would not alter the exempt status of the Advest IRA.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - [**12]

Cox opposed Davis's motion seeking relief from the bankruptcy stay in order to execute the divorce property judgment. He argued that the Advest IRA had become the property of the bankruptcy estate, leaving Davis with only a general unsecured claim against the estate for the amount in the Advest IRA awarded her by the divorce court. He also asserted that the escrowed funds could not be used to pay down the mortgage owed to Key Bank.

The bankruptcy court determined that, pursuant to Maine law, the Advest IRA, to which Cox held legal title when he petitioned for bankruptcy, had by then become a part of the bankruptcy estate. The court concluded that Davis's right to any marital property held in Cox's name was contingent and did not vest until the divorce judgment was handed down, an event occurring after the bankruptcy petition had been filed. Davis v. Cox (In re Cox), 274 B.R. 13, 23 (Bankr. D. Me. 2002). By then, the Advest IRA, owned by Cox, was under the jurisdiction of the bankruptcy court. As a result, Davis acquired only a general, unsecured claim against Cox's bankruptcy estate for the $ 62,250 interest in the IRA awarded her by the Maine divorce court. [**13] Id. at 28. In reaching its conclusion, the bankruptcy court noted that Maine's divorce statute contained various specific remedies to protect the marital property, most relevantly attachment. The court reasoned:

If a divorcing spouse's contingent rights to a distribution of marital property from assets held in the other's name can be protected by attachment, it follows they are unprotected without it (or its functional equivalent); . . . if the pendency of a divorce does not, of itself, disable a spouse from dealing with property held in his or her name, it simply cannot be that a Maine non-debtor spouse's unsecured, undeclared rights to a potential marital property distribution trump the estate's rights at bankruptcy.

Id. (citations omitted).

As to the funds held in escrow, the bankruptcy court held that the state court's pre-petition order placing the funds in escrow operated effectively as an attachment of those funds. Id. at 33. The state court order placed the funds in custodia legis, thereby securing Davis's claim pending entry of the divorce judgment. Id. As a result, Davis's right to benefit from the distribution [**14] of the escrow funds in accordance with the divorce judgment was superior to the rights of the bankruptcy estate in the funds. Id.

Ms. Davis and Cox both appealed from the bankruptcy court's judgment to the district court. The district court affirmed the bankruptcy court, adopting its opinion in all respects.

## II. DISCUSSION

### A. Standard of Review

Under 28 U.S.C. § 158, appeals from the bankruptcy court go directly either to the district court (as here) or else to a federal bankruptcy appellate panel ("B.A.P."). Nonetheless, when an appeal reaches us from one of these tribunals, this court focuses -- especially, as here, where the district court has affirmed on the basis of the bankruptcy court's findings and rationale -- on the decision of the bankruptcy court. We examine that court's findings of fact for clear error and afford de novo review to its conclusions of law. See Groman v. Watman (In re Watman), 301 F.3d 3, 7 (1st Cir. 2002); Martin v. Bajgar (In re Bajgar), 104 F.3d 495, 497 (1st Cir. 1997).

### [*83] B. Advest IRA

A debtor's estate in bankruptcy comprises all property in which [**15] the debtor has "legal or equitable interests." 11 U.S.C. § 541(a). The bankruptcy court -- concluding that Cox, as the owner of the Advest IRA, would have held all legal and equitable interest in it until the time of the divorce court's judgment awarding it to Davis -- ruled that the Advest IRA became a part of the bankruptcy estate when Cox petitioned for bankruptcy. n5 At that time, the divorce action was ongoing in the state court but that tribunal had yet to issue its judgment determining inter alia how the marital property was to be divided as between the two spouses. Accordingly, the bankruptcy court believed that by the time of the state court's judgment the Advest IRA was no longer a marital asset available for distribution by that court to Davis.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 As indicated in note 4, supra, inclusion of the Advest IRA in the bankruptcy estate would not mean the IRA will go to Cox's creditors. By the parties' stipulation, the Advest IRA is exempt from Cox's creditors, being needed for his support and that of his dependents. See n.4, supra. As a result, Cox himself will retain the IRA notwithstanding his bankruptcy. The bankruptcy court commented that "as the record presently appears, it seems unlikely that [Mr. Cox's] attempt to exempt the IRA funds will fail." Cox, 274 B.R. at 31. As a result, the Maine divorce court's authority to make an equitable division as between the spouses, and in particular to award the lion's share of the IRA to Davis in reparation for Cox's contempt of the court's preliminary injunction, will be thwarted. Neither Cox's creditors nor Davis will have access to the IRA. According to the bankruptcy court, Davis is left with a general unsecured claim for $ 65,250 against her former husband's bankruptcy estate, without recourse against the IRA account. But see In re Perry, 131 B.R. 763, 767 (Bankr. D. Mass. 1991) (concluding that right to equitable distribution under Massachusetts divorce statute not a "claim" in bankruptcy). While Cox will thus retain the IRA, the bankruptcy court will still have under advisement the question whether Davis's $ 65,250 claim is nondischargeable in bankruptcy, see 11 U.S.C. § 523(a)(6) and (15), permitting her to pursue Cox even after his discharge in bankruptcy. Cox's abject financial position, however, suggests that nondischargeability may be difficult to obtain, id., and, even if obtained, will likely be a fruitless remedy. The same can be said as to Cox's claim against the bankruptcy estate.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**16]

Ms. Davis disputes the above analysis. Her primary thesis is that, after commencement of a divorce

proceeding, Maine law should be understood as providing to a non-owner spouse an inchoate equitable interest in all marital assets separately owned by the other spouse. Property in which the debtor-spouse holds legal title does not, she notes, become property of the bankruptcy estate "to the extent of any equitable interest in such property the debtor does not hold." 11 U.S.C. § 541(d). Davis's inchoate equity interest in the Advest IRA was, she argues, excluded from Cox's bankruptcy estate by operation of § 541(d). When the divorce court later entered its judgment granting the divorce and awarding a portion of the Advest IRA to Davis, her inchoate equity in the IRA became **choate** to the extent of the judgment, and the award took effect, so she contends, free and clear of Cox's bankruptcy. As an alternative to this theory, Davis argues that Cox should be deemed to have held the Advest IRA upon a constructive trust for her benefit prior to the bankruptcy, resulting in its provisional exclusion from the bankruptcy estate until the divorce court's final disposition [**17] of the marital property clarified what assets went to Davis.

A number of courts in divorce situations outside Maine have adopted one or the other of the above theories. n6 In respect to [*84] the first, some courts infer from divorce laws not unlike Maine's that, once a divorce proceeding has begun, the non-debtor spouse acquires an inchoate equitable interest in all assets held in the other spouse's name that form a part of the divisible marital estate. See, e.g., White v. Bell (In re White), 212 B.R. 979, 982 (B.A.P. 10th Cir. 1997) (relying on Wyoming law to infer a species of "co-ownership" in all marital property upon filing of divorce petition); Roberge v. Roberge, 188 B.R. 366, 368-69 (E.D. Va. 1995), aff'd, Roberge v. Buis, 95 F.3d 42 (4th Cir.) (unpublished) (concluding under Florida law equitable rights vest upon the filing of divorce petition).

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 While there is significant support along these lines for non-debtor spouses in situations like the present, such support is by no means universal. Many other courts have embraced a rationale similar to that of the bankruptcy court here. See, e.g., Anjum v. Anjum, 288 B.R. 72, 76 (Bankr. S.D.N.Y. 2003); Lawrence v. Lawrence, 237 B.R. 61, 79 (Bankr. D. N.J. 1999); In re Cole, 202 B.R. 356, 360 (Bankr. S.D.N.Y. 1996).

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - - - [**18]

Other courts have premised a spouse's equitable rights in marital property owned by the debtor spouse upon a theory of constructive lien or constructive trust. See, e.g., Walston v. Walston, 190 B.R. 66, 69-70 (E.D.N.C. 1995) (concluding "the fact of a pending action for the inevitable distribution of specified property should operate to create a constructive lien in favor of the non-debtor spouse"); In re Perry, 131 B.R. 763, 767-68 (Bankr. D. Mass. 1991) (relying on constructive trust theory to exclude non-debtor spouse's undeclared interest in marital property from bankruptcy estate).

On the facts of this case, we conclude that, under Maine law, Davis did indeed possess at bankruptcy an equitable interest in the Advest IRA such as prevented it, by virtue of 11 U.S.C. § 541(d), from becoming at that moment a part of Cox's bankruptcy estate. In reaching this result, we proceed narrowly on the remedial theory of constructive trust. We need not decide, and indeed think it inappropriate for a federal court to decide without first seeking more specific guidance from Maine's Supreme Judicial Court, whether Maine law, broadly [**19] applied, gives to non-owner spouses in ordinary circumstances after commencement of a divorce case, but before entry of judgment, an inchoate equitable interest in marital assets owned by the owner spouse. Such a general holding would have profound implications for Maine's law of creditors' rights in a variety of factual situations different from the present. As the issue is one of first impression in Maine, Maine's highest court rather than a federal court should be the first to plough such new territory.

The special equities favoring Davis on the facts of this particular case are, however, compelling. The state divorce court's award of most of the Advest IRA to Davis was granted, following a four-day trial, expressly in order to restore her to the position she would have been in had not Cox misapplied marital assets to his own use in disobedience of the court's preliminary injunction and the interim order -- a pattern of misconduct that commenced well before Cox filed for bankruptcy. Because of Cox's disability and support needs, attachment of the IRA does not appear to have been an option open to Davis prior to bankruptcy. 14 M.R.S. § 4422(13) (E). See note 4, supra. The [**20] Maine court ultimately found Cox in contempt and, as a remedy, ordered payment to Davis of $ 65,250 from the Advest IRA, a remedy that will have meaning if Davis had an equitable interest in the Advest IRA prior to Cox's filing of his petition for bankruptcy but not otherwise. On the present facts, especially given Cox's contemptuous behavior before the filing for bankruptcy, we think a Maine court, applying Maine law, would in these circumstances [*85] rule that, by the time he filed for bankruptcy, Cox held the Advest IRA upon a constructive trust for his spouse, Davis, subject to the divorce

court's ultimate determination of its ownership.

We begin our analysis by looking at Maine law as presently reflected in its divorce statute, and in the opinions of its Supreme Judicial Court. Butner v. United States, 440 U.S. 48, 54, 59 L. Ed. 2d 136, 99 S. Ct. 914 (1979) (stating that what constitutes a legal or equitable interest for bankruptcy purposes turns on state law).

### 1. Maine's Statutory Law

Maine's divorce law embodies major revisions adopted in 1972 by the Maine legislature. See Ziliert v. Zillert, 395 A.2d 1152, 1154-55 (Me. 1978). The primary goal of [**21] these modifications was to ensure that, upon divorce, each spouse receives an equitable share of the so-called "marital property." See Fournier v. Fournier, 376 A.2d 100, 102 (Me. 1977). Under Maine's statute, the divorce court is directed and authorized to divide the marital property as equity demands, taking into account the various factors set forth in Me. Rev. Stat. Ann. tit. 19-A, § 953(1). n7 The legislature broadly defined "marital property" to encompass "all property acquired by either spouse subsequent to the marriage . . . regardless of whether title is held individually or by the spouse in some form of co-ownership." Id. at § 953(3). According to Maine's Supreme Judicial Court, this statutory definition reflects the central premise on which the statute was founded: that marriage is a partnership in which two individuals combine their efforts into a single enterprise. See Long v. Long, 1997 ME 171, 697 A.2d 1317, 1320 (Me. 1997). With this premise in mind, courts, when determining a "just" division of marital property are to take into account not only a spouse's monetary contributions but the non-monetary [**22] ones made during a marriage such as being the primary caretaker for the children. See Me. Rev. Stat. Ann. tit. 19-A, § 953(1); Carter v. Carter, 419 A.2d 1018, 1020-21 (Me. 1980).

- - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n7 The Maine statute directs the court to look at three factors: (1) the contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker; (2) the value of the property set apart to each spouse; and (3) the economic circumstances of each spouse at the time the division of property is to become effective. Id. at § 953(1). When dividing marital property, courts have also taken into account a spouse's "economic misconduct" during the pendency of divorce proceedings, specifically the unauthorized diminution of marital property. See Williams v. Williams, 1998 ME 32, 706 A.2d 1038, 1040 (Me. 1998).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

To help ensure the preservation of the marital assets for equitable distribution, the Maine legislature provided that [**23] when a petition for divorce is filed, a standard preliminary injunction will issue, preventing either spouse, during the course of the divorce proceeding, from "transferring, encumbering, selling, or otherwise disposing of the property of either or both of the parties, except in the usual course of business or for the necessities of life." Me. Rev. Stat. Ann. tit. 19-A, § 903(1)(B)(1). The divorce statute also authorizes the "attachment of real or personal property or trustee process." Id. at § 903(5); Liberty v. Liberty, 2001 ME 19, 769 A.2d 845, 846 (Me. 2001). The statutory direction for issuance of a preliminary injunction during pendency of the divorce proceeding, as well as the provisions for attachment and other specified remedies, reflect a clear legislative intent to prevent divorcing spouses from disposing unfairly pendente lite of marital assets that, upon divorce, the court must inevitably determine belong in equity to one or the other of them. Such assets, as already noted, include ones [*86] that are owned in the individual name of one or the other spouse. That such statutory restrictions come into existence upon the institution [**24] of a divorce proceeding indicates the Maine legislature's expectation that the filing of a divorce case -- and not just the entry of judgment at the end of the case -- will significantly affect each spouse's property rights.

The bankruptcy court nevertheless took the view that by providing only for a preliminary injunction, attachment and certain other specific remedies, the Maine legislature indicated a wish to deny to a non-owner spouse any other unstated remedies, including equitable ones. We do not think this necessarily follows. Enactment of these particular remedies also betrayed a more general legislative intent, once divorce proceedings had begun, to shelter and sequester marital assets for the benefit of both spouses until the court could effect their just division. The Maine statute goes on to state that "the remedies provided in this subsection for enforcement of a preliminary injunction are in addition to any other civil or criminal remedies available, including civil contempt of court." Me. Rev. Stat. Ann. tit. 19-A, § 903(3)(C). The statutory language and scheme are thus compatible with -- indeed, strongly suggest -- legislative approval of [**25]

supplemental measures that a court might find reasonable and necessary to achieve the goal of safeguarding the marital estate until it can be properly divided. The Supreme Judicial Court of Maine has expressly stated that "the divorce court's power to divide marital property includes powers necessary to render effective the power to divide." Baker v. Baker, 444 A.2d 982, 986 (Me. 1982).

The matter of supplementary equitable remedies takes on special significance here where the property at issue (i.e. the Advest IRA) was apparently exempted by Maine law from attachment, although it also formed a part of the marital property that the Maine court ultimately could and did award to Davis. Under Maine law, an IRA is exempt from attachment "to the extent reasonably necessary" for the support of a debtor and his dependents. See Me. Rev. Stat. Ann. tit. 14, § 4422(13)(E). Steelstone Indus., Inc., 785 A.2d at 1258-1259. Relying on the same statute, the parties have stipulated to the Advest IRA's exempt status in bankruptcy, and the bankruptcy court relevantly noted that the "'reasonably necessary' needs of Cox and his family would [**26] seem to be substantial." Cox, 274 B.R. at 31 n.29. Thus, any attempt by Davis to have protected her interest in the Advest IRA by attaching it would likely have been futile. Davis did attempt diligently if unsuccessfully in other ways to protect her interest, by obtaining a court order tightening the injunction after Cox violated the previously worded one, and by sending a letter to Advest, the entity maintaining the IRA, advising it of the pending divorce and the terms of the injunction.

Ultimately, the divorce court, after having the benefit of a four-day trial during which it reviewed exhaustively the circumstances and relationship of the two divorcing spouses, awarded to Davis a substantial interest in the Advest IRA as compensation for Cox's contempt of the court's preliminary injunction. This award was part of the court's comprehensive division of the total marital property as between the divorcing spouses. In the course of these proceedings the court was fully informed of Cox's disability and support needs as well as Davis's conflicting needs and claims, and the needs of their children. No appeal from the divorce court's **property division** was taken either by [**27] Cox or Davis. The question now at hand, therefore, is whether that division [*87] will be given effect or whether, in some part, it will be skewed to Davis's detriment, allowing Cox to regain all of the Advest IRA notwithstanding his violation of the preliminary injunction and contrary to the considered judgment of the court most familiar with the equities as between both parties.

To be sure, it can be argued that Cox's ability, by virtue of bankruptcy, to regain the Advest IRA merely reflects the application under federal bankruptcy law of an exemption for the debtor's support needs derived from a Maine state statute. Me. Rev. Stat. Ann. tit. 14 § 4422(13)(E); see note 4, supra. But the disposition of marital property made by the state divorce judge took into comprehensive account the equities as between the divorcing parties, including Cox's needs insofar as they could properly be accommodated. That disposition, rather than the narrower support provision of § 4422(13)(E), reflected Maine's final application of its own law.

## 2. Maine Case Law

Cox nonetheless argues that Maine case law supports his position that, until the actual division of the [**28] marital property is decided by a divorce court's judgment, each spouse wholly owns his or her separately owned property even if forming a part of the marital estate. Cox bases this argument on Maine cases interpreting spousal property rights where, however, divorce was neither contemplated nor in process. We do not find those cases dispositive here.

As already pointed out, the legislature's provision for a preliminary injunction and other protective remedies once a divorce case is filed indicate a legislative intent to constrain the free disposition of marital property during the period after divorce proceedings begin. See Plourde v. Plourde, 678 A.2d 1032, 1035-36 (Me. 1996) (commenting that the mandatory preliminary injunction is designed to maintain the status quo and prevent the diminution of marital property prior to final judgment). Thus we reject Cox's suggestion that the freedom of an owner spouse to deal with separately-owned marital assets after commencement of divorce proceedings is no more limited than it ever was before. The Maine case law cited by Cox deals with situations not involving divorce. Those cases merely hold that where a divorce is not [**29] involved, marital property that is individually held may be disposed of at will by either spouse. See Long, 697 A.2d at 1321 (noting that "the 'marital property' designation grants no present rights [of the non-owner spouse] in the property during the marriage"). In other words, a non-owner spouse does not, absent a divorce situation, acquire by virtue of the marital relationship alone an interest, beneficial or otherwise, in the owner-spouse's property. Id.

The Supreme Judicial Court of Maine has never decided whether, once a divorce proceeding has begun, a non-owner spouse holds an equity interest in marital property held by an owner spouse. As already indicated, however, the creation of specific protective remedies during the divorce proceeding reflects a legislative

intent that marital assets be sheltered and preserved during that period. Moreover, the aims of Maine's modernized divorce law are at odds with the view that, during divorce proceedings, a non-owner spouse is without some interest in the marital property that is soon to be divided at the end of the proceeding. The Long court noted that previously at common law "marriage did not create [**30] rights to property held during the marriage, and a spouse could acquire an interest in the property of the other only by dower or courtesy right on the death of the other." 697 A.2d at 1320. To [*88] avoid the inequities at common law, the court pointed out that the Maine legislature adopted the "shared enterprise or partnership theory" of marriage. Id. Under this theory, the Court wrote, the statute provides "a mechanism for identifying marital property, creates for spouses a right to an equitable share of marital property, and empowers the court to equitably divide the property." Id. at 1321. The court went on to discuss the status of property held in the name of one spouse.

> Thus property held in the name of one spouse may still be treated as "marital property." The "marital property" designation grants no present rights in the property during the marriage but, on divorce, the court must divide all marital property "as the court deems just" granting an equitable share to each spouse.

Id. (emphasis supplied); see also Szelenyi v. Miller, 564 A.2d 768, 770 (Me. 1989) (stating that the "marital property" designation does not affect [**31] property rights "in which a divorce or legal separation is neither pending nor contemplated") (emphasis supplied); Fournier, 376 A.2d at 102 ("The Act does not prevent married persons from owning property separately during marriage and disposing of it in any fashion either of them may choose, assuming neither a separation nor a divorce intervenes.") (emphasis supplied) (citing In re Questions Submitted by the United States District Court in Imel v. United States, 184 Colo. 1, 517 P.2d 1331, 1335 (Colo. 1974)). n8

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 While one possible reading of the Long court's "on divorce" phraseology could be that a non-owner spouse's interest only arises upon the issuance of the final judgment granting divorce and dividing the property, the other cited decisions of the Maine Supreme Judicial Court use broader language leaving open precisely when and how the partnership rights are to be implemented once divorce proceedings are underway.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

A spouse, therefore, holds property subject to the non-owner [**32] spouse's "right to equitable distribution" upon divorce. Salenius v. Salenius, 654 A.2d 426, 429 (Me. 1995). It logically follows that after a divorce proceeding has commenced the Maine courts will afford such reasonable protection as may be required to ensure that a non-owner spouse's rights to equitable distribution are not thwarted by the owner spouse prior to the time the court can issue its decree dividing the property. According to the Supreme Judicial Court of Maine, the Maine courts "are vested with the general power as well as duty to deal with all marital property." Bryant v. Bryant, 411 A.2d 391, 393 (Me. 1980).

### 3. Equitable Relief

In the present case, none of the legal remedies specifically provided under Maine law sufficed to have prevented Davis's interest in the IRA from being included in her husband's bankruptcy estate. While the mandatory preliminary injunction forbad Cox's improper inter-meddling with the Advest IRA, it did not expressly establish a lien in Davis's favor; and it does not appear that had she attempted in advance of bankruptcy to attach the Advest IRA that she could have done so given the statutory exemption [**33] now claimed by Cox. See supra. In the bankruptcy court's view, this absence of any express legal remedy confirms a legislative desire to leave Davis without recourse. As a result, her former husband will, insofar as appears, take the Advest IRA in spite of the fact that the divorce court has determined, after an extensive trial and full consideration of the equities, that, in equity, this marital asset belongs, in large part, to her.

Ironically, the husband's creditors will receive no benefit from this outcome; [*89] indeed, they will be worse off in that their claims will now be diluted by Davis's. Only Cox personally will benefit, winning in bankruptcy what he lost in the divorce court.

We do not believe that either Maine law or federal bankruptcy law, which relies here upon Maine property law, warrants such a result. The Maine legislature has provided that all marital assets be equitably divided by the divorce court's judgment, and we may assume that the divorce court here acted properly and within its authority in awarding the lion's share of the Advest IRA to Davis, no appeal from its judgment having been taken. Moreover, the award was rendered specifically to remedy Cox's pre-bankruptcy [**34] contempt of the court's statutory injunction. For that award to be essentially nullified, leaving the Advest IRA in the hands of Davis's ex-spouse, is to reject the obvious intentions of the Maine legislature that the divorce court's equitable division here be dispositive as between the divorcing spouses. n9

- - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - -

n9 As previously noted, while Maine's own attachment statute and ultimately the bankruptcy statute exempt property reasonably necessary for the owner's support, the Maine divorce court's **property division**, made after a lengthy trial, reflects the state's most complete and sensitive reading of the equities as between Cox and Davis, including Cox's appropriate needs. That decision, rather than the narrower rule set out in Me. Rev. Stat. Ann. Tit. 14, § 4422(13)(E) is the proper guide to Maine law here, and the one to which Maine's courts would give effect in the present circumstances.

- - - - - - - - - - - End Footnotes - - - - - - - - - - - - - - -

To be sure, the issue is ultimately one of federal bankruptcy law, but federal bankruptcy law makes [**35] the question of what property to include in Cox's bankruptcy estate dependent upon state law, and we think a Maine court would rule, on these facts, that, prior to bankruptcy, Cox held the Advest IRA upon a constructive trust for Davis. See infra. This is not a case where it can be said that Davis has failed to avail herself in a timely fashion of an available legal attachment remedy that could have sheltered her interest in the marital property from inclusion in Cox's bankruptcy estate. Nor is it a case involving creditor interests other than such as may be said to exist between the divorcing couple themselves, Davis and Cox. The question under the federal bankruptcy law is whether Davis held, under state law, a viable equitable interest of her own in the Advest IRA at the time of the bankruptcy petition. See Butner, 440 U.S. at 54. On all these facts, we believe she did.

