DAVID   BUCHANAN
34806  HUDSON  RD.
LAUREL, DE 19956

April 10, 2007

Clerk of the U.S. District Court
U.S. District Court, District of Delaware
844 North King Street
Wilmington, DE 19801-3570

F I L E D

APR 1 1 2.07

U.S. DISTRICT COURT
... OF DELAWARE

Ref:    Bankruptcy Case No. 04-12419-JKF
        U.S. District Case No. 07-34-SLR

Dear Clerk;

        Enclosed is a transcript to be included as a supporting document with the
Appellant's Brief Case No. 07-34-SLR, filed and docketed on April 2, 2007.  A copy has
been sent to opposing counsel.

                                        David J. Buchanan, Appellant
                                        34806 Hudson Road
                                        Laurel, DE 19956

CC: James B. Tyler, III, Esquire

Elaine M. Ryan
2801 Faulkland Road
Wilmington, DE 19808
(302-683-0221)

INVOICE

April 5, 2007

TO:    Mr. David J. Buchanan
       34806 Hudson Road
       Laurel, DE 19956
       302-875-1362

RE:    In Re: Buchanan
       04-12419(JKF)

Hearing held 10/24/06 - 20 pages
Original Transcript (1 copy filed with the U.S. Bankruptcy Court) @ $3.30 per page
(ordinary) ...................................................................................................................... $66.00

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .    Chapter 13
                                    .
DAVID BUCHANAN, *pro se*,           .    Case No. 04-12419(JKF)
                                    .    Oct. 24, 2006 (10:57 a.m.)
          Debtor.                   .    (Wilmington)

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

1        THE COURT: David Buchanan, 04-12419.  This is the

2   debtor's request for sanctions.

3        MR. BUCHANAN: David Buchanan.  Good morning, Your

4   Honor.

5        THE COURT: Good morning.

6        MR. BUCHANAN: *Pro se.*

7        MR. TYLER: James B. Tyler, III, for Barbara

8   Buchanan.

9        THE COURT: Mr. Buchanan, I have read your

10   documents, and I have read the response.  I continue to tell

11   you that I cannot interfere with the state court orders.  The

12   orders that the state court entered were not in violation of

13   the automatic stay. I granted relief from stay specifically

14   so that the state court could address the issues that you and

15   your wife have been each other with respect to who owns what,

16   who's going to get what on the equitable distribution.  I

17   didn't need to do it with respect to the custody, but to the

18   extent that there is some component of a payment that needs

19   to be made either by your former wife or yourself with

20   respect to your children, those payments as well are subject

21   to the Court's order.  So there is no relief – There is no

22   violation of the automatic stay.  Mrs. Buchanan is not

23   compelled to file a proof of claim in this case.  She does

24   not have to.  She can't be paid through the bankruptcy estate

25   if she doesn't file a proof of claim, but she doesn't have to

1  file one.  Not filing one, within whatever time frame is

2  appropriate simply means that she's going to have a claim

3  that if in fact you get through this case and get a discharge

4  won't be paid because it will be discharged.  But that's up

5  to her to decide whether she wants to file and try to get

6  some payments or whether she's not going to file a proof of

7  claim and not demand any payments.  The consequence of not

8  filing it is that it's an unsecured claim.  It won't be paid

9  once this case is over.  So, that's her decision.

10      MR. BUCHANAN: Your Honor, I understand that.  The

11  violation of bankruptcy stay occurred before you gave relief

12  of stay in proceedings in Family Court for emergency motions

13  being filed to list and sell a house on several occasions.

14      THE COURT: Mr. Buchanan, I've addressed all of

15  those.

16      MR. BUCHANAN: Okay, I understand that.

17      THE COURT: I've given you, in an effort to try to

18  refinance.  That's the reason that I demanded that the state

19  court could enter whatever it chose as appropriate, but the

20  sale, if there was going to be one, had to be conducted here

21  in this bankruptcy case.  I was protecting your right to

22  refinance or to get the best sales price that you could get.