We think a Maine court would hold, in these facts and circumstances, that at the time of bankruptcy, Cox held the Advest IRA upon a constructive trust for Davis, with the precise scope of her beneficial interest to be ultimately determined by the divorce court. We believe that the existence [**36] of this equitable interest sufficed under section 541(d) of the Bankruptcy Code to remove the Advest IRA from Cox's bankruptcy estate, subject to final disposition by the Maine divorce court. It is commonplace that where legal remedies are inadequate, they may be supplemented by appropriate equitable ones. See Stanton v. Trustees of St. Joseph College, 233 A.2d 718, 723-24 (Me. 1967). We find the legal remedies inadequate here.

Our dissenting colleague speculates that Davis could conceivably achieve some measure of future relief if, for example, the bankruptcy court were to be prevailed upon to treat her claim for $ 65,250 as nondischargeable. But even so the likelihood of meaningful relief, having in mind the costs of further litigation in the bankruptcy arena and Cox's intransigence, seems slight at best. We are far less [*90] optimistic than our dissenting colleague that relitigation of the divorce equities in a federal bankruptcy tribunal would provide succor to Davis.

Constructive and resulting trusts are traditional constructs utilized by courts, including those in Maine, to avoid unjust enrichment and other forms of injustice that would result from allowing the [**37] legal owner to benefit from the property. See Thomas v. Fales, 577 A.2d 1181, 1183 (Me. 1990); see also In re Questions Submitted by the United States District Court in Imel v. United States, 184 Colo. 1, 517 P.2d 1331, 1335 (Colo. 1974) ("Upon and after filing the [divorce] action the rights of the wife are analogous to those of a wife who can establish a resulting trust . . . .") cited in Fournier, 376 A.2d at 102. For marital property like the Advest IRA, to pass through Cox's bankruptcy estate so as ultimately to frustrate the decree of the Maine divorce court and benefit Cox exclusively at the expense of his former spouse and in derogation of the divorce decree, is the very sort of inequity such devices have been utilized to prevent. Here, following Cox's violation of the statutory injunction, the Maine court issued on May 24, 2999, prior to bankruptcy, a further

express order forbidding him to draw down the IRA's and other liquid assets -- an order he also proceeded to violate.

Since our decision hinges, in particular, upon the existence of the pre-bankruptcy orders, Cox's disobedience then, and the fact the $ 65,250 IRA award was to redress [**38] the loss to Davis caused by that misconduct, our decision can be said to rest upon the remedial theory of constructive trust. See Restatement of Restitution § 160 et seq. (1937). But the concept of resulting trust is analogous also.

The creation of a resulting trust protects those who contribute toward the acquisition of property against the prospect of losing it to a second party who took title in the transaction. See Restatement (Second) of Trusts § 440 (1959). The party for whom the resulting trust is created need not have made a monetary contribution to acquire the property -- any contribution of services or property may entitle her to a beneficial interest in the property. See Id, at § 455. Thus, it is appropriate to find a trust analogous to a resulting trust in favor of a spouse who may subsequently be found by the divorce court to have contributed money, property, or services during the course of a marriage and, as a consequence, to be equitably entitled to receive all or part of the property upon division. Baker, 444 A.2d at 985; see generally Restatement (Second) of Trusts §§ 442 [**39], -43 & 455 (1959). The Supreme Judicial Court of Maine has been willing, albeit on different facts, to impose a resulting trust in the context of the distribution of non-marital property. See Grishman v. Grishman, 407 A.2d 9, 12 n.7 (Me. 1979); see generally Restatement (Second) of Trusts § 440 et seq. (1959). That it would be willing to protect a spouse's interest in marital property in these circumstances seems only reasonable. In any event, Cox's contemptuous misuse of marital assets prior to bankruptcy, including those from the Advest IRA itself, in defiance of the court's injunction, warrants the finding of a constructive trust in order to protect Davis's interest in the property.

As previously said, we need not go so far as to determine, as Davis encourages us to do, that the Supreme Judicial Court of Maine would broadly infer from the design and structure of the Maine divorce statute that, upon commencement of every divorce action, each spouse automatically acquires an equitable interest in the other spouse's separately held assets of whatever kind -- an interest sufficient to block transfer to a [*91] subsequent bankruptcy [**40] trustee of property the latter individually owns. n10 Such an inference would arguably be consistent with the partnership theory of marriage adopted by the Maine legislature, since it would result in treating marital property like "partnership property" in a business partnership or "community property" in a community property state. See Carter, 419 A.2d at 1021. Courts have held that partnership property itself does not become property of an individual partner's bankruptcy estate. See McGahren v. Gray (In re Weiss), 111 F.3d 1159, 1166 (4th Cir.), cert. denied, 522 U.S. 950, 139 L. E. 2d 287, 118 S. Ct. 369 (1997). While the debtor's interest in the partnership is included in the estate, the assets held by the partnership itself are not. Id. If these principles were to be applied to the current case, only Cox's undeclared interest in marital property would become part of the bankruptcy estate. See Tidwell v. Central Sav. Bank F.S.B. (In re Hunt), 154 B.R. 1016, 1023 (Bankr. M.D. Ga. 1993) (noting that trustee's only interest in partnership property was the right to demand partner's share after an accounting and payment of partnership liabilities). [**41]

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n10 See, e.g., White v. Bell (In re White), 212 B.R. 979, 983 (B.A.P. 10th Cir. 1997) ("Thus, where the divorce is pending when the bankruptcy petition is filed, the divorcing spouses' respective property interest are vested but subject to subsequent definition."); In re Greer, 242 B.R. 389, 396 (Bankr. N.D. Ohio 1999) (finding that "it was the intention under Ohio law to confer upon a spouse an interest in any property that is or would qualify as 'marital property' regardless of whether such property was separately titled."); Roberge, 188 B.R. at 369 ("Once a [divorce action is filed] the right to equitable distribution vests [and] the parties to the divorce obtain inchoate equitable interests in the marital estate equivalent to the shares to which they are entitled under equitable distribution.").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The particular circumstances of this case, however, render it unnecessary for us to make such an extensive pronouncement regarding the scope of Maine [**42] law. n11 All we need hold here is that where one spouse held title to marital property that, as a practical matter, was exempt from attachment, and where the specific facts and equities were such as have been described, the non-owner spouse may claim to have held an undeclared beneficial interest in the property awarded by the divorce court, her interest having been held for her prior to bankruptcy upon a constructive trust by the owner-spouse until such time as the divorce

decree became final and the marital assets were divided. This beneficial interest, the scope of which was ultimately determined by the state court when dividing the marital property, was excluded from the bankruptcy estate by operation of 11 U.S.C. § 541(d). Compare In re Perry, 131 B.R. at 768 (excluding from the bankruptcy estate under Massachusetts law and § 541(d) a spouse's beneficial interest in marital property found to be held in a "constructive trust" by the debtor-spouse). Our conclusion is consistent with the Maine legislature's adoption of the partnership theory of marriage and the powers it has granted to the state courts, as well as the powers those courts inherently [**43] retain, to protect and divide the marital property. See Me. Rev. Stat. Ann. tit. 19-A, § 903; id. at § 953.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n11 Our reluctance is increased by the fact that any such broad pronouncement as to Maine law could have unforseen effects on Maine creditors' rights law in factual circumstances quite different from the present. Any such interpretation of Maine law, even provisionally, should be left to the Supreme Judicial Court of Maine upon certification or otherwise rather than attempted by a federal court.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Under this analysis, Davis obtained an undeclared beneficial interest in the Advest IRA at the time the divorce petition was filed. Although the IRA was titled in [*92] Cox's name, once the divorce action commenced, he held the IRA in trust pending the state court's order dividing the marital property. Davis's beneficial interest to the extent ultimately awarded to her did not become a part of the bankruptcy estate.

We add that, for purposes of this case, we need not worry about [**44] whether the trustee's strong arm powers under 11 U.S.C. § 544 cut off Davis's beneficial interest in the Advest IRA. n12 In this case, the trustee did not attempt to avoid Davis's interest in the Advest IRA and, in fact, wholly supported the award. Thus, this case can be distinguished from those cases in which the courts have concluded that the filing of a bankruptcy petition cut off the unrecorded equitable rights of a non-debtor spouse. n13 In this case, once the divorce judgment dividing the property became final, Davis was free to execute the judgment and claim her beneficial interest in the Advest IRA.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

N12 In so stating we do not mean to indicate our view on this separate issue one way or the other.

n13 See, e.g., Perlow v. Perlow, 128 B.R. 412, 415 (E.D.N.C. 1991) (finding § 544 cut-off spouse's right because under North Carolina law a judgment creditor's rights are superior to a spouses because the filing of divorce does not create a lien on specific marital property in favor of the spouse); Lawrence v. Lawrence, 237 B.R. 61, 78-79 (Bankr. D.N.J. 1999) (finding § 544 cut-off spouse's right because under New Jersey law a judgment creditor's rights are superior to a spouse's if the lien was obtained prior to divorce judgment); Anderson v. Briglevich (In re Anderson), 147 B.R. 1015, 1022 (Bankr. N.D. Ga. 1992) (concluding that non-debtor's unrecorded equitable interest in marital property cut-off by trustee's strong arm powers); In re Vann, 113 B.R. 704, 706 (Bankr. D. Colo. 1990) (stating that until a spouse takes affirmative action to perfect her interest in marital property the trustee's rights are superior under § 544).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[**45]

## C. Escrow Accounts

Mr. Cox appeals from the bankruptcy court's ruling that the funds held in escrow were not property of the estate and could be disbursed according to the divorce judgment. The divorce court ordered that funds held in the Lawrason Account and the Ridge Account be used to pay certain tax debts and a joint mortgage serviced by Key Bank. n14 In the proceedings below, the trustee opposed implementation of the divorce judgment to the extent that it ordered funds from the Lawrason Account to pay pre-petition creditors. The trustee argued that the Lawrason Account should be turned over to the estate and used to pay the creditors

according to the distribution scheme set forth in the Bankruptcy Code. Cox also opposed the implementation of the divorce judgment as it related to the escrow accounts. Unlike the trustee, however, Cox did not contend that the escrow account could not be used to pay the tax debts. He argued only that Key Bank, as a general, unsecured creditor, should not be paid outside of priorities set forth in the Bankruptcy Code.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n14 Of the $ 36,000 in the Lawrason Account, $ 10,850 was set aside to pay taxes on the premature withdrawals from the Advest IRA, $ 10,210 was earmarked to pay state and federal income taxes from 1985 and 1986, and the balance was to be applied to the parties' joint debt to Key Bank. Of the $ 8,400 in the Ridge Account, $ 6,600 represented retroactive SSDI payments paid to Davis on behalf of the children and was awarded to Davis for that purpose, the balance of the escrow account, $ 1,800, was also to be applied toward the Key Bank debt.

- - - - - - - - - - - End Footnotes - - - - - - - - - - - - - - [**46]

The bankruptcy court concluded that the funds held in escrow were not property of the estate and could be distributed in accordance with the divorce judgment. n15 The bankruptcy court reasoned [*93] that as of the petition date, Cox's interest in the funds was a "contingent one, depending on the divorce court's determination regarding their disposition." According to the bankruptcy court, the state court order for escrow of the funds held by Lawrason and Ridge placed the funds in custodia legis and "operated, effectively, as an attachment of those funds," thereby securing Davis's claim pending entry of the divorce decree.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n15 Davis argues on appeal that Cox does not have standing to appeal the bankruptcy court's judgment regarding the escrow accounts. The bankruptcy court addressed whether Cox had standing to oppose the implementation of the divorce decree as it pertained to the escrow accounts and stated it was "unconvinced that Cox had independent standing." It did not make a final determination on this issue, however, because the trustee had standing to oppose the divorce judgment's disposition of the escrow accounts. Under the Bankruptcy Code, standing to appeal from a final bankruptcy order is accorded only to a "person aggrieved" by the decision. Spenlinhauer v. O'Donnell, 261 F.3d 113, 117-18 (1st Cir. 2001). A "person aggrieved" is one whose pecuniary interests are directly and adversely affected by the order. Id. at 118. Cox argues that he has a direct pecuniary interest in the outcome of the appeal because the majority of the funds held in escrow are exempt assets and thus would pass out of the bankruptcy estate and into his hands. This theory is viable only if the allegedly exempt assets were Cox's property at the time the petition was filed and thus became property of the estate. The standing issue and the substantive issue of what, if any, interest Cox had in the escrowed funds at the commencement of the bankruptcy case are closely intertwined. If Cox does not have an interest in the escrowed funds then it is unlikely that he has standing to challenge the order disposing of those funds. Thus, whether we address the merits or the standing issue, we must examine what interest Cox had in the escrowed funds at the commencement of his bankruptcy.

- - - - - - - - - - - End Footnotes - - - - - - - - - - - - - [**47]

To determine what interest, if any, Cox had in the funds held by order of the court and thus what interest passed to the bankruptcy estate, we must look to Maine law. The bankruptcy court relied on Maine law regarding court-appointed custodians to support its decision. Under Maine law, when a court in equity appoints a receiver, the title to the property vests in the receiver and is held in custodia legis until it is disposed of by the receiver in compliance with an order of that court. See Hazzard v. Westview Golf Club, Inc., 217 A.2d 217, 223 (Me. 1966); Cobb v. Camden Sav. Bank, 106 Me. 178, 76 A. 667 (Me. 1909); Littlefield v. Maine Cent. R.R. Co., 104 Me. 126, 71 A. 657, 660 (Me. 1908). This includes money collected by an officer of the court. See Hardy v. Tilton, 68 Me. 195 (1878). Title vests in the receiver upon his or her appointment. Cobb, 106 Me. 178, 76 A. 667 (stating "the decree of appointment ipso facto vests the title to the [property] in the receiver").

The court here appointed the parties' attorneys to hold certain funds in escrow pending the division of the marital assets. [**48] The attorneys were appointed to safeguard the property to prevent Cox from continuing to dissipate the funds in violation of a court order. When the state court directed the attorneys to

place the money in escrow accounts and to disburse the money only upon an order of the court, the funds were placed in custodia legis and Cox was divested of legal title of the funds and title passed to the attorneys as officers of the court. n16

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n16 Moreover, while in custodia legis, the property is not subject to levy or attachment in any form. See, e.g., Hardy, 68 Me. at 195. As a result, the trustee, as a hypothetical lien creditor, cannot recover the property for the estate. 11 U.S.C. § 544. In any event, the trustee in this case did not attempt to avoid any interest that was transferred to the custodian pursuant to the state court order nor did the trustee request the turnover of the property pursuant to § 543.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

As a result, the funds held in custodia legis did not [**49] pass into the bankruptcy estate [*94] upon the filing of the bankruptcy petition. As noted by the bankruptcy court, at the commencement of the bankruptcy proceeding, Cox held just a contingent interest to the property held in custodia legis, subject to the divorce court's disposition of the property. Thus, only Cox's contingent interest became property of the estate.

Cox contends that the escrow funds could not have been "effectively attached" as the bankruptcy court concluded because the majority of the funds were exempt from attachment under Maine law. As a result, Cox argues, the exempt property in the escrow funds passed unencumbered into the bankruptcy estate when he filed his petition. Cox's argument is flawed. While under Maine law certain property is exempt from attachment, 14 M.R.S.A. § 4422, the property at issue here was not attached. It is true that the bankruptcy court said the property was "effectively attached" when it was placed in custodia legis, but it was not actually attached. The bankruptcy court was merely analogizing property held in custodia legis for the benefit and protection of an individual to that individual's attaching of the property in a [**50] hypothetical situation to secure a debt. But unlike a mere attachment, the court's decision to place the property in custodia legis divested Cox of legal title and left him with only a contingent right to the property.

**D. Conclusion**

The bankruptcy court's order that the escrow funds could be disbursed as stated in the divorce judgment is **affirmed.** The bankruptcy court's order denying the disbursement of the Advest IRA to Davis as described in the divorce decree is **reversed** and the case is **remanded** to the bankruptcy court for proceedings consistent with this opinion.

**DISSENT BY:** CYR

**DISSENT:**

**CYR, Senior Circuit Judge, dissenting.** After apparently accepting the bankruptcy court's cogent interpretation of the applicable legal principles, see In re Cox, 274 B.R. 13, 26-30 (Bankr. D. Me. 2002), n17 the majority predicates its reversal upon the contention that the particular facts of this case warrant extraordinary equitable relief - viz., the impressment of a constructive or resulting trust upon the otherwise exempt Advest IRA - so as to preclude Cox from unjustly and unilaterally retaining marital property which rightly [**51] belonged to the joint marital estate. As its tenuous prediction of Maine law is improvident and its recourse to equitable relief entirely unnecessary, I respectfully dissent.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n17 See also, e.g., Robbins v. Robbins (In re Robbins), 964 F.2d 342, 346 (4th Cir. 1992) (noting that debtor-spouse's separately-held property becomes part of bankrupt estate; non-debtor spouse holds an unsecured claim); In re Anjum, 288 B.R. 72, 76-77 (Bankr. S.D.N.Y. 2003) (same, collecting cases); In re Lawrence, 237 B.R. 61, 80-81 (Bankr. D.N.J. 1999); In re Abma, 215 B.R. 148, 152 (Bankr. N.D. Ill. 1997); In re Palmer, 78 B.R. 402, 406 (Bankr. E.D.N.Y. 1987).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

As the majority must concede, no Maine case law either explicitly or implicitly holds that a cognizable legal or equitable property interest in a marital asset - held exclusively in the name of one spouse - vests in both spouses instanter simply upon the filing of a divorce petition, [**52] rather than upon entry of a final decree of legal separation or divorce. Moreover, arguably at least, some Maine decisional law implies quite the opposite. See Long v. Long, 1997 ME 171, 697 A.2d 1317, 1321 (Me. 1997) ("The 'marital property' designation grants no present rights in the property during the marriage.") (emphasis added). n18

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - -

n18 The majority heavily relies upon such cases as Long, which ambiguously advert to the accrual of present rights in the marital estate "on divorce." While it may be arguable that this phrase would permit an interpretation which includes the time period from the filing of a divorce petition to the entry of a final divorce decree, the much more plausible and natural construction is that "on divorce" refers simply to the time commencing with the entry of the final divorce decree. Thus, Davis could have accrued no present rights in the Advest IRA until after it had become property of the Cox bankrupt estate.

- - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

[*95] The majority predicates its construction [**53] upon a presumed legislative intent - motivating the 1972 amendment to the Maine divorce statute - to accord divorcing spouses "more" protection from divestments of property jointly acquired during the marriage. Although this is so, the operative question is how far the Maine Legislature intended to go in according "more" protections. The pre-1972 Maine statute accorded overwhelming weight to a single, formalistic criterion - viz., which spouse is the named titleholder of the property at issue - and the amended divorce statute undeniably accords more protection to the non-titleholder spouse by even including such separately-held property in the marital estate, and by directing the divorce court to distribute separately-held property to either spouse as well, based upon its consideration of a panoply of equitable considerations aside from the record title.

I would submit, however, that the majority proceeds upon extremely unstable ground in extrapolating from the nebulous legislative purpose, in order to bolster the "partnership" or "joint enterprise" theory of marriage, to the majority's thesis that the legislature must have intended other - yet more expansive - reforms. [**54] Cf., e.g., Lyerly v. IRS, 235 B.R. 401, 404 (W.D.N.C. 1998) ("The [North Carolina] legislature's intent . . . was to create a right to equitable distribution of the marital property, which had not existed up to that time, and to make that right vest at the time of filing for divorce. [The amended divorce statute] did not create any vested rights in particular marital property; it created a right to the equitable distribution of that property, whatever a court should determine that property is.") (emphasis added).

The holdings in those non-Maine decisions which are characterized by the majority as lending "significant support" to its approach - e.g., Walston v. Walston, 190 B.R. 66, 67-69 (E.D.N.C. 1995), and In re Perry, 131 B.R. 763, 766-67 (Bankr. D. Mass. 1991) - are not only exceptionally terse, but rest upon the dubious notion that a constructive or resulting trust is essential to the achievement of an "equitable" result. But see supra note 1 (cataloging dozens of judicial decisions rejecting the Walston-Perry rationale). Normally, we may resort to equitable remedies, such as unjust enrichment and [**55] its concomitant remedy of constructive trust, only after concluding that the complainant has or will have no "adequate" remedy at law. See Infusaid Corp. v. Intermedics Infusaid, Inc., 739 F.2d 661, 668 (1st Cir. 1984); see also Stanton v. Trustees of St. Joseph's College, 233 A.2d 718, 723 (Me. 1967). The majority, on the other hand, simply posits that since Davis is unable to attach the Advest IRA under the statute, we may conclude instanter that Davis is without any meaningful recourse other than a constructive trust. As the Bankruptcy Code explicitly contemplates an orderly succession of remedies in these sorts of cases, and Davis has yet to exhaust such available legal remedies, I respectfully disagree.

Davis either had, has, or will have various legal remedies to protect her unvested rights in the Advest IRA. n19 Even under the [*96] rationale adopted by the bankruptcy court, the filing of the Cox bankruptcy petition simply terminated Davis's rights in the specific property (viz., the Advest IRA), see In re Abma, 215 B.R. 148, 151 (Bankr. N.D. Ill. 1997) ("Non-debtor spouse's rights in specific marital property [**56] were cut off by the bankruptcy filing.") (emphasis added), whereas she retains a $ 65,250 unsecured claim against the Cox bankrupt estate. See Davis v. Cox, 274 B.R. 13, 23 (Bankr. D. Me. 2002). Thus, Davis may share pro rata in any dividend available to Cox's unsecured creditors. Nonetheless, the majority implicitly concludes that Davis can recover but a pittance, a speculative prediction at best given the mercurial nature of

bankruptcy proceedings at such an early juncture. See In re Anjum, 288 B.R. 72, 73 n.1 (Bankr. S.D.N.Y. 2003) ("The [non-debtor spouse's] entitlement to share in the debtor's estate has no value in this no-asset case, but could be of great value in another case."). n20

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n19 Davis has already invoked an important state-law legal remedy. Even if the Advest IRA is entirely exempt from attachment, see Me. Rev. Stat. Ann. tit. 19-A, § 903(5); see also Me. Rev. Stat. Ann. tit. 14, § 4422(13)(F) (limiting IRA exemption to amount "reasonably necessary for the support of the debtor"), the Maine divorce statute authorizes the divorce court to factor in a party's "economic misconduct" in apportioning the marital property (viz., when effectively setting a value to Davis's unsecured claim), and so the injunction that issues when spouses file a petition for divorce constituted a valuable legal remedy to Davis, see Me. Rev. Stat. Ann. tit. 19-A, § 903(1). As Cox was enjoined from transferring the Advest IRA funds except for ordinary and necessary personal expenses, and Cox violated the injunction, Davis could have initiated a civil contempt proceeding against Cox, or requested the divorce court to adjust the property settlement to compensate Davis for Cox's dissipation of the IRA. She elected to avail herself of the latter remedy. [**57]

n20 Based upon a current assessment of the condition of the estate, the trustee predicted that the dividend could approximate ten-percent, which would result in a $ 6,525 recovery for Davis.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Finally, even assuming that the pro rata share realized by Davis were to prove meager, the balance of her $ 65,250 claim would remain presumptively non-dischargeable in bankruptcy. Bankruptcy Code § 523(a)(15) excepts from discharge any debt

not of the kind described in [§ 523(a)](5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless -

   (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation [**58] of such business; or

   (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

Thus, Cox would have to carry the burden of proving one of these two criteria in order to obtain a discharge of the property-settlement claim held by Davis. See In re Lawrence, 237 B.R. 61, 83 (Bankr. D.N.J. 1999). The "ability to pay" factor in Bankruptcy Code § 523(a)(15)(A) enables the bankruptcy court to consider the present and future prospects for repayment from Cox's expendable property, including [*97] any assets, previously acquired in contravention of the divorce court injunction, which remain in Cox's possession, see supra note 3, or from Cox's disposable income, including future wages. See Feldmann v. Feldmann (In re Feldmann), 220 B.R. 138, 145-46 (Bankr. N.D. Ga. 1998). Were Cox unable to sustain this substantial burden of proof, the obligation due Davis would remain undischarged, notwithstanding a general discharge in bankruptcy. See Bowden v. Grindle, 675 A.2d 968, 972-73 n.2 (Me. 1996) [**59]  (noting that one element of "unjust enrichment" claim is inequitable retention of benefit "without payment") (emphasis added). Consequently, the significance of this potential post-petition remedy under subsection 523(a)(15) cannot be

ignored.