23  I also, I think at some point, said that the state court

24  appointed broker/receiver - I'm not sure of the exact

25  description, the name, I'm sorry, could go forward so that

4

1  somebody could list this property if you can't get it
2  refinanced, but I've given you time to accomplish that.  I
3  don't think that time is up yet.  I extended it once.

4  MR. BUCHANAN: No, ma'am, you're not.  We're
5  supposed to have a hearing at the end of - on the November
6  docket.  The issue that surrounds this is, because you
7  offered the Family Court permission to go forward, really the
8  stay to go forward, Mrs. Buchanan did not follow directions
9  of the Family Court there either, and its issue - brings back
10  the issue to this Court because she failed to vest any value,
11  she failed to do anything there either, in their 12(b)(6)
12  there and here according - and brought into action under
13  Bankruptcy Code 7012.  She's failed to vest, so she does lose
14  all claim, and because -

15  THE COURT: No, Mr. Buchanan, it doesn't work that
16  way.  To the extent that your former wife has violated some
17  state procedural issue, that's an issue you've got to take up
18  with the state court.  Now, the state court heard your
19  complaints about her Rule 16 statement that she had to file.
20  The court addressed that issue.  That's not something I have
21  jurisdiction over.  With respect to her rights in this
22  bankruptcy, until the state court determined what her rights
23  were, she doesn't know what those rights are in this
24  bankruptcy and neither do you.  There is now a determination,
25  and if she's going to file a proof of claim, she has to do

5

1     it.  If she's not going to file a proof of claim and you get

2     a discharge, your debt to her for her attorney's fees and

3     everything else is going to be discharged, and she won't get

4     paid.  That's her choice to make.

5          MR. BUCHANAN: I believe I also - while we're on the

6     subject of attorney fees, Mr. Tyler filed for Mrs. Buchanan,

7     I believe that it was Docket No. 145 for attorney fees.  He

8     did not timely file that within the 30 days required for the

9     final order of the Family Court, so those should be

10    disapproved from the bankruptcy entirely.  Now that $37,000

11    not only interferes with my exemption with 523, but - because

12    I am living in this house, but it also goes beyond my

13    abilities to pay on this bankruptcy if they add $37,000 to

14    the case.  It's just way beyond comprehension how a simple

15    divorce costs $37,000, and that's only part of it.  And then

16    on those attorney fees, there has not - they've been avoiding

17    disclosure and on Docket 90, I filed with this Court, and the

18    Court, I believe, has jurisdiction for an examination of the

19    attorneys receiving money that are supposedly protected under

20    the bankruptcy stay, not only bankruptcy stay, but also under

21    stay of Family Court matters.  So the funds that she's paid

22    these attorneys in the amounts I can't find anything hard

23    proof of over $30,000, but I know there's tens of thousands

24    of dollars that she's paid these attorneys that should be

25    considered now in marital property, but once I filed for

1 | bankruptcy are property of the estate.

2 | THE COURT: No, Mr. Buchanan, we've addressed this

3 | issue before too.  Mr. Tyler explained at the last hearing

4 | that he doesn't have records of attorney's fees that are paid

5 | to anybody but him.  He is not in charge of who your former

6 | wife pays to other counsel.  He doesn't have that

7 | information.  If there is some information that you need from

8 | the other attorneys as to how much was paid, you need to get

9 | it from those attorneys, but to the extent that she is not

10 | using marital property, i.e., bankruptcy property to make

11 | those payments, if she's getting money from her family or

12 | taking it from her own employment, she has the right to make

13 | those payments.  She is not jeopardizing the bankruptcy

14 | estate in that respect.

15 | MR. BUCHANAN: I have evidence that she's withdrawn

16 | money, $17,600 of funds that were considered marital property

17 | and disposed of them by the way of attorneys.

18 | THE COURT: Isn't that part of what the state court

19 | already addressed?

20 | MR. BUCHANAN: The state court would not address it.