Moreover, Bankruptcy Code § 523(a)(15) imports the same types of equitable considerations and balancing requirements as undergird the state-law remedies of constructive and resulting trusts, in many respects paralleling the "economic misconduct" inquiry mandated under the Maine divorce statute's scheme for equitable distribution. See supra note 3. Thus, assuming arguendo that Cox deliberately engaged in financial shenanigans with the Advest IRA, he cannot anticipate any considerable windfall in bankruptcy. n21

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n21 Moreover, even assuming Davis were unable to prevail under § 523(a)(15), she could pursue a non-dischargeability ruling under § 523(a)(6) (excepting from discharge any debt "for willful and malicious injury by the debtor"), based upon Cox's prior violations of the divorce court injunction. See Siemer v. Nangle (In re Nangle), 274 F.3d 481, 484 (8th Cir. 2001) (noting that contempt judgments may be excepted from discharge under § 523(a)(6)).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - [**60]

The majority proposes that the bankruptcy court ruling effectively nullifies the divorce decree, and offends the well-accepted principles that (i) state law normally defines property rights in bankruptcy, and (ii) the state divorce court possesses a more specialized expertise to undertake the equitable distribution of marital property than does a federal bankruptcy court. But, of course, the bankruptcy court did defer to the state court's expertise when it granted the first motion to lift the automatic stay - filed by Davis - while at the same time explicitly stating that "relief from the stay is not granted to implement any property settlement absent further order of this court." (Emphasis added.)

Just as state courts possess special competence in determining equitable marital-property distributions, so too it cannot be gainsaid that they possess a specialized expertise in declaring state law. In determining its equitable **property division**, the divorce court - though presumably aware that Cox could exempt the entire IRA account pursuant to Maine law - declined the trustee's invitation to reach the difficult state-law questions presently before us: whether Davis acquired [**61] an equitable property interest in the Advest IRA at the time she filed for divorce, or whether the equities in this case mandated that Cox hold the IRA in constructive or resulting trust for Davis. Davis did not appeal from the divorce judgment on the ground that it failed adequately to define the nature of her state-law rights in the IRA. Once the state court has pronounced the spouses' respective distributive rights, the Bankruptcy Code governs the ramifications of these pronouncements in the context of the Cox bankruptcy case.

Although one may sympathize with Davis in the present predicament, as well as with the majority's conscientious intention to minimize its impact, the intervention of a bankruptcy petition very frequently entails unfortunate consequences for the most innocent of parties. Plainly and understandably, then, Davis would [*98] prefer the more immediate, convenient, and predictable remedy afforded by a constructive or resulting trust. Yet somewhat lesser alternative remedies at law - even if merely adequate - take precedence over equitable remedies, see Infusaid Corp., 739 F.2d at 668, lest equitable relief become mere redundant surplusage. Accordingly, [**62] once Congress explicitly prescribes legal remedies under the Bankruptcy Code for spouses with property settlement claims, courts must recognize that such settlements presumptively are to be treated as "claims" in bankruptcy. Consequently, at a minimum the courts are to defer any decision as to whether to seize upon extraordinary state-law equitable remedies until such time as a spouse has unsuccessfully exhausted all such remedies. At that juncture, the bankruptcy court can then address the issue competently.

For the foregoing reasons, I would hold that the Cox IRA became part of the bankrupt estate prior to the Davis property settlement. See supra note 1. As I believe the bankruptcy court decision should be affirmed, I respectfully dissent.

Terms and Conditions | Privacy

Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

|        |        |        |        |

**Search Terms:**                          **, claim**

**FOCUS™**

In re: Kindley F. Davis and Ruby B. Davis, Debtors.

Chapter 13, Case No. 06-02808-dd

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF SOUTH CAROLINA

2006 Bankr. LEXIS 2837

October 3, 2006, Decided
October 2, 2006, Filed

**COUNSEL:** [*1] For Kindley F Davis, Gilbert, SC, dba, Columbia Welding Company, Debtor: J. Carolyn Stringer, Columbia, SC.

For Ruby B Davis, Gilbert, SC, Joint Debtor: J. Carolyn Stringer, Columbia, SC.

For Trustee: Joy S. Goodwin, Columbia, SC.

**JUDGES:** David R. Duncan, US Bankruptcy Court Judge.

**OPINION BY:** Duncan

**OPINION:** ORDER DISMISSING CASE

THIS MATTER is before the Court on the debtors' motion to dismiss this case, for confirmation of the chapter 13 plan, for dismissal of the case and an objection to the plan filed by Haiyan Lin, and for conversion of the case to chapter 7 on motion of Branch Banking and Trust Company of South Carolina. The issue here is whether the debtors' case should be dismissed or converted to chapter 7. The case is dismissed upon the conditions set forth.

Findings of Fact

1. Kindley F. Davis and Ruby B. Davis (hereinafter "Debtors") are husband and wife. They filed a joint, voluntary petition for relief under chapter 13 of the Bankruptcy Code on July 3, 2006. Debtors are represented in the bankruptcy case by J. Carolyn Stringer, Esq.

2. Debtors are indebted to Branch Banking and Trust Company of South Carolina (hereinafter "BB&T"), which debt is or was secured [*2] by a mortgage on real property located at 1311 Rosewood Drive, Columbia (Richland County), South Carolina and as to which a Confession of Judgment was signed April 26, 1996 and enrolled in Richland County, South Carolina on August 14, 1996. The

Richland County judgment was enrolled in Lexington County, South Carolina on September 24, 1996.

3. Debtors also own real property located at 2010 Shull Avenue (a/k/a Shull Island Road), Gilbert (Lexington County), South Carolina, which property is the subject of a mortgage in favor of JP Morgan Chase Bank.

4. Mr. Davis owned and operated Columbia Welding, a sole proprietorship, for many years.

5. Mr. Davis agreed, pre-petition to sell Columbia Welding as a going concern to Haiyan Lin (hereinafter "Ms. Lin") for the sum of $ 300,000.00. Mr. Davis testified that he intended the sale to include the real property on Rosewood Drive but that his wife, a co-owner of the real estate, later refused to sign a contract for the sale of the real estate. Mr. Davis received a $ 35,000.00 "down payment" on this contract of sale. He used the money to pay creditors. Mr. Davis told Ms. Lin that he would be unable to complete the transaction and that he would [*3] return the money to her. She refused to accept the money and demanded compliance with the contract. Mr. Davis has remained in control of the business and has continued to operate it.

6. Debtors have continued to market the Rosewood Drive real estate and had entered into a contract for the sale of the property to Toinette Reed. The sale did not close as provided in the contract.

7. The Debtors' petition was not accompanied by all of the required lists, schedules and statements. The Debtors later filed the schedules and a plan, but not a Statement of Financial Affairs. The proposed plan was filed July 18, 2006. The proposed plan would have paid all creditors in full. The Debtors requested and received a brief extension of time to file the statement of financial affairs. The Statement of Financial Affairs was filed July 28, 2006.

8. The Columbia Welding business has been in decline for a number of years. The health of Debtors, especially that of Mrs. Davis, is not good. Health problems of the Debtors have accelerated the decline of the business. The questioned, but un-controverted proof was that Mrs. Davis' health became worse following the filing of the bankruptcy case, that she was [*4] hospitalized and that Mr. Davis attended her. Mr. Davis was injured following the filing of the bankruptcy, further drawing his attention away from the business.

9. The reports of income for the business that were used to support the proposed plan were not accurate, current statements of income. The projected income levels had not been achieved for some time and Mr. Davis was aware or should have been aware of this. Mr. Davis testified to his hope that he could revive the business. Mr. and Mrs. Davis' son was responsible for the business for at least some period of time and he modernized the accounting process by implementing the use of computer software to track receivables, income and expenses. Mr. Davis retrieved some of this information in connection with the filing of a plan, however it was not reliable. The actual income of the Debtors will not fund the plan payments proposed by the Debtors. The Statement of Financial Affairs bears proof that the plan is not feasible based solely on the Debtors' Social Security income and the earnings from the business. Other income or income potential is available. The sale of the business and real property, whether to Ms. Lin, Toinette Reed [*5] or some other party, would generate cash or a stream of income that the Debtors could rely on in dealing with the creditors.

10. The bankruptcy filing was prompted by an order of sale of the Shull Island Road property, issued in the Court of Common Pleas for Lexington County, South Carolina by the Master in Equity. The property was to be sold on the morning of July 3, 2006, with the proceeds of sale applied to the judgment in favor of BB&T. The bankruptcy filing stayed the sale. At the time of the bankruptcy filing

the lien of the nearly 10 year old judgment was approaching the end of its life.

11. Ms. Lin filed a motion to extend time to file a **claim** and to object to the plan on August 16, 2006 and a motion to dismiss the plan of Debtors on August 18, 2006 (the actual relief sought appears to be dismissal of the case).

12. The Debtors attended a meeting of creditors and filed their motion to dismiss on August 24, 2006. BB&T objected to the motion and subsequently, but on the same day, filed a motion to convert.

Conclusions of Law

Before the Court are motions seeking competing relief, dismissal or conversion of the case. The Bankruptcy Code provides that "[o]n request of [*6] the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable." § 1307(b). The Court turns first to doctrines of statutory construction. "When interpreting a statute, [the court looks] first to the language." *Richardson v. United States*, 526 U.S. 813, 818, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999). "[I]n any case of statutory construction, [the] analysis begins with the language of the statute. . . . And where the statutory language provides a clear answer, it ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S. Ct. 755, 142 L. Ed. 2d 881 (1999)(citation and internal quotation marks omitted).

Despite the seemingly clear language, the courts, including Courts of Appeal, are split in the interpretation of § 1307. This division finds its genesis in another doctrine of statutory construction. "Courts must give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous." *Discover Bank v. Vaden*, 396 F.3d 366, 369 (4th Cir. 2005). [*7] Courts struggle with § 1307(b) and its "absolute" right to dismiss when juxtaposed to § 1307(c) n1 and the authority for permissive conversion or dismissal for cause on motion of a party in interest. The decision to convert or dismiss under subsection (c) requires the weighing of the interests of the estate and creditors.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

N1 "Except as provided in subsection (c), on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause. . . ." § 1307(c).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Second Circuit describes § 1307(b) as conferring an absolute right to dismiss, holding:

> We hold that a debtor has an absolute right to dismiss a Chapter 13 petition under § 1307 (b), subject only to the limitation explicitly stated in that provision. . . . The term 'shall' . . . generally is mandatory and leaves no room for [*8] the exercise of discretion by the trial court. . . . The mandatory nature of § 1307(b) becomes even clearer when the language of that provision is compared with the permissive language of § 1307(c). . . . This conclusion reflects the intention of Congress to create an entirely voluntary chapter of the Bankruptcy

Code.

*Barbieri v. RAJ Acquisition Corp. (In re Barbieri),* 199 F.3d 616, 619-20 (2d Cir. 1999). *See also, Regan v. Ross,* 691 F.2d. 81, 86 fn. 14 (2d Cir. 1982)("Moreover, chapter 13 is voluntary and at any time a debtor may opt out."); *Nash v. Kester,* 765 F.2d. 1410 (9th Cir. 1985); *Clearstory & Co. v. Blevins,* 225 B.R. 591 (D. Md. 1998)(Right to dismiss is absolute, even in the face of a previously filed motion to convert and allegations of bad faith); *In re Looney,* 90 B.R. 217 (Bankr. W.D. Va. 1988); *In re Beatty,* 162 B.R. 853 (9th Cir. BAP 1994); *In re Harper-Elder,* 184 B.R. 403 (Bankr. D. D.C. 1995).

The Eight Circuit describes and adopts the view that the authority of the court to convert or dismiss a case limits the debtor's absolute right to [*9] dismiss, stating:

> We believe that same broad purpose as well as the principles of statutory construction employed in *Graven* apply equally well to the nearly identical provisions of Chapter 13 and the instant case. As in *Graven,* we are mindful that the purpose of the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts. As in *Graven,* we also look to the overall purpose and design of the statute as a whole rather than viewing one subsection in isolation. In this case, [debtor] failed to offer any defense whatsoever to the Appellee's allegations of bad faith. . . . To allow [debtor] to respond to a motion to convert by voluntarily dismissing his case with impunity would render section 1307(c) a dead letter and open up the bankruptcy courts to a myriad of potential abuses.

*In re Molitor,* 76 F.3d. 218, 220 (8th Cir. 1996)(citations omitted).(Following the Court's precedent in *In re Graven,* 936 F.2d. 378 (8th Cir. 1991) interpreting § 1208(b) of the Bankruptcy Code) *See also In re Tatsis,* 72 B.R. 908 (Bankr. W.D. N.C. 1987); [*10] *Gaudet v. Kirshenbaum, Inv. Co. (In re Gaudet),* 132 B.R. 670 (D. R.I. 1991); *In re Cobb,* 2000 U.S. Dist. LEXIS 198, 2000 WL 17840 (E.D. La. Jan. 11, 2000); *In re Crowell,* 292 B.R. 541 (Bankr. E.D. Tx. 2002).

A Bankruptcy Court for the Southern District of Florida describes the competing views:

> The proper interplay between § 1307(b) and § 1307 (c) is unsettled in the courts. Granting a debtor's motion to dismiss pursuant to § 1307(b) necessarily renders a pending creditor's motion to convert moot and renders § 1307(c) a nullity. On the other hand, granting a creditor's motion to convert requires denying a chapter 13 debtor's right to dismiss, thereby rendering the absence in subsection (b) of any condition to dismissal a nullity. Courts are divided as to which subsection controls. Some courts hold that subsection (b) trumps subsection (c) making the debtor's right to dismiss a chapter 13 case absolute. Other courts prefer to read the subsections together and then rule on the merits of the competing motions. These courts reason that Congress did not intend to give the debtor unfettered power to prevent conversion by simply filing a motion to dismiss [*11] whenever conversion was requested.

*In re Neiman*, 257 B.R. 105, 108 (Bankr. S.D. Fl. 2001)(citation and internal quotation marks omitted).

Despite the seemingly clear language of the statute, the courts have diverged in interpreting the language, creating ambiguity. A resort to legislative history is permitted to determine the meaning of an ambiguous statute. *See U.S. v. Ron Pair Enterp., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989). The legislative history confirms an absolute right to dismiss at any time:

> Subsections [1307](a) and (b) confirm, without qualification, the rights of a Chapter 13 debtor to convert the case to a liquidating bankruptcy case under Chapter 7 of title 11, at any time, or to have the Chapter 13 case dismissed. Waiver of any such right is unenforceable.

S. Rep. No. 95-989, at 141 (1978).

There is no controlling precedent in the Fourth Circuit. The issue has arisen in bankruptcy cases in South Carolina, but there are no published opinions. The District Court, in an unpublished order, affirmed the decision of the Bankruptcy Court and limited the debtor's right to dismiss a chapter 13 case in the face of a creditor's [*12] motion to convert based on the debtors' lack of eligibility for relief under § 109(e) and several continuances at the request of the debtors. When the debtors filed a motion to dismiss on the morning of the long delayed hearing to convert the case, the Court converted the case - and determined that it would not rule on the motion to dismiss. The District Court stated, "[w]hile the right of the debtors' to dismiss their case 'at any time' no doubt exists within the parameters of Chapter 13, it should not be construed in derogation of the court's inherent power to prevent the abuse and misuse of the judicial process." *In re Couch*, C/A No. 81-2691-1 slip op. at 3. (D. S.C. May 7, 1982) *affirmed by unpublished opinion, sub. nom. Couch v. Center Brothers, Inc. (In re Couch)*, C/A No. 82-1485 (4th Cir. October 5, 1983). Unpublished opinions of the Court of Appeals are not binding precedent in the Fourth Circuit pursuant to its Local Rule of Court 36(c). Additionally, "[t]he reasoning of district judges is of course entitled to respect, but the decision of a district judge cannot be controlling precedent." *FutureSource LLC v. Reuters*, 312 F.3d. 281, 283 (7th Cir. 2002). [*13] "[T]he modern trend [is] that a bankruptcy court is not bound by *stare decisis* to follow the decision of a single district judge in a multi-judge district." *In re Baker*, 264 B.R. 759, 762 (Bankr. M.D. Fl. 2001); *In re Finley, Kumble et. al.*, 160 B.R. 882, 898 (Bankr. S.D. N.Y. 1993); *In re Shattuc Cable Corp.*, 138 B.R. 557, 566-67 (Bankr. N.D. Il. 1992).

*Couch* is persuasive but not binding authority. Its utility, if authoritative given its age and the fact that it has not been generally followed in the circuit, is limited to the facts of that case. To the extent that there is a limitation on the absolute right of a debtor to dismiss a case pursuant to § 1307(b) in this circuit, other than by virtue of a prior conversion of the case, it is limited to the unusual and limited circumstances of *Couch*. There the creditor filed a motion to dismiss the case and later amended the motion to seek conversion. The debtors delayed the administration of their case by seeking continuances to obtain appraisals and to amend documents that they never actually amended. The debtors' motion to dismiss was filed on the morning of the hearing [*14] on the creditor's motion to convert. The debtors did not contest that conversion was in the best interests of the creditors. The focus of *Couch* was abuse of the bankruptcy system and the timing of the motion to dismiss.

BB&T argues that the Debtors filed the petition in bad faith. This is Debtors' first bankruptcy filing.

The evidence before the Court is that Mr. and Mrs. Davis' plan proposal is not feasible, yet, while the business had been in decline for some time, there was a time when the business produced income sufficient to fund the plan, at least on paper. Mrs. Davis' health has continued to decline after the filing and she has required additional medical care. Mr. and Mrs. Davis painted the rosiest of pictures with their initial court filings and in their plan. The picture was not realistic but the demeanor of Mr. Davis as a witness did not support a finding of bad faith. BB&T chose the time to initiate the sale of property in satisfaction of its judgment, which is about to expire, and did not leave sufficient time for contests and appeals in state court nor for the potential that the Debtors might avail themselves of bankruptcy protection. See generally *Wells v. A.C. Sutton*, 299 S.C. 19, 382 S.E.2d 14 (1989) [*15] (Holding that execution is the only means to enforce a judgment. That a judgment is extinguished after 10 years from entry and that appeals do not extend the 10 year period. The Court notes that "it does not condone efforts . . . to secrete assets to avoid payment of judgments . . . . [and it] does not criticize appropriate use of the appellate process to obtain review of orders. . . ." Creditors should proceed expeditiously to conclude efforts to collect judgments within the 10 year period). The Debtors did not conceal assets, instead, the ownership of the real property was open and a matter of public record. While the Debtors' portrayal of their financial wherewithal is not exemplary, the proof falls short of establishing bad faith.

The clear language of § 1307(b) is that the court *shall* dismiss a Chapter 13 case on request of the debtor and that the debtor may make the request at any time. Waivers of the right to dismiss are not enforceable. While there may be some case of egregious conduct warranting a denial of a debtor's motion to dismiss based on proof of abuse of the bankruptcy system, the abusive timing of the filing of the motion to dismiss, or otherwise, this is not [*16] that case. This case should be dismissed on the motion of the Debtors.

Dismissal of the case, even as a matter of right, is not necessarily unconditioned in every circumstance. Counterbalancing the potential for abuse in timing the dismissal of cases is the fact that the debtor gives up the protection of the bankruptcy court and is subject to the provisions of state law. Where, as here, it is possible that a creditor's rights under state law may have changed, there are other remedies. A debtor can not invoke the dismissal of his Chapter 13 case pursuant to the authority of § 1307(b) by simply filing a notice of dismissal in the same fashion as a debtor converts to chapter 7 pursuant to § 1307(a). Notice to creditors and an opportunity for hearing is required because, if for no other reason, the court may condition the dismissal as provided by § 349. This is an important protection for creditors. Additionally, Congress has severely restricted serial filings and provided remedies for abuse of the bankruptcy system through the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Pub. L. 109-8, (April 20, 2005), codified throughout Title 11 and otherwise.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*17]

BB&T and Ms. Lin held important rights against the Debtors immediately prior to the filing of the bankruptcy case. The statutory life of the BB&T judgment expired no later than August 14, 2006 n3, but for the stay and the provisions of § 108(c). Ms. Lin's rights, if any, to enforce her contract with Mr. Davis are also at issue. To the extent allowed under the statute, the re-vesting of property of the estate in Mr. and Mrs. Davis upon dismissal is subject to the interests of BB&T and Ms. Lin immediately prior to the filing, which by this order and pursuant to § 349(b)(3) are restored as if the case had not

been filed, although the extended time pursuant to § 108(c) shall be available to the creditors.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 This does not foreclose the pursuit by debtors of the contention in state court that the judgment expired April 26, 2006, 10 years following execution of the confession of judgment rather than 10 years following enrollment of the judgment.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Applicable nonbankruptcy law, i.e. South Carolina law, fixes the period [*18] for beginning and continuing the execution against the Debtors (and by bankruptcy definition, against property of debtors) and the period had not expired n4 before the filing of the petition. The period does not expire until the later of the two time periods set forth. The issue of the suspension of the running of the time period while the Debtors were in bankruptcy is for another day. *See* § 108(c)(1) and, for example, *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1073 (2d Cir. 1993); *Rogers v. Corrosion Products, Inc.,* 42 F.3d 292, 297 (5th Cir. 1995).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Again, without prejudice to the right of the Debtors to argue that the 10 year period had already expired.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Finally, the Debtors are prohibited from filing of a subsequent petition under title 11 for a period of one year pursuant to the authority of this Court to otherwise order prejudice to re-filing. § 349(a) This bar to re-filing runs concurrently with § 109(g), if applicable. Cause for this additional relief [*19] exists in the Debtors' seeking dismissal at this juncture of the case and the expressed desire to have the issues resolved under state law. These additional protections may or may not be sufficient to permit BB&T to complete the judgment levy and execution process. BB&T bears some burden in its choice of the time to institute the sales process.

AND IT IS SO ORDERED.

ORDER DISMISSING CASE WITH PREJUDICE FOR ONE YEAR AND WITH OTHER CONDITIONS

The relief set forth on the following pages, for a total of 12 pages including this page, is hereby ORDERED.

David R. Duncan

US Bankruptcy Court Judge

District of South Carolina

Enterd: 10/03/2006

**Document 26 of 307.**

2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

**Search Terms:** , lexis 412

**FOCUS™**

**Document 1 of 1.**

IN THE MATTER OF: ROBERT HASSLER, Debtor(s). DEBORAH HASSLER, Plaintiff, vs. ROBERT HASSLER, Defendant.

CASE NO. BK03-81714, A03-8061, CH. 7

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEBRASKA

2004 Bankr. **LEXIS** 412

April 7, 2004, Decided

**DISPOSITION:** [*1] Judgment entered in favor of plaintiff. Debts at issue excepted from discharge under 11 U.S.C. § 523(a)(15)(B).

**COUNSEL:** Robert Charles Hassler aka TBS Massage Services, Debtor (03-81714), Pro se, Omaha, NE.

(03-81714): Richard D. Myers, Chapter 7 Trustee, Trustee, Omaha, NE.

(03-81714): Patricia Dugan, U.S. Trustee, U.S. Trustee's Office, Omaha, NE.

For Deborah L. Hassler, Plaintiff (03-08061): Michael B. Lustgarten, LEAD ATTORNEY, Lustgarten & Roberts, P.C., L.L.O., Omaha, NE.

Robert Hassler, Defendant (03-08061), Pro se, Omaha, NE.

**JUDGES:** Timothy J. Mahoney, Chief Judge.

**OPINION BY:** Timothy J. Mahoney

**OPINION:** MEMORANDUM

Trial was held in Omaha, Nebraska, on March 19, 2004, on the plaintiff's complaint to determine dischargeability of certain debts. Michael Lustgarten appeared for the plaintiff, and the debtor appeared on his own behalf. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I). [*2]

The parties were formerly married to each other. As part of the dissolution decree, certain marital debts were allocated between the parties. These included education-related loans and credit card obligations. The division of property was clarified on appeal, and an order was entered in that regard on May 6,

2003. The debtor filed his Chapter 7 petition on May 30, 2003.

Ms. Hassler filed this adversary proceeding to prevent the debtor from discharging his portion of those marital debts. She asserts that the detriment to her caused by such a discharge will outweigh the benefit to the debtor, pursuant to 11 U.S.C. § 523(a)(15)(B).