21 | THE COURT: I'm sorry, I thought there was –

22 | MR. BUCHANAN: They're undeclared money.  Under

23 | 16©), that's why I put it in there, if you reference it, she

24 | declares that she has $300.  The state court would not

25 | address it.  The state court would not enforce two subpoenas

1    on the matter, and I've run up a dead-end here trying to get

2    these people to court to testify how much money they have put

3    in, and that's why I asked this Court under Rule 2004 to get

4    these attorneys to state -

5               THE COURT: I can't -

6               MR. BUCHANAN:  - what they have -

7               THE COURT: I can't do that.

8               MR. BUCHANAN:  - but she can.

9               THE COURT: She -

10              MR. TYLER: Your Honor, on April 12, at Docket No.

11   114, you denied Mr. Buchanan's motion for the same 2004

12   examination found at Docket No. 90, so, we keep revisiting

13   these same issues over and over again, and -

14              MR. BUCHANAN: I can't give anymore, Your Honor.

15              MR. TYLER: I've never we gotten to a confirmation

16   and I'm not sure where this is headed.

17              THE COURT: I don't have jurisdiction over these

18   2004 exams, Mr. Buchanan, and I really do not want to keep

19   going back revisiting the same matters.  I can't seem to get

20   you to understand that you are in two courts and two courts

21   have jurisdiction over two different things.  You can't bring

22   matters here that are subject to the jurisdiction of the

23   Family Court, and these issues that you're raising about the

24   source of payments for the attorney's fees are things that

25   that state court has to address.  At this point, you've been

1 | in bankruptcy for quite some time -

2 | MR. BUCHANAN: Two years.

3 | THE COURT: - since 2004. At this point your

4 | former wife, unless there is some bank account that she has

5 | current access to that is property of this estate can't

6 | possibly be using your funds to make these payments. It

7 | can't happen. You've got all your assets tied up here. You

8 | need to concentrate on either getting this refinance done or

9 | realize that the property is going to be sold, Mr. Buchanan.

10 | MR. BUCHANAN: The refinance, it's very hard with

11 | the way the court order is right now to determine how much

12 | money I need to borrow. The banks do not want to spend money

13 | on refinance appraisals unless they know how much money is

14 | going to be borrowed.

15 | THE COURT: Well, they know how much they're owed.

16 | So if there are - and there are ways that you can request the

17 | banks to give you payoff figures so that you know what

18 | they're owed, and therefore, you know how much you have to

19 | borrow. That information is solely within the jurisdiction

20 | of you, your former wife, if she's still obligated on the

21 | loans, and the banks who are owed. So you need to make the

22 | appropriate requests and get this moving. Mr. Buchanan, I'm

23 | not going to continue this again. Now, you've been -

24 | MR. BUCHANAN: I've asked for payoff figures from

25 | MERS, and I intend to file a motion for reinstatement of the

1  stay today because they have not published anything.  I sent
2  you a letter on the 21st of September.  They were supposed to
3  respond by the 15th of September.  They were also supposed to
4  provide me with an amended claim on the 7th of July of '05,
5  and nothing has been done to determine how much money is owed
6  to me.  Now last month I had a conversation with Mr. Dignon.
7  I know he's not here to defend himself, but in that
8  conversation he promised to give me a breakdown of a figure
9  that is reminiscent of the last two cases that come up here,
10 they're placing fees on these accounts, they change the
11 amount from, I think, 92,000 to like 98- or 96,000 without
12 any justification for it, and when I asked for justification
13 for it, the attorney promises me justification for it, and it
14 hasn't come forth yet.  So that will be filed, and I guess it
15 will be heard next month.  I would like - whatever's
16 frustrating my confirmation of my plan, I understand that I
17 can't get a discharge until it's confirmed, but for the other
18 party not filing a claim, they can't - this party, my wife's
19 party, as far as I can understand the rules, cannot object to
20 confirmation because they have not made a claim.  They lose
21 that right, if I'm not mistaken.