"Section 523(a)(15) excepts from discharge those debts arising out of marital dissolution proceedings that do not constitute nondischargeable alimony, maintenance or support under § 523(a)(5); i.e. property settlement awards." Moeder v. Moeder (In re Moeder), 220 B.R. 52, 54 (B.A.P. 8th Cir. 1998). In determining whether a non-support debt incurred in the course of a divorce is dischargeable, the first step is to determine that it is in fact a division of property rather than alimony, maintenance, or support. [*3] The non-debtor spouse bears the burden of establishing this. Upon such a showing, the debtor may prove that he does not have the ability to pay the debt, or, if he has the ability to pay, the benefit to him of a discharge is greater than the detriment to his former wife. Fellner v. Fellner (In re Fellner), 256 B.R. 898, 902-03 (B.A.P. 8th Cir. 2001) (citing Rush v. Rush (In re Rush), 237 B.R. 473 (B.A.P. 8th Cir. 1999)).

In this case, the debts at issue clearly arise from the division of property and not as maintenance or support. In addition, the debtor does not contest his ability to pay. He simply argues that Ms. Hassler is in a better financial position to pay those debts.

In balancing benefit and detriment, the court compares the relative living standards of the parties, and if the debtor's standard of living is greater than or equal to the creditor's, then discharge of the debt is not warranted. Witlach v. Allgor (In re Allgor), 276 B.R. 221, 225 (Bankr. N.D. Iowa 2002). This requires a comparison of each party's income and expenses, Brown v. Brown (In re Brown), 302 B.R. 637, 645 (Bankr. N.D. Iowa 2003), [*4] and not simply a comparison of the parties' net worth. Grunwald v. Beck (In re Beck), 298 B.R. 616, 625 (Bankr. W.D. Mo. 2003).

Here, Ms. Hassler testified that she is a hospital administrator in Washington state, earning $ 120,000 annually. The parties' 15-year-old daughter lives with her. Ms. Hassler is also paying part of their older daughter's college tuition and expenses. Mr. Hassler was ordered to pay $ 465 in child support each month, but has not paid it since August 2003. Ms. Hassler's monthly net income is approximately $ 6,933. Her monthly expenses, including debt service on some of the debts assigned to Mr. Hassler in the divorce decree, are $ 6,347. This leaves $ 586 in disposable income.

Mr. Hassler holds master's degrees in history and anthropology, and teaches at two local community colleges. His gross 2003 income was $ 56,038.40. He testified that his 2004 income will be less because he will be teaching fewer classes this year. Mr. Hassler did not provide any evidence of his current monthly expenses, but his Schedule J lists $ 6,625 in monthly expenditures at the date of filing. However, that amount includes expenses such as attorney fees and credit [*5] card payments which have now been discharged. He testified that he has not paid his state and federal income tax liability and his student loan installments since filing bankruptcy.

Both parties appear to have a negative net worth.

In the Allgor case, supra, the debtor failed to pay certain joint credit-card debt assigned to her in the divorce decree, so her former husband paid off the balance to protect his credit rating. He then sought to have the debt excepted from discharge in the bankruptcy case. In performing the § 523(a)(15)(B) analysis, the court found that the debtor had the ability to pay the debt, and would not suffer a decrease in her standard of living materially below that of her former husband if she were required to pay the

debt. 276 B.R. at 226. The court specifically noted that the property settlement agreement contained a "hold harmless" clause to protect each party from a default by the other. This tilted the balance in favor of a finding of non-dischargeability in Allgor. Id.

In this case, there is no evidence of a "hold harmless" clause in the decree. However, the debtor has not met his burden of proof establishing that the benefit [*6] to him is greater than the burden to his former wife. The Chapter 7 discharge has freed him from a significant amount of debt, making available funds with which he can pay non-dischargeable debts. Moreover, the debts at issue in this case were incurred so the debtor could further his education. The plaintiff did co-sign for those loans, but requiring her to pay those debts while the debtor, now and in the future, reaps the benefits of that education while bearing little or none of the burden of paying for it clearly is a undue detriment to her and her family. She has been forced to assume those joint debts which were assigned to the debtor as part of the divorce, which contravenes the intention of the property award in the divorce decree and places a disproportionate burden on the plaintiff. The debtor's financial difficulties have already deprived her of several child support payments; granting a discharge of these joint debts would cause an even more significant detrimental impact on her current and future standard of living. The debts are not discharged. Separate judgment will be entered in favor of the plaintiff.

DATED: April 7, 2004

BY THE COURT:

/s/ Timothy J. Mahoney [*7]

Chief Judge

JUDGMENT

Trial was held in Omaha, Nebraska, on March 19, 2004, on the plaintiff's complaint to determine dischargeability of certain debts. Michael Lustgarten appeared for the plaintiff, and the debtor appeared on his own behalf.

IT IS ORDERED: Judgment is hereby entered in favor of the plaintiff. The debts at issue are excepted from discharge under 11 U.S.C. § 523(a)(15)(B). See Order entered this date.

DATED: April 7, 2004

BY THE COURT:

/s/ Timothy J. Mahoney

Chief Judge

**Document 1 of 1.**

2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

**Search Terms: Henriksen, Henriksen v. Henriksen**

**FOCUS™** [                                            ]    Search Within Results

Document List  Expanded List  KWIC  Full

### Henriksen v. Henriksen

C.A. No. 87C-MR-2

Superior Court of Delaware, New Castle

1987 Del. Super. LEXIS 1361

Submitted September 1, 1987
November 18, 1987, Decided

**DISPOSITION:** [*1]

For the foregoing reasons, the defendant's motion to dismiss is GRANTED and the plaintiff's motion to amend the complaint is DENIED. IT IS SO ORDERED.

**COUNSEL:** Bonnie Henriksen, Pro Se.

N. Maxon, Terry, Jr., Esq., Terry, Jackson, Terry & Wright.

**JUDGES:** VINCENT A. BIFFERATO, JUDGE.

**OPINIONBY:** BIFFERATO

**OPINION:** The defendant, John Henriksen, has moved to dismiss the complaint filed by the plaintiff, Bonnie Henriksen, pursuant to Superior Court Civil Rule 12(b)(6), for failure to state a claim upon which relief may be granted.

The parties in this case were married for nine years. On August 16, 1984, John Henriksen initially filed for divorce on the grounds of desertion and, in the alternative, for incompatibility. After a contested hearing on the matter where both parties were represented by counsel, the Family Court granted a divorce on the grounds of desertion. Bonnie Henriksen appealed the Family Court Order to the Supreme Court. Mr. Henriksen moved to dismiss the appeal as having been untimely filed. The parties agreed to have the Supreme Court remand the matter to Family Court where the decree of desertion would be vacated and Mr. Henriksen would file for an uncontested divorce on incompatibility. [*2] The Family Court granted the divorce on incompatibility and the appeal to the Supreme Court was dismissed.

Ms. Henriksen has filed an action against Mr. Henriksen for malicious prosecution and abuse of process claiming that he filed the divorce action on the grounds of desertion, knowing them to be false, and the proceedings terminated in her favor.

Mr. Henriksen moved to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The parties have submitted affidavits to supplement their memoranda. Therefore, under Superior Court Civil Rule 12(b), the motion to dismiss shall be treated as a motion for summary judgment. Shultz v. Delaware Trust Co., Del.Super., 360 A.2d 576 (1976). John Henriksen must show, taking the evidence in the light most favorable to Bonnie Henriksen, that there is no genuine issue of fact and that the case may be decided as a matter of law. Moore v. Sizemore, Del.Supr., 405 A.2d 679 (1979).

With respect to the cause of action for malicious prosecution, such a claim is viewed with disfavor by the Delaware courts and, therefore, is assessed with careful scrutiny. Kay v. Pantone, Inc., Del.Ch., 395 [*3]

A.2d 369 (1978). Five requisites must coexist in order to render such an action viable: (1) the institution of civil proceedings; (2) without probable cause; (3) with malice; (4) the termination of the proceedings in the aggrieved party's favor; and (5) damages which were inflicted upon the aggrieved party by seizure of property or other special injury. Nix v. Sawyer, Del.Super., 466 A.2d 407 (1983). The plaintiff's claim for malicious prosecution must fail since the essential elements are not present: (2) probable cause; (3) malice; (4) a result in Ms. Henriksen's favor; and (5) special damages.

A person has probable cause for bringing a civil suit if he reasonably believes that he has a good chance of establishing it to the satisfaction of the Court or the jury. Prosser, Torts § 120 at 85 (4th ed. 1971). Moreover, this definition is subject to the qualification that a judicial determination by a court of original jurisdiction in favor of the person who initiated the civil proceedings is generally held to be conclusive evidence of probable cause, even though that determination is ultimately reversed on appeal. Nagy v. McBurney, R.I.Supr., 392 A.2d 365 (1978). [*4]

Ms. Henriksen's argument that the divorce action was without probable cause fails since the Family Court granted the divorce on desertion grounds. After a contested hearing on the matter, Family Court Judge Horgan rendered his Opinion in which he reviewed the evidence and made findings of fact on the issue of desertion. The Court's Order and Opinion negate the argument that the divorce action was without probable cause.

Ms. Henriksen has not shown the malice required for malicious prosecution. Malice requires evidence that the action was taken by the defendant with a wrongful or improper motive or with wanton disregard of the rights of the plaintiff. Stidham v. Diamond State Brewery, Del.Super., 21 A.2d 283 (1941). A mere feeling of indignation or resentment toward the plaintiff does not establish malice on the part of the one who instigates a proceeding. Nix v. Sawyer, 466 A.2d at 412. While the Court recognizes that people who sue others, especially for divorce, harbor some ill will toward the adverse party, there is no evidence from which malice on the part of Mr. Henriksen could be founded.

Ms. Henriksen argues that the proceedings were resolved in her favor since the [*5] desertion grounds were dismissed. On the contrary, the divorce proceedings were not terminated in Ms. Henriksen's favor because a divorce was ultimately awarded. Alexander v. Petty, Del.Ch., 108 A.2d 575 (1954). The fact that the grounds were changed does not constitute a dismissal or resolution in Ms. Henriksen's favor. Moreover, the proceedings were resolved in Mr. Henriksen's favor when the divorce was granted on the revised grounds of incompatibility.

The plaintiff has also failed to allege special damages which were inflicted upon her by seizure of a property or other special injury. Delaware requires an interference with the person or property of the plaintiff. Kaye, 395 A.2d at 373. The special injury alleged by Ms. Henriksen is a violation of her constitutional rights. Specifically, she claims a violation of her right to leave her husband. The allegations are broad, vague and conclusory. Ms. Henriksen has failed to allege any special damages with the specificity required by Superior Court Civil Rule 9(g).

In sum, the plaintiff has failed to persuade the Court that the necessary elements for malicious prosecution exist. Furthermore, having determined the existence [*6] of probable cause, the claim of malicious prosecution must fail, the alleged malice and termination of the proceedings and special damages notwithstanding. Therefore, the defendant's motion to dismiss the claim is GRANTED.

The plaintiff also alleged an abuse of process in her complaint and the defendant has moved the Court to dismiss the claim.

Abuse of process requires: (1) an ulterior purpose, and (2) a willful act in the use of the process not proper in the regular conduct of the proceedings. Nix v. Sawyer, 466 A.2d at 412. Some form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, must be shown. Id. Ms. Henriksen has failed to allege a willful or improper act in the use of process; any form of coercion; or a collateral advantage to Mr. Henriksen arising from said coercion. Accordingly, the claim of abuse of process against the defendant is DISMISSED.

Ms. Henriksen finally requests the Court for leave to amend her complaint to add as a defendant the law firm of Maull and Maull. n1 She claims that Mr. Henriksen committed the malicious prosecution while acting within the scope of his employment with that firm. As noted above, [*7] the complaint has not alleged a cause of action against anyone for malicious prosecution in that the necessary elements do not exist. There is no evidence to warrant adding the law firm as an additional party; therefore, the plaintiff's motion to amend the

complaint is DENIED.

n1 The plaintiff has not formally moved the Court for leave to amend. Since Ms. Henricksen is acting as her own counsel, however, the Court will consider the request in her memorandum as a motion to amend the complaint.

◀ previous  Document 5 of 5.

Terms and Conditions | Privacy

Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

|   |   |   |   |

**Search Terms:**                           , divorce
**FOCUS™**                            ░░░░░░░░░░░░░░

**Document 1 of 1.**

In re: RICHARD D. HINES, Debtor. RICHARD D. HINES, Appellant, v. MONIKA HINES, Appellee.

No. 05-8065

UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE SIXTH CIRCUIT

2006 Bankr. LEXIS 1160; 38 Employee Benefits Cas. (BNA) 1172

May 3, 2006, Argued and Submitted
June 29, 2006, Decided
June 29, 2006, Filed

**PRIOR HISTORY:** [*1] Appeal from the United States Bankruptcy Court for the Southern District of Ohio, Western Division at Cincinnati. No. 05-12959.

**DISPOSITION:** AFFIRMED.
**Available Briefs and Other Documents Related to this Case:**

**COUNSEL: ARGUED:** Daniel S. Zegarski, ZEGARSKI & ICE CO., L.P.A., Cincinnati, Ohio, for Appellant.

**ON BRIEF:** Daniel S. Zegarski, ZEGARSKI & ICE CO., L.P.A., Cincinnati, Ohio, for Appellant.

Michael S. Bailey, BAILEY & GUNDERSON CO., L.P.A., Cincinnati, Ohio, for Appellee.

**JUDGES:** Before: GREGG, PARSONS, and WHIPPLE, Bankruptcy Appellate Panel Judges.

**OPINION BY:** James D. Gregg

**OPINION:** JAMES D. GREGG, Bankruptcy Appellate Panel Judge. Richard D. Hines ("Debtor") appeals a bankruptcy court order sustaining the objection of Monika Hines ("Hines"), his former wife, to confirmation of his chapter 13 plan that treated her as an unsecured, nonpriority creditor. The bankruptcy court concluded that the debt owed by the Debtor to his former wife, which arose out of the

parties' divorce decree, was nondischargeable because Hines had been awarded a separate property interest in the Debtor's retirement account, which interest the Debtor held in constructive trust. Following the controlling decision of the Sixth Circuit Court of Appeals in *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192 (6th Cir. 1996), [*2] the Panel AFFIRMS the bankruptcy court's decision.

## I. ISSUE ON APPEAL

The issues presented on appeal are (1) whether a share of the Debtor's retirement plan awarded to his former wife in the parties' divorce decree is a dischargeable debt; (2) whether the Debtor can properly treat his former wife, whose claim arose out of the parties' divorce decree, as an unsecured, nonpriority creditor; (3) whether the bankruptcy court erred by denying confirmation of the Debtor's chapter 13 plan when the objector did not specify the Bankruptcy Code provision upon which the objection was based as required by the local rules of the bankruptcy court; and (4) whether the bankruptcy court erred in determining dischargeability in the context of contested plan confirmation rather than by adversary proceeding.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to this Panel and a final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, [*3] an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497, 103 L. Ed. 2d 879 (1989) (citations omitted). Because the order at issue determined dischargeability of a debt, it is a final and appealable order. *See Van Aken v. Van Aken (In re Van Aken)*, 320 B.R. 620, 622 (B.A.P. 6th Cir. 2005) (citing *Cundiff v. Cundiff (In re Cundiff)*, 227 B.R. 476, 477 (B.A.P. 6th Cir. 1998)).

Findings of fact by the bankruptcy court are reviewed under the clearly erroneous standard. Fed. R. Bankr. P. 8013. "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.'" *In re Mathews*, 209 B.R. 218, 219 (B.A.P. 6th Cir. 1997) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985)). Conclusions of law are reviewed de novo. *In re John Richards Homes Bldg. Co.*, 439 F.3d 248, 254 (6th Cir. 2006). [*4] "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *In re Eubanks*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citations omitted). Whether the bankruptcy court properly excused a departure from its local rules is reviewed on appeal for abuse of discretion. *See Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1048 (2d Cir. 1991). A court abuses its discretion if, upon review, the appellate court is left with a "definite and firm conviction that the [bankruptcy court] committed a clear error of judgment." *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 607-08 (6th Cir. 2000) (quoting *Soberay Mach. & Equip. Co. v. MRF Ltd.*, 181 F.3d 759, 770 (6th Cir. 1999)). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Id.* at 608 (citations omitted).

## III. FACTS

On July 10, 2001, the Domestic Relations Division of the Common Pleas Court of Hamilton County, Ohio, [*5] granted the Debtor and Hines a divorce. The state court entered a decree that both

terminated the marriage and, among other particulars not relevant here, detailed how the marital property was to be divided. The pertinent portion of the divorce decree states:

> [Debtor] shall, solely and exclusively, retain his retirement/pension plan through his employer, City of Cincinnati, free and clear of any interest of [Hines]. However, [Debtor] shall pay to [Hines] $ 12,500 no later than thirty-six (36) months from the journalization of this Decree of Divorce as and for her netted share of his retirement.

(J.A. at 10.) n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The typed version of the divorce decree had the word "vested" rather than "netted" in the last line of this paragraph. However, "vested" was marked out and "netted" was handwritten above, with the changes initialed by the attorney for the Debtor.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

After failing to pay Hines the $ 12,500 awarded by the divorce decree, the Debtor filed a petition under chapter 13 of the Bankruptcy [*6] Code on April 20, 2005. The Debtor's plan, which was filed contemporaneously with his petition, provided for unsecured creditors to be paid 5% of their claims and his schedules listed Hines as an unsecured, nonpriority creditor.

On June 3, 2005, Hines filed an objection to confirmation of the Debtor's plan, seeking an order of the bankruptcy court that the $ 12,500 debt is nondischargeable and that it be paid in full. n2 Hines relied upon the decision in *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192 (6th Cir. 1996), wherein the Sixth Circuit Court of Appeals held that a divorce decree created a constructive trust of a portion of the debtor's retirement plan for the benefit of the ex-spouse. As a result, the property interest of the ex-spouse in the debtor's retirement plan never became part of the debtor's bankruptcy estate and was not a dischargeable debt. *Id.* at 199-200.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Hines also objected to the Debtor's plan because it did not provide for payment of parochial school education tuition for their minor children as was ordered pursuant to their divorce decree. However, the Debtor filed an Amended Plan on June 19, 2005, which provided for payment of the school tuition thereby mooting that objection to the plan.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*7]

The Debtor responded to the objection, asserting that the holding in *McCafferty* was inapplicable because the language in the divorce decree states that the Debtor retained his retirement "solely and exclusively" and "free and clear of any interest of [Hines]."

In an order entered August 10, 2005, the bankruptcy court sustained Hines' objection to confirmation of the Debtor's plan "because it propose[d]to treat her as an unsecured non-priority creditor who will receive 5% under the plan, when the debt owed her cannot be categorized simply as an unsecured debt." (J.A. at 25.) Further, determining *McCafferty* controlling, the bankruptcy court concluded, "[b]ecause the divorce decree was entered prior of (sic) the bankruptcy, [Hines'] interest vested pre-bankruptcy, is not part of the debtor's bankruptcy estate, is non-dischargeable, and is held by debtor in constructive trust for [Hines]." (J.A. at 25.) This timely appeal followed.

## IV. DISCUSSION

The Sixth Circuit Court of Appeals has previously addressed the primary issue presented here in *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192 (6th Cir. 1996). *McCafferty* is controlling. [*8] In *McCafferty*, the debtor and his ex-wife were granted a divorce by the Court of Common Pleas in Columbiana County, Ohio. An order dividing the marital property was entered, holding that Ms. McCafferty was entitled to one-half of the value of Mr. McCafferty's pension on the date of the divorce, $ 100,250.21. The divorce court stated that the $ 100,250.21 judgment was awarded "as a distribution of her interest in [Mr. McCafferty]'s retirement plan." *Id.* at 194-95. Mr. McCafferty was ordered to pay the judgment in installments of $ 1,500 per month. At the time of the judgment, Mr. McCafferty was not yet retired. *Id.* at 193-94.

Seven months later, Mr. McCafferty filed a petition for relief under chapter 7 of the Bankruptcy Code and listed Ms. McCafferty as a holder of unsecured debts which he then sought to discharge. In turn, Ms. McCafferty asserted that the divorce decree had effectively granted her $ 100,250.21 in separate property held in constructive trust by her ex-husband. Because the property was held in a constructive trust, she argued, it could not be considered part of the bankruptcy estate and was not a dischargeable debt. *Id.* at 194. [*9]

On appeal, the Sixth Circuit first determined whether a separate property interest was granted by virtue of the divorce decree. Acknowledging that the issue was controlled by state law, the court examined Ohio law and found that retirement benefits are marital property subject to division upon termination of a marriage. *Id.* at 197 (citing *Hoyt v. Hoyt*, 53 Ohio St. 3d 177, 178, 183, 559 N.E.2d 1292 (1990)). The court also found that "[o]nce the division of property is fixed by the court, both spouses are legally entitled to the share respectively allotted to them." *Id.* (quoting *Zimmie v. Zimmie*, 11 Ohio St. 3d 94, 97, 11 Ohio B. 396, 464 N.E.2d 142 (1984); *and citing Erb v. Erb*, 75 Ohio St. 3d 18, 22, 661 N.E.2d 175 (1996) (divorce decree found to have awarded wife a separate ownership interest in the husband's pension benefits); *Wilson v. Wilson (In re Wilson)*, 158 B.R. 709, 711 (Bankr. S.D. Ohio 1993) (holding that as a result of a divorce decree, the debtor's former wife became the equitable owner of a portion of the assets in the debtor's retirement fund)). Based on state law and the language of the divorce [*10] decree which stated that the award was a distribution of her interest in the retirement plan, the Sixth Circuit Court of Appeals held that the Ohio divorce court awarded Ms. McCafferty a separate property interest. *Id.* at 197.

Having found that a separate property interest was awarded by the Ohio divorce court, the Sixth Circuit next examined, under state law, whether the effect of the divorce decree was to "impress" a constructive trust upon the interest. The court noted that pursuant to Ohio law, a court need not declare that a constructive trust has been created, but rather such a trust arises by operation of law to prevent unjust enrichment. *In re McCafferty*, 96 F.3d at 198 (citing *Kungle v. Equitable Gen. Ins. Co.*, 27 Ohio App. 3d 203, 27 Ohio B. 242, 500 N.E.2d 343 (1985); *Croston v. Croston*, 18 Ohio App.2d 159, 162, 247 N.E.2d 765 (1969)). Further, where there is a valid court order predating the bankruptcy, there has been a judicial determination by a court in another proceeding that the property is held for the benefit of

another. *Id.* (citing *McGraw v. McGraw (In re McGraw)*, 176 B.R. 149, 151-52 (Bankr.S.D. Ohio 1994)). [*11] Based on the foregoing principles, the Sixth Circuit held that the Ohio court's order created a constructive trust to protect Ms. McCafferty's interest which survived the bankruptcy. *Id.* As a result, Mr. McCafferty retained only bare legal title in the designated portion of the plan's benefits, and Ms. McCafferty became the equitable owner of the retirement plan to that extent. *Id.* Thus, the property interest never became part of the bankruptcy estate and was not a dischargeable debt. *See id.* at 199-200; 11 U.S.C. § 541(d).

Here, Hines asserts that, similarly to the divorce decree in *McCafferty*, the divorce decree in this instance awarded her a separate interest in the Debtor's retirement plan and created a constructive trust to protect that interest. In opposition, the Debtor argues that, unlike the divorce decree in *McCafferty*, the specific language of the divorce decree, which states that the benefits are held "solely and exclusively" and "free and clear," precludes a finding that Hines was awarded a separate interest in the retirement plan and that, as a result, no constructive trust was created.

The Panel rejects the Debtor's [*12] argument. There is no substantive difference between the divorce decree in *McCafferty*, which awarded the wife a monetary amount as "a distribution of her interest in the [husband's] retirement plan," and the decree in the instant case, which awarded Hines a sum "as and for her netted share of [the Debtor's] retirement." Further, as occurred in *McCafferty*, the effect of the divorce decree in the present case was to impress a constructive trust upon Hines' interest in the retirement plan. As the Sixth Circuit stated in *McCafferty*, a court in Ohio need not use the words "constructive trust" for one to be impressed upon the interest awarded. The *McCafferty* court concluded that the divorce decree before it did just that, even though the husband had been ordered to make money payments to the wife rather than actually distribute her portion of the retirement account to her. *Id.* at 199. As explained by the Sixth Circuit:

> The court's decree irrevocably established Ms. McCafferty's separate interest in her husband's pension benefits and determined that direct payment by her husband would best protect her interest. How the pension distribution was [*13] to be effected does not change the fact that Ms. McCafferty was the equitable owner of $ 100,250.21 of the pension benefits when Mr. McCafferty began this bankruptcy proceeding.