22         THE COURT: They have no ability to object to
23 confirmation if your plan is not going to treat their claim
24 and they're not filing proofs of claim, but there is a proof
25 of claim of record right now at least for the attorney's fees

1    if not for anything else.  So, they are creditors right now

2    who can object if your plan can't encompass that payment.

3    The reality is, unless you refinance, if this claim is a

4    priority claim and it has to be paid in bankruptcy, if it is,

5    then you're going to have to have enough money through either

6    the refinance or your ongoing income to make that claim and

7    pay it in full through the bankruptcy.  That's what the law

8    requires, and when they point that out, they're correct.

9    That is what the law requires.  To the extent that it's a

10   priority claim, it has to be paid.  I'm not sure that the

11   whole $37,000 is a priority claim.  I don't know.

12          MR. BUCHANAN: To my understanding, the lawyers, if

13   they foresee - foresaw me having a claim for the Bankruptcy

14   Court, had foresaw, had placed any claim against the estate

15   in the Bankruptcy Court and this dates back two years, they

16   should have been able to put in a pending claim at that time,

17   and now because the way this ruling is drafted, it does not

18   support - it does not entail any support issues -

19          THE COURT: Mr. Dignon, could you stay, please.

20          MR. BUCHANAN: I just had a claim.  You were absent

21   for a minute, if you don't mind.  These claims do not - This

22   court order was not issued encumbering on any support issues.

23   So, therefore, it should be discharge-able.  The attorneys

24   did not foresee and file a pending claim that they didn't

25   know about within the time period, and they had not done so

1    until the late period had expired, I believe, I don't know,

2    it's 3002 of the rules, gives them 30 days from the time that

3    the court issues an order.  They put it in, I think it's, I

4    don't know almost 40 days late.

5              THE COURT: Okay, let me take a look.  I'm not

6    exactly sure what the 30 -

7              MR. BUCHANAN: I referenced that in my claim here,

8    Your Honor.

9              THE COURT: Yes, you did, but I don't think I

10   brought the papers with me, but I did see it, and -

11             MR. BUCHANAN: Okay.

12             THE COURT: Okay.  All this is saying is that in the

13   Chapter 13, a proof of claim has to be filed within 90 days

14   after the date that's first set for the meeting of creditors,

15   but of course, in this instance, the claim wasn't known at

16   that time because even relief from stay hadn't even been

17   given then, and then it says that an unsecured claim that

18   arises in favor of an entity or becomes allowable as a result

19   of a judgment can file it within 30 days after the judgment

20   becomes final.  The court order is still subject to appeal,

21   and so it's not a final order until the appeal period runs

22   under this scenario.  So, I think the proof of claim is

23   timely.

24             MR. BUCHANAN: Which court order is not subject to

25   appeal?

12

1        THE COURT: The state court order that awarded the

2    attorney's fees is subject to an appeal.

3        MR. BUCHANAN: Appeals process is over, Your Honor.

4    I've already done it.

5        THE COURT: You filed an appeal.

6        MR. BUCHANAN: Filed an appeal -

7        THE COURT: Then it's not even final -

8        MR. BUCHANAN: And they dismissed it.

9        THE COURT: Okay, so it's dismissed.  The 30 days to

10   file the proof of claims runs from the day that the order was

11   entered that dismissed the appeal.  That's when the claim

12   became final, and so, I believe, that the proof of claim is

13   timely filed.  Okay, Mr. Tyler -

14        MR. TYLER: Yes, Your Honor.

15        THE COURT:  - your proof of claim; what's it for?

16        MR. TYLER: The two Family Court orders, which are,

17   an equitable division of the real property of husband and

18   wife and the order for their sale and attorney's fees accrued

19   on all of those Family Court proceedings -

20        THE COURT: Okay.

21        MR. TYLER:  - that were the subject of the second

22   order that we were just talking about.

23        THE COURT: All right, I'm sorry.  When I asked what

24   it was for, is it filed as an unsecured claim or a priority

25   claim?  Your attorney fee request.