*Id.*

This Panel is not persuaded that this case is distinguishable from *McCafferty* based on the language in the divorce decree that the debtor shall retain his retirement plan "solely and exclusively" and "free and clear of any interest of [Hines]" as the Debtor argues. This language is merely a restatement of the directive that Hines was to be paid her interest in cash from the Debtor rather than await distribution from the retirement plan itself, and *McCafferty* makes clear that the method of payment does not alter the ownership interests. Additionally, the language in the divorce decree does not abrogate the intent of the provision when read in its entirety, a recognition that Hines was awarded a separate property interest in the Debtor's retirement plan. The Panel interprets the language relied upon by the Debtor as providing that the remainder of the Debtor's retirement benefits shall remain his solely and exclusively. The result here is the same as *McCafferty*. Hines has a separate [*14] property interest in the Debtor's retirement plan to be held in constructive trust by the Debtor. Hines' separate property interest is not property of the Debtor's bankruptcy estate; it is not a dischargeable debt. As a result, the Debtor is prohibited from treating Hines' property interest in the retirement plan as an unsecured, nonpriority claim.

The Panel also rejects the Debtor's procedural arguments. The Debtor argues that Hines' objection to confirmation failed to specify with particularity the applicable Bankruptcy Code provision as required by local rules of court. While this issue was raised before the bankruptcy court, it was not specifically addressed in the bankruptcy court's order. n3 Presumably, the bankruptcy court excused the departure from its local rules in accordance with its inherent authority, and we find no abuse of discretion by the court. *See Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1048 (2d Cir. 1991) (finding that the court has inherent power and discretion to decide when departure from its local rules should be excused or overlooked).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 This issue was addressed in the Debtor's written response to Hines' objection to confirmation, but it was not addressed by the Debtor at the hearing before the bankruptcy court. However, it was again raised by the Debtor on appeal to this Panel.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*15]

The Debtor further argues that the court erred in determining dischargeability in the context of plan confirmation rather than by adversary proceeding. He asserts that even if Hines holds a separate property interest, this result does not constitute a basis to derail the Debtor's plan. The Panel also rejects this assertion. The Debtor attempted to eliminate Hines' separate property interest in the retirement plan using the plan confirmation process. As stated by the Sixth Circuit in *McCafferty*, "[w]e doubt that Congress ever intended that a former wife's judicially decreed sole and separate property interest in a pension payable to her former husband should be subservient to the Bankruptcy Code's goal of giving the debtor a fresh start." *In re McCafferty*, 96 F.3d at 200 (quoting *Bush v. Taylor*, 912 F.2d 989, 994 (8th Cir. 1990)).

Moreover, no prejudice resulted from the lack of an adversary proceeding. The Debtor does not even argue that he has been prejudiced. Without question, Hines' objection placed the Debtor on notice of the substantive basis for the objection, and the controlling precedent, the Sixth Circuit's *McCafferty* decision. [*16] Additionally, the bankruptcy court held a full hearing on the matter without further procedural objection from the Debtor. In the absence of any demonstrable prejudice, there is no error resulting from the lack of a formal adversary proceeding. *See Tully Constr. Co. v. Cannonsburg Envtl. Assocs., Ltd. (In re Cannonsburg Envtl. Assocs., Ltd.)*, 72 F.3d 1260, 1264-65 (6th Cir. 1996) (finding that seeking a declaratory order to extend loan money by motion rather than adversary proceeding was harmless error where procedures were essentially the same and there was no prejudice to the nonmovant; refusing to "enshrine form over substance" in the absence of demonstrable prejudice from filing a motion rather than a formal adversary proceeding); *see also, e.g., In re Valente*, 360 F.3d 256, 265 (1st Cir. 2004) (failure to require adversary proceeding to determine whether debtor retained equitable interest in transferred real estate was harmless error given that standard of proof in both types of proceedings was the same and both used similar procedures without prejudice to the debtor); *In re Swizzlestick, L.L.C.*, 253 B.R. 264, 267 (Bankr. W.D. Mo. 2000) [*17] ("[T]he Court will not elevate the form of the proceeding in which a lien issue is to be considered, if the substance of the hearing on that issue is such that the objecting party has been afforded due process.").

# V. CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is AFFIRMED.

**Document 1 of 1.**

2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

Search Terms: 152 B.R. 51

FOCUS™                             

Document 1 of 1.

## IN RE JAMES POLLIARD, SR., DEBTOR; PAMELA POLLIARD, Movant v. JAMES POLLIARD, Respondent

### BANKRUPTCY NO. 92-23263WB, MOTION NOS. RR-1 AND RR-2

### UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

### 152 B.R. 51; 1993 Bankr. LEXIS 442; 28 Collier Bankr. Cas. 2d (MB) 1067

### March 23, 1993, Decided

**COUNSEL:** [**1] CARLOTA M. BOHM, ESQ., PITTSBURGH, PA, TRUSTEE AND ATTORNEY PRO SE.

CARMEN A. MARTUCCI, ESQ., PITTSBURGH, PA, ATTORNEY FOR MOVANT.

**JUDGES:** BENTZ

**OPINION BY:** WARREN W. BENTZ

**OPINION:** [*53] OPINION

Introduction

Presently before the Court are two motions filed by Pamela Polliard ("Mrs. Polliard"), the estranged wife of James Polliard ("Debtor"). Mrs. Polliard seeks to enjoin Carlota M. Bohm, Esq. ("Trustee"), the trustee in this Chapter 7 bankruptcy case from selling real property located at 456 Crestview Drive (the "Property") which is owned by Mrs. Polliard and the Debtor and is currently occupied by Mrs. Polliard. Mrs. Polliard further seeks relief from the automatic stay or, in the alternative, requests that we abstain so that she may continue with the divorce proceeding which she initiated in the Court of Common Pleas of Allegheny County on November 18, 1988. The Trustee opposes the Motions.

Factual Background

The Debtor filed his voluntary Petition under Chapter 7 of the Bankruptcy Code on July 21, 1992. At the time of the bankruptcy filing, Mrs. Polliard's counsel advises that she had not obtained a divorce decree and that all issues in the divorce proceeding, including equitable distribution, [**2] remain unresolved.

At issue are the interests of Mrs. Polliard and the Trustee in the Property. The parties agree that the

value of the Property is approximately $ 62,900 and that the Property is subject to a mortgage in the approximate amount of $ 6,000, leaving equity of $ 56,900.

Mrs. Polliard asserts that she obtained a vested interest in the entire Property upon the filing of the divorce action in 1988. She further asserts that she will be entitled to 100% of the Property under equitable distribution principles.

The Trustee asserts that there has been no disposition of the Property in the divorce proceeding; that the Debtor's interest in the Property is an asset of the bankruptcy estate; that the Debtor's interest in the Property should be sold for the benefit of the Debtor's creditors; and that this Court has absolute jurisdiction and should not abstain.

Issues

1. Whether Mrs. Polliard obtained a vested interest in the entire Property upon commencement of the divorce proceeding.

2. Whether Mrs. Polliard is entitled to relief from stay to have the amount of her equitable distribution claim fixed in the Court of Common Pleas.

3. Whether the Trustee may sell the [**3] jointly held Property for the benefit of the estate.

Discussion

I. Vested Interest

The Debtor's bankruptcy schedules list some $ 94,000 in unsecured debt. The Debtor's interest in the Property is the only asset available for repayment to his creditors.

When the divorce proceeding was filed, the right to seek equitable distribution vested with Mrs. Polliard. She became "entitled to acquire" an interest in the Debtor's share of the Property. See, Perlow v. Perlow, 128 Bankr. 412, 415 (ED NC 1991); In re McCulley, 150 Bankr. 358, 1993 WL 35610 (Bankr. MD Pa. 1993); In re Wilson, 85 Bankr. 722 (Bankr. ED Pa. 1988). Mrs. Polliard did not, however, obtain a vested ownership interest in the entire Property upon commencement of the divorce proceeding. Rather, the Debtor continued to own his share of the Property, subject to Mrs. Polliard's claim of the right of equitable distribution. At the time the Debtor filed the within bankruptcy case, the Court of Common Pleas had made no determination which changed the Debtor's pre-divorce interest in the Property.

By virtue of the bankruptcy filing, the Debtor's [**4] interest in the Property became [*54] an asset of his bankruptcy estate. 11 U.S.C. § 541. That interest passes to the Trustee to be administered for the benefit of the Debtor's creditors.

The Sixth Circuit has adopted the position that the state domestic relations court must first determine the ownership rights of the debtor and his estranged spouse in an equitable distribution proceeding and then the bankruptcy court exercises exclusive jurisdiction over the property which is awarded to the debtor. In re White, 851 F.2d 170 (6th Cir. 1988); In re Hohenberg, 143 Bankr. 480, 485 (Bankr. WD Tenn. 1992). Under this scenario, the nondebtor spouse takes the marital property awarded to him or her free of the claims of the debtor-spouse's creditors -- a result which we find untenable. The evil in this resolution is that the division of assets between spouses may take place in the absence of any

consideration by any court of the impact upon creditors. In fact, spouses might intentionally give all of the property to the solvent spouse, leaving the insolvent spouse with nothing for his creditors. [**5]

We believe the better view, expressed by numerous other courts, is that the non-debtor spouse's interests in the Debtor's share of the marital property, which are the subject of equitable distribution proceedings in a divorce action commenced prior to the bankruptcy filing, are cut off by the bankruptcy filing where the domestic relations court has not, at the time of the bankruptcy, fixed the equitable distribution rights by judgment. See, Perlow v. Perlow, 128 Bankr. 412 (ED NC 1991); In re Greenwald, 134 Bankr. 729, 731 (Bankr. SD NY 1991); In re Hilsen, 100 Bankr. 708, 711 (Bankr. SD NY 1989), rev'd on other grounds, 119 Bankr. 435 (SD NY 1990).

The right of the estranged spouse to equitable distribution is not barred. He or she has a general unsecured claim in the bankruptcy for an amount representing any equitable distribution award of an interest in the debtor's property. See, Perlow, 128 Bankr. at 415; In re Briglevich, 147 Bankr. 1015 (Bankr. ND Ga. 1992); In re Greenwald, 134 Bankr. at 731. [**6]

The Pennsylvania Superior Court has enunciated a bright line rule that the filing of a divorce wherein equitable distribution is requested automatically places all marital property in custodia legis, thus insulating it from claims of creditors. Weaver v. Weaver, 413 Pa. Super. 382, 605 A.2d 410 (1992); Fidelity Bank v. Carroll, 416 Pa. Super. 9, 610 A.2d 481 (1992).

In Fidelity Bank v. Carroll, however, the Court notes that the creditor had the right to force the husband into bankruptcy, where in "the divorce proceeding would have been stayed pending resolution of the claims of Mr. Carroll's various creditors." Thus, the bright line becomes blurred. We would have thought that bankruptcy law, enforcing state law where applicable, would give a trustee no more rights than a judgment or execution creditor -- yet apparently the Superior Court's analysis would deny a lien to a judgment creditor but would yield to the powers of a bankruptcy trustee. This is not altogether logical. We divine it to mean that the "custodia legis" proposition is somewhat weakened.

We also observe a weakening [**7] in the theory that the filing of a divorce requesting equitable distribution "vests" title in marital assets in the claiming spouse by Ibarra v. Prudential Property & Casualty Ins. Co., 402 Pa. Super. 27, 585 A.2d 1119 (1990). There, the wife was held not to be the "owner" of the husband's automobile, even though it was marital property, during the pendency of the divorce, for purposes of the Motor Vehicle Finance Responsibility Law.

Also, the "ownership rights" or "vested rights" in marital property by virtue of the Divorce Code becomes inapplicable when one of the spouses dies. Myers v. Myers, 397 Pa. Super. 450, 580 A.2d 384 (1990).

Thus, it would appear that Pennsylvania law does not, when one of the spouses becomes a bankrupt, insulate the marital property from claims of creditors whose interests are represented by the bankruptcy trustee.

Mrs. Polliard's claim for equitable distribution, once quantified, will become [*55] an entitlement against the Debtor's bankruptcy estate, subject to the distribution and priorities of the Bankruptcy Code. Since the Bankruptcy Code gives her no right [**8] of distribution superior to that of any other unsecured creditor, she will be entitled to a prorata distribution along with other unsecured creditors. In re Palmer, 78 Bankr. 402 (Bankr. ED NY 1987).

II. Relief from Stay

Transfers of property interests under equitable distribution are subject to existing liens. 23 P.S. 3501(a) (7). Under Bankruptcy Code § 544, the Trustee has the rights of a judgment creditor who levies on the Debtor's property as of the date the bankruptcy Petition is filed. In re Becker, 136 Bankr. 113 (Bankr. D.NJ 1992); Perlow, 128 Bankr. at 415. Therefore, the equitable distribution process cannot alter the bankruptcy estate's right in property in which the debtor had an interest on the Petition date.

Although § 544 prevents the Court of Common Pleas from awarding the Debtor's share of the Property in kind to Mrs. Polliard, Mrs. Polliard may be entitled to a general unsecured claim against the Debtor's bankruptcy estate. The value of her claim has not yet been determined. Many courts have found that the determination of the amount of the non-debtor spouse's [**9] equitable distribution claim involves an interpretation of state domestic relations law and have accordingly granted relief from stay to have the amount of the claim fixed in state court while retaining jurisdiction over the subsequent distribution from the bankruptcy estate to be made on such claim. See, In re French, 139 Bankr. 485 (D.SD 1992); In re Palmer, 78 Bankr. 402 (Bankr. ED NY 1987); In re Fisher, 67 Bankr. 666 (Bankr. D.Colo. 1986).

As some measure of protection for other creditors of the bankruptcy estate, courts have suggested or instructed the creditors, the Trustee, or a representative to participate in the state court proceedings. In re Hohenberg, 143 Bankr. 480, 489-90 (Bankr. WD Tenn. 1992).

Courts have also prohibited consensual agreements between the Debtor and the ex-spouse to prevent collusion to the detriment of the other creditors. Hohenberg, 143 Bankr. at 488. In most every case, the Bankruptcy Court has retained jurisdiction over enforcement of the state court judgment and the distribution from the [**10] bankruptcy estate on account of such claim. In re Wilson, 85 Bankr. 722 (Bankr. ED Pa. 1988); In re Palmer, 78 Bankr. 402 (Bankr. ED NY 1987); In re Fisher, 67 Bankr. 666 (Bankr. D. Colo. 1986).

Such measures, however, provide only minimal protection to other creditors. There is a question as to whether the creditors have standing to participate in the state court proceeding. See, In re Wilson, 85 Bankr. 722, 729 (Bankr. ED Pa. 1988). Further, even though the Bankruptcy Court retains jurisdiction over the distribution, it is questionable whether it can review or reject the allocation of the marital estate once the automatic stay has been lifted and the state court has fixed the ex-spouse's rights. See In re White, 851 F.2d 170 (6th Cir. 1988); In re Becker, 136 Bankr. 113, 120 (Bankr. D NJ 1992).

These concerns about protection for the interests of other creditors have recently caused an expression of reservation as to whether it is ever appropriate to abstain or grant relief from stay to permit [**11] the amount of the ex-spouse's claim to be fixed in state court. In re Youmans, 117 Bankr. 113, 121, n.8 (Bankr. D. NJ 1990).

Although we share those concerns, we believe it appropriate in this case to grant Mrs. Polliard relief from the automatic stay to pursue a determination of the amount of her claim in the Court of Common pleas. The divorce action has been pending in the Court of Common Pleas for over four years. The Common Pleas Court's familiarity with equitable distribution principals far exceeds that of this Court. We believe the Debtor's creditors are properly protected by the requirement that Mrs. Polliard seek enforcement of any judgment through the claims process in the bankruptcy case. See In re Robbins, 964 F.2d 342 (4th Cir. 1992).

[*56] We suggest that the Trustee enter an appearance in the divorce proceeding to ensure that the Court of Common Pleas is apprised of the concerns of other creditors. We will retain jurisdiction over the distribution to be made on account of such claim (which Mrs. Polliard shall file as a proof of claim

in this case at the conclusion of the divorce proceeding). The right of [**12] the Trustee to object to such claim shall be preserved. Any review of the claim by this Court shall be subject to appropriate deference to the findings of the Common Pleas Court.

Sale of the Property

11 U.S.C. § 363(h) allows the Trustee to sell both the estate's interest and the interest of any co-owners in property if certain conditions are met, to-wit:

> (1) partition in kind of such property among the estate and co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners, and
>
> (4) [inapplicable]

11 U.S.C. § 363(h).

The Property in question is a single family residence. Thus, there can be no doubt that conditions (1) and (2) are met. However, condition (3) requires us to balance the detriment to Mrs. Polliard and the family residing in the residence with the benefit to the estate arising from a sale of [**13] the property.

We acknowledge that removing Mrs. Polliard from the family residence is a substantial hardship. However, there is substantial equity in the Property and from her share of that equity and from any distribution Mrs. Polliard is entitled to receive as an unsecured creditor of the Debtor's estate, Mrs. Polliard will readily be able to find substitute housing. Mrs. Polliard also has a right of first refusal. 11 U.S.C. § 363(i). She would also be entitled to one-half of the proceeds of sale, after payment of the existing mortgage and payment to joint creditors of the Debtor and Mrs. Polliard, less costs and expenses and without reduction for compensation of the trustee. 11 U.S.C. § 363(j).

In contrast, sale of this Property is the only way any funds will become available for distribution to the Debtor's creditors or to the joint creditors of the Debtor and Mrs. Polliard. Following the initial hearing on the matter, the Debtor was ordered to file an Affidavit which sets forth a listing of creditors holding claims against both the Debtor and his non-debtor spouse. Joint creditors hold claims in the [**14] amount of $ 7,933. An additional creditor asserts a joint claim in the amount of $ 3,081.29; however, the Debtor believes the additional claim is owed by him alone and is not a joint obligation. To the extent there are joint creditors, they will be entitled to payment from the proceeds generated from the sale of the Property. See Sumy v. Schlossberg, 777 F.2d 921 (4th Cir. 1985); In re Turner, 81 Bankr. 387 (Bankr. W.D. Pa. 1988); and In re Cotterman, 67 Bankr. 788 (Bankr. W.D. Pa. 1986).

Accordingly, we believe it appropriate for the Trustee to proceed with sale of the Property. Mrs. Polliard's request for an injunction prohibiting such sale will be denied.

Warren W. Bentz, United States Bankruptcy Judge

**ORDER**

This 23 day of March, 1993, in accordance with the accompanying OPINION, it shall be, and hereby is, ORDERED as follows:

1. The Motion of Pamela Polliard to enjoin the sale of marital real estate is REFUSED.

2. Pamela Polliard is granted relief from the automatic stay to proceed in the Court of Common Pleas to have fixed the amount, if any, of her equitable distribution [**15] claim against the Debtor.

3. The time in which Pamela Polliard may file a proof of claim in the within case is extended until 30 days following conclusion [*57] of the equitable distribution proceeding.

Warren W. Bentz, United States Bankruptcy Judge

**Document 1 of 1.**

2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

LexisNexis(TM) Academic ~ Document

Search Terms: 188 B.R. 366

FOCUS™

Document 1 of 1.

In re: ROBERT ARNOLD ROBERGE, SR., Debtor, KAY M. ROBERGE, Appellant, v. ROBERT ARNOLD ROBERGE, SR., Appellee.

Case No. 3:95CV488

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, RICHMOND DIVISION

**188 B.R. 366;** 1995 U.S. Dist. LEXIS 16832

November 7, 1995, FILED

**PRIOR HISTORY:** [**1] Bankruptcy Case No. 94-32674-S.

**COUNSEL:** FOR APPELLANT: Bruce Edwin Arkema, Esq., Russell, Cantor, Arkema & Edmonds, Richmond, VA.

FOR APPELLEE: Bruce Howard Matson, Esq., LeClair, Ryan, Joynes, Epps & Framme, Richmond, VA. William Crenshaw Parkinson, Jr., Esq., Richmond, VA.

FOR J. STEPHEN BUIS, Trustee: Bruce Howard Matson, Esq., LeClair, Ryan, Joynes, Epps & Framme, Richmond, VA. William Crenshaw Parkinson, Jr., Esq., Richmond, VA.

**JUDGES:** Hon. Richard L. Williams

**OPINION BY:** Richard L. Williams

**OPINION:** [*367] MEMORANDUM OPINION

This matter is an appeal from a decision of the Bankruptcy Court denying Kay M. Roberge relief from the automatic stay in order to prosecute an equitable distribution suit against the debtor, Robert Arnold Roberge, Sr., in a Florida state court. Because the Bankruptcy Court's action constituted an abuse of discretion, the decision of that court is reversed, the automatic stay is lifted with respect to Ms. Roberge's equitable distribution proceeding in Florida, and the case is remanded for further proceedings consistent with this opinion.

I.

For a case as legally complicated as this one, the facts are remarkably simple. Robert and Kay Roberge lived in Florida as husband [**2] and wife for 36 years until 1991, when Robert Roberge left. Ms. Roberge continued to live in the marital residence, the principal asset of the marital estate, and to make

mortgage payments on it. In May of 1994, Mr. Roberge obtained an ex parte divorce in Virginia. Because an ex parte divorce is an in rem proceeding — the marriage constituting the res — the Virginia state court never established personal jurisdiction over Ms. Roberge, and thus could not effect equitable distribution of the marital estate. See Boyd v. Boyd, 2 Va. App. 16, 340 S.E.2d 578, 580 (Va. App. 1986) ("A divorce suit in which the pleadings seek only to terminate a marriage is an in rem proceeding, but a proceeding seeking the entry of a decree for spousal support and maintenance is in personam."). n1 Neither party sought an equitable distribution proceeding in Florida, the only state with personal jurisdiction over Kay Roberge, and their respective rights in the marital estate remain unresolved. The divorce decree itself, however, by virtue of Florida law, converted the nature of their interests in the marital residence from a tenancy by the entireties [*368] to a tenancy in common. [**3] See Fla. Stat. Ann. § 689.15.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 As the Virginia court in any case lacked in rem jurisdiction over the Florida realty in question, it could not have itself ordered the property sold, or granted title to it to one party or the other, even if it had obtained in personam jurisdiction over both Mr. and Ms. Roberge. If it had possessed such jurisdiction, however, it could have directed the parties to sell the property, or one party to convey his or her interest to the other.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On July 27, 1994, just two months after he obtained the divorce, Robert Roberge filed a petition for relief under Chapter 7 of the Bankruptcy Code in the Eastern District of Virginia. Kay Roberge subsequently filed an equitable distribution suit in Florida state court, seeking a determination of the parties' respective interests in the marital estate. Upon discovering that her suit was in violation of the automatic stay triggered by the bankruptcy filing, Ms. Roberge moved the Bankruptcy Court to lift the stay so as to allow her [**4] equitable distribution suit to proceed. The Bankruptcy Trustee opposed her motion, and the Bankruptcy Court denied it on April 25, 1995. See In re Roberge, 181 Bankr. 854 (Bankr. E.D. Va. 1995). It is from that order that Kay Roberge appeals. The standard of review is abuse of discretion. See In re Robbins, 964 F.2d 342, 345 (4th Cir. 1992).

II.

A bankruptcy filing creates an estate consisting of all the legal and equitable interests of the debtor in property as of the date of filing. See 11 U.S.C. § 541(a)(1). Thus, property co-owned with the non-debtor spouse is part of the bankruptcy estate. See In re Becker, 136 Bankr. 113, 115 (Bankr. D.N.J. 1992). The district court has "exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate." See 28 U.S.C.S. § 1334 (d) (Law. Co-op. 1986). n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 28 U.S.C.S. § 1334(d) as quoted is now subsection (e) of the statute. The amendment which renamed it subsection (e) and inserted a new subsection (d), which states that decisions to abstain or not to abstain with regard to certain proceedings related to the bankruptcy are not appealable to the Court of Appeals or to the Supreme Court, took affect October 22, 1994, after commencement of this case, and

so by its terms is inapplicable to it. See 28 U.S.C.S. § 1334 (Law. Co-op. Supp. 1995) (history; ancillary laws and directives).