13

1               MR. TYLER: The -

2               MR. BUCHANAN: It's not -

3               MR. TYLER:  We simply filed the court order so -

4               THE COURT: Oh, you haven't filed a formal proof of

5       claim.

6               MR. TYLER: We haven't put a proof of claim form on

7       top of it.

8               MR. BUCHANAN: So, it's not properly filed, Your

9       Honor.

10              THE COURT: No, you're going to have to file an

11      actual proof of claim form, I think.

12              MR. BUCHANAN: And 30 days is up.

13              THE COURT: Mr. Buchanan, 30 days is up.  They're

14      going to file a proof of claim form -

15              MR. BUCHANAN: Okay.

16              THE COURT: They filed the order.  We need to get

17      this resolved one way or another.  I think -

18              MR. TYLER: It's specified if it's priority.

19              THE COURT: Well, I think the issue is, it probably

20      isn't.  If it's not affiliated with obtaining the support

21      order then it isn't going to be a priority in a Chapter 13.

22      It will just be a general unsecured claim that follows the

23      equitable distribution.  So I think you should get it filed.

24      At this point, I don't know that this plan is going to

25      provide any distribution for unsecured creditors anyway, so,

1   I think we should just get it filed, get it of record so that
2   Mr. Buchanan can take a look at it.  If he has some objection
3   to the claim, other than the fact that it's based on a court
4   order, you know, because it is based on a court order, this
5   Court is not going to go behind the state court to determine
6   what the attorney's fees were that were allowable.  Okay, Mr.
7   Dignon, Mr. Buchanan apparently is apparently still waiting
8   for a payoff number for MERS.  Is there anyway that I can get
9   that information?

10          MR. DIGNON: Your Honor, my impression was that Mr.
11  Buchanan had a payoff and had an issue with some corporate
12  advances on that.  I spoke to him briefly in the lobby here
13  last month, and I requested a breakdown.  Admittedly, I did
14  not see and I'm not sure whether or not he received it.  If
15  he hasn't then I'll make sure that he gets it.

16          THE COURT: Okay, please, I would like an order,
17  please, if I need one that requires your client to get this
18  information.  I have Mr. Buchanan on a very short time frame
19  to be able to refinance this property.  So if there is no
20  dispute, he needs to know what the numbers are.  Mr.
21  Buchanan, if you've got the payoff - you said it went up from
22  like 92- to 98,000.  I understand you don't have the document
23  in front of you.  Assume, for this purpose, that the payoff
24  number is 98,000, because if you're incorrect about what the
25  corporate advances are all about and they turn out to be

1   allowed, you're going to need to include that number in the

2   refinance.  If you're correct, and the number goes down, then

3   it will reduce it, but it's not going to reduce it probably

4   by a significant enough amount, that $6,000, that that will

5   stop your ability to refinance.

6   MR. BUCHANAN: I understand, Your Honor, and I took

7   some notes about holding those funds in escrow if there are

8   any question from the other parties.

9   MR. DIGNON: May I be excused, Your Honor?

10  THE COURT: Yes, sir, thank you.

11  MR. BUCHANAN: Thanks.

12  THE COURT: Mr. Dignon, can you see if – can you

13  meet with Mr. Buchanan?  You understand what the issue is

14  that he has with the corporate advances, so all you need is

15  some information from your client?

16  MR. DIGNON: As I said, we spoke last month in the

17  lobby.  He showed me the payoff.  He had initially said that

18  there was an inflated interest figure, the principle amount

19  showed somewhere in the neighborhood, I believe, of about 86-

20  to 88,000.  There was $6,000 in accrued interest and another

21  $6,000 and change in corporate advances.  And he pointed to

22  the corporate advancement was the number that he was

23  disputing.  I said, Okay, I'll get you a breakdown of the

24  corporate advances, and –

25  THE COURT: That hasn't happened.

1        MR. DIGNON: I don't know.  Like I said, when I went

2   back to my office, I instructed my paralegal to forward Mr.