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - [**5]

The filing of a bankruptcy petition automatically stays the commencement or continuation of judicial proceedings against the debtor, with certain limited exceptions. See 11 U.S.C. § 362(a). Thus, equitable distribution of marital assets is stayed by the filing of a bankruptcy petition. See In re Robbins, 964 F.2d at 344. However, the bankruptcy court can lift the stay "for cause." 11 U.S.C. § 362(d)(1). "Because the [Bankruptcy] Code provides no definition of what constitutes 'cause,' courts must determine when discretionary relief is appropriate on a case-by-case basis." In re Robbins, 964 F.2d at 345. Additional authority to grant relief from the stay is found in 28 U.S.C. § 1334(c)(1), which states that

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Kay Roberge argues that she is entitled to relief from the automatic stay because equitable distribution fundamentally involves determination of state law issues in an area of [**6] traditional state concern -- domestic relations -- and thus it is best left to the expertise of a Florida court. The Bankruptcy Trustee argues that the filing of a bankruptcy petition cuts off equitable distribution rights, as such rights under Florida law are subject to the claims of prior creditors, see Fla. Stat. Ann. § 61.075, and the Trustee is a hypothetical lien creditor.

Thus, the question presented is this: Does the filing of a bankruptcy petition cut off a spouse's right to equitable distribution? The caselaw is evenly divided.

III.

A.

The principal case cited by the Bankruptcy Trustee in favor of the proposition that equitable distribution rights are cut off by a bankruptcy petition is In re Polliard, 152 Bankr. 51 (Bankr. W.D. Pa. 1993). That court concluded that while the wife's right to equitable distribution vested upon the filing of a divorce petition, she did not obtain a vested interest in the entire marital residence. Rather, the husband continued to own his [*369] share of the residence, subject to her equitable distribution claim. Thus, his interest in the property became part of the bankruptcy estate upon the filing of the petition. See id. at 53-54. [**7] Consequently, the bankruptcy filing cut off Ms. Polliard's interests in her husband's share of the marital property. n3 This logic has been followed by a number of different courts, including, in a recent opinion, one here in the Eastern District of Virginia. See In re Benyola, 1995 WL 777031 (E.D. Va. Mar. 19, 1993).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The equitable distribution claim is converted into an unsecured claim in the bankruptcy. See id. at

54.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

This train of logic is dependent upon the transfer of property interests under the relevant equitable distribution statute being subject to prior perfected liens, as is the case in Florida. See Fla. Stat. Ann. § 61.075. If equitable distribution transfers are subject to prior perfected liens against one spouse's interest, then, according to the court in In re Benyola:

> Under [Bankruptcy] Code sections 544(a)(1) and (2), a bankruptcy trustee has the rights of a judgment creditor who levies on the debtor's property as of the date the bankruptcy petition is filed, whether [**8] or not such a creditor exists. The filing of a bankruptcy petition is therefore the legal equivalent of a levy by the trustee upon all of the debtor's property as of the petition date. It follows that equitable distribution cannot alter a bankruptcy estate's rights in property in which the debtor had an interest on the petition date, whether jointly owned or otherwise.

Id. at *3 (quoting In re Becker, 136 Bankr. at 118 (citations omitted)).

This reasoning is also dependent, however, on the debtor having retained his pre-equitable distribution interest in the property even though the right to equitable distribution has vested. Otherwise, the debtor's interest on the petition date would merely be his share following equitable distribution.

B.

With that proposition this Court disagrees. A vested right to equitable distribution is meaningless unless the spouse's interest in the property which is to be equitably distributed also vests. Thus, stating that the filing of a bankruptcy petition cuts off equitable distribution rights because the debtor has retained his pre-divorce interest in the property during the pendency of the divorce proceeding is the same as stating [**9] that vested equitable distribution rights are subject to divestment upon the filing of a bankruptcy petition.

While vested property rights can be subject to divestment, the mere filing of a bankruptcy petition does not divest otherwise vested equitable distribution rights. Once the right to equitable distribution vests, the parties to the divorce obtain inchoate equitable interests in the marital estate equivalent to the shares to which they are entitled under equitable distribution. The Bankruptcy Code provides that "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). Thus, in a bankruptcy proceeding which is commenced after the vesting of equitable distribution rights, only the debtor's inchoate equitable interest in the marital estate becomes part of the bankruptcy estate. The interest is then made choate by the equitable distribution proceeding. To hold otherwise would make the Bankruptcy [**10] Code a draconian tool in divorce litigation, because one could then avoid an anticipated unfavorable equitable distribution award by filing

bankruptcy.

C.

Whether a creditor who perfects a lien against marital assets after the vesting of equitable distribution rights but before an equitable distribution award is made cuts off those equitable distribution rights is a question of state law. A creditor of a wife who dockets a judgment against the marital residence [*370] after a divorce petition is filed but before an equitable distribution award is made may or may not have a lien against the wife's pre-divorce interest, depending upon the relevant state law. In addition, the Bankruptcy Code generally does not act as substantive law, but instead incorporates applicable state law. See Butner v. United States, 440 U.S. 48, 55, 59 L. Ed. 2d 136, 99 S. Ct. 914 (1979) ("Property rights are created and defined by state law."). The availability of bankruptcy, however, allows a party to create a hypothetical lien creditor, whether or not such a creditor exists. This fiction is the great advantage of bankruptcy as a method of debt extinguishment. The creation of such a creditor in order to avoid [**11] an equitable distribution award, however, perverts the intention of Congress in providing bankruptcy as an option for debtors. The intention of the debtor in such a case often is not debt extinguishment, but rather gaining a greater share of marital assets than one otherwise would be entitled to, by having them applied to outstanding debts.

Bankruptcy law, however, does not slavishly incorporate all state law without any thought to the consequences of that law as filtered through bankruptcy. As the Supreme Court said in Butner: "Unless some federal interest requires a different result, there is no reason why [property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." Id. (emphasis added). The Bankruptcy Court itself noted that "the question of what constitutes the property of a bankruptcy estate . . . is ultimately a federal question. " In re Roberge, 181 Bankr. at 857. Here, the federal interest is in not having bankruptcy used as a weapon in divorce proceedings. The Bankruptcy Code consistently tries to protect families and preserve the marital residence. See In re Hursa, 87 Bankr. 313, 315-16 [**12] (Bankr. D.N.J. 1988) (citing protection of alimony and child support rights and of the marital residence in bankruptcy). Consequently, policy concerns also mandate that vested equitable distribution rights not be divested by the filing of a bankruptcy petition.

D.

The principal case holding this way is In re White, 851 F.2d 170 (6th Cir. 1988). In that case, the Sixth Circuit held that it was not an abuse of discretion to lift the stay so that the relative interests in the property of the husband and wife could be determined. The court noted that lifting the stay "permit[s] the state court to exercise limited jurisdiction in the kind of matter that is traditionally exclusively reserved for state divorce courts." Id. at 173. As the court noted

> The Bankruptcy Code does not define a debtor's interest in property; the answer to that question must be made after reference to state law. With regard to the present pending state court divorce proceedings, the bankruptcy court has acted to permit the state court with expertise in such matters to decide questions that are an inherent part of the divorce process.

Id.

The opinion does not discuss the relevant state [**13] equitable distribution statute, in particular,

whether equitable distribution is subject to existing liens. n4 Rather, the court was concerned about the Bankruptcy Code being abused as a weapon in a divorce, as discussed above.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 The Ohio equitable distribution statute, it turns out, is silent on the matter. See Ohio Rev. Code Ann. § 3105.171.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Likewise, the Fourth Circuit has upheld the lifting of a stay to allow equitable distribution to proceed as not being an abuse of discretion. See In re Robbins, 964 F.2d 342 (4th Cir. 1992). In In re Robbins, the parties, as in the instant case, were a Florida couple who had divorced, with the husband eventually moving to North Carolina. The husband filed for divorce while the equitable distribution of the marital estate was still pending. The bankruptcy court lifted the stay, relying both on Fourth Circuit precedent that deference is owed to state courts in domestic affairs and on the efficiency considerations of having the equitable distribution proceeding [**14] conducted in a Florida state court. See id. at 344. The Fourth Circuit approved the bankruptcy [*371] court's consideration of these factors, especially the first. See id. at 344-45.

The Fourth Circuit then set forth the rubric for determining whether the automatic stay should be lifted in a particular case.

> The factors that courts consider in deciding whether to lift the automatic stay include (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in the bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

Id. at 345. Applying those factors to the case before it, the Fourth Circuit found that state courts have a special expertise in equitable distribution matters. It held that judicial economy would be increased by allowing the state court to exercise that same expertise. Finally, [**15] it found that lifting the stay would not harm other creditors under the facts presented. See id. at 345-46.

E.

The argument in III. B. and C., supra, and the cases cited in III. D., supra, while persuasive in most cases, do not mandate a per se rule. As the Sixth Circuit noted, if equitable distribution rights are never cut off by bankruptcy, it would be easy for spouses to collude in entering an equitable distribution award that transferred essentially all the marital assets to the non-debtor spouse free and clear, leaving the bankruptcy estate empty. See In re White, 851 F.2d at 174. Similarly, the Fourth Circuit has

formulated the three-factor test quoted above to determine the appropriateness of a stay in these circumstances. Those courts following the logic of In re Becker, see III. A., supra, have also emphasized that such cases must be decided on a case-by-case basis rather than by a per se rule, with the treatment of the debtor's family being a principal concern. See In re Becker, 136 Bankr. at 119-20.

Because of the fact-sensitive nature of these cases, as the Fourth Circuit noted in In re Robbins, the granting or denial of relief [**16] from the automatic stay is reviewed for abuse of discretion. See In re Robbins, 964 F.2d at 345. Even given the difficult legal issues involved, and the conflicting policy interests concerning the use of bankruptcy as a weapon in divorce versus collusion to frustrate creditors, it remains possible for a bankruptcy court to abuse its discretion. That is what has occurred in the instant case.

IV.

A.

The Bankruptcy Trustee argues that this case is an easy one. Because the petition for equitable distribution was not filed until after the bankruptcy commenced, he maintains that Ms. Roberge's right to equitable distribution had not vested. In fact, he goes so far as to suggest that she comes before this Court with unclean hands, because the filing of her equitable distribution suit violated the automatic stay. See Trustee's Brief at 9.

The fact that the equitable distribution proceeding had not commenced when the bankruptcy petition was filed is a factor to be considered, even under the logic of In re Robbins and In re White. Because the facts in this case are so egregious, however, the Court finds excusable delay on the part of Ms. Roberge. Mr. Roberge obtained an [**17] ex parte divorce in Virginia: there is no evidence in the record that Ms. Roberge ever knew that she was no longer married. Unable to force her to litigate the distribution of marital property in a Virginia court, he proceeds to file bankruptcy within two months of the divorce decree, compelling her to come to Virginia to litigate issues that absent his bankruptcy only a Florida state court would have jurisdiction over. Furthermore, he has claimed as his homestead property in Henrico County, Virginia, thus protecting his property from creditors, but sacrificing marital property that likely would go to Ms. Roberge under Florida equitable distribution law. Ms. Roberge, since 1991, has made all the mortgage payments and tax payments on the marital residence, the principal piece of marital [*372] property in question. A strong inference appears from the timing of her equitable distribution petition that she did not know what was going on until after the bankruptcy suit was commenced. At that point she acted without delay to protect her rights.

To allow Mr. Roberge to get away with such conduct would be the height of inequity; it is he who has unclean hands. Ms. Roberge cannot be expected [**18] to have knowledge of the ex parte Virginia divorce. To say that in order to preserve her right to equitable distribution she had to have filed an equitable distribution petition before the filing of the bankruptcy petition is the same as saying that in order to preserve her right to equitable distribution she had to file a divorce petition against her husband after he abandoned her. Under the decision of the Bankruptcy Court, if she fails to file for divorce upon abandonment, she leaves herself open to the possibility that her husband will get an ex parte divorce in another state without her knowledge and then file for bankruptcy, cutting off her right to equitable distribution. The public policy of every state in this country favors the preservation of marriage. See, e.g., Ryan v. Griffin, 199 Va. 891, 103 S.E.2d 240, 243 (Va. 1958) (public policy of state to foster and protect marriage). A rule which favors the filing of divorce petitions after abandonment is a result not to be encouraged by federal courts. Therefore, Ms. Roberge's failure to file her equitable distribution petition prior to the filing of the bankruptcy petition is excusable delay, and does not prejudice [**19]

the vesting of her right to equitable distribution.

B.

Turning to the three part test of In re Robbins, binding upon this Court, Ms. Roberge is entitled to relief from the stay. The issues in an equitable distribution proceeding only implicate state law. Furthermore, the Fourth Circuit adheres to "the salutary principle that domestic matters, which include equitable distributions, are primarily for the state courts to decide." In re Robbins, 964 F.2d at 344-45.

Secondly, modifying the stay promotes judicial economy. Ms. Roberge has homestead rights in the portion of the property she holds as a tenant in common. n5 See Fla. Const. art. X, § 4. Therefore, any attempt to collect a bankruptcy award out of the property will require a partition proceeding to be brought in a Florida state court. Thus, Florida state courts will be involved no matter what.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 The Bankruptcy Court in its opinion makes frequent mention of the fact that prior to the equitable distribution suit, each of the parties held a one-half undivided interest as tenants in common. See In re Roberge, 181 Bankr. at 857. It cites no support for, and this Court has found no Florida law in support of, the proposition that if a tenancy by the entireties is converted to a tenancy in common, the parties are presumed to have equal undivided shares. As Ms. Roberge points out in her brief, all the phrase "tenancy in common" denotes is a "[a] form of ownership whereby each tenant . . . holds an undivided interest in property" which does not terminate upon the tenant's prior death. Black's Law Dictionary 1465 (6th ed. 1990). It indicates nothing about what share of the proceeds each tenant is entitled to upon partition of the property.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**20]

Finally, Mr. Roberge's creditors are not prejudiced by allowing the equitable distribution action to proceed. The posture of the case shows that no danger of collusion between the Roberges to the detriment of Mr. Roberge's creditors exists. Furthermore, had the property issues been settled contemporaneously with the divorce, Ms. Roberge would have obtained her equitable distribution share then, and the property would not be available to pay Mr. Roberge's creditors. "A trustee in bankruptcy stands in the shoes of the bankrupt and succeeds only to the bankrupt's interest in property." Angeles Real Estate Co. v. Kerxton, 737 F.2d 416, 418 (4th Cir. 1984). The Bankruptcy Trustee therefore should not be allowed to profit by Mr. Roberge's inequitable actions in obtaining an ex parte divorce to free himself from the marriage without any property settlement, and then filing bankruptcy to use marital property that would go to his wife under equitable distribution to pay his creditors.

V.

For all the foregoing reasons, and under the test enunciated in In re Robbins, the Bankruptcy Court abused its discretion in not lifting the automatic stay so that the [*373] equitable distribution [**21] action could proceed. Therefore, the decision of that court is reversed, the automatic stay is lifted with respect to Ms. Roberge's equitable distribution proceeding in Florida, and the case is remanded for further proceedings consistent with this opinion.

Let the Clerk send a copy of this Memorandum Opinion and the accompanying Order to all counsel of

record.

DATE

SENIOR UNITED STATES DISTRICT JUDGE

**Document 1 of 1.**

2006 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

**APPEAL, DismPrej**

## U.S. Bankruptcy Court
## District of Delaware (Delaware)
## Bankruptcy Petition #: 04-12419-JKF
### Internal Use Only

*Assigned to:* Judith K. Fitzgerald
Chapter 13
Voluntary
Asset

*Date Filed:* 08/24/2004
*Date Dismissed:* 11/21/2006

### Debtor
**David J Buchanan, *BARRED FROM FILING UNTIL NOVEMBER 23, 2008***
34806 Hudson Road
Laurel, DE 19956
302-875-1362
SSN: 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

represented by **David J Buchanan**
PRO SE

### Trustee
**Michael B. Joseph - Chapter 13 Trustee**
824 Market Street
P.O. Box 1351
Wilmington, DE 19899-1351
302-656-0123

### U.S. Trustee
**United States Trustee**
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899-0035
302-573-6491

| Filing Date | # | Docket Text |
|---|---|---|
| 08/24/2004 | 1 | Chapter 13 Voluntary Petition. Receipt Number 71395, Amount Paid $50. Filed by David J Buchanan . (LCo, ) (Entered: 08/24/2004) |
| 08/24/2004 | | Flags Set-Reset (LCo, ) (Entered: 08/24/2004) |
| 08/24/2004 | | Receipt of First Installment Payment. Receipt Number 71395, Installment Amount $50.00 (LCo, ) (Entered: 08/24/2004) |
| 08/24/2004 | 2 | Application to Pay Filing Fee in Installments Filed by David J Buchanan.. (LCo, ) (Entered: 08/24/2004) |
| 08/24/2004 | 3 | Order Granting Application To Pay Filing Fees In Installments as set forthin the application (Related Doc # 2). Order Signed on 8/24/2004. Final Payment due 12/22/2004. (CLO, ) (Entered: 08/24/2004) |
| 08/25/2004 | 4 | **CURED**Notice Regarding Deficient Filings ~Must submit notice to consumer debtor with signature, statement of financial affairs & declaration signed by the debtor,schedule A Thru J, Summary of schedules & declaration signed by the |

| | | |
|---|---|---|
| | | debtor, chapter 13 plan & analysis due by 09/09/2004. (CLO, ) Modified on 9/20/2004 (BAM, ). (Entered: 08/25/2004) |
| 08/25/2004 | 📎5 | Meeting of Creditors 341(a) meeting to be held on 10/5/2004 at 02:30 PM at US District Court, 844 King St., Room 2112, Wilmington, Delaware. Proofs of Claims due by 1/3/2005. Government Proof of Claim due by 2/21/2005. Confirmation hearing to be held on 10/25/2004 at 02:00 PM at Alternate Meeting Site. (CLO, ) (Entered: 08/25/2004) |
| 08/26/2004 | 📎6 | BNC Certificate of Mailing. Service Date 08/26/2004. (Admin.) (Entered: 08/27/2004) |
| 08/27/2004 | 📎7 | BNC Certificate of Mailing - Meeting of Creditors. Service Date 08/27/2004. (Admin.) (Entered: 08/28/2004) |
| 08/27/2004 | 📎8 | BNC Certificate of Mailing. Service Date 08/27/2004. (Admin.) (Entered: 08/28/2004) |
| 09/09/2004 | 📎9 | Motion to Allow *Re Emergency Motion to Grant Premission of Ruling to the Family Court of the State of Delaware in Matters Pertaining Only to Health Insurance and the Continuation of Established Health Care Coverage Established Through a Lengthy Marriage to Military Member.* Filed by David J Buchanan.. (BAM, ) (Entered: 09/09/2004) |
| 09/09/2004 | 📎10 | Motion to Extend Time *for filing Schedule F* Filed by David J Buchanan.. (BAM, ) (Entered: 09/13/2004) |
| 09/09/2004 | 📎12 | Chapter 13 Plan *and Analysis* Filed by David J Buchanan (BAM, ) (Entered: 09/13/2004) |
| 09/09/2004 | 📎13 | Schedules A,B,C,D,E,G,H,I,J. Filed by David J Buchanan (BAM, ) (Entered: 09/13/2004) |
| 09/13/2004 | 📎11 | Order Granting Motion to Extend Time to File Schedules; - NO FURTHER CONTINUANCE SHALL BE GRANTED DUE 9/20/04 (BAM, ) (Entered: 09/13/2004) |
| 09/13/2004 | 📎14 | Notice of Service *Mailed extension to file Schedule F, Sofa, Summary of Schedules with declaration's signed to debtor* (related document(s)10 ) Filed by (BAM, ) (Entered: 09/13/2004) |
| 09/15/2004 | 📎15 | BNC Certificate of Mailing. (Related document(s)11 ) Service Date 09/15/2004. (Admin.) (Entered: 09/16/2004) |
| 09/16/2004 | 📎16 | Amended Schedules Receipt Number #71571, Fee Amount $26. Filed by David J Buchanan (BAM, ) (Entered: 09/17/2004) |
| 09/24/2004 | 📎 | Receipt of Second Installment Payment. Receipt Number 71628, Installment Amount $100.00 (NAL, ) (Entered: 09/24/2004) |
| 10/11/2004 | 📎17 | Minute Sheet 341 Meeting Held and Continued *until November hearing date.* (Joseph - Chapter 13 Trustee, Michael) (Entered: 10/11/2004) |
| | | |

| 10/18/2004 | ❶18 | Objection to Confirmation of Plan Filed by Delaware Division of Revenue (Drowos, Stuart) (Entered: 10/18/2004) |
|---|---|---|
| 10/21/2004 | ❶19 | Letter Sent To Kent County Sheriff Office Regarding Automatic Stay. Filed by David J Buchanan. (JMP, ) (Entered: 10/21/2004) |
| 10/25/2004 | ❶20 | Confirmation Hearing Continued.(related document(s)5 ) Hearing scheduled for 11/15/2004 at 02:00 PM at Alternate Meeting Site. (BAM, ) (Entered: 10/26/2004) |
| 10/25/2004 | ❶21 | Notice of Continued Confirmation Hearing (related document(s)20 ) Hearing scheduled for 11/15/2004 at 02:00 PM at Alternate Meeting Site. (BAM, ) (Entered: 10/26/2004) |
| 10/28/2004 | ❶22 | BNC Certificate of Mailing - Hearing. (Related document(s)21 ) Service Date 10/28/2004. (Admin.) (Entered: 10/29/2004) |
| 11/01/2004 | ❶23 | Notice of Appearance Filed by Washington Mutual Home Loans (Armstrong, Lara) (Entered: 11/01/2004) |
| 11/01/2004 | ❶24 | Response to *Objection by the State of Delaware Division of Revenue to Chapter 13 Plan* Filed by David J Buchanan (BAM, ) (Entered: 11/01/2004) |
| 11/08/2004 | ❶ | Receipt of Final Installment Payment. Receipt Number 72014, Installment Amount $44. (MNH, ) Modified on 11/10/2004 (MNH, ). (Entered: 11/08/2004) |
| 11/08/2004 | ❶25 | Objection to Confirmation of Plan (related document(s)12 ) Filed by Barbara H Buchanan (Tyler, James) (Entered: 11/08/2004) |
| 11/08/2004 | ❶ | Compliance with Deficiency Notice (BAM, ) (Entered: 11/10/2004) |
| 11/15/2004 | ❶26 | Hearing Continued on State Objection. (related document(s)25 ) Hearing scheduled for 12/21/2004 at 10:30 AM at Alternate Meeting Site. (BAM, ) (Entered: 11/17/2004) |
| 11/15/2004 | ❶27 | Notice of Continued Hearing (related document(s)25, 26 ) Hearing scheduled for 12/21/2004 at 10:30 AM at Alternate Meeting Site. (BAM, ) (Entered: 11/17/2004) |
| 11/17/2004 | ❶28 | Response to *of Debtor to Objection to Confirmation* Filed by David J Buchanan (BAM, ) (Entered: 11/17/2004) |
| 11/19/2004 | ❶29 | BNC Certificate of Mailing - Hearing. (Related document(s)27 ) Service Date 11/19/2004. (Admin.) (Entered: 11/20/2004) |
| 11/23/2004 | ❶30 | Motion for Relief from Stay. Fee Amount $150. Filed by Washington Mutual Home Loans. Hearing scheduled for 1/25/2005 at 09:00 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 1/14/2005.. (Attachments: # (1) Proposed Form of Order # 2 Certificate of Service # 3 Exhibit Deed of Trust and Note# 4 Exhibit Pay History) (Dignon, Neil) (Entered: 11/23/2004) |
| 11/23/2004 | 31 | Receipt of filing fee for Motion for Relief From Stay (B)(04-12419-JKF) [motion,mrlfsty] ( 150.00). Receipt Number 1783432, amount $ 150.00. (U.S. |