3   Buchanan a breakdown of the corporate advances.  I know they

4   didn't go through my hands.  Mr. Buchanan is indicating that

5   he hasn't received them, so I will go back to my office, and

6   I will take appropriate action.

7        THE COURT: Okay, can you please get that

8   information to him within a week?

9        MR. DIGNON: Certainly, Your Honor.

10.       THE COURT: All right, thank you.

11        MR. DIGNON: Thank you.

12        THE COURT: Okay, Mr. Tyler, if you could please

13   just file the formal proofs of claim, I understand that you

14   may be treating this as a post-petition claim, and therefore,

15   you don't think you need to file a formal proof.  I think you

16   need to file a formal proof in this instance so that we have

17   a record of what the claims are, and they're not going to be

18   subject to some later dispute.  So, attach the court orders

19   if you need to to the proof of claim form and get them filed.

20   Please make sure you serve them on Mr. Buchanan, so he has

21   record of what they are.  Mr. Buchanan, I do not see a basis

22   for sanctions.  The court has not done anything that this

23   Court did not anticipate that the court would do, and by

24   taking some action before my order for relief from stay was

25   entered, which I'm not even sure is correct, because it

17

1   appears that the Family Court was very cognizant of the fact

2   that the bankruptcy was filed and wasn't doing anything until

3   the relief from stay was granted, but in the event that

4   something did happen before the relief from stay, it's all

5   incorporated into that relief from stay order now.  The whole

6   purpose was to let the court go forward and issue its orders.

7   I don't see a basis for sanctions.  You need to work on

8   getting this property refinanced because next month is it.

9          MR. BUCHANAN: I will, Your Honor.  This being

10  delayed on how much I was being paid - I had to pay MERS was

11  a problem and then not having the ambiguity with my ex-wife

12  having - knowing how much to pay her, and I believe under

13  12(b)(6) I don't know how I can get away from that.  I just

14  don't know how I'm going to get around it because all the

15  banks I've talked to want to know a firm amount, what the

16  liabilities are.  I also have - there's the Southern States

17  issue I'm going to have to go get Southern States to - a

18  payoff them and maybe Mr. Tyler can help me with that because

19  his client's been paying most on that bill.

20         THE COURT: Okay, well, if your client is paying the

21  bill that Mr. Buchanan has to refinance, can you get a payoff

22  number?

23         MR. BUCHANAN: The problem -

24         MR. TYLER: It's a judgment against both of them.

25         MR. BUCHANAN: It's a judgment against both of us -

1    MR. TYLER: They've garnished Mrs. Buchanan's pay to
2    the tune of $675 a month, and she's on the hook for it.  Mr.
3    Buchanan has kept his head down and Southern States hasn't
4    been able to do anything to him.

5    MR. BUCHANAN: Well, that's regardless of the reason
6    they haven't - they have not judged on that, Your Honor.

7    THE COURT: But it's not a mortgage, it's a judgment
8    creditor.

9    MR. TYLER: It's a judgment lien.

10    MR. BUCHANAN: It's a judgment lien.

11    THE COURT: A judgment lien, okay, so, whether
12    that's going to have to be satisfied as part of the refinance
13    or not, I don't know.  I mean, if somebody is going to
14    substitute themselves for the mortgage, it's possible that
15    that judgment lien will remain behind the new mortgage
16    anyway.

17    MR. BUCHANAN: Well, I don't think the bank will -
18    THE COURT: No?  Not a refinance?

19    MR. BUCHANAN:  - put up with that.  I have to
20    refinance it if he's going to be satisfied, I'm sure I'm
21    going to have to refinance it all the way out.

22    THE COURT: Okay, well, then, can you find our, Mr.
23    Tyler, how much is still owed on that judgment and provide
24    that information to Mr. Buchanan?