| | | Treasury) (Entered: 11/23/2004) |
|---|---|---|
| 11/23/2004 | ◑32 | Notice of Hearing (related document(s)30 ) Filed by Washington Mutual Home Loans Hearing scheduled for 1/25/2005 at 09:00 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 1/14/2005. (Dignon, Neil) (Entered: 11/23/2004) |
| 11/23/2004 | ◑33 | Notice of Hearing (related document(s)30 ) Filed by Washington Mutual Home Loans Hearing scheduled for 1/25/2005 at 09:00 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 1/14/2005. (Dignon, Neil) (Entered: 11/23/2004) |
| 12/03/2004 | ◑34 | Minute Sheet 341 Meeting Not Held and Continued *until January 2005 hearings*. (Joseph - Chapter 13 Trustee, Michael) (Entered: 12/03/2004) |
| 12/21/2004 | ◑40 | Hearing Held - This Plan Is Not Confirmable - Debtor Must File and Serve an Amended Plan Not Later Than April 1, 2005 - Set up For Confirmation on April 25, 2005 @ 2:00pm Before The Trustee - Before Then, The Debtor Must Either Take Some Action So That The State Court Can Adjudicate Property Division Issues or Commence Appropriate Actions in This Court To The Same Effect. (related document(s)25, 26, 27 ) (JSJ, ) (Entered: 01/13/2005) |
| 01/03/2005 | ◑35 | Notice of Appearance Filed by Wilmington Trust Company (Whalen Jr., Thomas) (Entered: 01/03/2005) |
| 01/04/2005 | ◑37 | Motion for Payroll Deduction Filed by David J Buchanan. (BAM, ) (Entered: 01/06/2005) |
| 01/05/2005 | ◑36 | Minute Sheet 341 Meeting Not Held and Continued *indefinitely*. (Joseph - Chapter 13 Trustee, Michael) (Entered: 01/05/2005) |
| 01/06/2005 | ◑38 | Order for Debtor's Employer to Pay Trustee (related document(s)37 ) Signed on 1/6/2005. (BAM, ) (Entered: 01/06/2005) |
| 01/07/2005 | ◑39 | Response to *Mortgage Electronic Registration Systems Inc. for Relief from Stay* Filed by David J Buchanan (BAM, ) (Entered: 01/11/2005) |
| 01/18/2005 | ◑41 | Notice of Confirmation Hearing (related document(s)[40] ). Hearing scheduled for 4/25/2005 at 02:00 PM at Alternate Meeting Site. (JSJ, ) (Entered: 01/18/2005) |
| 01/20/2005 | ◑42 | BNC Certificate of Mailing - Hearing. (Related document(s)41 ) Service Date 01/20/2005. (Admin.) (Entered: 01/21/2005) |
| 01/25/2005 | ◑43 | Hearing Held and Continued Unless Stipulation is Filed by 2/21/05 Hearing scheduled for 3/1/2005 at 09:00 AM at Alternate Meeting Site. (BAM, ) (Entered: 01/26/2005) |
| 01/26/2005 | ◑44 | Motion for Relief from Stay *Pertaining to Property Division*. Fee Amount $150. Filed by Courts Hearing scheduled for 3/1/2005 at 09:45 AM at Alternate Meeting Site. Objections due by 2/21/2005.. (BAM, ) (Entered: 01/28/2005) |
| 01/28/2005 | ◑45 | Notice of Service */Sent Notice for Unpaid Fee $150.00* (related document(s)44 ) Filed by Courts (BAM, ) (Entered: 01/28/2005) |

| 02/10/2005 | ❂46 | Motion for Relief from Stay *by Barbara H. Buchanan*. Fee Amount $150. Filed by Barbara H Buchanan Hearing scheduled for 3/1/2005 at 09:45 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 2/18/2005.. (Attachments: # 1 Notice of Motion for Relief from Automatic Stay# 2 Proposed Form of Order for Relief# 3 Certificate of Service) (Tyler, James) (Entered: 02/10/2005) |
|---|---|---|
| 02/10/2005 | 47 | Receipt of filing fee for Motion for Relief From Stay (B)(04-12419-JKF) [motion,mrlfsty] ( 150.00). Receipt Number 1894018, amount $ 150.00. (U.S. Treasury) (Entered: 02/10/2005) |
| 02/17/2005 | ❂48 | Response to *Answer Motion for Relief from Automatic Stay and Co-Debtor Stay* (related document(s)30 ) Filed by Barbara H Buchanan (Tyler, James) (Entered: 02/17/2005) |
| 02/17/2005 | ❂49 | Response to *Answer Motion for Relief From Automatic Stay* (related document(s) 44 ) Filed by Barbara H Buchanan (Tyler, James) (Entered: 02/17/2005) |
| 02/23/2005 | ❂50 | Response to *Answer to Motion of Barbara H Buchnan for Relief from Stay* Filed by David J Buchanan (BAM, ) (Entered: 02/23/2005) |
| 03/01/2005 | ❂51 | Amended Notice of Hearing *on Motion for Relief of Barbara H. Buchanan from Automatic Stay* (related document(s)46 ) Filed by Barbara H Buchanan Hearing scheduled for 3/22/2005 at 09:45 AM at U.S. Bankruptcy Court, District of Delaware, 824 Market Street, 3rd Floor, Wilmington, DE 19801. Objections due by 3/14/2005. (Attachments: # 1 Certificate of Service) (Tyler, James) (Entered: 03/01/2005) |
| 03/01/2005 | ❂52 | Hearing Held and Continued to March 22,2005 for Stipulation due March 14,2005. Hearing scheduled for 3/22/2005 at 09:00 AM at Alternate Meeting Site. (BAM, ) (Entered: 03/04/2005) |
| 03/15/2005 | ❂53 | Response to *Re Notice of Motion of Barbara H Buchanan for Relief from Stay* Filed by David J Buchanan (BAM, ) Additional attachment(s) added on 3/16/2005 (BAM, ). (Entered: 03/16/2005) |
| 04/01/2005 | ❂54 | Notice of Service *RE Request for Continued Hearing 4/25/05 9:00am.* Filed by David J Buchanan (BAM, ) (Entered: 04/04/2005) |
| 04/04/2005 | ❂55 | RE Notice of Continued Hearing Rescheduled from 3/22/05(related document(s Hearing scheduled for 4/25/2005 at 2:00 PM at Alternate Meeting Site. (related document(s)[52], Modified time on 4/7/2005 (BAM, ). (Entered: 04/04/2005) |
| 04/06/2005 | ❂56 | BNC Certificate of Mailing - Hearing. (related document(s)55 ) Service Date 04/06/2005. (Admin.) (Entered: 04/07/2005) |
| 04/07/2005 | ❂ | Corrective Entry Re Notice of Hearing Time is at 2:00pm 4/26/05 (related document(s)(55) Not 9:00 am. (BAM, ) (Entered: 04/07/2005) |
| 04/14/2005 | ❂57 | Motion to Dismiss Case Filed by Barbara H Buchanan Hearing scheduled for 4/25/2005 at 02:00 PM at U.S. Bankruptcy Court, District of Delaware, 824 Market Street, 3rd Floor, Wilmington, DE 19801. Objections due by 4/18/2005.. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Notice Of Motion to Dismiss# 4 Proposed Form of Order # 5 Certificate of Service) (Tyler, James) (Entered: |

| | | |
|---|---|---|
| | | 04/14/2005) |
| 04/14/2005 | ❖58 | Motion for Relief from Stay *Re-Notice*. Fee Amount $150. Filed by Barbara H Buchanan Hearing scheduled for 4/26/2005 at 09:15 AM at U.S. Bankruptcy Court, District of Delaware, 824 Market Street, 3rd Floor, Wilmington, DE 19801. Objections due by 4/18/2005.. (Attachments: # 1 Certificate of Service) (Tyler, James) (Entered: 04/14/2005) |
| 04/14/2005 | 59 | Receipt of filing fee for Motion for Relief From Stay (B)(04-12419-JKF) [motion,mrlfsty] ( 150.00). Receipt Number 2000198, amount $ 150.00. (U.S. Treasury) (Entered: 04/14/2005) |
| 04/15/2005 | | Notification to Filer Regarding Error, Wrong Hearing Times for 4/26/05 will amend (related document(s)58 ) (BAM, ) (Entered: 04/15/2005) |
| 04/15/2005 | ❖ | ENTERED IN ERROR Computer error.Notice of Dismissal on Barbara H Buchanan Motion to Dismiss Hearing scheduled for 5/16/05 @2:00pm. 824 Market Street, Wilmington DE 19801.(related document(s)57 ) (BAM, ) Modified on 4/15/2005 (BAM, ). (Entered: 04/15/2005) |
| 04/18/2005 | ❖60 | Objection to *the Repeated filing of Motion,Pleading by Co-Debtor through their Attorney* Filed by David J Buchanan (BAM, ) (Entered: 04/20/2005) |
| 04/25/2005 | ❖61 | Response to *Motion of Barbara H. Buchanan to Dismiss* (related document(s)57 ) Filed by David J Buchanan (Attachments: # 1 Certificate of Service) (JMP, ) Additional attachment(s) added on 4/26/2005 (BAM, ). (Entered: 04/25/2005) |
| 04/25/2005 | ❖62 | Confirmation Hearing Continued to Special Hearings. Hearing scheduled for 4/26/2005 at 10:30 AM at Alternate Meeting Site. (NAL, ) (Entered: 04/27/2005) |
| 04/26/2005 | ❖63 | Hearing Held - Certification of Counsel with Proposed Order Due on Both Motions by Both Attorneys that will Grant Relief From Stay to Family Court to Make the Property Division, but not to Effectuate any Distribution. This Court Retain Jurisdiction Over the Distribution of Any Property Division. By December 20, 2005 the Debtor Must File an Amended Plan that is Set for Hearing on January 30, 2005 at 2:00 p.m. The Motion to Dismiss Hearing scheduled for 1/31/2006 at 10:00 AM at US Bankruptcy Court, 824 Market St., Room 309, Wilmington, Delaware. (related document(s)58, 30, 57 ) (REB, ) Modified text on 4/28/2005 (BAM, ). (Entered: 04/27/2005) |
| 05/13/2005 | ❖64 | Certification of Counsel *and Order that complies with the Court's April 26, 2005 Ruling from the Bench* (related document(s)30 ) Filed by Washington Mutual Home Loans (Attachments: # 1 Proposed Form of Order # 2 Certificate of Service) (Dignon, Neil) (Entered: 05/13/2005) |
| 05/18/2005 | ❖65 | Order Granting Washington Mutual's Motion Relief From the Automatic Stay. (related document(s)30 ) Order Signed on 5/18/2005. (LCN, ) (Entered: 05/18/2005) |
| 05/20/2005 | ❖66 | BNC Notice of Order Granting Washington Mutual's Motion Relief From the Automatic Stay. (related document(s)65 ) (LCN, ) (Entered: 05/20/2005) |
| 05/22/2005 | ❖67 | BNC Certificate of Mailing. (related document(s)66 ) Service Date 05/22/2005. (Admin.) (Entered: 05/23/2005) |

| 05/24/2005 | ◐68 | Order For Relief From the Automatic Stay by Barbara H. Buchanan. (Related Doc # 46) Order Signed on 5/19/2005. (LCN, ) (Entered: 05/24/2005) |
| 05/24/2005 | ◐69 | BNC Notice of Order For Relief From the Automatic Stay by Barbara H. Buchanan. (related document(s)68 ) (LCN, ) (Entered: 05/24/2005) |
| 05/24/2005 | ~◐70 | Letter Regarding Family Court Matters Discussed at 4/26/2005 Hearing. Filed by David J Buchanan. (JMP, ) (Entered: 05/26/2005) |
| 05/26/2005 | | Notification to Filer Regarding Error ~ Telephoned Mr. Buchanan twice and left messages regarding blank consent order divesting title of co-debtor received on 5/24/05. Needs to be submitted under certification of counsel. (JMP, ) (Entered: 05/26/2005) |
| 05/26/2005 | ◐71 | BNC Certificate of Mailing. (related document(s)69 ) Service Date 05/26/2005. (Admin.) (Entered: 05/27/2005) |
| 06/07/2005 | ◐72 | Notice of Withdrawal *from Creditor Matrix* Filed by Peter B Jones. (BAM, ) Modified text on 6/7/2005 (BAM, ). (Entered: 06/07/2005) |
| 06/29/2005 | ◐73 | **WITHDRWAN ref #83*.Motion of Wilmington Trust Company for an Order Dismissing Debtor's Chapter 13 Petition, or Alternatively, for Relief from the Automatic Stay Pursuant to 11 U.S.C. Section 362(D). Fee Amount $150. Filed by Wilmington Trust Company Hearing scheduled for 8/30/2005 at 09:45 AM (check with court for location). Objections due by 8/22/2005.. (Attachments: # 1 Notice of Motion# 2 Proposed Form of Order # 3 Certificate of Service) (Whalen Jr., Thomas) Modified Text on 7/1/2005 (TK, ). Modified on 9/1/2005 (BAM, ). (Entered: 06/29/2005) |
| 06/29/2005 | 74 | Receipt of filing fee for Motion for Relief From Stay (B)(04-12419-JKF) [motion,mrlfsty] ( 150.00). Receipt Number 2118476, amount $ 150.00. (U.S. Treasury) (Entered: 06/29/2005) |
| 07/20/2005 | ◐75 | Motion For Sanctions Filed by David J Buchanan Hearing scheduled for 8/30/2005 at 08:45 AM at US Bankruptcy Court, 824 Market St., 5th Floor, Wilmington, DE. Objections due by 8/22/2005.. (BAM, ) (Entered: 07/22/2005) |
| 08/02/2005 | ◐76 | Notice of Hearing (Motion for Sancations) scheduled for 8/30/2005 at 09:45 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. (related document(s)75 ) (BAM, ) (Entered: 08/02/2005) |
| 08/02/2005 | ◐77 | Objection to *Motion For Sanctions* (related document(s)75 ) Filed by Whittington & Aulgur (Doughty, Kristi) (Entered: 08/02/2005) |
| 08/04/2005 | ◐78 | BNC Certificate of Mailing - Hearing. (related document(s)76 ) Service Date 08/04/2005. (Admin.) (Entered: 08/05/2005) |
| 08/18/2005 | ◐80 | Amended Schedule(s) I,J, Amended Summary of Schedules, Delaration Concerning Debtor's Schedules Filed by David J Buchanan (BAM, ) (Entered: 08/19/2005) |
| 08/19/2005 | ◐79 | Amended Plan *Chapter 13 Plan* Filed by David J Buchanan (BAM, ) (Entered: 08/19/2005) |

| 08/22/2005 | ⬤81 | Objection to *Motion of Wilmington Trust Company for an Order Dismissing Debtor's Chapter 13 Case.* Filed by David J Buchanan (BAM, ) (Entered: 08/22/2005) |
| 08/22/2005 | ⬤82 | Response to *Debtor's Motion Seeking Sanctions* (related document(s)75 ) Filed by Washington Mutual Home Loans (Attachments: # 1 Proposed Form of Order # 2 Certificate of Service) (Dignon, Neil) (Entered: 08/22/2005) |
| 08/29/2005 | ⬤83 | Notice of Withdrawal (related document(s)73 ) Filed by Wilmington Trust Company. (Attachments: # 1 Certificate of Service) (Whalen Jr., Thomas) (Entered: 08/29/2005) |
| 08/30/2005 | ⬤84 | Hearing Held - Order to Be Entered. (related document(s)73, 75 ) (REB, ) (Entered: 09/01/2005) |
| 09/06/2005 | ⬤85 | Order Regarding Payment of Funds Signed on 8/30/2005. (DKF, ) (Entered: 09/06/2005) |
| 09/06/2005 | ⬤86 | BNC Notice of Order Regarding Payment of Funds Signed on 8/30/2005. (related document(s)85 ) (DKF, ) (Entered: 09/06/2005) |
| 09/20/2005 | ⬤87 | Exparte Motion to Compel *Discovery* Filed by David J Buchanan. Hearing scheduled for 10/25/2005 at 09:45 AM at US Bankruptcy Court, 824 Market St., Wilmington, DE. Objections due by 10/18/2005. (BAM, ) Modified text on 9/20/2005 (BAM, ). (Entered: 09/20/2005) |
| 09/20/2005 | ⬤88 | Motion to Compel */Request for Discovery From Barbara H Buchanan* Filed by David J Buchanan. Hearing scheduled for 10/25/2005 at 09:45 AM at US Bankruptcy Court, 824 Market St., Wilmington, DE. Objections due by 10/18/2005. (BAM, ) (Entered: 09/20/2005) |
| 10/21/2005 | ⬤89 | Order Denying Motion To Compel. (Related Doc # 87) Order Signed on 10/21/2005. (LCN, ) (Entered: 10/21/2005) |
| 11/28/2005 | ⬤90 | Motion to Compel *For Examination Under Rule 2004* Filed by David J Buchanan Hearing scheduled for 1/31/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 1/23/2006.. (BAM, ) (Entered: 11/29/2005) |
| 11/28/2005 | ⬤91 | Motion to Compel *for Examination Under Rule 2004 with Concideration to Rule 2017* Filed by David J Buchanan Hearing scheduled for 1/31/2006 at 10:30 PM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 1/23/2006.. (BAM, ) (Entered: 11/29/2005) |
| 12/05/2005 | ⬤92 | Creditor's Notice of Default/Noncompliance (related document(s)30, 65 ) Filed by Washington Mutual Home Loans. (Dignon, Neil) (Entered: 12/05/2005) |
| 12/14/2005 | ⬤93 | Motion For Sanctions Filed by David J Buchanan Hearing scheduled for 1/31/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 5th Floor, Wilmington, DE. Objections due by 1/23/2006.. (BAM, ) (Entered: 12/14/2005) |
| 12/14/2005 | ⬤94 | Response to *Notice of Non-Compliance filed by Mortgage Electronic Registeration Systems* Filed by David J Buchanan (BAM, ) (Entered: 12/14/2005) |

| 01/30/2006 | ●95 | Confirmation Hearing Continued to Special Hearings. Hearing scheduled for 1/31/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. (NAL, ) (Entered: 02/01/2006) |
| --- | --- | --- |
| 01/31/2006 | ●96 | Hearing Held Order to be Entered Denying all Motions for Failure to Prosecute. Dignon may submit an Order on a Certificate of Counsel that Grants Relief from Stay due to Debtor Defaults in not Curing as Ordered (related document(s)91, 95, 90 ) (BAM, ) (Entered: 02/01/2006) |
| 02/01/2006 | ●97 | Supplemental Motion to Confirm Termination or Absence of Stay *for Clarification of Prior Order* Filed by Barbara H Buchanan. (Attachments: # 1 Exhibit A Order of 5/19/05 Bkcy Ct# 2 Exhibit B Order of 11/28/2005 Family Ct# 3 Notice of Motion# 4 Proposed Form of Order # 5 Certificate of Service) (Tyler, James) (Entered: 02/01/2006) |
| 02/08/2006 | ●98 | Reply *re Answer to Motion of Barbara H Buchanan for Clarification of Prior Order and Request for Sanctions* (related document(s)97 ) Filed by David J Buchanan (Attachments: # 1 Attachment order# 2 Exhibit A# 3 Certificate of Service) (BAM, ) Modified date filed on 2/9/2006 (BAM, ). (Entered: 02/09/2006) |
| 02/09/2006 | ●99 | Response to *Items #4,#5 of Supplemental Motion to Confirm Termination or Absence of Stay for Clarification of Prior Order* (related document(s)97 ) Filed by David J Buchanan (BAM, ) (Entered: 02/09/2006) |
| 02/16/2006 | ●100 | Certification of Counsel *Neil F. Dignon, Esquire* (related document(s)30 ) Filed by Washington Mutual Home Loans (Attachments: # 1 Proposed Form of Order # 2 Certificate of Service) (Dignon, Neil) (Entered: 02/16/2006) |
| 02/21/2006 | ●101 | Motion to Continue Hearing On *2/22/06 Due to Previous Obligation* (related document(s)91, 97, 93 ) Filed by David J Buchanan Hearing scheduled for 3/28/2006 at 09:45 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 3/20/2006.. (BAM, ) (Entered: 02/21/2006) |
| 03/01/2006 | ●102 | Notice of Hearing on Motion to Continue (related document(s)91, 97, 93 ) Hearing scheduled for 3/28/2006 at 09:45 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 3/20/2006. (related document(s)101 ) (BAM, ) Modified text on 3/2/2006 (BAM, ). Modified text on 4/17/2006 (BAM, ). (Entered: 03/01/2006) |
| 03/03/2006 | ●103 | BNC Certificate of Mailing - Hearing. (related document(s)102 ) Service Date 03/03/2006. (Admin.) (Entered: 03/04/2006) |
| 03/27/2006 | ●104 | Motion to Disallow Claims *# 5 Cavalry Portfolio Ser. LLC* Filed by David J Buchanan Hearing scheduled for 5/16/2006 at 09:45 AM at US Bankruptcy Court, 824 Market St., Wilmington, DE. Objections due by 5/8/2006.. (BAM, ) (Entered: 03/28/2006) |
| 03/27/2006 | ●115 | Letter Regarding Family Court Proceedings. Filed by David J Buchanan (BAM, ) (Entered: 04/13/2006) |
| 03/28/2006 | ●107 | Hearing Continued. Modified Order to be Entered denying the request for the 2004 exam , Motion to clarify the sale Motions are to be brought in this court with Notice to all creditors, Order to be entered when submitted on Certification of Counsel by Mr Tyler. Re the Motion for Sanctions. -debtor to supplement the Motion within a |

| | | |
|---|---|---|
| | | week, then response is due by 4/10/06 and it is contiuned . Hearing scheduled for 4/18/2006 at 10:30 PM at US Bankruptcy Court, 824 Market St., Wilmington, DE. related doc. #101,#93, #97. (BAM, ) Modified time on 3/31/2006 (BAM, ). (Entered: 03/30/2006) |
| 03/29/2006 | ❶105 | Hearing Scheduled on Motion to Disallow Claims # 5 Cavalry Portfolio Ser. LLC . Hearing scheduled for 5/16/2006 at 09:45 AM at US Bankruptcy Court, 824 Market St., Wilmington, DE. (BAM, ) (Entered: 03/29/2006) |
| 03/29/2006 | ❶106 | Notice of Hearing on Motion to Disallow Claims # 5 Cavalry Portfolio Ser. LLC Hearing scheduled for 5/16/2006 at 09:45 AM at US Bankruptcy Court, 824 Market St., Wilmington, DE. Objections due by 5/8/2006. (BAM, ) (Entered: 03/29/2006) |
| 03/31/2006 | ❶108 | RE Notice of Hearing scheduled for 4/18/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., Wilmington, DE. Objections due by 4/10/2006. (related document(s)107 ) (BAM, ) (Entered: 03/31/2006) |
| 03/31/2006 | ❶109 | Motion to Allow *Amended Plan* (related document(s)79 ) Filed by David J Buchanan Hearing scheduled for 4/18/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., Wilmington, DE. Objections due by 4/11/2006.. (BAM, ) (Entered: 03/31/2006) |
| 03/31/2006 | ❶110 | BNC Certificate of Mailing - Hearing. (related document(s)106 ) Service Date 03/31/2006. (Admin.) (Entered: 04/01/2006) |
| 04/01/2006 | ❶111 | BNC Certificate of Mailing - Hearing. (related document(s)107 ) Service Date 04/01/2006. (Admin.) (Entered: 04/02/2006) |
| 04/02/2006 | ❶112 | BNC Certificate of Mailing - Hearing. (related document(s)108 ) Service Date 04/02/2006. (Admin.) (Entered: 04/03/2006) |
| 04/11/2006 | ❶113 | Response to *Motion for Sanctions* (related document(s)93 ) Filed by Washington Mutual Home Loans (Attachments: # 1 Proposed Form of Order # 2 Certificate of Service) (Dignon, Neil) (Entered: 04/11/2006) |
| 04/12/2006 | ❶114 | Order Denying Motion for Examination Under Rule 2004. (Related Doc # 90) Order Signed on 4/11/2006. (LCN, ) (Entered: 04/12/2006) |
| 04/17/2006 | ❶116 | Motion to Show Cause *for Respondent to Show Cause Contempt and to Disallow Claim* Filed by David J Buchanan. (Attachments: # 1 Proposed Form of Order) (BAM, ) Terminated on 7/14/2006 (BAM, ). (Entered: 04/17/2006) |
| 04/18/2006 | ❶117 | Motion to Allow *Family Court Order on Property Division* (related document(s) 97 ) Filed by Barbara H Buchanan. (Attachments: # 1 Certificate of Service # 2 Attachment 4-4-2006 Family Court Order) (Tyler, James) (Entered: 04/18/2006) |
| 04/18/2006 | ❶119 | Hearing Continued. ORDER TO BE ENTERED-The Rule to Show Cause is to be treated as an objection to Claim and Set for Hearng on 5/15/06 OUTCOME Trustee's Calendar and Response is due by 5/8/06 with account history as a spread sheet and an affivavit that explains the Proof of Claims and the Spread sheet. Hearing scheduled for 5/15/2006 at 02:00 PM at US Bankruptcy Court, 824 Market St., Room 309, Wilmington, Delaware. (related document(s)108, 118, 109 ) (JAF, ) (Entered: 04/20/2006) |