25    MR. BUCHANAN: The original was $25,000 is what the

1    claim was for Southern States filed with the Bankruptcy

2    Court, roughly, and there's interest and so forth has gone,

3    accrued on that.  I don't know how much it is, and the person

4    I have my contact point at Southern States, he doesn't know

5    how much it is either.

6              THE COURT: Well, okay.

7              MR. TYLER: I'm just saying that the judgment is

8    against both spouses.

9              THE COURT: Yes.

10              MR. TYLER: He has as much ability to get it paid

11   off as my client does and it's not fair to make us work for

12   him, but -

13              THE COURT: Mr. Buchanan, you need to -

14              MR. BUCHANAN: I'll try to get the payoff, Your

15   Honor.

16              THE COURT:  - take the action to get the payoff,

17   please.  If you can find out how much your client has paid on

18   this lien so that we can get to the end of this, I would like

19   to see Mrs. Buchanan paid what she's owed and unless we get

20   some cooperation, she may never be paid what's she owed.  So,

21   please, could you try to help get a payoff.

22              MR. TYLER: Thank you.

23              THE COURT: All right, I'm going to enter an order

24   that will deny the motions for sanctions, as I've stated on

25   the record, and whatever other motions you've filed, they'll

20

1    get scheduled, Mr. Buchanan.

2           MR. TYLER: Thank you.

3           (Whereupon at 11:20 a.m., the hearing in this

4    matter was concluded for this date.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18           I, Elaine M. Ryan, approved transcriber for the

19    United States Courts, certify that the foregoing is a correct

20    transcript from the electronic sound recording of the

21    proceedings in the above-entitled matter.

22

23    _Elaine M. Ryan_                    <u>April 5, 2007</u>
      Elaine M. Ryan
      2801 Faulkland Road
      Wilmington, DE 19808
      (302) 683-0221

## CERTIFICATE OF SERVICE

I David J. Buchanan, hereby certify that on April 10, 2007, caused a true and correct copy of the attached transcript, to be served upon the following people as indicated.

James B. Tyler, III, Esquire
211E. Market Street
Georgetown, DE 19947
*Via 1st Class U.S. Mail*

David J. Buchanan
34806 Hudson Road
Laurel, Delaware 19956
302 875-1362

## CERTIFICATE OF SERVICE

I David J. Buchanan, hereby certify that on April 10, 2007, caused a true and correct copy of the attached transcript, to be served upon the following people as indicated.

James B. Tyler, III, Esquire
211E. Market Street
Georgetown, DE 19947
*Via 1st Class U.S. Mail*

David J. Buchanan
34806 Hudson Road
Laurel, Delaware 19956
302 875-1362

**Print Postage Online - Go to www.usps.com/postageonline**

UNITED STATES POSTAL SERVICE®

Recycled Paper

PRIORITY MAIL

PLEASE PRESS FIRMLY  PLEASE PRESS FIRMLY  PLEASE PRESS FIRMLY  PLEASE PRESS FIRMLY

TRY FREE
CARRIER PICK-UP
usps.com/pickup

U.S.M.S.
X-RAY

From: Buchanan
3480C Hudson Rd
Laurel De 19956

To: U.S District Court
844 North King St. Rm 4209
Lock Box 39
Wilmington De 19801

► Complete address information or place label here ►

www.usps.com

UNITED STATES POSTAL SERVICE

PHLU
LAUREL DE
APR 19 1956
06 07
AMOUNT

$4.05
00085953-08

1980 i
0000



### HOW TO USE:

**1. COMPLETE ADDRESS AREA**
Type or print return address and addressee information
In designated area or on label.

**2. PAYMENT METHOD**
Affix postage or meter strip to area indicated in upper right hand corner.

**3. ATTACH LABEL** (Optional)
Remove label backing and affix in designated location.



**4.** Bring your Priority Mail package to a post office, present it to your letter carrier, or call 1-800-222-1811 for pick up service. Stamped mail may be deposited in a collection box **ONLY** if it weighs less than 16 ounces.

**We Deliver.**