| 04/18/2006 | 🌐121 | Hearing Held--ORDER TO BE ENTERED when submitted by Dignon-a Different Order to be submitted on a Certification of Counsel with Relief from Stay as Stated on record. Dignon can file fee schedule-to be scheduled when filed. (related document(s)108, 107, 109, 119 ) (JAF, ) (Entered: 04/20/2006) |
| --- | --- | --- |
| 04/19/2006 | 🌐118 | RE Notice of Hearing on Motion to Disallow Claim # 5 Cavalry Portfolio Ser. LLC. Hearing scheduled for 5/15/2006 at 02:00 PM at US Bankruptcy Court, 824 Market St., Room 309, Wilmington, Delaware. Objections due by 5/8/2006. (related document(s)104 ) (BAM, ) (Entered: 04/19/2006) |
| 04/20/2006 | 🌐120 | Order Regarding Rule to Show Cause. (related document(s)116 ) Order Signed on 4/18/2006. (LCN, ) (Entered: 04/20/2006) |
| 04/21/2006 | 🌐122 | BNC Certificate of Mailing - Hearing. (related document(s)118 ) Service Date 04/21/2006. (Admin.) (Entered: 04/22/2006) |
| 04/22/2006 | 🌐123 | BNC Certificate of Mailing - Hearing. (related document(s)119 ) Service Date 04/22/2006. (Admin.) (Entered: 04/23/2006) |
| 04/26/2006 | 🌐124 | Response to *Objection to Proof of Claim* (related document(s)119 ) Filed by Washington Mutual Home Loans (Dignon, Neil) (Entered: 04/26/2006) |
| 05/04/2006 | 🌐125 | Certification of Counsel *of Neil F. Dignon, Esquire* (related document(s)108, 119, 107, 109 ) Filed by Washington Mutual Home Loans (Attachments: # 1 Proposed Form of Order # 2 Certificate of Service) (Dignon, Neil) (Entered: 05/04/2006) |
| 05/05/2006 | | Deadlines terminated. (Related document3). (JSJ, ) (Entered: 05/05/2006) |
| 05/08/2006 | 🌐126 | Affidavit *of Neil F. Dignon, Esquire* (related document(s)119 ) Filed by Washington Mutual Home Loans (Attachments: # 1 Attachment Loan History# 2 Certificate of Service) (Dignon, Neil) (Entered: 05/08/2006) |
| 05/09/2006 | 🌐127 | Order Denying Debtor's Motion for Sanctions. (related document(s)108, 119, 93, 107, 109 ) Order Signed on 5/8/2006. (LCN, ) (Entered: 05/09/2006) |
| 05/09/2006 | 🌐128 | BNC Notice of Order Denying Debtor's Motion for Sanctions. (related document(s) 127 ) (LCN, ) (Entered: 05/09/2006) |
| 05/09/2006 | 🌐129 | Withdrawal of Claims: 5 *in the Amount of $5,863.25* Filed by Cavalry Portfolio Services, LLC (TK, ) (Entered: 05/09/2006) |
| 05/10/2006 | 🌐130 | Letter addressed to Mr Joseph inregards to payments. Filed by David J Buchanan (BAM, ) (Entered: 05/10/2006) |
| 05/11/2006 | 🌐131 | BNC Certificate of Mailing. (related document(s)128 ) Service Date 05/11/2006. (Admin.) (Entered: 05/12/2006) |
| 05/15/2006 | 🌐132 | Hearing Continued on Washington Mutuals Objection to Claim #6, Cavalry Portfolio Objection to Claim #5 is Withdrawn. Hearing scheduled for 6/20/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., Wilmington, DE. (related document(s)129, 92 ) (BAM, ) (Entered: 05/17/2006) |

| 05/19/2006 | 🌑133 | BNC Certificate of Mailing - Hearing. (related document(s)132 ) Service Date 05/19/2006. (Admin.) (Entered: 05/20/2006) |
|---|---|---|
| 05/31/2006 | 🌑134 | Request for Discovery by MERS. Filed by David J Buchanan . (BAM, ) (Entered: 06/01/2006) |
| 06/20/2006 | 🌑135 | Hearing Continued. - ORAL ORDER - CREDITOR TO PREPARE AN EXPLANATION OF THE TOTOAL BALANCE DUE PRE AND POSTPETITION THRU MAY 31 AND THE PREPETITION ARREARS TO BUCHANAN BY JULY 7 AND MERS TO FILE AMENDED PROOF OF CLAIM BY JULY 7 AND THE AMOUNTS AND ITEMIZATION OF POSTPETITION ATTORNEY FEES AND ALL IS CONTINUED TO 8/22 ALSO, DEBTOR TO START TO SEND HIS PAYMENTS ON THE MORTGAGE PROOF OF DELIVERY WITH A DATE SO THAT IF THE PROOF OF DELIVERY IS ACKNOWLEDGED ON OR BEFORE THE DUE DATE OF ANY MONTHLY MORTGAGE PAYMENT, THEN THAT PAYMENT IS DEEMED TIMELY RECEIVED BY MORTGAGEE REGARDLESS OF WHEN IT IS ENTERED ONTO THE COMPUTER SYSTEM AND NO LATE FEE WILL APPLY TO THAT PAYMENT. DEBTOR IS TO RETAIN ALL THE PROOFS OF DELIVERY FOR FUTURE. ALSO, THE PROPERTY INSPECTIONS ONLY ONCE A YEAR WILL BE ALLOWED CLAIMS V. THE DEBTOR PREPETITION AND THE ESTATE POSTPETITION PLUS FORECLOSURE INSPECTIONS. Hearing scheduled for 8/22/2006 at 11:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. (related document(s)132 ) (REB, ) Modified text on 7/19/2006 (BAM, ). (Entered: 06/21/2006) |
| 06/20/2006 | 🌑136 | Amended Objection to Claim(s) *#6 by Mortgage Electronic Systems* Filed by David J Buchanan Hearing scheduled for 8/22/2006 at 11:00 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 8/14/2006. (BAM, ) Modified text on 6/23/2006 (BAM, ). (Entered: 06/22/2006) |
| 06/22/2006 | 🌑137 | Notice of Hearing on Objection to Claim(s)#6. Hearing scheduled for 8/22/2006 at 11:00 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 8/14/2006. (related document(s)136 ) (BAM, ) (Entered: 06/22/2006) |
| 06/24/2006 | 🌑138 | BNC Certificate of Mailing - Hearing. (related document(s)137 ) Service Date 06/24/2006. (Admin.) (Entered: 06/25/2006) |
| 07/11/2006 | | Motions terminated. (related document(s)91, 44, 57, 88, 97, 73, 104, 75, 58, 101, 109 ) (BAM, ) (Entered: 07/11/2006) |
| 07/19/2006 | 🌑139 | Second Amended Plan Filed by David J Buchanan (BAM, ) (Entered: 07/19/2006) |
| 07/19/2006 | 🌑140 | Motion to Disallow Claims *and for Respondent to Show Case, Contempt.* Filed by David J Buchanan Hearing scheduled for 8/22/2006 at 11:00 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 8/15/2006.. (BAM, ) (Entered: 07/19/2006) |
| 07/19/2006 | 🌑141 | Exhibit(s)to Motion to Disallow Claim. (related document(s)140 ) Filed by David J Buchanan . (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit) (BAM, ) (Entered: 07/19/2006) |
| 07/25/2006 | | Letter to Mr Joseph Chapter 13 Trustee. Filed by David J Buchanan . (BAM, ) |

| | | |
|---|---|---|
| | 🔍<u>142</u> | (Entered: 07/26/2006) |
| 08/14/2006 | 🔍<u>143</u> | Response to *Debtor's Motion to Show Cause, for Contempt, and to Disallow Claim* (related document(s)<u>140</u> ) Filed by Barbara H Buchanan (Attachments: # <u>1</u> Exhibit A Bkcy Ct Order of 5/19/2005# <u>2</u> Proposed Form of Order # <u>3</u> Certificate of Service) (Tyler, James) (Entered: 08/14/2006) |
| 08/14/2006 | 🔍<u>144</u> | Objection to Confirmation of Amended Plan (related document(s)<u>139</u> ) Filed by Barbara H Buchanan (Attachments: # <u>1</u> Certificate of Service) (Tyler, James) (Entered: 08/14/2006) |
| 08/21/2006 | 🔍<u>145</u> | Motion to Approve *File Family Court Order - Attorneys Fees and Costs* Filed by Barbara H Buchanan. (Attachments: # <u>1</u> Exhibit Family Court Order July 12, 2006# <u>2</u> Certificate of Service) (Tyler, James) (Entered: 08/21/2006) |
| 08/21/2006 | 🔍<u>146</u> | Affidavit Re: Tax Liability. Filed by David J Buchanan . (BAM, ) (Entered: 08/22/2006) |
| 08/22/2006 | 🔍<u>147</u> | Response to *Barbara H. Buchanan's Objection to Confirmation. related docket <u>143</u>.* Filed by David J Buchanan (Attachments: # <u>1</u> Proposed Form of Order # <u>2</u> Exhibit # <u>3</u> Exhibit # <u>4</u> Exhibit # <u>5</u> Exhibit # <u>6</u> Exhibit) (BAM, ) (Entered: 08/22/2006) |
| 08/22/2006 | 🔍<u>148</u> | Hearing Continued. Washington Mutual is to provide Debtor with a payoff by Sept. 15, 2006 for at least Aug. 31, 2006 with a daily interest accrual thereafter and provide Debtor with a full account history by 9/15/06 as well. Debtor must file a motion to refinance by 11/3/06 and set for objection by 11/14/06 and put on the hearing calendar for 11/21/06 at 10:30 a.m. Buchanan is to get the USDOA form to Tyler and he is to return it to Debtor Signed by Mrs. Buchanan within 10 days there after for next year as wll as the signed form for this year. The Rule to Show Cause is continued to 11/21/06 at 10:30 a.m. to bwe sure the documents are signed and returned by Mrs. Buchanan to Debtor as ordered above. Confirmation will be addressed at the 11/21/06 status conference. Hearing scheduled for 11/21/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. (related document(s)<u>140</u> ) (REB, ) (Entered: 08/31/2006) |
| 09/01/2006 | 🔍<u>149</u> | Letter Regarding Order Entered By Family Court Awarding Attorney's Fees. Filed by David J Buchanan . (JMP, ) (Entered: 09/01/2006) |
| 09/02/2006 | 🔍<u>150</u> | BNC Certificate of Mailing - Hearing. (related document(s)<u>148</u> ) Service Date 09/02/2006. (Admin.) (Entered: 09/03/2006) |
| 09/07/2006 | 🔍<u>151</u> | Motion For Sanctions *for Violation of Automatic Stay.* Filed by David J Buchanan Hearing scheduled for 10/24/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 10/16/2006.. (Attachments: # <u>1</u> Notice # <u>2</u> Exhibit # <u>3</u> Exhibit # <u>4</u> Proposed Form of Order) (BAM, ) (Entered: 09/07/2006) |
| 09/14/2006 | 🔍<u>152</u> | Copy of Letter sent to Judge Henriksen. Filed by David J Buchanan . (BAM, ) (Entered: 09/14/2006) |
| 09/26/2006 | 🔍<u>153</u> | Notice of Hearing on Motion For Sanctions for Violation of Automatic Stay.. Hearing scheduled for 10/24/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 10/16/2006. (BAM, ) (Entered: 09/26/2006) |

| | | |
|---|---|---|
| 09/28/2006 | 🌐154 | BNC Certificate of Mailing - Hearing. (related document(s)153 ) Service Date 09/28/2006. (Admin.) (Entered: 09/29/2006) |
| 10/12/2006 | | Motions terminated. (related document(s)117, 140, 145 ) (BAM, ) (Entered: 10/12/2006) |
| 10/16/2006 | 🌐155 | Response to *Motion for Sanctions* (related document(s)151 ) Filed by Barbara H Buchanan (Attachments: # 1 Exhibit A USDA form 6/8/2006# 2 Proposed Form of Order # 3 Certificate of Service) (Tyler, James) (Entered: 10/16/2006) |
| 10/24/2006 | 🌐156 | Motion to Reinstate (related document(s)147, [135] ) Filed by David J Buchanan Hearing scheduled for 11/21/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 11/14/2006. (Attachments: # 1 Notice # 2 Proposed Form of Order) (BAM, ) Modified hearing time on 10/27/2006 (BAM, ). (Entered: 10/25/2006) |
| 10/27/2006 | 🌐157 | Notice of Hearing on Motion to Reinstate scheduled for 11/21/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 11/14/2006. (related document(s)156 ) (BAM, ) (Entered: 10/27/2006) |
| 10/27/2006 | 🌐158 | Order Denying Motion for Sanctions. (related document(s)151 ) Order Signed on 10/24/2006. (LCN, ) (Entered: 10/27/2006) |
| 10/27/2006 | 🌐159 | BNC Notice of Order Denying Motion for Sanctions. (related document(s)158 ) (LCN, ) (Entered: 10/27/2006) |
| 10/29/2006 | 🌐160 | BNC Certificate of Mailing. (related document(s)159 ) Service Date 10/29/2006. (Admin.) (Entered: 10/29/2006) |
| 10/29/2006 | 🌐161 | BNC Certificate of Mailing - Hearing. (related document(s)157 ) Service Date 10/29/2006. (Admin.) (Entered: 10/29/2006) |
| 11/01/2006 | 🌐162 | Motion to Sell Property Free and Clear of Liens Filed by Barbara H Buchanan Hearing scheduled for 11/21/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 11/14/2006. (Attachments: # 1 Notice of Motion, service list# 2 Proposed Form of Order) (Tyler, James) (Entered: 11/01/2006) |
| 11/15/2006 | 🌐163 | ENTERED IN ERROR Motion to Strike *Motion to Sell Real Estate. related docket #162.* Filed by David J Buchanan Hearing scheduled for 12/19/2006 at 09:45 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 12/11/2006.. (BAM, ) Modified on 11/17/2006 (BAM, ). (Entered: 11/17/2006) |
| 11/15/2006 | 🌐165 | Response to *Motion to Sell Property Free and Clear of Liens.* (related document(s) 162 ) Filed by David J Buchanan (BAM, ) (Entered: 11/17/2006) |
| 11/17/2006 | 🌐164 | Corrective Entry Motion to Strike. (related document(s)163 ). (BAM, ) (Entered: 11/17/2006) |
| 11/20/2006 | 🌐166 | Response to *David J. Buchanan's Answer and Motion to Strike Motion to Sell Real Estate* (related document(s)162, 165 ) Filed by Washington Mutual Home Loans |

|  |  | (Dignon, Neil) (Entered: 11/20/2006) |
|---|---|---|
| 11/21/2006 | 🔵167 | Hearing Held. MODIFIED ORDER TO BE ENTERED THAT GRANTS RELIEF FORM THE STAY AS TO BARBARA BUCHANAN, DISMISSES CASE WITH PREJUDICE WITH A BAR TO REFILING FOR 2 YEARS, AND LIFTS THE STAY OF THE RELIEF FROM STAY TO MERS. (related document(s)162, 140, 30, 65, [135], 147, 153, 148, 156, 163, 157 ) (REB, ) (Entered: 11/22/2006) |
| 11/27/2006 | 🔵168 | Motion to Reconsider Dismissal of Case Filed by David J Buchanan Hearing scheduled for 1/23/2007 at 08:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware.. (BAM, ) (Entered: 11/28/2006) |
| 11/30/2006 | 🔵169 | Motion to Reinstate *Chapter 13 Bankrptcy Case.* (related document(s)[167] ) Filed by David J Buchanan Hearing scheduled for 1/23/2007 at 08:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 1/16/2007.. (Attachments: # 1 Proposed Form of Order) (BAM, ) (Entered: 11/30/2006) |
| 11/30/2006 | 🔵170 | Notice of Hearing on Debtor's Motion to Reinstate Chapter 13 Case. Hearing scheduled for 1/23/2007 at 08:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 1/16/2007. (related document(s)[167] ) (BAM, ) (Entered: 11/30/2006) |
| 11/30/2006 | 🔵171 | Motion to Allow *Confirmation of Bankruptcy.* (related document(s)168 ) Filed by David J Buchanan. (BAM, ) (Entered: 11/30/2006) |
| 11/30/2006 | 🔵172 | Amended Response to *Motion to Sell Real Estate.* (related document(s)162, 163 ) Filed by David J Buchanan (Attachments: # 1 Proposed Form of Order) (BAM, ) (Entered: 11/30/2006) |
| 11/30/2006 | 🔵173 | Notice of Hearing on Motion to Reconsider Dismissal. Hearing scheduled for 1/23/2007 at 08:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 1/16/2007. (related document(s)168 ) (BAM, ) (Entered: 11/30/2006) |
| 12/01/2006 | 🔵174 | Order Regarding Motion for Sale of Real Estate. (related document(s)162 ) Order Signed on 12/1/2006. (LCN, ) (Entered: 12/01/2006) |
| 12/01/2006 | 🔵175 | BNC Notice of Order Regarding Motion for Sale of Real Estate. (related document (s)174 ) (LCN, ) (Entered: 12/01/2006) |
| 12/02/2006 | 🔵176 | BNC Certificate of Mailing - Hearing. (related document(s)170 ) Service Date 12/02/2006. (Admin.) (Entered: 12/03/2006) |
| 12/02/2006 | 🔵177 | BNC Certificate of Mailing - Hearing. (related document(s)173 ) Service Date 12/02/2006. (Admin.) (Entered: 12/03/2006) |
| 12/03/2006 | 🔵178 | BNC Certificate of Mailing. (related document(s)175 ) Service Date 12/03/2006. (Admin.) (Entered: 12/04/2006) |
| 12/12/2006 | 🔵179 | Motion to Extend Time to Appeal Under Rule 8002(c) . *related docket #162, 174.* Filed by David J Buchanan. (BAM, ) Modified text on 12/13/2006 (BAM, ). (Entered: 12/13/2006) |

| 12/13/2006 | ❷180 | Emergency Motion to Extend Time to Appeal Under Rule 8002(c) . *related docket #179 amended*. Filed by David J Buchanan. (BAM, ) (Entered: 12/13/2006) |
|---|---|---|
| 12/13/2006 | ❷181 | Notice of Appeal (No. 06-82) . Receipt Number 75839, Fee Amount $255. (related document(s)174 ) Filed by David J Buchanan. Appellant Designation due by 12/27/2006. (BAM, ) Modified added appeal No. on 12/14/2006 (BAM, ). (Entered: 12/13/2006) |
| 12/13/2006 | ❷182 | BNC Notice of Appeal. (related document(s)181, 174 ) (BAM, ) (Entered: 12/13/2006) |
| 12/15/2006 | ❷183 | BNC Certificate of Mailing. (related document(s)182 ) Service Date 12/15/2006. (Admin.) (Entered: 12/16/2006) |
| 12/19/2006 | ❷184 | Order Denying Motion for New Trial and to Extend Time to Appeal ) (Related Doc # 179), Denying Emergency Motion for New Trial and to Extend Time to Appeal ) (Related Doc # 180) Order Signed on 12/19/2006. (Baker, Ramona) (Entered: 12/19/2006) |
| 12/19/2006 | ❷186 | Motion to Strike *Motion to Sell Real Estate*. (related document(s)162, 166, 172, 165 ) Filed by David J Buchanan Hearing scheduled for 1/23/2007 at 08:30 PM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 1/16/2007.. (BAM, ) (Entered: 12/20/2006) |
| 12/19/2006 | ❷188 | Appellant Designation of Items For Inclusion in Record On Appeal *(BAP #06-82)* (related document(s)181 ) Filed by David J Buchanan. (Attachments: # 1 Attachment designations# 2 Exhibit 1# 3 Exhibit 2# 4 Exhibit 3# 5 Exhibit 4# 6 Exhibit 5# 7 Exhibit 6# 8 Exhibit 8# 9 Exhibit 9# 10 Exhibit 10) Exhibit #7(BAM, ) 12/20/06 (Entered: 12/20/2006) |
| 12/20/2006 | ❷185 | BNC Notice of Order Denying Motion for New Trial and to Extend Time to Appeal ) (Related Doc # 179), Denying Emergency Motion for New Trial and to Extend Time to Appeal ) (Related Doc # 180) Order Signed on 12/19/2006. (related document(s)184 ) (BAM, ) (Entered: 12/20/2006) |
| 12/20/2006 | ❷187 | ENTERED IN ERROR Notice of Hearing on Motion to Strike Motion to Sell Real Estate. Hearing scheduled for 1/23/2007 at 08:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 1/16/2007. (related document(s)186 ) (BAM, ) Modified on 1/17/2007 (BAM, ). (Entered: 12/20/2006) |
| 12/22/2006 | ❷189 | BNC Certificate of Mailing. (related document(s)185 ) Service Date 12/22/2006. (Admin.) (Entered: 12/23/2006) |
| 12/22/2006 | ❷190 | BNC Certificate of Mailing - Hearing. (related document(s)187 ) Service Date 12/22/2006. (Admin.) (Entered: 12/23/2006) |
| 12/29/2006 |  | Internal Notation: Sent notice of hearing c/o debtor by US Mail . (related document (s)186 ) (BAM, ) Modified on 1/4/2007 (BAM, ). (Entered: 12/29/2006) |
| 01/11/2007 | ❷191 | Notice of Dismissal (related document(s)[167] ) (BAM, ) (Entered: 01/11/2007) |
| 01/13/2007 | ❷192 | BNC Certificate of Mailing - Notice of Dismissal. (related document(s)191 ) |

| | | |
|---|---|---|
| | | Service Date 01/13/2007. (Admin.) (Entered: 01/14/2007) |
| 01/16/2007 | 🌐193 | Response to *Debtor's Answer and Motion to Strike* (related document(s)186 ) Filed by Barbara H Buchanan (Attachments: # 1 Proposed Form of Order # 2 Certificate of Service) (Tyler, James) (Entered: 01/16/2007) |
| 01/17/2007 | 🌐194 | BNC Notice of Of Clerical Error. Hearing Inadvertently Noticed for 1/23/07 WILL NOT BE HELD. (related document(s){187,181, 174 ) (BAM, ) (Entered: 01/17/2007) |
| 01/17/2007 | 🌐195 | Corrective Entry. Notice of Clerical Error. (related document(s)187 ) (BAM, ) (Entered: 01/17/2007) |
| 01/18/2007 | | Internal Notation: Sent copies of Clerical Error thru BNC and US mail to Debtor, Ms Buchanan and Her Attorney J Tyler. (related document(s)194 ) (BAM, ) (Entered: 01/18/2007) |
| 01/18/2007 | 🌐197 | Transmittal of Record on Appeal #06-82 to District Court #07-34. (related document(s)181, 188 ) (BAM, ) (Entered: 01/22/2007) |
| 01/19/2007 | 🌐196 | BNC Certificate of Mailing. (related document(s)194 ) Service Date 01/19/2007. (Admin.) (Entered: 01/20/2007) |
| 01/23/2007 | 🌐198 | Mail Returned to the Court: Documents (related document(s)181, 174 ) addressed to Barbara A. Buchanan, 3434B Lackland Way, Bolling, AFB, DC 20032-7203 wwere returned to the court due to no such number. Counsel is required to forward document to the appropriate addressee, file a certificate of service and change of address with the court. (JRH, ) (Entered: 01/23/2007) |
| 01/24/2007 | 🌐199 | Request for Transcript re: Appeal *#06-82, District Court cv #07-34. related docket #181.* Filed by David J Buchanan. (BAM, ) (Entered: 01/24/2007) |
| 01/31/2007 | 🌐200 | Notice of Docketing Appeal ABP#06-82 in District Court civil action #[07-34]. (related document(s)181 ) (BAM, ) Modified added appeal no. on 3/22/2007 (BAM, ). (Entered: 01/31/2007) |
| 03/30/2007 | 🌐201 | Motion to Extend Time *to file Appellant' Brief. (District Court 07-34 SLR)* (related document(s)200 ) Filed by David J Buchanan. (BAM, ) (Entered: 04/02/2007) |