# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT DELAWARE

|  |  |
|---|---|
| In Re David J. Buchanan, Debtor | Case No. 04-12419JKF |
| David J. Buchanan, Appellant v Barbara H. Buchanan, Appellee | C.A. No. 07-034-SLR |

## APPENDIX FOR
## BRIEF IN OPPOSITION TO APPEAL

JAMES B. TYLER, III
DE Bar No. 530
211 E. Market Street
P.O. Box 555
Georgetown, DE  19947
(302) 856-6397
Attorney for Appellee,
Barbara H. Buchanan

Dated:  May 2, 2007

Appendix Contents

Docket Entries U.S. Bankruptcy Court 8/24/2004 – 4/9/2007          B-1

Order 5/19/2005                                                    B-23

Wife's filing of Family Court Order 4/18/2006                      B-24

Wife's Filing of Family Court Corder 8/21/2006                     B-51

Transcript 10/24/2006                                             B-66

Order 12/1/2006                                                    B-86

# U.S. Bankruptcy Court
## District of Delaware (Delaware)
## Bankruptcy Petition #: 04-12419-JKF

*Assigned to:* Judith K. Fitzgerald
Chapter 13
Voluntary
Asset

*Date Filed:* 08/24/2004

**Debtor**
**David J Buchanan**
34806 Hudson Road
Laurel, DE 19956
302-875-1362
SSN: xxx-xx-7078

represented by **David J Buchanan**
PRO SE

**Trustee**
**Michael B. Joseph - Chapter 13 Trustee**
824 Market Street
P.O. Box 1351
Wilmington, DE 19899-1351
302-656-0123

**U.S. Trustee**
**United States Trustee**
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899-0035
302-573-6491

| Filing Date | # | Docket Text |
|---|---|---|
| 08/24/2004 | 1 | Chapter 13 Voluntary Petition. Receipt Number 71395, Amount Paid $50. Filed by David J Buchanan . (LCo, ) (Entered: 08/24/2004) |
| 08/24/2004 | | Receipt of First Installment Payment. Receipt Number 71395, Installment Amount $50.00 (LCo, ) (Entered: 08/24/2004) |
| 08/24/2004 | 2 | Application to Pay Filing Fee in Installments Filed by David J Buchanan.. (LCo, ) (Entered: 08/24/2004) |
| 08/24/2004 | 3 | Order Granting Application To Pay Filing Fees In Installments as set forthin the application (Related Doc # 2). Order Signed on 8/24/2004. Final Payment due 12/22/2004. (CLO, ) (Entered: 08/24/2004) |
| 08/25/2004 | 4 | **CURED**Notice Regarding Deficient Filings ~Must submit notice to consumer debtor with signature, statement of financial affairs & |

B-1

| | | declaration signed by the debtor,schedule A Thru J, Summary of schedules & declaration signed by the debtor, chapter 13 plan & analysis due by 09/09/2004. (CLO, ) Modified on 9/20/2004 (BAM, ). (Entered: 08/25/2004) |
|---|---|---|
| 08/25/2004 | 5 | Meeting of Creditors 341(a) meeting to be held on 10/5/2004 at 02:30 PM at US District Court, 844 King St., Room 2112, Wilmington, Delaware. Proofs of Claims due by 1/3/2005. Government Proof of Claim due by 2/21/2005. Confirmation hearing to be held on 10/25/2004 at 02:00 PM at Alternate Meeting Site. (CLO, ) (Entered: 08/25/2004) |
| 08/26/2004 | 6 | BNC Certificate of Mailing. Service Date 08/26/2004. (Admin.) (Entered: 08/27/2004) |
| 08/27/2004 | 7 | BNC Certificate of Mailing - Meeting of Creditors. Service Date 08/27/2004. (Admin.) (Entered: 08/28/2004) |
| 08/27/2004 | 8 | BNC Certificate of Mailing. Service Date 08/27/2004. (Admin.) (Entered: 08/28/2004) |
| 09/09/2004 | 9 | Motion to Allow *Re Emergency Motion to Grant Premission of Ruling to the Family Court of the State of Delaware in Matters Pertaining Only to Health Insurance and the Continuation of Established Health Care Coverage Established Through a Lengthy Marriage to Military Member.* Filed by David J Buchanan.. (BAM, ) (Entered: 09/09/2004) |
| 09/09/2004 | 10 | Motion to Extend Time *for filing Schedule F* Filed by David J Buchanan.. (BAM, ) (Entered: 09/13/2004) |
| 09/09/2004 | 12 | Chapter 13 Plan *and Analysis* Filed by David J Buchanan (BAM, ) (Entered: 09/13/2004) |
| 09/09/2004 | 13 | Schedules A,B,C,D,E,G,H,I,J. Filed by David J Buchanan (BAM, ) (Entered: 09/13/2004) |
| 09/13/2004 | 11 | Order Granting Motion to Extend Time to File Schedules; - NO FURTHER CONTINUANCE SHALL BE GRANTED DUE 9/20/04 (BAM, ) (Entered: 09/13/2004) |
| 09/13/2004 | 14 | Notice of Service *Mailed extension to file Schedule F, Sofa, Summary of Schedules with declaration's signed to debtor* (related document(s) 10 ) Filed by (BAM, ) (Entered: 09/13/2004) |
| 09/15/2004 | 15 | BNC Certificate of Mailing. (Related document(s)11 ) Service Date 09/15/2004. (Admin.) (Entered: 09/16/2004) |

B-2

| 09/16/2004 | 16 | Amended Schedules Receipt Number #71571, Fee Amount $26. Filed by David J Buchanan (BAM, ) (Entered: 09/17/2004) |
|---|---|---|
| 09/24/2004 |  | Receipt of Second Installment Payment. Receipt Number 71628, Installment Amount $100.00 (NAL, ) (Entered: 09/24/2004) |
| 10/11/2004 | 17 | Minute Sheet 341 Meeting Held and Continued *until November hearing date.* (Joseph - Chapter 13 Trustee, Michael) (Entered: 10/11/2004) |
| 10/18/2004 | 18 | Objection to Confirmation of Plan Filed by Delaware Division of Revenue (Drowos, Stuart) (Entered: 10/18/2004) |
| 10/21/2004 | 19 | Letter Sent To Kent County Sheriff Office Regarding Automatic Stay. Filed by David J Buchanan. (JMP, ) (Entered: 10/21/2004) |
| 10/25/2004 | 20 | Confirmation Hearing Continued. (related document(s)5 ) Hearing scheduled for 11/15/2004 at 02:00 PM at Alternate Meeting Site. (BAM, ) (Entered: 10/26/2004) |
| 10/25/2004 | 21 | Notice of Continued Confirmation Hearing (related document(s)20 ) Hearing scheduled for 11/15/2004 at 02:00 PM at Alternate Meeting Site. (BAM, ) (Entered: 10/26/2004) |
| 10/28/2004 | 22 | BNC Certificate of Mailing - Hearing. (Related document(s)21 ) Service Date 10/28/2004. (Admin.) (Entered: 10/29/2004) |
| 11/01/2004 | 23 | Notice of Appearance Filed by Washington Mutual Home Loans (Armstrong, Lara) (Entered: 11/01/2004) |
| 11/01/2004 | 24 | Response to *Objection by the State of Delaware Division of Revenue to Chapter 13 Plan* Filed by David J Buchanan (BAM, ) (Entered: 11/01/2004) |
| 11/08/2004 |  | Receipt of Final Installment Payment. Receipt Number 72014, Installment Amount $44. (MNH, ) Modified on 11/10/2004 (MNH, ). (Entered: 11/08/2004) |
| 11/08/2004 | 25 | Objection to Confirmation of Plan (related document(s)12 ) Filed by Barbara H Buchanan (Tyler, James) (Entered: 11/08/2004) |
| 11/08/2004 |  | Compliance with Deficiency Notice (BAM, ) (Entered: 11/10/2004) |
| 11/15/2004 | 26 | Hearing Continued on State Objection. (related document(s)25 ) Hearing scheduled for 12/21/2004 at 10:30 AM at Alternate Meeting Site. (BAM, ) (Entered: 11/17/2004) |

B - 3

| 11/15/2004 | 27 | Notice of Continued Hearing (related document(s)25, 26 ) Hearing scheduled for 12/21/2004 at 10:30 AM at Alternate Meeting Site. (BAM, ) (Entered: 11/17/2004) |
| 11/17/2004 | 28 | Response to *of Debtor to Objection to Confirmation* Filed by David J Buchanan (BAM, ) (Entered: 11/17/2004) |
| 11/19/2004 | 29 | BNC Certificate of Mailing - Hearing. (Related document(s)27 ) Service Date 11/19/2004. (Admin.) (Entered: 11/20/2004) |
| 11/23/2004 | 30 | Motion for Relief from Stay. Fee Amount $150. Filed by Washington Mutual Home Loans. Hearing scheduled for 1/25/2005 at 09:00 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 1/14/2005.. (Attachments: # (1) Proposed Form of Order # 2 Certificate of Service # 3 Exhibit Deed of Trust and Note# 4 Exhibit Pay History) (Dignon, Neil) (Entered: 11/23/2004) |
| 11/23/2004 | 31 | Receipt of filing fee for Motion for Relief From Stay (B)(04-12419-JKF) [motion,mrlfsty] ( 150.00). Receipt Number 1783432, amount $150.00. (U.S. Treasury) (Entered: 11/23/2004) |
| 11/23/2004 | 32 | Notice of Hearing (related document(s)30 ) Filed by Washington Mutual Home Loans Hearing scheduled for 1/25/2005 at 09:00 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 1/14/2005. (Dignon, Neil) (Entered: 11/23/2004) |
| 11/23/2004 | 33 | Notice of Hearing (related document(s)30 ) Filed by Washington Mutual Home Loans Hearing scheduled for 1/25/2005 at 09:00 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 1/14/2005. (Dignon, Neil) (Entered: 11/23/2004) |
| 12/03/2004 | 34 | Minute Sheet 341 Meeting Not Held and Continued *until January 2005 hearings*. (Joseph - Chapter 13 Trustee, Michael) (Entered: 12/03/2004) |
| 12/21/2004 | 40 | Hearing Held - This Plan Is Not Confirmable - Debtor Must File and Serve an Amended Plan Not Later Than April 1, 2005 - Set up For Confirmation on April 25, 2005 @ 2:00pm Before The Trustee - Before Then, The Debtor Must Either Take Some Action So That The State Court Can Adjudicate Property Division Issues or Commence Appropriate Actions in This Court To The Same Effect. (related document(s)25, 26, 27 ) (JSJ, ) (Entered: 01/13/2005) |
| 01/03/2005 | 35 | Notice of Appearance Filed by Wilmington Trust Company (Whalen Jr., Thomas) (Entered: 01/03/2005) |
| 01/04/2005 | 37 | Motion for Payroll Deduction Filed by David J Buchanan. (BAM, ) |

B-4

|  |  | (Entered: 01/06/2005) |
|---|---|---|
| 01/05/2005 | 36 | Minute Sheet 341 Meeting Not Held and Continued *indefinitely*. (Joseph - Chapter 13 Trustee, Michael) (Entered: 01/05/2005) |
| 01/06/2005 | 38 | Order for Debtor's Employer to Pay Trustee (related document(s)37 ) Signed on 1/6/2005. (BAM, ) (Entered: 01/06/2005) |
| 01/07/2005 | 39 | Response to *Mortgage Electronic Registration Systems Inc. for Relief from Stay* Filed by David J Buchanan (BAM, ) (Entered: 01/11/2005) |
| 01/18/2005 | 41 | Notice of Confirmation Hearing (related document(s)[40] ). Hearing scheduled for 4/25/2005 at 02:00 PM at Alternate Meeting Site. (JSJ, ) (Entered: 01/18/2005) |
| 01/20/2005 | 42 | BNC Certificate of Mailing - Hearing. (Related document(s)41 ) Service Date 01/20/2005. (Admin.) (Entered: 01/21/2005) |
| 01/25/2005 | 43 | Hearing Held and Continued Unless Stipulation is Filed by 2/21/05 Hearing scheduled for 3/1/2005 at 09:00 AM at Alternate Meeting Site. (BAM, ) (Entered: 01/26/2005) |
| 01/26/2005 | 44 | Motion for Relief from Stay *Pertaining to Property Division*. Fee Amount $150. Filed by Courts Hearing scheduled for 3/1/2005 at 09:45 AM at Alternate Meeting Site. Objections due by 2/21/2005.. (BAM, ) (Entered: 01/28/2005) |
| 01/28/2005 | 45 | Notice of Service */Sent Notice for Unpaid Fee $150.00* (related document(s)44 ) Filed by Courts (BAM, ) (Entered: 01/28/2005) |
| 02/10/2005 | 46 | Motion for Relief from Stay *by Barbara H. Buchanan*. Fee Amount $150. Filed by Barbara H Buchanan Hearing scheduled for 3/1/2005 at 09:45 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 2/18/2005.. (Attachments: # 1 Notice of Motion for Relief from Automatic Stay# 2 Proposed Form of Order for Relief# 3 Certificate of Service) (Tyler, James) (Entered: 02/10/2005) |
| 02/10/2005 | 47 | Receipt of filing fee for Motion for Relief From Stay (B)(04-12419-JKF) [motion,mrlfsty] ( 150.00). Receipt Number 1894018, amount $150.00. (U.S. Treasury) (Entered: 02/10/2005) |
| 02/17/2005 | 48 | Response to *Answer Motion for Relief from Automatic Stay and Co-Debtor Stay* (related document(s)30 ) Filed by Barbara H Buchanan (Tyler, James) (Entered: 02/17/2005) |
| 02/17/2005 | 49 | Response to *Answer Motion for Relief From Automatic Stay* (related |

B-5

| | | document(s)44 ) Filed by Barbara H Buchanan (Tyler, James) (Entered: 02/17/2005) |
|---|---|---|
| 02/23/2005 | 50 | Response to *Answer to Motion of Barbara H Buchnan for Relief from Stay* Filed by David J Buchanan (BAM, ) (Entered: 02/23/2005) |
| 03/01/2005 | 51 | Amended Notice of Hearing *on Motion for Relief of Barbara H. Buchanan from Automatic Stay* (related document(s)46 ) Filed by Barbara H Buchanan Hearing scheduled for 3/22/2005 at 09:45 AM at U.S. Bankruptcy Court, District of Delaware, 824 Market Street, 3rd Floor, Wilmington, DE 19801. Objections due by 3/14/2005. (Attachments: # 1 Certificate of Service) (Tyler, James) (Entered: 03/01/2005) |
| 03/01/2005 | 52 | Hearing Held and Continued to March 22,2005 for Stipulation due March 14,2005. Hearing scheduled for 3/22/2005 at 09:00 AM at Alternate Meeting Site. (BAM, ) (Entered: 03/04/2005) |
| 03/15/2005 | 53 | Response to *Re Notice of Motion of Barbara H Buchanan for Relief from Stay* Filed by David J Buchanan (BAM, ) Additional attachment (s) added on 3/16/2005 (BAM, ). (Entered: 03/16/2005) |
| 04/01/2005 | 54 | Notice of Service *RE Request for Continued Hearing 4/25/05 9:00am.* Filed by David J Buchanan (BAM, ) (Entered: 04/04/2005) |
| 04/04/2005 | 55 | RE Notice of Continued Hearing Rescheduled from 3/22/05(related document(s Hearing scheduled for 4/25/2005 at 2:00 PM at Alternate Meeting Site. (related document(s)[52], Modified time on 4/7/2005 (BAM, ). (Entered: 04/04/2005) |
| 04/06/2005 | 56 | BNC Certificate of Mailing - Hearing. (related document(s)55 ) Service Date 04/06/2005. (Admin.) (Entered: 04/07/2005) |
| 04/07/2005 | | Corrective Entry Re Notice of Hearing Time is at 2:00pm 4/26/05 (related document(s)(55) Not 9:00 am. (BAM, ) (Entered: 04/07/2005) |
| 04/14/2005 | 57 | Motion to Dismiss Case Filed by Barbara H Buchanan Hearing scheduled for 4/25/2005 at 02:00 PM at U.S. Bankruptcy Court, District of Delaware, 824 Market Street, 3rd Floor, Wilmington, DE 19801. Objections due by 4/18/2005.. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Notice Of Motion to Dismiss# 4 Proposed Form of Order # 5 Certificate of Service) (Tyler, James) (Entered: 04/14/2005) |
| 04/14/2005 | 58 | Motion for Relief from Stay *Re-Notice.* Fee Amount $150. Filed by Barbara H Buchanan Hearing scheduled for 4/26/2005 at 09:15 AM at U.S. Bankruptcy Court, District of Delaware, 824 Market Street, |

B-6

| | | |
|---|---|---|
| | | 3rd Floor, Wilmington, DE 19801. Objections due by 4/18/2005.. (Attachments: # 1 Certificate of Service) (Tyler, James) (Entered: 04/14/2005) |
| 04/14/2005 | 59 | Receipt of filing fee for Motion for Relief From Stay (B)(04-12419-JKF) [motion,mrlfsty] ( 150.00). Receipt Number 2000198, amount $ 150.00. (U.S. Treasury) (Entered: 04/14/2005) |
| 04/15/2005 | | ENTERED IN ERROR Computer error.Notice of Dismissal on Barbara H Buchanan Motion to Dismiss Hearing scheduled for 5/16/05 @2:00pm. 824 Market Street, Wilmington DE 19801.(related document(s)57 ) (BAM, ) Modified on 4/15/2005 (BAM, ). (Entered: 04/15/2005) |
| 04/18/2005 | 60 | Objection to *the Repeated filing of Motion,Pleading by Co-Debtor through their Attorney* Filed by David J Buchanan (BAM, ) (Entered: 04/20/2005) |
| 04/25/2005 | 61 | Response to *Motion of Barbara H. Buchanan to Dismiss* (related document(s)57 ) Filed by David J Buchanan (Attachments: # 1 Certificate of Service) (JMP, ) Additional attachment(s) added on 4/26/2005 (BAM, ). (Entered: 04/25/2005) |
| 04/25/2005 | 62 | Confirmation Hearing Continued to Special Hearings. Hearing scheduled for 4/26/2005 at 10:30 AM at Alternate Meeting Site. (NAL, ) (Entered: 04/27/2005) |
| 04/26/2005 | 63 | Hearing Held - Certification of Counsel with Proposed Order Due on Both Motions by Both Attorneys that will Grant Relief From Stay to Family Court to Make the Property Division, but not to Effectuate any Distribution. This Court Retain Jurisdiction Over the Distribution of Any Property Division. By December 20, 2005 the Debtor Must File an Amended Plan that is Set for Hearing on January 30, 2005 at 2:00 p.m. The Motion to Dismiss Hearing scheduled for 1/31/2006 at 10:00 AM at US Bankruptcy Court, 824 Market St., Room 309, Wilmington, Delaware. (related document(s)58, 30, 57 ) (REB, ) Modified text on 4/28/2005 (BAM, ). (Entered: 04/27/2005) |
| 05/13/2005 | 64 | Certification of Counsel *and Order that complies with the Court's April 26, 2005 Ruling from the Bench* (related document(s)30 ) Filed by Washington Mutual Home Loans (Attachments: # 1 Proposed Form of Order # 2 Certificate of Service) (Dignon, Neil) (Entered: 05/13/2005) |
| 05/18/2005 | 65 | Order Granting Washington Mutual's Motion Relief From the Automatic Stay. (related document(s)30 ) Order Signed on 5/18/2005. (LCN, ) (Entered: 05/18/2005) |

B - 7

| 05/20/2005 | 66 | BNC Notice of Order Granting Washington Mutual's Motion Relief From the Automatic Stay. (related document(s)65 ) (LCN, ) (Entered: 05/20/2005) |
| 05/22/2005 | 67 | BNC Certificate of Mailing. (related document(s)66 ) Service Date 05/22/2005. (Admin.) (Entered: 05/23/2005) |
| 05/24/2005 | 68 | Order For Relief From the Automatic Stay by Barbara H. Buchanan. (Related Doc # 46) Order Signed on 5/19/2005. (LCN, ) (Entered: 05/24/2005) |
| 05/24/2005 | 69 | BNC Notice of Order For Relief From the Automatic Stay by Barbara H. Buchanan. (related document(s)68 ) (LCN, ) (Entered: 05/24/2005) |
| 05/24/2005 | 70 | Letter Regarding Family Court Matters Discussed at 4/26/2005 Hearing. Filed by David J Buchanan. (JMP, ) (Entered: 05/26/2005) |
| 05/26/2005 | 71 | BNC Certificate of Mailing. (related document(s)69 ) Service Date 05/26/2005. (Admin.) (Entered: 05/27/2005) |
| 06/07/2005 | 72 | Notice of Withdrawal *from Creditor Matrix* Filed by Peter B Jones. (BAM, ) Modified text on 6/7/2005 (BAM, ). (Entered: 06/07/2005) |
| 06/29/2005 | 73 | **WITHDRWAN ref #83*.Motion of Wilmington Trust Company for an Order Dismissing Debtor's Chapter 13 Petition, or Alternatively, for Relief from the Automatic Stay Pursuant to 11 U.S.C. Section 362(D). Fee Amount $150. Filed by Wilmington Trust Company Hearing scheduled for 8/30/2005 at 09:45 AM (check with court for location). Objections due by 8/22/2005.. (Attachments: # 1 Notice of Motion# 2 Proposed Form of Order # 3 Certificate of Service) (Whalen Jr., Thomas) Modified Text on 7/1/2005 (TK, ). Modified on 9/1/2005 (BAM, ). (Entered: 06/29/2005) |
| 06/29/2005 | 74 | Receipt of filing fee for Motion for Relief From Stay (B)(04-12419-JKF) [motion,mrlfsty] ( 150.00). Receipt Number 2118476, amount $150.00. (U.S. Treasury) (Entered: 06/29/2005) |
| 07/20/2005 | 75 | Motion For Sanctions Filed by David J Buchanan Hearing scheduled for 8/30/2005 at 08:45 AM at US Bankruptcy Court, 824 Market St., 5th Floor, Wilmington, DE. Objections due by 8/22/2005.. (BAM, ) (Entered: 07/22/2005) |
| 08/02/2005 | 76 | Notice of Hearing (Motion for Sancations) scheduled for 8/30/2005 at 09:45 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. (related document(s)75 ) (BAM, ) (Entered: 08/02/2005) |

15-8

| 08/02/2005 | 77 | Objection to *Motion For Sanctions* (related document(s)75 ) Filed by Whittington & Aulgur (Doughty, Kristi) (Entered: 08/02/2005) |
| 08/04/2005 | 78 | BNC Certificate of Mailing - Hearing. (related document(s)76 ) Service Date 08/04/2005. (Admin.) (Entered: 08/05/2005) |
| 08/18/2005 | 80 | Amended Schedule(s) I,J, Amended Summary of Schedules, Delaration Concerning Debtor's Schedules Filed by David J Buchanan (BAM, ) (Entered: 08/19/2005) |
| 08/19/2005 | 79 | Amended Plan *Chapter 13 Plan* Filed by David J Buchanan (BAM, ) (Entered: 08/19/2005) |
| 08/22/2005 | 81 | Objection to *Motion of Wilmington Trust Company for an Order Dismissing Debtor's Chapter 13 Case.* Filed by David J Buchanan (BAM, ) (Entered: 08/22/2005) |
| 08/22/2005 | 82 | Response to *Debtor's Motion Seeking Sanctions* (related document(s) 75 ) Filed by Washington Mutual Home Loans (Attachments: # 1 Proposed Form of Order # 2 Certificate of Service) (Dignon, Neil) (Entered: 08/22/2005) |
| 08/29/2005 | 83 | Notice of Withdrawal (related document(s)73 ) Filed by Wilmington Trust Company. (Attachments: # 1 Certificate of Service) (Whalen Jr., Thomas) (Entered: 08/29/2005) |
| 08/30/2005 | 84 | Hearing Held - Order to Be Entered. (related document(s)73, 75 ) (REB, ) (Entered: 09/01/2005) |
| 09/06/2005 | 85 | Order Regarding Payment of Funds Signed on 8/30/2005. (DKF, ) (Entered: 09/06/2005) |
| 09/06/2005 | 86 | BNC Notice of Order Regarding Payment of Funds Signed on 8/30/2005. (related document(s)85 ) (DKF, ) (Entered: 09/06/2005) |
| 09/20/2005 | 87 | Exparte Motion to Compel *Discovery* Filed by David J Buchanan. Hearing scheduled for 10/25/2005 at 09:45 AM at US Bankruptcy Court, 824 Market St., Wilmington, DE. Objections due by 10/18/2005. (BAM, ) Modified text on 9/20/2005 (BAM, ). (Entered: 09/20/2005) |
| 09/20/2005 | 88 | Motion to Compel */Request for Discovery From Barbara H Buchanan* Filed by David J Buchanan. Hearing scheduled for 10/25/2005 at 09:45 AM at US Bankruptcy Court, 824 Market St., Wilmington, DE. Objections due by 10/18/2005. (BAM, ) (Entered: 09/20/2005) |

B-9

| | | |
|---|---|---|
| 10/21/2005 | 89 | Order Denying Motion To Compel. (Related Doc # 87) Order Signed on 10/21/2005. (LCN, ) (Entered: 10/21/2005) |
| 11/28/2005 | 90 | Motion to Compel *For Examination Under Rule 2004* Filed by David J Buchanan Hearing scheduled for 1/31/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 1/23/2006.. (BAM, ) (Entered: 11/29/2005) |
| 11/28/2005 | 91 | Motion to Compel *for Examination Under Rule 2004 with Concideration to Rule 2017* Filed by David J Buchanan Hearing scheduled for 1/31/2006 at 10:30 PM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 1/23/2006.. (BAM, ) (Entered: 11/29/2005) |
| 12/05/2005 | 92 | Creditor's Notice of Default/Noncompliance (related document(s)30, 65 ) Filed by Washington Mutual Home Loans. (Dignon, Neil) (Entered: 12/05/2005) |
| 12/14/2005 | 93 | Motion For Sanctions Filed by David J Buchanan Hearing scheduled for 1/31/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 5th Floor, Wilmington, DE. Objections due by 1/23/2006.. (BAM, ) (Entered: 12/14/2005) |
| 12/14/2005 | 94 | Response to *Notice of Non-Compliance filed by Mortgage Electronic Registeration Systems* Filed by David J Buchanan (BAM, ) (Entered: 12/14/2005) |
| 01/30/2006 | 95 | Confirmation Hearing Continued to Special Hearings. Hearing scheduled for 1/31/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #6, Wilmington, Delaware. (NAL, ) (Entered: 02/01/2006) |
| 01/31/2006 | 96 | Hearing Held Order to be Entered Denying all Motions for Failure to Prosecute. Dignon may submit an Order on a Certificate of Counsel that Grants Relief from Stay due to Debtor Defaults in not Curing as Ordered (related document(s)91, 95, 90 ) (BAM, ) (Entered: 02/01/2006) |
| 02/01/2006 | 97 | Supplemental Motion to Confirm Termination or Absence of Stay *for Clarification of Prior Order* Filed by Barbara H Buchanan. (Attachments: # 1 Exhibit A Order of 5/19/05 Bkcy Ct# 2 Exhibit B Order of 11/28/2005 Family Ct# 3 Notice of Motion# 4 Proposed Form of Order # 5 Certificate of Service) (Tyler, James) (Entered: 02/01/2006) |
| 02/08/2006 | 98 | Reply *re Answer to Motion of Barbara H Buchanan for Clarification of Prior Order and Request for Sanctions* (related document(s)97 ) |

B – 10

| | | |
|---|---|---|
| | | Filed by David J Buchanan (Attachments: # 1 Attachment order# 2 Exhibit A# 3 Certificate of Service) (BAM, ) Modified date filed on 2/9/2006 (BAM, ). (Entered: 02/09/2006) |
| 02/09/2006 | 99 | Response to *Items #4,#5 of Supplemental Motion to Confirm Termination or Absence of Stay for Clarification of Prior Order* (related document(s)97 ) Filed by David J Buchanan (BAM, ) (Entered: 02/09/2006) |
| 02/16/2006 | 100 | Certification of Counsel *Neil F. Dignon, Esquire* (related document(s) 30 ) Filed by Washington Mutual Home Loans (Attachments: # 1 Proposed Form of Order # 2 Certificate of Service) (Dignon, Neil) (Entered: 02/16/2006) |
| 02/21/2006 | 101 | Motion to Continue Hearing On *2/22/06 Due to Previous Obligation* (related document(s)91, 97, 93 ) Filed by David J Buchanan Hearing scheduled for 3/28/2006 at 09:45 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 3/20/2006.. (BAM, ) (Entered: 02/21/2006) |
| 03/01/2006 | 102 | Notice of Hearing on Motion to Continue (related document(s)91, 97, 93 ) Hearing scheduled for 3/28/2006 at 09:45 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 3/20/2006. (related document(s)101 ) (BAM, ) Modified text on 3/2/2006 (BAM, ). Modified text on 4/17/2006 (BAM, ). (Entered: 03/01/2006) |
| 03/03/2006 | 103 | BNC Certificate of Mailing - Hearing. (related document(s)102 ) Service Date 03/03/2006. (Admin.) (Entered: 03/04/2006) |
| 03/27/2006 | 104 | Motion to Disallow Claims # *5 Cavalry Portfolio Ser. LLC* Filed by David J Buchanan Hearing scheduled for 5/16/2006 at 09:45 AM at US Bankruptcy Court, 824 Market St., Wilmington, DE. Objections due by 5/8/2006.. (BAM, ) (Entered: 03/28/2006) |
| 03/27/2006 | 115 | Letter Regarding Family Court Proceedings. Filed by David J Buchanan (BAM, ) (Entered: 04/13/2006) |
| 03/28/2006 | 107 | Hearing Continued. Modified Order to be Entered denying the request for the 2004 exam , Motion to clarify the sale Motions are to be brought in this court with Notice to all creditors, Order to be entered when submitted on Certification of Counsel by Mr Tyler. Re the Motion for Sanctions. -debtor to supplement the Motion within a week, then response is due by 4/10/06 and it is contiuned . Hearing scheduled for 4/18/2006 at 10:30 PM at US Bankruptcy Court, 824 Market St., Wilmington, DE. related doc. #101,#93, #97. (BAM, ) Modified time on 3/31/2006 (BAM, ). (Entered: 03/30/2006) |
| | | |

B – 1 (

| 03/29/2006 | 105 | Hearing Scheduled on Motion to Disallow Claims # 5 Cavalry Portfolio Ser. LLC . Hearing scheduled for 5/16/2006 at 09:45 AM at US Bankruptcy Court, 824 Market St., Wilmington, DE. (BAM, ) (Entered: 03/29/2006) |
| --- | --- | --- |
| 03/29/2006 | 106 | Notice of Hearing on Motion to Disallow Claims # 5 Cavalry Portfolio Ser. LLC Hearing scheduled for 5/16/2006 at 09:45 AM at US Bankruptcy Court, 824 Market St., Wilmington, DE. Objections due by 5/8/2006. (BAM, ) (Entered: 03/29/2006) |
| 03/31/2006 | 108 | RE Notice of Hearing scheduled for 4/18/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., Wilmington, DE. Objections due by 4/10/2006. (related document(s)107 ) (BAM, ) (Entered: 03/31/2006) |
| 03/31/2006 | 109 | Motion to Allow *Amended Plan* (related document(s)79 ) Filed by David J Buchanan Hearing scheduled for 4/18/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., Wilmington, DE. Objections due by 4/11/2006.. (BAM, ) (Entered: 03/31/2006) |
| 03/31/2006 | 110 | BNC Certificate of Mailing - Hearing. (related document(s)106 ) Service Date 03/31/2006. (Admin.) (Entered: 04/01/2006) |
| 04/01/2006 | 111 | BNC Certificate of Mailing - Hearing. (related document(s)107 ) Service Date 04/01/2006. (Admin.) (Entered: 04/02/2006) |
| 04/02/2006 | 112 | BNC Certificate of Mailing - Hearing. (related document(s)108 ) Service Date 04/02/2006. (Admin.) (Entered: 04/03/2006) |
| 04/11/2006 | 113 | Response to *Motion for Sanctions* (related document(s)93 ) Filed by Washington Mutual Home Loans (Attachments: # 1 Proposed Form of Order # 2 Certificate of Service) (Dignon, Neil) (Entered: 04/11/2006) |
| 04/12/2006 | 114 | Order Denying Motion for Examination Under Rule 2004. (Related Doc # 90) Order Signed on 4/11/2006. (LCN, ) (Entered: 04/12/2006) |
| 04/17/2006 | 116 | Motion to Show Cause *for Respondent to Show Cause Contempt and to Disallow Claim* Filed by David J Buchanan. (Attachments: # 1 Proposed Form of Order) (BAM, ) Terminated on 7/14/2006 (BAM, ). (Entered: 04/17/2006) |
| 04/18/2006 | 117 | Motion to Allow *Family Court Order on Property Division* (related document(s)97 ) Filed by Barbara H Buchanan. (Attachments: # 1 Certificate of Service # 2 Attachment 4-4-2006 Family Court Order) (Tyler, James) (Entered: 04/18/2006) |

B ← 12

| 04/18/2006 | 119 | Hearing Continued. ORDER TO BE ENTERED-The Rule to Show Cause is to be treated as an objection to Claim and Set for Hearng on 5/15/06 OUTCOME Trustee's Calendar and Response is due by 5/8/06 with account history as a spread sheet and an affivavit that explains the Proof of Claims and the Spread sheet. Hearing scheduled for 5/15/2006 at 02:00 PM at US Bankruptcy Court, 824 Market St., Room 309, Wilmington, Delaware. (related document(s)108, 118, 109 ) (JAF, ) (Entered: 04/20/2006) |
|---|---|---|
| 04/18/2006 | 121 | Hearing Held~ORDER TO BE ENTERED when submitted by Dignon-a Different Order to be submitted on a Certification of Counsel with Relief from Stay as Stated on record. Dignon can file fee schedule-to be scheduled when filed. (related document(s)108, 107, 109, 119 ) (JAF, ) (Entered: 04/20/2006) |
| 04/19/2006 | 118 | RE Notice of Hearing on Motion to Disallow Claim # 5 Cavalry Portfolio Ser. LLC. Hearing scheduled for 5/15/2006 at 02:00 PM at US Bankruptcy Court, 824 Market St., Room 309, Wilmington, Delaware. Objections due by 5/8/2006. (related document(s)104 ) (BAM, ) (Entered: 04/19/2006) |
| 04/20/2006 | 120 | Order Regarding Rule to Show Cause. (related document(s)116 ) Order Signed on 4/18/2006. (LCN, ) (Entered: 04/20/2006) |
| 04/21/2006 | 122 | BNC Certificate of Mailing - Hearing. (related document(s)118 ) Service Date 04/21/2006. (Admin.) (Entered: 04/22/2006) |
| 04/22/2006 | 123 | BNC Certificate of Mailing - Hearing. (related document(s)119 ) Service Date 04/22/2006. (Admin.) (Entered: 04/23/2006) |
| 04/26/2006 | 124 | Response to *Objection to Proof of Claim* (related document(s)119 ) Filed by Washington Mutual Home Loans (Dignon, Neil) (Entered: 04/26/2006) |
| 05/04/2006 | 125 | Certification of Counsel *of Neil F. Dignon, Esquire* (related document (s)108, 119, 107, 109 ) Filed by Washington Mutual Home Loans (Attachments: # 1 Proposed Form of Order # 2 Certificate of Service) (Dignon, Neil) (Entered: 05/04/2006) |
| 05/08/2006 | 126 | Affidavit *of Neil F. Dignon, Esquire* (related document(s)119 ) Filed by Washington Mutual Home Loans (Attachments: # 1 Attachment Loan History# 2 Certificate of Service) (Dignon, Neil) (Entered: 05/08/2006) |
| 05/09/2006 | 127 | Order Denying Debtor's Motion for Sanctions. (related document(s) 108, 119, 93, 107, 109 ) Order Signed on 5/8/2006. (LCN, ) (Entered: 05/09/2006) |

B-13

| 05/09/2006 | 128 | BNC Notice of Order Denying Debtor's Motion for Sanctions. (related document(s)127 ) (LCN, ) (Entered: 05/09/2006) |
| 05/09/2006 | 129 | Withdrawal of Claims: 5 *in the Amount of $5,863.25* Filed by Cavalry Portfolio Services, LLC (TK, ) (Entered: 05/09/2006) |
| 05/10/2006 | 130 | Letter addressed to Mr Joseph inregards to payments. Filed by David J Buchanan (BAM, ) (Entered: 05/10/2006) |
| 05/11/2006 | 131 | BNC Certificate of Mailing. (related document(s)128 ) Service Date 05/11/2006. (Admin.) (Entered: 05/12/2006) |
| 05/15/2006 | 132 | Hearing Continued on Washington Mutuals Objection to Claim #6, Cavalry Portfolio Objection to Claim #5 is Withdrawn. Hearing scheduled for 6/20/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., Wilmington, DE. (related document(s)129, 92 ) (BAM, ) (Entered: 05/17/2006) |
| 05/19/2006 | 133 | BNC Certificate of Mailing - Hearing. (related document(s)132 ) Service Date 05/19/2006. (Admin.) (Entered: 05/20/2006) |
| 05/31/2006 | 134 | Request for Discovery by MERS. Filed by David J Buchanan . (BAM, ) (Entered: 06/01/2006) |
| 06/20/2006 | 135 | Hearing Continued. - ORAL ORDER - CREDITOR TO PREPARE AN EXPLANATION OF THE TOTOAL BALANCE DUE PRE AND POSTPETITION THRU MAY 31 AND THE PREPETITION ARREARS TO BUCHANAN BY JULY 7 AND MERS TO FILE AMENDED PROOF OF CLAIM BY JULY 7 AND THE AMOUNTS AND ITEMIZATION OF POSTPETITION ATTORNEY FEES AND ALL IS CONTINUED TO 8/22 ALSO, DEBTOR TO START TO SEND HIS PAYMENTS ON THE MORTGAGE PROOF OF DELIVERY WITH A DATE SO THAT IF THE PROOF OF DELIVERY IS ACKNOWLEDGED ON OR BEFORE THE DUE DATE OF ANY MONTHLY MORTGAGE PAYMENT, THEN THAT PAYMENT IS DEEMED TIMELY RECEIVED BY MORTGAGEE REGARDLESS OF WHEN IT IS ENTERED ONTO THE COMPUTER SYSTEM AND NO LATE FEE WILL APPLY TO THAT PAYMENT. DEBTOR IS TO RETAIN ALL THE PROOFS OF DELIVERY FOR FUTURE. ALSO, THE PROPERTY INSPECTIONS ONLY ONCE A YEAR WILL BE ALLOWED CLAIMS V. THE DEBTOR PREPETITION AND THE ESTATE POSTPETITION PLUS FORECLOSURE INSPECTIONS. Hearing scheduled for 8/22/2006 at 11:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. (related document(s)132 ) (REB, ) Modified text on 7/19/2006 (BAM, ). (Entered: 06/21/2006) |

B-14

| 06/20/2006 | 136 | Amended Objection to Claim(s) #6 *by Mortgage Electronic Systems* Filed by David J Buchanan Hearing scheduled for 8/22/2006 at 11:00 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 8/14/2006. (BAM, ) Modified text on 6/23/2006 (BAM, ). (Entered: 06/22/2006) |
|---|---|---|
| 06/22/2006 | 137 | Notice of Hearing on Objection to Claim(s)#6. Hearing scheduled for 8/22/2006 at 11:00 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 8/14/2006. (related document(s)136 ) (BAM, ) (Entered: 06/22/2006) |
| 06/24/2006 | 138 | BNC Certificate of Mailing - Hearing. (related document(s)137 ) Service Date 06/24/2006. (Admin.) (Entered: 06/25/2006) |
| 07/19/2006 | 139 | Second Amended Plan Filed by David J Buchanan (BAM, ) (Entered: 07/19/2006) |
| 07/19/2006 | 140 | Motion to Disallow Claims *and for Respondent to Show Case, Contempt.* Filed by David J Buchanan Hearing scheduled for 8/22/2006 at 11:00 AM at US Bankruptcy Court, 824 Market St., 6th Floor, Wilmington, DE. Objections due by 8/15/2006.. (BAM, ) (Entered: 07/19/2006) |
| 07/19/2006 | 141 | Exhibit(s)to Motion to Disallow Claim. (related document(s)140 ) Filed by David J Buchanan . (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit) (BAM, ) (Entered: 07/19/2006) |
| 07/25/2006 | 142 | Letter to Mr Joseph Chapter 13 Trustee. Filed by David J Buchanan . (BAM, ) (Entered: 07/26/2006) |
| 08/14/2006 | 143 | Response to *Debtor's Motion to Show Cause, for Contempt, and to Disallow Claim* (related document(s)140 ) Filed by Barbara H Buchanan (Attachments: # 1 Exhibit A Bkcy Ct Order of 5/19/2005# 2 Proposed Form of Order # 3 Certificate of Service) (Tyler, James) (Entered: 08/14/2006) |
| 08/14/2006 | 144 | Objection to Confirmation of Amended Plan (related document(s) 139 ) Filed by Barbara H Buchanan (Attachments: # 1 Certificate of Service) (Tyler, James) (Entered: 08/14/2006) |
| 08/21/2006 | 145 | Motion to Approve *File Family Court Order - Attorneys Fees and Costs* Filed by Barbara H Buchanan. (Attachments: # 1 Exhibit Family Court Order July 12, 2006# 2 Certificate of Service) (Tyler, James) (Entered: 08/21/2006) |
| 08/21/2006 | 146 | Affidavit Re: Tax Liability. Filed by David J Buchanan . (BAM, ) |

B-15

| | | |
|---|---|---|
| | | (Entered: 08/22/2006) |
| 08/22/2006 | 147 | Response to *Barbara H. Buchanan's Objection to Confirmation. related docket 143*. Filed by David J Buchanan (Attachments: # 1 Proposed Form of Order # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit) (BAM, ) (Entered: 08/22/2006) |
| 08/22/2006 | 148 | Hearing Continued. Washington Mutual is to provide Debtor with a payoff by Sept. 15, 2006 for at least Aug. 31, 2006 with a daily interest accrual thereafter and provide Debtor with a full account history by 9/15/06 as well. Debtor must file a motion to refinance by 11/3/06 and set for objection by 11/14/06 and put on the hearing calendar for 11/21/06 at 10:30 a.m. Buchanan is to get the USDOA form to Tyler and he is to return it to Debtor Signed by Mrs. Buchanan within 10 days there after for next year as wll as the signed form for this year. The Rule to Show Cause is continued to 11/21/06 at 10:30 a.m. to bwe sure the documents are signed and returned by Mrs. Buchanan to Debtor as ordered above. Confirmation is to be addressed at the 11/21/06 status conference. Hearing scheduled for 11/21/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. (related document(s)140 ) (REB, ) (Entered: 08/31/2006) |
| 09/01/2006 | 149 | Letter Regarding Order Entered By Family Court Awarding Attorney's Fees. Filed by David J Buchanan . (JMP, ) (Entered: 09/01/2006) |
| 09/02/2006 | 150 | BNC Certificate of Mailing - Hearing. (related document(s)148 ) Service Date 09/02/2006. (Admin.) (Entered: 09/03/2006) |
| 09/07/2006 | 151 | Motion For Sanctions *for Violation of Automatic Stay*. Filed by David J Buchanan Hearing scheduled for 10/24/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 10/16/2006.. (Attachments: # 1 Notice # 2 Exhibit # 3 Exhibit # 4 Proposed Form of Order) (BAM, ) (Entered: 09/07/2006) |
| 09/14/2006 | 152 | Copy of Letter sent to Judge Henriksen. Filed by David J Buchanan . (BAM, ) (Entered: 09/14/2006) |
| 09/26/2006 | 153 | Notice of Hearing on Motion For Sanctions for Violation of Automatic Stay.. Hearing scheduled for 10/24/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 10/16/2006. (BAM, ) (Entered: 09/26/2006) |
| 09/28/2006 | 154 | BNC Certificate of Mailing - Hearing. (related document(s)153 ) Service Date 09/28/2006. (Admin.) (Entered: 09/29/2006) |

B-16

APPEAL, DismPrej

## U.S. Bankruptcy Court
### District of Delaware (Delaware)
### Bankruptcy Petition #: 04-12419-JKF

*Assigned to:* Judith K. Fitzgerald
Chapter 13
Voluntary
Asset

*Date Filed:* 08/24/2004
*Date Dismissed:* 11/21/2006

**Debtor**
**David J Buchanan,** *BARRED FROM FILING*
*UNTIL NOVEMBER 23, 2008*
34806 Hudson Road
Laurel, DE 19956
302-875-1362
SSN: xxx-xx-7078

represented by **David J Buchanan**
PRO SE

**Trustee**
**Michael B. Joseph - Chapter 13 Trustee**
824 Market Street
P.O. Box 1351
Wilmington, DE 19899-1351
302-656-0123

**U.S. Trustee**
**United States Trustee**
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899-0035
302-573-6491

| Filing Date | # | Docket Text |
|---|---|---|
| 10/16/2006 | 155 | Response to *Motion for Sanctions* (related document(s)151 ) Filed by Barbara H Buchanan (Attachments: # 1 Exhibit A USDA form 6/8/2006# 2 Proposed Form of Order # 3 Certificate of Service) (Tyler, James) (Entered: 10/16/2006) |
| 10/24/2006 | 156 | Motion to Reinstate (related document(s)147, [135] ) Filed by David J Buchanan Hearing scheduled for 11/21/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 11/14/2006. (Attachments: # 1 Notice # 2 Proposed Form of Order) (BAM, ) Modified hearing time on 10/27/2006 (BAM, ). (Entered: 10/25/2006) |

E-17

| 10/27/2006 | 157 | Notice of Hearing on Motion to Reinstate scheduled for 11/21/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 11/14/2006. (related document(s)156 ) (BAM, ) (Entered: 10/27/2006) |
| --- | --- | --- |
| 10/27/2006 | 158 | Order Denying Motion for Sanctions. (related document(s)151 ) Order Signed on 10/24/2006. (LCN, ) (Entered: 10/27/2006) |
| 10/27/2006 | 159 | BNC Notice of Order Denying Motion for Sanctions. (related document(s)158 ) (LCN, ) (Entered: 10/27/2006) |
| 10/29/2006 | 160 | BNC Certificate of Mailing. (related document(s)159 ) Service Date 10/29/2006. (Admin.) (Entered: 10/29/2006) |
| 10/29/2006 | 161 | BNC Certificate of Mailing - Hearing. (related document(s)157 ) Service Date 10/29/2006. (Admin.) (Entered: 10/29/2006) |
| 11/01/2006 | 162 | Motion to Sell Property Free and Clear of Liens Filed by Barbara H Buchanan Hearing scheduled for 11/21/2006 at 10:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 11/14/2006. (Attachments: # 1 Notice of Motion, service list# 2 Proposed Form of Order) (Tyler, James) (Entered: 11/01/2006) |
| 11/15/2006 | 163 | ENTERED IN ERROR Motion to Strike *Motion to Sell Real Estate. related docket #162.* Filed by David J Buchanan Hearing scheduled for 12/19/2006 at 09:45 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 12/11/2006.. (BAM, ) Modified on 11/17/2006 (BAM, ). (Entered: 11/17/2006) |
| 11/15/2006 | 165 | Response to *Motion to Sell Property Free and Clear of Liens.* (related document(s)162 ) Filed by David J Buchanan (BAM, ) (Entered: 11/17/2006) |
| 11/17/2006 | 164 | Corrective Entry Motion to Strike. (related document(s)163 ). (BAM, ) (Entered: 11/17/2006) |
| 11/20/2006 | 166 | Response to *David J. Buchanan's Answer and Motion to Strike Motion to Sell Real Estate* (related document(s)162, 165 ) Filed by Washington Mutual Home Loans (Dignon, Neil) (Entered: 11/20/2006) |
| 11/21/2006 | 167 | Hearing Held. MODIFIED ORDER TO BE ENTERED THAT GRANTS RELIEF FORM THE STAY AS TO BARBARA BUCHANAN, DISMISSES CASE WITH PREJUDICE WITH A |

B-18

| | | |
|---|---|---|
| | | BAR TO REFILING FOR 2 YEARS, AND LIFTS THE STAY OF THE RELIEF FROM STAY TO MERS. (related document(s)162, 140, 30, 65, [135], 147, 153, 148, 156, 163, 157 ) (REB, ) (Entered: 11/22/2006) |
| 11/27/2006 | 168 | Motion to Reconsider Dismissal of Case Filed by David J Buchanan Hearing scheduled for 1/23/2007 at 08:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware.. (BAM, ) (Entered: 11/28/2006) |
| 11/30/2006 | 169 | Motion to Reinstate *Chapter 13 Bankrptcy Case.* (related document (s)[167] ) Filed by David J Buchanan Hearing scheduled for 1/23/2007 at 08:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 1/16/2007.. (Attachments: # 1 Proposed Form of Order) (BAM, ) (Entered: 11/30/2006) |
| 11/30/2006 | 170 | Notice of Hearing on Debtor's Motion to Reinstate Chapter 13 Case. Hearing scheduled for 1/23/2007 at 08:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 1/16/2007. (related document(s)[167] ) (BAM, ) (Entered: 11/30/2006) |
| 11/30/2006 | 171 | Motion to Allow *Confirmation of Bankruptcy.* (related document(s) 168 ) Filed by David J Buchanan. (BAM, ) (Entered: 11/30/2006) |
| 11/30/2006 | 172 | Amended Response to *Motion to Sell Real Estate.* (related document (s)162, 163 ) Filed by David J Buchanan (Attachments: # 1 Proposed Form of Order) (BAM, ) (Entered: 11/30/2006) |
| 11/30/2006 | 173 | Notice of Hearing on Motion to Reconsider Dismissal. Hearing scheduled for 1/23/2007 at 08:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 1/16/2007. (related document(s)168 ) (BAM, ) (Entered: 11/30/2006) |
| 12/01/2006 | 174 | Order Regarding Motion for Sale of Real Estate. (related document(s) 162 ) Order Signed on 12/1/2006. (LCN, ) (Entered: 12/01/2006) |
| 12/01/2006 | 175 | BNC Notice of Order Regarding Motion for Sale of Real Estate. (related document(s)174 ) (LCN, ) (Entered: 12/01/2006) |
| 12/02/2006 | 176 | BNC Certificate of Mailing - Hearing. (related document(s)170 ) Service Date 12/02/2006. (Admin.) (Entered: 12/03/2006) |
| 12/02/2006 | 177 | BNC Certificate of Mailing - Hearing. (related document(s)173 ) Service Date 12/02/2006. (Admin.) (Entered: 12/03/2006) |

B - 19

| 12/03/2006 | 178 | BNC Certificate of Mailing. (related document(s)175 ) Service Date 12/03/2006. (Admin.) (Entered: 12/04/2006) |
| 12/12/2006 | 179 | Motion to Extend Time to Appeal Under Rule 8002(c) . *related docket #162, 174.* Filed by David J Buchanan. (BAM, ) Modified text on 12/13/2006 (BAM, ). (Entered: 12/13/2006) |
| 12/13/2006 | 180 | Emergency Motion to Extend Time to Appeal Under Rule 8002(c) . *related docket #179 amended.* Filed by David J Buchanan. (BAM, ) (Entered: 12/13/2006) |
| 12/13/2006 | 181 | Notice of Appeal (No. 06-82) . Receipt Number 75839, Fee Amount $255. (related document(s)174 ) Filed by David J Buchanan. Appellant Designation due by 12/27/2006. (BAM, ) Modified added appeal No. on 12/14/2006 (BAM, ). (Entered: 12/13/2006) |
| 12/13/2006 | 182 | BNC Notice of Appeal. (related document(s)181, 174 ) (BAM, ) (Entered: 12/13/2006) |
| 12/15/2006 | 183 | BNC Certificate of Mailing. (related document(s)182 ) Service Date 12/15/2006. (Admin.) (Entered: 12/16/2006) |
| 12/19/2006 | 184 | Order Denying Motion for New Trial and to Extend Time to Appeal ) (Related Doc # 179), Denying Emergency Motion for New Trial and to Extend Time to Appeal ) (Related Doc # 180) Order Signed on 12/19/2006. (Baker, Ramona) (Entered: 12/19/2006) |
| 12/19/2006 | 186 | Motion to Strike *Motion to Sell Real Estate.* (related document(s)162, 166, 172, 165 ) Filed by David J Buchanan Hearing scheduled for 1/23/2007 at 08:30 PM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 1/16/2007.. (BAM, ) (Entered: 12/20/2006) |
| 12/19/2006 | 188 | Appellant Designation of Items For Inclusion in Record On Appeal *(BAP #06-82)* (related document(s)181 ) Filed by David J Buchanan. (Attachments: # 1 Attachment designations# 2 Exhibit 1# 3 Exhibit 2# 4 Exhibit 3# 5 Exhibit 4# 6 Exhibit 5# 7 Exhibit 6# 8 Exhibit 8# 9 Exhibit 9# 10 Exhibit 10) Exhibit #7(BAM, ) 12/20/06 (Entered: 12/20/2006) |
| 12/20/2006 | 185 | BNC Notice of Order Denying Motion for New Trial and to Extend Time to Appeal ) (Related Doc # 179), Denying Emergency Motion for New Trial and to Extend Time to Appeal ) (Related Doc # 180) Order Signed on 12/19/2006. (related document(s)184 ) (BAM, ) (Entered: 12/20/2006) |
| 12/20/2006 | 187 | ENTERED IN ERROR Notice of Hearing on Motion to Strike |

B - 20

|  |  |  |
|---|---|---|
|  |  | Motion to Sell Real Estate. Hearing scheduled for 1/23/2007 at 08:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 1/16/2007. (related document(s)186 ) (BAM, ) Modified on 1/17/2007 (BAM, ). (Entered: 12/20/2006) |
| 12/22/2006 | 189 | BNC Certificate of Mailing. (related document(s)185 ) Service Date 12/22/2006. (Admin.) (Entered: 12/23/2006) |
| 12/22/2006 | 190 | BNC Certificate of Mailing - Hearing. (related document(s)187 ) Service Date 12/22/2006. (Admin.) (Entered: 12/23/2006) |
| 01/11/2007 | 191 | Notice of Dismissal (related document(s)[167] ) (BAM, ) (Entered: 01/11/2007) |
| 01/13/2007 | 192 | BNC Certificate of Mailing - Notice of Dismissal. (related document (s)191 ) Service Date 01/13/2007. (Admin.) (Entered: 01/14/2007) |
| 01/16/2007 | 193 | Response to *Debtor's Answer and Motion to Strike* (related document (s)186 ) Filed by Barbara H Buchanan (Attachments: # 1 Proposed Form of Order # 2 Certificate of Service) (Tyler, James) (Entered: 01/16/2007) |
| 01/17/2007 | 194 | BNC Notice of Of Clerical Error. Hearing Inadvertently Noticed for 1/23/07 WILL NOT BE HELD. (related document(s){187,181, 174 ) (BAM, ) (Entered: 01/17/2007) |
| 01/17/2007 | 195 | Corrective Entry. Notice of Clerical Error. (related document(s)187 ) (BAM, ) (Entered: 01/17/2007) |
| 01/18/2007 | 197 | Transmittal of Record on Appeal #06-82 to District Court #07-34. (related document(s)181, 188 ) (BAM, ) (Entered: 01/22/2007) |
| 01/19/2007 | 196 | BNC Certificate of Mailing. (related document(s)194 ) Service Date 01/19/2007. (Admin.) (Entered: 01/20/2007) |
| 01/23/2007 | 198 | Mail Returned to the Court: Documents (related document(s)181, 174 ) addressed to Barbara A. Buchanan, 3434B Lackland Way, Bolling, AFB, DC 20032-7203 wwere returned to the court due to no such number. Counsel is required to forward document to the appropriate addressee, file a certificate of service and change of address with the court. (JRH, ) (Entered: 01/23/2007) |
| 01/24/2007 | 199 | Request for Transcript re: Appeal *#06-82, District Court' cv #07-34. related docket #181.* Filed by David J Buchanan. (BAM, ) (Entered: 01/24/2007) |
|  |  |  |

B - 21

| 01/31/2007 | 200 | Notice of Docketing Appeal ABP#06-82 in District Court civil action #[07-34]. (related document(s)181 ) (BAM, ) Modified added appeal no. on 3/22/2007 (BAM, ). (Entered: 01/31/2007) |
| 03/30/2007 | 201 | Motion to Extend Time *to file Appellant' Brief. (District Court 07-34 SLR)* (related document(s)200 ) Filed by David J Buchanan. (BAM, ) (Entered: 04/02/2007) |
| 04/09/2007 | 202 | Transcript of Hearing held on October 24, 2006 before the Honorable Judith K. Fitzgerald. (BJM) (Entered: 04/09/2007) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| 05/02/2007 16:01:45 | | | |
| **PACER Login:** | jt0021 | **Client Code:** | Buchanan |
| **Description:** | Docket Report | **Search Criteria:** | 04-12419-JKF Fil or Ent: filed From: 10/1/2006 To: 5/2/2007 Doc From: 0 Doc To: 99999999 Term: included Format: HTML |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

B-22

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In Re David J. Buchanan,                    :
            Debtor                        :          Case No. 04-12419JKF

## ORDER FOR RELIEF FROM AUTOMATIC STAY

The Court having considered the February 10, 2005 MOTION FOR RELIEF FROM AUTOMATIC STAY of Barbara H. Buchanan, after notice and a hearing, and after concluding that cause for relief exists:

IT IS SO ORDERED this __19th__ day of ~~April~~ May, 2005 that

1.    The automatic stay of 11 U.S.C. §362 is terminated as to Barbara H. Buchanan for all purposes and the Delaware Family Court proceedings between her and the Debtor may continue to their conclusion.

2.    Upon receipt of a property division advisory opinion of the Family Court, Barbara H. Buchanan must return to this Court if Debtor's proceeding is still pending, and move for an order of the distribution of any property ordered distributed by the Family Court.

*Judith K. Fitzgerald*

Bankruptcy Judge

B - 23

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In Re David J. Buchanan,            :

          Debtor          :        Case No. 04-12419JKF

### WIFE'S FILING OF COPY
### OF
### FAMILY COURT ORDER ON PROPERTY DIVISION

Barbara H. Buchanan, ex-wife of Debtor, David J. Buchanan, files the attached copy of the April 4, 2006 Order of the Honorable John E. Henriksen in the Family Court of Sussex County, Delaware for the consideration of this Court, and asks the Court to follow this Order in granting Movant's 2/1/06 Motion for Clarification of Prior Order, Docket Entry 97.

Dated: April 18, 2006

James B. Tyler, III
DE Bar No. 530
211 E. Market St.
P.O. Box 555
Georgetown, DE 19947

B-24

## CERTIFICATE OF SERVICE

James B. Tyler, III certifies that the foregoing WIFE'S FILING OF COPY OF FAMILY COURT ORDER ON PROPERTY DIVISION was served by depositing a copy in a U. S. Postal Service Receptacle for the deposit of mail in Georgetown, DE this 18th day of April, 2006 first class postage prepaid, addressed to:

Mr. David J. Buchanan
34806 Hudson Rd.
Laurel, DE 19956

Michael B. Joseph, Trustee
P.O. Box 1351
Wilmington, DE 19899-1351

James B. Tyler, III
DE Bar No. 530
211 E. Market St.
P.O. Box 555
Georgetown, DE 19947

B-25

THE FAMILY COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

| | | |
|---|---|---|
| In Re the Matter of: | : | File No.    CS94-3107 |
| Barbara H. Buchanan | : | Petition No.   03-00932 |
|      Thomas E. Gay, Esquire, | : | DECISION & ORDER: PROPERTY DIVISION |
|    v. | : | |
| David J. Buchanan, | : | |
|      *Pro Se.* | : | |

---

> **Date Submitted: March 21 & 22, 2006**
> **Date Decided: April 4, 2006**

This is the Court's Decision and Order to determine the division of marital property between Barbara H. Buchanan (wife) and David J. Buchanan (husband). In a separate Decision and Order entered on March 17, 2006, the Court sanctioned husband for his clear violation of compliance of discovery obligations by dismissing his claim for alimony. A Pre-Trial Order of this Court dated February 15, 2006 set forth the Court's requirements for post-trial filings on the remaining issues of costs and attorney's fees.

The parties married April 6, 1981, separated in November of 2002, and divorced August 6, 2003, thereby concluding a marriage of 22-1/2 years. Two children were born of the marriage, Heidi and Patrick. Heidi turned 18 on March 10, 2006. Patrick died in an unfortunate incident a few months prior to the parties' final separation. Patrick passed away September 18, 2002.

B-26

The parties had been separated on more than one occasion during their marriage. In fact, as evidenced by a Stipulation signed by both parties on January 14, 1994, the original of which is identified as *Document 4* in the Court's voluminous file, the parties agreed on an interim basis to share joint legal custody of their children, with mother having primary placement as she moved to reside in East Lansing, Michigan. The parties' Interim Agreement set minimum requirements for father's visitation. The parties also agreed, again on an interim basis, that wife would assume sole responsibility for the support and needs of the children in return for which husband agreed to be solely responsible for payment of all marital debts and preservation of the marital property until the parties finally resolved their property division. The parties eventually reconciled.

In 1998 the parties, although not separated, reached a mutual agreement for financial reasons whereby wife and the children would live in Washington, D.C. where wife continued her service with the United States Air Force. The parties had acquired property in southern Delaware, including a farm parcel of approximately 99 acres, but were having financial difficulties in keeping the farm. As such, husband continued to remain on the farm in Delaware, and wife could earn more money by working in Washington. During this time, the children attended 1 year of public school and then entered a private school. Wife, with the financial assistance from a friend named Betty Somales, was able to pay for the private school. During this time period, husband did not pay any support to wife for the children's benefit. During this time, however, wife sent home to husband an average of $700 per month to be applied towards bills for the

2

B-27

residence and assistance with payment of the mortgages.   The parties

maintained separate checking accounts during most of their 22 years of

marriage.

The parties' daughter moved to father's home in Laurel, Delaware

following the death of their son.  Their daughter resided with husband for the

months of September and October of 2002.  During this time, wife came home

some weekends.  However, wife stopped coming home and the parties finally

separated in November of 2002.  Around this time, wife paid husband $500 per

month for 3-4 months, divided into payments of $250 for their daughter's support,

and $250 per month to husband, which wife termed as alimony.  Heidi moved

back with her mother in February of 2003, at which time wife stopped making

payments of any type to husband.  Since February of 2003, wife acknowledged

that she has made no payments to husband, nor has she made any payments on

any of the bills for the Delaware real estate, including any contribution towards

payment on the outstanding mortgages.

### REAL ESTATE

The parties real estate, all of which is situated in the State of Delaware,

was the major issue for each of the parties.  Wife had no interest in retaining two

of the parcels of the real estate and desired that they be sold.  Husband, on the

other hand, desired to retain all of the real estate.  Husband argued that he was

entitled to 100% of the value of the real estate because wife had not made any

contribution to assist with the mortgage payments on the properties when

husband fell behind in his payments, and because wife did not join with husband

3

B-28

on the bankruptcy proceeding that husband filed in order to stay, and perhaps stall, the inevitable sale of these properties. The parties both agreed that husband would retain a third parcel of property they acquired in 1992 on land located in Smyrna, Delaware with an agreed-upon value of $8,000.

The first witness called by wife to present testimony was Steve Houston, a Delaware-certified residential real estate appraiser with at least 15 years of experience. There had been a history in this case of husband instructing wife that neither wife, nor any of her agents, including real estate appraisers, could enter the property. Husband threatened to press criminal charges against any of these people who attempted to enter upon the property. Although the Court's Pre-Trial Order of February 7, 2006 ordered husband to cooperate in allowing entrance upon the land and dwellings to permit an appraisal, wife's appraiser only completed and testified to a range of value, rather than a full appraisal. According to Mr. Houston, wife was unwilling to pay Mr. Houston's quoted fee of $3,500. As such, Mr. Houston's range of values was clearly less than a complete appraisal, and only presented information in comparables by what could be found on Court house records, rather than after completing a thorough inspection of the properties.

After Mr. Houston had given his range of values for two of the properties, husband then proceeded in cross examining Mr. Houston by showing Mr. Houston various deeds of properties that had been sold, assumedly in the vicinity of the subject properties, and asking Mr. Houston whether or not these properties presented better comparables than the comparables used by Mr. Houston. As

husband was attacking Mr. Houston's range of values, which were at least better than having no evidence to guide the Court as to what the various properties were worth, the Court interrupted husband's cross examination by inquiring whether husband was going to have an appraiser testify. At that point in time, husband responded that he did not have an appraiser, and that he could not afford an appraiser. When the Court hypothetically used a mid-point in the range of Mr. Houston's estimates and asked husband if he would be willing to pay wife a hypothetical amount of 50% of that value, husband indicated he could not afford to pay "anything" to wife. When the Court then asked wife whether she was interested in retaining the real estate by buying out husband's interest, she said she was not. At this point in time, the Court terminated any further testimony on the issue of the real estate. The Court determined at that point in time that the only way in which a fair determination of the value of the disputed properties could be made would be to resort to an actual sale of the disputed properties.

The first disputed property consists of the marital home and 26.2 acres of land upon which it is situated, being parcel 15.06 on map 9 in Sussex County district 3-32. The property is located on the west side of County Road 458. The property was acquired by deed dated October 30, 1990, from James M. White and Kaye M. White, his wife, to David J. Buchanan and Barbara H. Buchanan, his wife, as found in Sussex County Deed Book 1747, Page 272. Mr. Buchanan, with the help of his brother, built a home on this property in 1991, during a time period in which husband was unemployed. During this time period, wife was

B-30

working with the Air Force Reserve in Dover, Delaware, where she lived and took care of the couple's two young children. Mr. Houston gave an estimated range of value for the former marital home and 26.2 acres between $394,200 and $499,320.

On January 14, 1994, the parties acquired 89.2023 acres of land from Lewis S. Lowe and Bonnie K. Lowe, his wife, as described in Sussex County Deed Book 1957, Page 149. The property is Sussex County tax parcel 46.03 on map 19.00 in district 2-32. There were times during the marriage before the parties acquired any substantial farming equipment that both husband and wife would work in the fields together. That work included hand-hoeing over 90 acres of land and hand-sowing the seeds. The farm, zoned AR-1, has no road frontage and is limited to easement access. All of Mr. Houston's comparables had at least 1,000 feet of road frontage. Some of the deed transactions which husband showed Mr. Houston, attempting to have Mr. Houston suggest they were better comparables, had properties that had been sold with minimal road frontage. Unfortunately, there was no advance notice to Mr. Houston to be able to perform a detailed examination of the deeds presented to him by husband. Most of husband's deed transactions reflected sales of property less timely in nature than the comparables presented by Mr. Houston. There was simply insufficient evidence available to the Court to assign any realistic value to these properties. Mr. Houston also commented on the recent quickly-rising and speculative nature of the real estate market in Sussex County, Delaware, thereby noting the difficulty in valuing properties even if he had completed a complete appraisal.

6

B-31

For the farm property, which is unimproved with real estate, Mr. Houston assigned a range of value between $535,200 and $713,600.

The ranges of value given by Mr. Houston for each of these properties is vastly different than the original values assigned to the properties by the parties when they filed their 16(c) Pre-Trial Asset Report in September of 2003. Both parties set a value on the property on which the home is situate of $130,000. On the farm property, the parties' values ranged from $138,500 to $150,000. Not only did husband argue for various reasons that he should be awarded 100% of these properties, he also argued that the Court should use the values the parties set forth in their 16(c) reports dated more than 2 years ago. The Court has discretion in deciding the dates of when these properties should be valued, and is not limited to what would be an extremely inequitable distribution of property if the Court were to limit itself to the use of the values set forth in the parties' 16(c) report in this case. As such, the only true basis for obtaining a real value for these properties is to sell both the property upon which the marital home is situate as well as the farm. This is particularly appropriate where husband cannot afford to buy out wife's interest, and wife wants the properties sold. The particulars of this sale shall be addressed in the Order at the conclusion of this Opinion.

## RELEVANT FACTORS IN PROPERTY DIVISION

Pursuant to Del. Code Ann. tit. 13, § 1513, the Court is required to equitably divide, distribute and assign marital property between parties without regard to marital misconduct, in such proportions as the Court deems just after

7

B-32

considering all relevant factors, including the specific factors set forth in Del. Code Ann. tit. 13, § 1513. Those factors on which this Decision will now comment are as follows:

## THE LENGTH OF THE MARRIAGE

The Court has already noted that this was a lengthy marriage of 22-1/2 years.

## ANY PRIOR MARRIAGE OF THE PARTY

This was the first marriage for both of the parties.

## THE AGE, HEALTH, STATION, AMOUNT AND SOURCES OF INCOME, VOCATIONAL SKILLS, EMPLOYABILITY, ESTATE, LIABILITIES AND NEEDS OF EACH OF THE PARTIES

Wife is 45 years of age, being born October 3, 1960. She has a high school diploma in addition to completion of 2 years of college, but without a degree. Wife has been employed by the United States Air Force, stationed at the Pentagon, since 1988. Her taxable income from her 2005 employment was $49,593. Wife also enjoys certain military benefits, such as housing, because she lives on the base. This issue was closely examined in a Child Support Decision and Order of a Commissioner of this Court dated January 6, 2004, where the Commissioner attributed to wife overall income including taxable income and non-taxable benefits, totaling $62,500. Because wife's income has increased slightly since the Commissioner's calculation, the Court expects that the Commissioner would now calculate wife's total income benefit to be approximately $65,000. Wife is in good health.

B-33

Husband is 46 years of age, having been born December 5, 1959. He has a high school diploma and a bachelor's degree in Mathematics from Delaware State College. During the several years of these proceedings husband has claimed that he was unable to work because he suffered from cancer. However, husband for quite some time refused to provide any documentation to wife's counsel or the Court as proof of his ailment. Husband failed to appropriately respond to discovery in which information about this issue was clearly requested by wife and her counsel.

At the present hearing, husband presented no testimony concerning any limitations on his health. The Commissioner's Child Support Order in January of 2004 attributed husband with income of $29,000. Prior Orders of this Court reflect that husband has never been consistent in reporting his income to this Court. In fact, it has been very difficult for this Court to obtain accurate and verified information from husband concerning his income. Interestingly, husband filed an amended bankruptcy schedule on August 15, 2005 in which he reported his primary gross income to be $2,743 per month, together with farm income of an additional $1,200 per month, for a total monthly income of $3,943, or $47,316 per year. Husband testified that he lost his main source of income with the Heinz Company shortly following this August 15, 2005 filing with the Bankruptcy Court. Husband made no indication to the Court that he has since filed an additional amended income schedule with the Bankruptcy Court where this may be an issue. As of August 15, 2005, however, husband indicated he was able to work 72 hours per week with the Heinz Company.

9

B-34

Husband's Buchanan Farms, Inc. bank account showed that husband paid for a ski lift ticket on January 12, 2004 only a few months following his report of September 26, 2003 that he had no current annual income.  Husband alleged that he had no current annual income at that time because he was receiving chemotherapy treatments for his cancer.  Husband was also using his Buchanan Farms, Inc. account to write checks for grocery store bills and utilities.

Husband indicated that he has not worked for the past several months because he has devoted his full time and attention to pursuing his various legal actions which exist in at least 3 different Courts.

Based upon the best information available to the Court, which is limited only because of husband's failure to comply with appropriate discovery requests, husband is healthy, fully capable of work at this time, and is capable of earning at least $47,316 per year, the amount he reported in his amended bankruptcy filing on August 15, 2005.  Because of husband's failure to comply with discovery, wife cannot prove, and the Court cannot determine, whether or not husband is concealing additional income that may be available to him under his Buchanan Farms, Inc. operation.

## WHETHER THE PROPERTY AWARD IS IN LIEU OF OR IN ADDITION TO ALIMONY

As previously noted, the Court has dismissed husband's claim for alimony as a sanction for his failure to comply with discovery.

Certified
Jones

B-35

## THE OPPORTUNITY OF EACH FOR FUTURE ACQUISITIONS OF
## CAPITAL ASSETS AND INCOME

The Court was not aware of any opportunity that either of the parties has to acquire future acquisitions of capital assets and income, except with the proceeds they will receive on their respective shares from the sale of the marital real estate properties. Although husband attempted to argue that wife had been concealing assets, he was unsuccessful in alleging sufficient testimony to provide adequate proof in support of his claim. Unfortunately, because of husband's failure to respond to appropriate discovery, wife was not provided the opportunity to delve into the possibility that husband may have been diverting assets elsewhere from which he might eventually benefit.

## THE CONTRIBUTION OR DISSIPATION OF EACH PARTY IN THE
## ACQUISITION, PRESERVATION, DEPRECIATION OR APPRECIATION
## OF THE MARITAL PROPERTY, INCLUDING THE CONTRIBUTION OF
## A PARTY AS A HOMEMAKER, HUSBAND, OR WIFE

The Court has already discussed the various contributions of the parties during their marriage which included both of them working alongside each other in the fields, wife living in Washington, D.C. so that she could earn a greater income to support the farm where husband worked the farm, and wife being the primary caretaker of the children during the parties' marriage. It is the Court's opinion that up until the time of separation, both parties properly contributed to the general marital estate. The Court is unwilling to accept husband's argument, which was not supported by any precedent, that wife's refusal following their

11

15-36

separation to make further payments to husband or towards the mortgages would constitute just cause for wife to have forfeited any interest she might have in the property.

Some time during 1988, the parties were involved in an automobile accident in which both parties were in the vehicle. Wife testified that she received a $40,000 award for her injuries, which was payable solely to her. Husband indicated that he was also injured. When the Court mentioned the wording "loss of consortium", husband recognized this term. It was husband's contention that the $40,000 amount the parties received was payable to both of them and in part for husband's injuries including his loss of consortium. Since there was no specific evidence provided on this matter, and because the award was received well near the beginning of the marriage, the Court will not give consideration to this personal injury award as a contribution from either party.

### THE VALUE OF THE PROPERTY SET APART TO EACH PARTY

Husband gave no position on the division of personal property. The Court accepts wife's position that wife should have all items of personal property, meaning such things as furniture and the like, which are now in her possession, while husband shall all of those items of personal property, again meaning things such as furniture and the like, that are now in his individual possession. These items are assigned to each of the parties without attribution of value.

The parties also stipulated that husband would receive the 1994 Honda Accord with a stipulated value of $3,025, the Ford F-250 pick-up with a stipulated value of $6,500, and the 1968 Chevy truck with a stipulated value of $500.

12

B -37

At the time of the parties' separation, wife was driving the above-referenced 1994 Honda Accord. Wife claimed that husband eventually entered onto the military base and took from her the 1994 Honda Accord. Although the Court does not need to decide whether or not this actually occurred, the reality is that husband came into possession of the vehicle and wife was left without a vehicle. Wife therefore, post-separation, acquired a 1991 Honda Civic after her mother put $1,500 of repairs into the vehicle. The vehicle stopped running. Wife then bought a 2003 Honda Accord for a purchase price of approximately $23,500 with an accompanying debt against the vehicle in wife's name only in the same amount. The 2003 Honda Accord shall continue to be wife's sole and separate property. Because the item was acquired post-separation in wife's name alone and also fully funded by a non-marital debt for which wife alone is responsible, the Court does not need to assign a value in the division of marital property.

Husband failed to provide any evidence about his valuation of various items of farm equipment. Wife, in her testimony, however, reviewed the various items of farm equipment, noted the value assigned by each of them in their 16(c) report, and indicated a willingness to have the Court value these items of equipment by averaging the parties' reported values, with husband receiving the particular items. As such, husband is assigned the John Deere 4640 tractor valued at $11,500, the John Deere 5400 tractor valued at $5,600, the John Deere 7000 corn planter valued at $4,500, and the disk valued at $4,450. Husband provided no value on the miscellaneous tractor equipment, which wife

B-38

valued at $4,000. Husband is therefore assigned the miscellaneous tractor equipment with a value of $4,000.

Husband testified that the Freightliner tractor trailer was repossessed. From that repossession, husband advised that he received no value. Husband also stated that the debt was solely in husband's name, and the debt has been discharged.

The Court was unable to value the corporate entity of Buchanan Farms, Inc. Wife was unable to present any testimony on this issue because of husband's failure and unwillingness to provide appropriate responses in discovery which might have assisted in the valuation of the assets. However, having heard the testimony of the parties, and the understanding that Buchanan Farms, Inc., was basically Mr. Buchanan, the Court does not believe it needs to delve further into an investigation as to whether Buchanan Farms, Inc., as an entity, is worthy of sale and purchase other than for the land and equipment owned by it. It is the Court's understanding that all of the farm equipment previously mentioned is the property of husband or wife, and was acquired during the marriage. In the event these items of farm machinery and equipment are titled in the name of Buchanan Farms, Inc., and given that husband is hereby awarded the entity of Buchanan Farms, Inc., these items of machinery and equipment continue to benefit husband, and the values thereof continue to be assigned to him as part of the value of Buchanan Farms, Inc.

A review of the Farm Family Casualty insurance policy (*Exhibit* 19) which husband admittedly completed and which became effective February 20, 2000,

revealed that husband in relation to the farm listed a five tower corner irrigation system valued at $50,000, a 2,500 gallon liquid fertilizer tank/pump valued at $2,200, and a 751 bobcat valued at $17,000. Husband also listed supplies and tools valued at $5,000. Because of husband's failure to answer discovery, which may have provided more recent information on these items, and also because husband has not completed his income tax returns for the past few years, which may have also shed more light on the value of these items, the Court is left with a value of these items as described in the insurance policy of 2000. The Court accepts husband's testimony that the 751 bobcat was leased from a company which required that he ensure it on the policy, although the Court has some difficulty with the reality that the bobcat is still on the farm in husband's possession and the leasing company has supposedly become defunct. If wife eventually discovers that husband has continued to exercise ownership and control over the bobcat, or sells the bobcat and reaps a benefit from the sale, wife will be permitted to re-open these proceedings to seek her share of the value of the bobcat. The Court awards husband the irrigation system valued at $50,000, the 2,500 liquid fertilizer tank/pump valued at $2,200, and the farm supplies and tools valued at $5,000. If these items are held in the name of Buchanan Farms, Inc., then these items accrue to husband as part of the value of the corporation of which husband is the sole stock holder.

B-40

## THE ECONOMIC CIRCUMSTANCES OF EACH PARTY AT THE TIME THE DIVISION OF PROPERTY IS TO BECOME EFFECTIVE, INCLUDING THE DESIRABILITY OF AWARDING THE FAMILY HOME OR THE RIGHT TO LIVE THEREIN FOR REASONABLE PERIODS TO THE PARTY WITH WHOM ANY CHILDREN OF THE MARRIAGE WILL LIVE

The Court has already addressed these issues previously. Because the youngest child has now turned 18, there need not be any consideration of awarding the former family residence or right to live therein to either party.

## WHETHER THE PROPERTY WAS ACQUIRED BY GIFT, EXCEPT THOSE GIFTS EXCLUDED BY SUBSECTION (B)(1) OF THIS SECTION

This was not an issue in this case.

## THE DEBTS OF THE PARTIES

The Wilmington Trust Company holds a mortgage against the approximately 90 acres of farm property. It was difficult for the Court to determine the remaining balance of the mortgage. However, the amount appears to be approximately $130,000. Husband acknowledged that the mortgage to the Wilmington Trust Company is in arrears. The exact amount of this indebtedness will need to be determined, and will be paid from the eventual proceeds from the sale of the farm. The Court understands an Order from the Bankruptcy Court dated May 19, 2005, unless subsequently modified, requires the Bankruptcy Court to approve this Court's Order before the sale may go forward.

16

B-41

The Washington Mutual Company, or some entity who has taken over the mortgage by assignment from Washington Mutual, holds a mortgage against the home and approximately 26 acres. It was also difficult for the Court to make a determination of the amount owed on this debt. According to both sides' testimony, it has been difficult to obtain this information from the creditor. It appears, however, that the present balance of the mortgage is approximately $85,000. This mortgage will also be paid from any sale proceeds of the former marital home property. As already noted, the Bankruptcy Court may need to approve this Court's Order before the sale can go forward.

The Court should note that the United States Bankruptcy Court for the District of Delaware issued an "Order for Relief from Automatic Stay" on May 19, 2005, directing that:

1. The automatic stay of 11 U.S.C. 362 is terminated as to Barbara H. Buchanan for all purposes in the Delaware Family Court proceedings between her and the debtor may continue to their conclusion.

2. Upon receipt of a Property Division Advisory Opinion of the Family Court, Barbara H. Buchanan must return to this Court if debtor's proceeding is still pending, and move for an Order of Distribution of any property ordered distributed by the Family Court.

There is also a judgment against the parties held by Southern States Cooperative, Inc., arising out of the Court of Common Pleas of the State of Delaware in and for Sussex County in Civil Action No. 97-06-009, dated September 25, 1998, in the amount of $28,284.23 as of May 5, 1997, together with pre-judgment and post-judgment interest at the contract rate of 15% per annum. Wife's wages have been garnished on this judgment, and continue to be

B-42

garnished at the rate of $675 per month. Since November of 2003, wife has paid approximately $18,900 on this debt through these garnishments. Wife seeks, and is entitled to, contribution of a portion of her payments on this marital debt.

Husband was not clear as to whether or not he has made payments on the mortgages against the home property and the farm, and presented no clear testimony about how much he has paid, if he has made any payments. The Court is therefore not in a position to award husband any type of credit for the payments he may have made.

Wife presently owes approximately $16,000 that she has borrowed from her mother, Virgette Slovinsky. Wife submitted an Affidavit approximating when she received loans from her mother, as well as a schedule of her repayments. Wife also testified that she owes a friend, Ron Irick, the sum of $31,000. Wife does not claim these debts to be marital debt. Instead, these are debts wife incurred since the parties' separation or close to their separation in order that she could make ends meet. These obligations to Ms. Slovinsky and Mr. Irick are not considered marital debt and wife is not seeking credit for the payments she has made on these obligations.

Husband attempted to raise questions about what wife had done with various monies belonging to their son Patrick, as well as to their daughter Heidi. The Court would not allow husband to pursue questioning in these areas. If husband has not received a proper accounting from Patrick's estate, he can proceed in a different Court for that information. Husband testified that he has already filed suit in the Superior Court on his daughter's behalf, the suit having

18

B-43

been filed when she was still a minor. These areas are not within the jurisdiction of this Court.

Husband testified that a former Milford Fertilizer debt incurred in or about 1998 has been paid in full or has been discharged. He also indicated a debt associated with the rental of a piece of farm equipment (bobcat) was no longer an issue, noting that the leasing company had gone bankrupt. As previously noted, the bobcat is still located on the farm property.

Husband indicated that the Pioneer Seed debt which he incurred in 2003, which had an approximate balance of $3,800, has been satisfied by him. In the event that the Milford Fertilizer, bobcat-related debt, and/or Pioneer Seed debts are still in existence, and because husband testified that they are no longer in existence, they will paid out of husband's share of any proceeds from the distribution of the sale of the parties' real estate in the event they are found to still be in existence.

### Tax consequences

No testimony was provided about any tax consequences that any division of property may cause to either of the parties. The Court is aware, however, that each of the parties have military pensions, and that each party is entitled to an interest in the other's pension for the time periods they were employed during the marriage. The Court is mindful that the use of a Qualified Domestic Relations Order (QDRO) or some type of similar military required Allocation Order, will assist the parties in avoiding adverse income tax consequences. These pensions will therefore need to be divided pursuant to Qualified Domestic

B-44

Relations Orders or other similar Orders using a Cooper Formula with a 50%
multiplier. Pursuant to the Cooper Formula, the Orders will be structured so that
each party will receive their appropriate share of the pension if, as, and when the
pensioned party is entitled to receive their pension. The portion of the pension to
be received by the other party will be determined by taking the amount of the
payment when it is to be paid, multiplying it by the number of years the pensioner
worked under the pension plan while married, divided by the total number of
years the pensioner worked under the plan, and then using the 50% multiplier.

### OTHER FACTORS

As of March 20, 2006, husband is in arrears of his child support obligation
payable to wife in the amount of $7,811.57. This amount shall be deducted out
of any share of the proceeds from the sale of the real estate to which husband
may be entitled, and shall be paid over to wife.

### CONCLUSION AND ORDER

Having considered all relevant factors in this marital property division, it is
the Court's conclusion that an equitable division of marital assets is an equal
division.    The Court believes that wife produced all relevant information
concerning the status of her health, assets and sources of income, while
husband, unfortunately, was less than candid in his disclosures. Although the
paper amounts determined for wife's income, including the benefits she receives
from living on base in military housing, are somewhat greater than the income
husband has projected in his August 2005 amended bankruptcy filing, husband
admitted that he has spent very little time working of late so that he could devote

his full time and attention to his pending legal matters.  The Court therefore believes that husband has the capability of earning an income equal to or greater than the income wife is presently earning.  The Court also believes that each party has made their appropriate contributions to the marital estate.  The Court has set aside to husband the following assets at the following values, totaling $105,275:

| ASSET | VALUE |
|---|---|
| Smyrna, Delaware real estate | $8,000 |
| 1994 Honda Accord | $3,025 |
| Ford F-250 pick up | $6,500 |
| 1968 Chevy pick up | $500 |
| John Deere 4640 | $11,500 |
| John Deere 5400 | $5,600 |
| John Deere 7000 corn planter | $4,500 |
| Disc | $4,450 |
| Miscellaneous tractor equipment | $4,000 |
| Five tower irrigation system | $50,000 |
| 2500 gallon fertilizer tank/pump | $2,200 |
| Blanket farm products/tools/supplies | $5,000 |
| Total | $105,275 |

If wife's name is on any deed for the Smyrna, Delaware property, husband will be responsible for the costs of preparation of the deed, tax affidavits and any filing fees associated with wife's transfer of her interest in the Smyrna real estate to husband.

The former marital home property and the farm property shall immediately be listed for sale with Cooper Realty, under such terms and conditions as Cooper Realty directs for the sale of the property.  Both parties shall cooperate in executing any documents necessary for the completion of the listing, as well as the eventual sale and settlement documents.  In the event either party fails to

cooperate, either party may file a motion with this Court seeking an Order authorizing the Clerk of the Court to execute any necessary documents to complete the listing, sale and eventual transfer of property. If Cooper Realty is unsuccessful in selling the property within six months from the mailing date of this Order, the marital home and farm properties shall thereafter be listed for sale at public auction. Wife, with Cooper Realty's advise and direction, may select a Delaware-licensed auctioneer to handle the auction.

Once the real estate is sold, and all liens against the real estate are paid in full, it being understood that these liens or indebtedness shall include, at minimum, the mortgage and accompanying indebtedness to both mortgages mentioned in this opinion, as well as the indebtedness and judgment to Southern States, and after all expenses related to all listings, settlements, auctioneers' costs, real estate agents' costs, and other expenses necessary to pass good and sufficient title, the remaining proceeds of settlement shall be divided between husband and wife on an equal basis, but with the following exceptions:

1.    Out of husband's share of the proceeds, wife shall be paid the sum of $7,811.57 for child support arrears as of March 20, 2006, and;

2.    Out of husband's share of the proceeds, wife shall be paid one-half of all amounts which have been attached by Southern States from wife's wages since November of 2003, which the Court understands to be in the approximate amount of $675 per month and which, as of the date of the Court's hearing, was in the approximate total amount of $18,900, and;

22

B-47

3.   Out of husband's share of the proceeds, wife shall be paid the sum of $52,637.50 in recognition of the items of personal property and the Smyrna, Delaware real estate awarded to husband pursuant to this Order, and;

4.   Such attorney's fees and costs that the Court may order following this Opinion shall also be paid out of the share of the party ordered to pay any fees and costs to the other party.

IT IS SO ORDERED this 4th day of April, 2006.

JOHN E. HENRIKSEN, JUDGE

JEH:

PC:   Thomas E. Gay, Esquire
      David J. Buchanan
      CS94-3107
      File

Date Mailed:   April 06, 2006

23

B-48

## File a Motion:

04-12419-JKF David J Buchanan

**U.S. Bankruptcy Court**

**District of Delaware**

Notice of Electronic Filing

The following transaction was received from Tyler, James B. entered on 4/18/2006 at 11:19 AM EDT
and filed on 4/18/2006
**Case Name:**        David J Buchanan
**Case Number:**     04-12419-JKF
**Document Number:** 117

**Docket Text:**
Motion to Allow *Family Court Order on Property Division* (related document(s)[97] ) Filed by Barbara
H Buchanan. (Attachments: # (1) Certificate of Service # (2) Attachment 4-4-2006 Family Court Order)
(Tyler, James)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\Lee\My Documents\to send\Buchanan - Wife's filing of
Cy of FC Order.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=4/18/2006] [FileNumber=4854817-0]
[67af6308921fb5faa6564ac39a5ac406bbc780c24ad7ccd02b45d58d0b2db651a94e
9a0d94a738641acc1737f9744d517ab325cb03317b640f7ac05e2e7ceb0f]]
**Document description:**Certificate of Service
**Original filename:**C:\Documents and Settings\Lee\My Documents\to send\Buchanan - Wife's filing of
FC Order Cert Srv.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=4/18/2006] [FileNumber=4854817-1]
[218c3e9eeec0b0dba81334fae95c190bab93c8c53f335706d4e8da7e7b62b0c3a8ab
d5d7cf4f84f1df9bf1c3304219c3f2ec7689b223f6df0b7a8117d830b00e]]
**Document description:**Attachment 4-4-2006 Family Court Order
**Original filename:**C:\Documents and Settings\Lee\My Documents\to send\Buchanan - FC Order.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=4/18/2006] [FileNumber=4854817-2]
[968214569b62d65b036b5a5b8f73ef370012ecebca20b36cc4cc881532b28070326e
a5dc758be615d8c78ca4413101cbdf00814e88160d87958166d463c2c970]]

## 04-12419-JKF Notice will be electronically mailed to:

Lara Anne Armstrong     bkmail@mccalla.com

Neil F. Dignon
afkas@drapgold.com;kellyh@drapgold.com;ericaw@drapgold.com;dianas@drapgold.com;dominettec@

B - 49

Kristi J. Doughty    bk.service@aulgur.com, aulgurbkservice@comcast.net

Stuart B. Drowos    stuart.drowos@state.de.us

Michael B. Joseph - Chapter 13 Trustee    mjoseph@ch13de.com, chapter13@ch13de.com

James B. Tyler    jbtyler3@comcast.net

United States Trustee    USTPREGION03.WL.ECF@USDOJ.GOV

Thomas G. Whalen Jr.    tgw@stevenslee.com

**04-12419-JKF Notice will not be electronically mailed to:**

David J Buchanan
34806 Hudson Road
Laurel, DE 19956

B-50

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In Re David J. Buchanan,                         :
                    Debtor                       :          Case No. 04-12419JKF

WIFE'S FILING OF COPY
OF
FAMILY COURT ORDER ON ATTORNEYS FEES AND COSTS

Barbara H. Buchanan, ex-wife of Debtor, David J. Buchanan, files the attached

copy of the July 12, 2006 Order of the Honorable John E. Henriksen in the Family Court

of Sussex County, Delaware for the consideration of this Court, and asks the Court to

follow this Order in future proceedings

Dated: August 21, 2006

James B. Tyler, III
DE Bar No. 530
211 E. Market St.
P.O. Box 555
Georgetown, DE 19947
(302) 856-6397

B-51

Certificate of Service

James B. Tyler, III certifies that the foregoing WIFE'S FILING OF COPY OF FAMILY COURT ORDER ON ATTORNEY FEES AND COSTS was served by depositing a copy in a U. S. Postal Service Receptacle for the deposit of mail in Georgetown, DE this 22nd day of August 2006 first class postage prepaid, addressed to:

Mr. David J. Buchanan
34806 Hudson Rd.
Laurel, DE 19956

Michael B. Joseph, Trustee
P.O. Box 1351
Wilmington, DE 19899-1351

Neil F. Dignon, Esq.
512 E. Market St.
Georgetown DE 19947

Thomas G. Whalen, Jr., Esq.
Stevens & Lee, PC
1105 North Market St., 7th Floor
Wilmington DE 19801

James B. Tyler, III
211 E. Market St.
P.O. Box 555
Georgetown, DE 19801
DE Bar No. 530

B-52

IN THE FAMILY COURT OF THE STATE OF DELAWARE
IN AND FOR SUSSEX COUNTY

JUL 1 8 2006

Barbara H. Buchanan,

    Petitioner,

    v.

David J. Buchanan,

    Respondent.

       :
       :
       :
       :
       :
       :
       :
       :
       :

File No. CS94-3107

Petition No. 03-00932

ORDER - ATTORNEYS
FEES AND COSTS

Pending before the Court is a Request for an Award of Attorney Fees, filed by Barbara H. Buchanan ("Wife"), by and through her counsel Thomas Gay, against David J. Buchanan ("Husband"). Wife seeks the payment of counsel fees and costs accrued since December 2002 through the present, as such fees related to the resolution of the parties' ancillary and custody matters, as well as any appeals of Commissioner's Order that may have come before this Judge. Wife's request for payment of all of her counsel fees is made pursuant to 13 Del. C. §§ 731 and 10 Del. C. §925(15). Wife is limiting her request for attorney's fees and costs to the work and time that has been documented in her Exhibit A, dated April 13, 2006.

Wife specifically argues that Husband's pleadings have been presented for improper purposes, such as to harass Wife, cause unnecessary delay, and needlessly increase the costs of Wife's litigation expenses. Husband has not filed a response to Wife's motion. Wife also argues that a majority of Husband's claims, defenses, and other legal contentions within his pleadings were not warranted by existing law or were frivolous arguments requesting the extension, modification, or reversal of existing law or the establishment of new law. Wife contends that many of the allegations and factual contentions asserted by Husband's pleadings did not have evidentiary support and were not supported at the time of the custody/visitation hearings held on November 29-30, 2004, or during the final ancillary hearings held on March 21-22, 2006.

FACTS

The first filing in the instant case dates back to January 20, 1994. Since that time, the file in this case has significantly expanded and currently holds 401 filings that relate to the parties' custody and ancillary matters.

The Court has repeatedly and clearly informed Husband that the vast majority of his filings lacked any evidentiary support or legal basis and were redundant in nature. As early as June 11, 2003, the Court denied Husband's emergency pleading and stated

B-53

Husband's exhibits failed to "support any of [Husband's] gross allegations of alleged physical abuse or Mother's alleged paranoia." One week later on July 18, 2003, Husband filed for another emergency ex parte order. The Court again denied the motion, stating "[p]etition was submitted to Judge at 4:50 pm on Friday, July 18, 2003. Petition had more allegations with no factual basis to support claims."

On August 4, 2003, the Court issued an order entitled "Disposition of Existing Motions to Date in Both Custody and Divorce Related Matters." The purpose of this order was to dispose of Husband's numerous and meritless filings which were causing significant delays in the resolution of the parties' case. The Court also took the opportunity to comment on Husband's refusal to comply with Court-mandated psychological evaluations and paternity testing, stating on page one of this Order:

> The Court finds no legitimate excuse in Mr. Buchanan's answers for having failed to participate in the stipulated and Court ordered psychological evaluation with Dr. Edward Wilson, the Court mandated parent education program, and also the stipulated and Court ordered paternity testing. The paternity testing arose solely as a result of Mr. Buchanan's request in a related child support action.

The Court was significantly troubled by Husband's apparent bad faith in pursuing so many numerous and repetitive motions. The Court stated on page 5 of this Order:

> In reviewing the many motions that have been filed by Mr. Buchanan, and Mother's many responses made necessary by Mr. Buchanan's filings, the Court finds that Mr. Buchanan's filings, for the most part, are frivolous, without basis, and intended solely for the purpose of harassing Mother and running up her legal expenses. This is an inappropriate use of the Court and an inappropriate drain on Mother's resources.

In this August 4, 2003 Order, the Court held that all requests for Counsel Fees may be consolidated as part of the ancillary relief requested. The Order also reviewed the numerous frivolous motions earlier filed by Mr. Buchanan, and limited his ability to file future motions with the Court.

Despite the Court's limitation of Husband's additional filings, Husband made an additional filing on August 11, 2003. In that filing, Husband requested emergency relief. The Court issued another Order on August 15, 2003, which requested an attorney general investigation as a result of Husband perpetrating a fraud upon the Court. The Court explained on page 2 of the Order:

> More importantly, the affidavit of Heidi Buchanan... provided the Court with information that gave the Court considerable concern that David Buchanan had grossly misrepresented the facts to the Court, under affidavit, and had further, without consent, fraudulently and intentionally assumed and misused the identity of his daughter Heidi, thereafter

B-54

2

forwarding these doctored emails to the Court in support of his emergency motion.

In December of 2003, Wife filed a motion to list and sell the marital property. At the time of this motion, Wife was residing in Washington, D.C. Husband opposed this motion, arguing he was diagnosed with cancer, too ill to work, and he wanted to reside in the home which, he argued, was in threat of foreclosure. Husband, however, refused to disclose his medical records to Wife's attorney or provide a release so her attorney could contact his doctors to confirm that his medical condition prevented him from working. This Court's Order dated December 11, 2003 again remarked on Husband's litigious conduct regarding the sale of the former marital residence. The Court noted on page 5 of the Order:

> Given that the Court is not convinced that the farm is in a threat of foreclosure, and given husband's most recent payment to bring the home current on its mortgage, but also noting the time wasted before the Court in this hearing caused by the manner in which husband approached this problem, as well as wife's travel expenses and loss of wages to attend the hearing, and certainly the time that must have been wasted by wife's counsel in filing motions to pursue this matter and prepare for the hearing.... Wife's attorney should submit appropriate affidavits for attorney's fees for the time spent in the filing of the emergency documents, preparing for the hearing, and attending the hearing.

Within one month, on January 16, 2004, Husband filed a motion for relief from order of judgment, which was filed on an ex parte basis. The motion came before this Judge who made the following notations on the motion: "Do not schedule—motion is repetitive of allegations often made and denied." This Judge also noted that Husband's recent motion "does not carry threat of immediate harm of child" and the "Court will not entertain any further emergency motions from father regarding child unless supported by affidavit from DFS or similar agency where child resides."

On March 9, 2004, the Court issued an order for interim alimony and was, again, troubled by Husband's contentious conduct, observing on page 2 of the Order:

> It is regretful that husband has been so active in filing so many motions and petitions that the Court had to enter Orders discouraging him from making further applications. It is regretful in that, Mr. Buchanan has tied up the Court's time in making the many spurious and duplicative filings. It is further regretful that his numerous filings, coming where he is acting pro se, has certainly cost his ex-wife to incur sizeable attorney's fees in having to respond to these much too numerous filings.

Once again, despite clear warnings regarding Husband's relentless choice to docket meritless and bad faith filings, the Court had to again attempt to restrain

B - 55

3

Husband's vexatious conduct. On page one of this Court's Order dated March 24, 2004, the Court remarked:

> The Court concludes that [Buchanan] has abused the judicial process by filing frivolous litigation, in that filings involve issues which have already been raised before the Court, or have been disposed of by the Court....It is hereby ordered that [Buchanan] is hereby enjoined from filing future claims with the Family Court of the State of Delaware, involving the minor child...as well as claims ancillary to the divorce, including, but not limited to, interim and permanent alimony, without leave of Court.

On September 3, 2004, the Court issued a per-trial order regarding custody matters. After this order was issued, Husband sent the Court several improper filings consisting of letters that did not comply with Court Rules. In its Order dated November 3, 2004, on page 1, the Court again addressed the issue of attorney's fees, stating:

> It is regretful that [Husband's filings] has necessitated Mr. Gay in filing several letters in response, continually reminding the Court that husband's filing have not met Court Rules. The Court is clearly aware that husband has continuously not followed Court Rules. This will be part of the consideration of the Court when it considers an award of attorney's fees.

On January 18, 2005, the Court issued an interim ancillary order as a result of Wife's motion to compel and motion for a continuance in reference to alimony and Husband's objection thereto. In examining Husband's objections to Wife's motion, the Court noted on page four of the Order that Husband's first three objections were "entirely in error as to their relation to the pending litigation on husband's alimony claim." The Court also noted on page five that Husband alleged that he has medical difficulties that prevent him from working back in December of 2003 but he continues to oppose Wife's request for his medical information and keeps arguing this issue as a basis for his seeking alimony. The Court also commented on Husband's belief that it was Wife who was causing the delay in the resolution of the parties' property division, stating on page seven through eight:

> However, it is husband who is continually late in filings, and who, from the outset of these legal proceedings, which have now lasted for a considerable length of time, has not been forthright with the Court or with wife's counsel in providing accurate and complete information concerning his medical condition, incomes, and expenses. Although the Court has attempted on several occasions to accommodate husband by giving the scheduling of his alimony claim priority scheduling, husband has failed to fulfill his obligations to the Court and wife's counsel in providing the information necessary to prepare for the hearings.... Although this Court has attempted to expedite husband's alimony hearing by holding a hearing on February 1, 2005, husband has yet to respond to wife's very legitimate questions which were initially posed to him pursuant to her Request for

B-56

Production mailed October 29, 2004. Husband has failed to comply with Court Rules, and by his own actions, husband's failure will delay the hearing on this claim.

The Court has also been directly subjected to Husband's obvious attempts to drain the Court's valuable time and resources. On July 5, 2005, the Court issued an order regarding sanctions on discovery, which was filed by Wife. On page six of the Order, the Court stated:

In fact, in leafing through the voluminous photocopies of exhibits attached to Husband's answer, the Court also found certain records on loan installment payments. A reading of the answer to the request did not lead the Court to these documents. It was only because the Court, in attempting to be thorough, went through this volume of exhibits to see exactly what was included.

Starting on page seven of this Order, the Court took the opportunity to comment on Husband's recent Court submission which was ostensibly submitted in bad faith and with the aim to frustrate the pending litigation:

The Court has had the opportunity to observe Mr. Buchanan in other Court proceedings and has found him to be of above-average intelligence. Mr. Buchanan has the abilities to have better organized this information. The Court is inclined to believe that Mr. Buchanan knew exactly what he was doing in the way he was responding to these requests, and part of that was increasing the amount of time and effort that Wife's attorney would have to spend in sifting through Husband's very voluminous unindexed set of exhibits.

The Court again reminded Husband that this litigious conduct would eventually result in an award of attorney's fees for Wife, as indicated on page nine of the order which noted:

Husband shall be responsible for Wife's attorney's fees incurred in filing this Motion for Sanctions, together with all motions filed following the request for production that were made necessary by Mr. Buchanan's filing related to the request for production.

From the date of this last order until December 2005, the Court was flooded with letters and copies of letters from Husband, which pertained to matters that were pending before the Court, matters previously before the Court, and some of the letters made allegations about matters that were not before the Court. In a letter order dated December 2, 2005, the Court remarked:

The Court has been extremely patient with Mr. Buchanan, noting that he has been unrepresented by counsel. However, Mr. Buchanan has been

B-57

5

warned on several occasions about proper procedure before the Court, and he continually fails to follow that procedure....All of these improper filings take up the time of Court personnel who are distracted from other matters that are appropriately and importantly before this Court. The Court also realizes that Mr. Buchanan's filings are a burden on the legal fees that are being incurred by Ms. Buchanan in having Mr. Gay review these filings. The Court is long overdue in commenting on the inappropriateness of these filings.

On March 17, 2006, the Court dismissed Husband's Claim for Alimony, as a result of his continued and concerted effort to file incomplete and improper responses to Wife's request for production. In so ruling, the Court stated on page four of the Order "[t]he Court can no longer prejudice wife in this case by continuing to accept husband's evasive and dilatory practices."

Prior to the final resolution of the parties' domestic matters, the Court issued a pre-trial order on February 15, 2006. In that Order, the Court again directed Wife's counsel to file for attorney's fees at the conclusion of the parties' ancillary hearing. The Court also directed Husband to respond to Wife's motion for attorney's fees within 20 days of receipt of her motion. Husband's response was to include legal argument on which the Court could consider when making a ruling in the matter. Wife's counsel filed the necessary affidavit and motion for fees on April 21, 2006, requesting total attorney's fees and costs in the amount of $74,368.67. Husband did not file a response to Wife's request for attorney's fees.

## LEGAL STANDARD

This Court has the authority to assess fees, costs, and fines and may remit them in proper cases.[1] This Court also has authority to enter an order against a party as the principles of equity appear to require.[2] In every case where there is a legal or equitable basis for the Court to assess a party the reasonable counsel fees of any other party, the requesting attorney shall submit an affidavit to the Court.[3] The affidavit shall state: the time and effort expended; an itemization of services rendered; relevant hourly rates; an itemization of disbursements claimed; any sums received or that will be received with respect to legal services and/or disbursements; and any information that will enable the Court to properly weigh the relevant factors set forth in the Rules of Professional Conduct, Rule 1.5.[4]

Rule 1.5 provides that a lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.[5] The factors to be considered in determining the reasonableness of a fee include: the time and labor

---

[1] DEL. CODE ANN. tit. 10, § 925(10) (1999).
[2] DEL. CODE ANN. tit. 10, § 925(15) (1999).
[3] DEL. FAM. CT. C.P.R. 88.
[4] Id.
[5] DEL. RULES OF PROF'L CONDUCT R. 1.5.

B-58

required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; the experience, reputation, and ability of the lawyer or lawyers performing the services; and whether the fee is fixed or contingent.

Delaware adheres to the "American rule" when examining the issue of awarding attorney's fees. Under the American rule, a prevailing party is responsible for paying for his or her own attorney costs. [6] Two general exceptions limit the American rule: the first exception is constrained by specific fee-shifting statutes enacted by the legislature, and the second exception is one based on principles of equity that have been judicially recognized as a matter of common law.[7]

While the latter exception only applies in extraordinary cases, Delaware courts have invoked equitable principles when issuing an award of attorney's fees against a losing party who has vexatiously proceeded with litigation with the purpose to oppress the other party, or has otherwise acted in bad faith.[8] The Delaware Supreme Court also held that a Court can order attorney's fees against a party who has been litigious or unreasonable in proceeding with litigation.[9]

The purpose of these equity-based exceptions to the American rule is to deter abusive litigation which aims to harass the non-offending party.  This equity based exception to the American Rule also protects the integrity of the judicial process which, when abused, can drain the resources of a trial court and clog civil dockets.[10]

## FINDINGS AND CONCLUSIONS

The Court has reviewed the file, counsel's affidavit, 13 Del. C. §§ 731, as well as Rule 1.5 of the Delaware Lawyers Rules of Professional Conduct. Based on this review the Court is satisfied that Wife is entitled to receive a sizable portion of the attorney's fees she has requested.  As outlined above, Husband has willfully disregarded this Court's numerous directives and warnings regarding his voluminous bad faith and vexatious filings.  Since the inception of this case, Husband has refused to furnish complete and proper responses to discovery requests and has even refused to comply with Court-mandated orders.  Husband has also raised countless allegations against Wife without offering a scintilla of evidentiary support.  Husband has even misappropriated his own daughter's identity in an attempt to introduce false documents before the Court.  The Court has been very patient with Husband but it cannot condone

[6] See Brice v State of Delaware, 704 A.2d 1176, 1178 (Del. 1998).
[7] Id.
[8] Id.
[9] See Mays v Mays, 1988 WL 141148, C.J. Christie (Del. November 23, 1988).
[10] Id.

B-59

Husband's frivolous filings, willful disobedience, and obvious abuse of the judicial process.

In reviewing Wife's attorney's affidavit, the Court first notes that Wife's attorney bills at $300 per hour. Given the considerable expertise of Mr. Gay in this field, noting the number of years that he has practiced before the Court and that he specializes in this area, the Court finds the rate of $300 per hour to be reasonable of an attorney in Sussex County, Delaware of Wife's attorney's credentials and experience. Wife's attorney's affidavit itemized over the time period beginning December 10, 2002 until April 10, 2006, a total of 232.2 hours. This number of hours billed at $300 per hour, totals $69,660 being sought by Wife for her attorney fees.

In reviewing this motion, the Court reviewed every pleading in the file. A review in retrospect was shocking to the Court in the number of frivolous and repetitive filings made by husband, and which he continued to make after receiving strenuous cautions from the Court. That harsh realization has caused the Court to approach Wife's requests for attorney fees by awarding wife all of the fees requested except for fees occurred on her behalf during times when the case was proceeding as it naturally should occur where litigants were filing appropriate pleadings to preserve their legitimate claims and also attending trial to litigate their legitimate positions.[11] Thus, the Court has not permitted any of Wife's attorney's fees for the time period from December 10, 2002 until January 14, 2003, when the Court perceives that normal filings were occurring by each of the parties. Thus, for the period from December 10, 2002 through and including January 14, 2003, the Court will not award wife the attorney's fees generated during that time period, which equal eight hours at $300 an hour, or $2,400.

However, beginning January 17, 2003, Husband began to file frivolous motions, including opposition to the appointment of an attorney guardian ad litem on behalf of his daughter, which had to be reviewed and responded to by Wife's counsel.

The next period of time when appropriate filings occurred in this case went from February 10, 2003 through and including May 6, 2003. It was during this time period that husband seemed to have the benefit of counsel. During this time, wife's attorney spent 24.3 hours. This number of hours billed at $300 per hour totals 7,290. This amount will not be included in the final award of fees to wife.

Beginning May 9, 2003, husband began to file, on his own, numerous frivolous motions in which he attempted to delay the parties' divorce and/or seek a continuance of the divorce. Husband filed these motions on his own, despite the fact he was represented by counsel who shortly thereafter obtained leave to withdraw from the

---

[11] This approach was also necessary because wife's attorney's affidavit for attorney fees often listed items in general terms such as "conference client", "draft motion", "draft letter", "review motion", "telephone client", and the like, without identifying the issue about which the action was taken. As such, it is quite possible that the Court may have omitted certain actions by wife's attorney which should have been included in assessing fees against husband, but which the Court could not identify with sufficient certainty to include the time in the fees accumulated by wife for which husband should be responsible.

B-60

case. These motions required wife's counsel's attention. During this period, the Court will only exclude telephone conferences and/or conferences wife's counsel had with Dr. Wilson, a psychologist, telephone calls with William Wilgus, Esquire, an attorney who at times filled in for wife's counsel, telephone calls with Kristin S. Gibbons, Esquire, the CASA attorney, telephone calls and conferences with Ron Irick, who the Court does not know what purpose he served, and various reviews of husband's Petition for Bankruptcy and foreclosure action commenced against the property. Thus, during this time period from May 9, 2003 until September 2, 2004, wife's attorney spent 4.1 hours or $1,230 in billable fees which will not be assessed against husband.

For the period from September 3, 2004 through and including November 18, 2004, the Court will not assess against husband the time spent preparing for and attending the September 3, 2004 pre-trial, telephone conferences with Betty Saunders and Ron, who the Court does not know the purpose of, reviewing motions and Dr. Wilson's report, with study and research on September 21, 2004, as well as telephone conferences and reviews concerning husband's pending bankruptcy matter. Thus, for the time period from September 3, 2004 through and including November 18, 2004, the Court will not assess husband with wife's attorney's hours totaling 5.5 hours, which is $1,650.

The Court also will not assess husband with attorney's fees spent by wife's counsel from November 23, 2004 through and including December 2, 2004, which is the time period wife's counsel spent in preparation for and attending the custody trial. During this time period, wife's counsel spent 24.8 hours, which totals $7,440.

From December 6, 2004 through May 31, 2005, wife's counsel was again required to respond to numerous frivolous motions. During this time period, the Court is only willing to exclude telephone contacts with Kristin S. Gibbons, Esquire, the CASA attorney, John F. Brady, Esquire, time spent on January 27, 2005 which included reviewing a market analysis by Tom Cooper, telephone calls with Ron Irick, and review of matters related to the bankruptcy. These exclusions add up to 1.9 hours, for a total of $570, which will not be assessed against husband.

The Court will not assess husband for time spent by wife's counsel between June 1, 2005 and June 8, 2005, responding to questions husband raised about the parties' daughter, Heidi, going to Germany. This time adds up to 2.3 hours, for a total of $690.

The Court will not assess husband with the time wife's attorney spent in preparing for trial on October 24, 2005, which is 1.6 hours or $480.

The Court will not assess husband with the time spent by wife's counsel from November 14, 2005 through and including November 18, 2005 which involved wife's counsel preparing and filing a Motion to Sell Real Estate and also review of bankruptcy information. This time added up to 1.4 hours, for a total of $420.

B-61

The Court will not assess husband with the time wife's counsel spent from January 24, 2006 through April 10, 2006, which was preparation for the ancillary pre-trial and eventual ancillary trial on March 21 and 22, 2006, with some correspondence following the date of trial, about which the Court is uncertain. This time totaled 41.5 hours, or $12,450 in fees.

The Court notes, however, that wife's affidavit of counsel did not include the almost certain amount of time Wife's counsel had to expend in preparing a Motion to Dismiss to husband's meritless Motions for Re-argument and Enlargement of Time, both of which were dismissed by this Court's Order dated May 31, 2006. The Court will therefore award wife an additional 4 hours of time which her counsel no doubt needed in order to prepare the responses on wife's behalf in answer to husband's untimely and meritless motions. This therefore adds to husband's obligation to wife the sum of $1,200. The Court suspects from reviewing wife's attorney's answers to these latter-referenced motions that the Court's assessment of the time necessary for wife's counsel has been generous to husband. The Court will therefore ask, to be sure that husband has not been penalized in this calculation, that wife's counsel provide an additional affidavit identifying only the amount of time wife's counsel spent on the preparation of the Answer to the Motion for Enlargement of Time for Reargument filed April 20, 2006, and the Motion to Dismiss filed May 9, 2006.

In reviewing the expenses incurred by wife's counsel on her behalf, also set forth in the affidavit, the Court is only willing to have husband reimburse wife one-half of the expense for the Houston Appraisal Company services in the amount of $500. Thus, husband will also be responsible for reimbursing wife or her attorney the sum of $250 in expenses.

While Mr. Buchanan always demonstrated respect for the Court in the Court room and presented with a likable demeanor, his pleadings and other filings continually ignored cautions by the Court and caused his former wife's attorney to spend needless hours in representing wife. When he had the very competent counsel of Ms. Hayes, he appropriately followed her advice in agreeing to a psychological evaluation after Mr. Buchanan's actions had demonstrated considerable uncertainty about his stability at the time and raised concerns for the safety of his daughter, Heidi. Had he followed the advise of Ms. Hayes, the psychological evaluation would either have demonstrated that he was not a risk to himself or Heidi, or the evaluation would have identified problems that Mr. Buchanan could have better spent his time working on with another counselor in the hopes of showing a clean mental bill of health by the time the custody hearing occurred. Anyone would have understood a need for counseling following the loss of a son from suicide and the break-up of a marriage. Instead, for whatever reason, the relationship between Mr. Buchanan and his very competent counsel ended. Mr. Buchanan chose to resist the psychological evaluation. He even questioned whether he was Heidi's father. Instead of moving those matters along, Mr. Buchanan's misdirected strategy only delayed the matters getting to trial when he would likely have benefited most in proceeding to trial. Meanwhile, Mr. Gay, providing very competent and necessary representation for his client, as was his duty, was accruing hours of time and

B-62

resultant expense caused by husband's numerous and continual inappropriate pleadings and other filings in the pending actions. It would be absolutely inappropriate to expect wife to incur the very legitimate expenses incurred as a result of her attorney having to respond to Mr. Buchanan's inappropriate and frivolous filings. As such, it is only fair that Mr. Buchanan bear these fees and expenses that were caused by his own misdirected bad faith actions.

By noting the previous deductions, the Court deducts from wife's attorney's fees of $69,660 the sum of $34,620. This leaves an amount for which husband will be responsible for of $35,040, together with the additional $1,200 in fees for the filings not included in wife's counsel's affidavit, for a total attorneys fees owed by husband to wife in the amount of $36,240. In addition, husband shall reimburse wife $250 in expenses for the cost of the real estate appraiser's services. These amounts shall be paid to wife out of husband's share of the net proceeds from the sale of the former marital real estate.

IT IS SO ORDERED this __12th__ day of July 2006.

John E. Henriksen, Judge

cc:     Thomas E. Gay, Esquire
        David J. Buchanan
        CS94-3107
        File

Date Mailed:   July 18, 2006

B-63

11

**File a Motion:**

04-12419-JKF David J Buchanan

Type: bk                    Chapter: 13 v                Office: 1 (Delaware)
Judge: JKF                  Assets: y

### U.S. Bankruptcy Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Tyler, James B. entered on 8/21/2006 at 9:06 PM EDT and
filed on 8/21/2006
**Case Name:**       David J Buchanan
**Case Number:**    04-12419-JKF
**Document Number:** 145

**Docket Text:**
Motion to Approve *File Family Court Order - Attorneys Fees and Costs* Filed by Barbara H Buchanan.
(Attachments: # (1) Exhibit Family Court Order July 12, 2006# (2) Certificate of Service) (Tyler, James)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**A:\Wife's Filing Buchanan Atty Fees Order.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=8/21/2006] [FileNumber=5139255-0]
[9ad4b3a614dd01ab130897da160fe7aa09235c481f07cd817a4f5066525eeada31b9
b00eb804bf628ceb6be038b34e85f0c3504ced2ff7d39d67a98ab9ed3022]]
**Document description:**Exhibit Family Court Order July 12, 2006
**Original filename:**A:\Buchanan Order-Attorneys Fees and Costs.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=8/21/2006] [FileNumber=5139255-1]
[823a0d16665923c685b6d07a486e4946fc8abe55a698086bcb36617e1783099cae0c
43ef05f98361e3823b4b66273c119f37d836525ee047239b43ebd6e5bd5c]]
**Document description:**Certificate of Service
**Original filename:**A:\Cert Serv Buchanan.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=8/21/2006] [FileNumber=5139255-2]
[54dedc4d951652e08275f3c34930ddf153937ae1df0314734c7d61963099355b38ea
b5959d649ca19d403eca437ffc83b408648885dc9fedfdf02ab3792099fb]]

**04-12419-JKF Notice will be electronically mailed to:**

Lara Anne Armstrong    bkmail@mccalla.com

Neil F. Dignon



pamelatd@drapgold.com;jacobe@drapgold.com;michelleh@drapgold.com;dominettec@drapgold.com

Kristi J. Doughty    bk.service@aulgur.com, aulgurbkservice@comcast.net

Stuart B. Drowos    stuart.drowos@state.de.us

Michael B. Joseph - Chapter 13 Trustee    mjoseph@ch13de.com, chapter13@ch13de.com

James B. Tyler    jbtyler3@comcast.net

United States Trustee    USTPREGION03.WL.ECF@USDOJ.GOV

Thomas G. Whalen Jr.    tgw@stevenslee.com

**04-12419-JKF Notice will not be electronically mailed to:**

David J Buchanan
34806 Hudson Road
Laurel, DE 19956

B-65

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                        .    Chapter 13
                              .
DAVID BUCHANAN, *pro se*,     .    Case No. 04-12419(JKF)
                              .    Oct. 24, 2006 (10:57 a.m.)
        Debtor.               .    (Wilmington)

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

B-66

```
 1          THE COURT: David Buchanan, 04-12419.  This is the
 2   debtor's request for sanctions.
 3          MR. BUCHANAN: David Buchanan.  Good morning, Your
 4   Honor.
 5          THE COURT: Good morning.
 6          MR. BUCHANAN: Pro se.
 7          MR. TYLER: James B. Tyler, III, for Barbara
 8   Buchanan.
 9          THE COURT: Mr. Buchanan, I have read your
10   documents, and I have read the response.  I continue to tell
11   you that I cannot interfere with the state court orders.  The
12   orders that the state court entered were not in violation of
13   the automatic stay. I granted relief from stay specifically
14   so that the state court could address the issues that you and
15   your wife have been each other with respect to who owns what,
16   who's going to get what on the equitable distribution.  I
17   didn't need to do it with respect to the custody, but to the
18   extent that there is some component of a payment that needs
19   to be made either by your former wife or yourself with
20   respect to your children, those payments as well are subject
21   to the Court's order.  So there is no relief - There is no
22   violation of the automatic stay.  Mrs. Buchanan is not
23   compelled to file a proof of claim in this case.  She does
24   not have to.  She can't be paid through the bankruptcy estate
25   if she doesn't file a proof of claim, but she doesn't have to
```

B-67

1  file one.  Not filing one, within whatever time frame is

2  appropriate simply means that she's going to have a claim

3  that if in fact you get through this case and get a discharge

4  won't be paid because it will be discharged.  But that's up

5  to her to decide whether she wants to file and try to get

6  some payments or whether she's not going to file a proof of

7  claim and not demand any payments.  The consequence of not

8  filing it is that it's an unsecured claim.  It won't be paid

9  once this case is over.  So, that's her decision.

10        MR. BUCHANAN: Your Honor, I understand that.  The

11  violation of bankruptcy stay occurred before you gave relief

12  of stay in proceedings in Family Court for emergency motions

13  being filed to list and sell a house on several occasions.

14        THE COURT: Mr. Buchanan, I've addressed all of

15  those.

16        MR. BUCHANAN: Okay, I understand that.

17        THE COURT: I've given you, in an effort to try to

18  refinance.  That's the reason that I demanded that the state

19  court could enter whatever it chose as appropriate, but the

20  sale, if there was going to be one, had to be conducted here

21  in this bankruptcy case.  I was protecting your right to

22  refinance or to get the best sales price that you could get.

23  I also, I think at some point, said that the state court

24  appointed broker/receiver - I'm not sure of the exact

25  description, the name, I'm sorry, could go forward so that

B - 68

1    somebody could list this property if you can't get it

2    refinanced, but I've given you time to accomplish that.  I

3    don't think that time is up yet.  I extended it once.

4         MR. BUCHANAN: No, ma'am, you're not.  We're

5    supposed to have a hearing at the end of - on the November

6    docket.  The issue that surrounds this is, because you

7    offered the Family Court permission to go forward, really the

8    stay to go forward, Mrs. Buchanan did not follow directions

9    of the Family Court there either, and its issue - brings back

10   the issue to this Court because she failed to vest any value,

11   she failed to do anything there either, in their 12(b)(6)

12   there and here according - and brought into action under

13   Bankruptcy Code 7012.  She's failed to vest, so she does lose

14   all claim, and because -

15        THE COURT: No, Mr. Buchanan, it doesn't work that

16   way.  To the extent that your former wife has violated some

17   state procedural issue, that's an issue you've got to take up

18   with the state court.  Now, the state court heard your

19   complaints about her Rule 16 statement that she had to file.

20   The court addressed that issue.  That's not something I have

21   jurisdiction over.  With respect to her rights in this

22   bankruptcy, until the state court determined what her rights

23   were, she doesn't know what those rights are in this

24   bankruptcy and neither do you.  There is now a determination,

25   and if she's going to file a proof of claim, she has to do

B-69

1  it.  If she's not going to file a proof of claim and you get

2  a discharge, your debt to her for her attorney's fees and

3  everything else is going to be discharged, and she won't get

4  paid.  That's her choice to make.

5          MR. BUCHANAN: I believe I also - while we're on the

6  subject of attorney fees, Mr. Tyler filed for Mrs. Buchanan,

7  I believe that it was Docket No. 145 for attorney fees.  He

8  did not timely file that within the 30 days required for the

9  final order of the Family Court, so those should be

10  disapproved from the bankruptcy entirely.  Now that $37,000

11  not only interferes with my exemption with 523, but - because

12  I am living in this house, but it also goes beyond my

13  abilities to pay on this bankruptcy if they add $37,000 to

14  the case.  It's just way beyond comprehension how a simple

15  divorce costs $37,000, and that's only part of it.  And then

16  on those attorney fees, there has not - they've been avoiding

17  disclosure and on Docket 90, I filed with this Court, and the

18  Court, I believe, has jurisdiction for an examination of the

19  attorneys receiving money that are supposedly protected under

20  the bankruptcy stay, not only bankruptcy stay, but also under

21  stay of Family Court matters.  So the funds that she's paid

22  these attorneys in the amounts I can't find anything hard

23  proof of over $30,000, but I know there's tens of thousands

24  of dollars that she's paid these attorneys that should be

25  considered now in marital property, but once I filed for

B-70

1  bankruptcy are property of the estate.

2  THE COURT: No, Mr. Buchanan, we've addressed this

3  issue before too. Mr. Tyler explained at the last hearing

4  that he doesn't have records of attorney's fees that are paid

5  to anybody but him. He is not in charge of who your former

6  wife pays to other counsel. He doesn't have that

7  information. If there is some information that you need from

8  the other attorneys as to how much was paid, you need to get

9  it from those attorneys, but to the extent that she is not

10  using marital property, i.e., bankruptcy property to make

11  those payments, if she's getting money from her family or

12  taking it from her own employment, she has the right to make

13  those payments. She is not jeopardizing the bankruptcy

14  estate in that respect.

15  MR. BUCHANAN: I have evidence that she's withdrawn

16  money, $17,600 of funds that were considered marital property

17  and disposed of them by the way of attorneys.

18  THE COURT: Isn't that part of what the state court

19  already addressed?

20  MR. BUCHANAN: The state court would not address it.

21  THE COURT: I'm sorry, I thought there was -

22  MR. BUCHANAN: They're undeclared money. Under

23  16©), that's why I put it in there, if you reference it, she

24  declares that she has $300. The state court would not

25  address it. The state court would not enforce two subpoenas

B - 71

1   on the matter, and I've run up a dead-end here trying to get

2   these people to court to testify how much money they have put

3   in, and that's why I asked this Court under Rule 2004 to get

4   these attorneys to state -

5          THE COURT: I can't -

6          MR. BUCHANAN:  - what they have -

7          THE COURT: I can't do that.

8          MR. BUCHANAN:  - but she can.

9          THE COURT: She -

10         MR. TYLER: Your Honor, on April 12, at Docket No.

11  114, you denied Mr. Buchanan's motion for the same 2004

12  examination found at Docket No. 90, so, we keep revisiting

13  these same issues over and over again, and -

14         MR. BUCHANAN: I can't give anymore, Your Honor.

15         MR. TYLER: I've never we gotten to a confirmation

16  and I'm not sure where this is headed.

17         THE COURT: I don't have jurisdiction over these

18  2004 exams, Mr. Buchanan, and I really do not want to keep

19  going back revisiting the same matters.  I can't seem to get

20  you to understand that you are in two courts and two courts

21  have jurisdiction over two different things.  You can't bring

22  matters here that are subject to the jurisdiction of the

23  Family Court, and these issues that you're raising about the

24  source of payments for the attorney's fees are things that

25  that state court has to address.  At this point, you've been

B-72

 1   in bankruptcy for quite some time –

 2           MR. BUCHANAN: Two years.

 3           THE COURT:  – since 2004.  At this point your

 4   former wife, unless there is some bank account that she has

 5   current access to that is property of this estate can't

 6   possibly be using your funds to make these payments.  It

 7   can't happen.  You've got all your assets tied up here.  You

 8   need to concentrate on either getting this refinance done or

 9   realize that the property is going to be sold, Mr. Buchanan.

10           MR. BUCHANAN: The refinance, it's very hard with

11   the way the court order is right now to determine how much

12   money I need to borrow.  The banks do not want to spend money

13   on refinance appraisals unless they know how much money is

14   going to be borrowed.

15           THE COURT: Well, they know how much they're owed.

16   So if there are – and there are ways that you can request the

17   banks to give you payoff figures so that you know what

18   they're owed, and therefore, you know how much you have to

19   borrow.  That information is solely within the jurisdiction

20   of you, your former wife, if she's still obligated on the

21   loans, and the banks who are owed.  So you need to make the

22   appropriate requests and get this moving.  Mr. Buchanan, I'm

23   not going to continue this again.  Now, you've been –

24           MR. BUCHANAN: I've asked for payoff figures from

25   MERS, and I intend to file a motion for reinstatement of the

B-73

9

1  stay today because they have not published anything.  I sent

2  you a letter on the 21st of September.  They were supposed to

3  respond by the 15th of September.  They were also supposed to

4  provide me with an amended claim on the 7th of July of '05,

5  and nothing has been done to determine how much money is owed

6  to me.  Now last month I had a conversation with Mr. Dignon.

7  I know he's not here to defend himself, but in that

8  conversation he promised to give me a breakdown of a figure

9  that is reminiscent of the last two cases that come up here,

10  they're placing fees on these accounts, they change the

11  amount from, I think, 92,000 to like 98- or 96,000 without

12  any justification for it, and when I asked for justification

13  for it, the attorney promises me justification for it, and it

14  hasn't come forth yet.  So that will be filed, and I guess it

15  will be heard next month.  I would like - whatever's

16  frustrating my confirmation of my plan, I understand that I

17  can't get a discharge until it's confirmed, but for the other

18  party not filing a claim, they can't - this party, my wife's

19  party, as far as I can understand the rules, cannot object to

20  confirmation because they have not made a claim.  They lose

21  that right, if I'm not mistaken.

22          THE COURT: They have no ability to object to

23  confirmation if your plan is not going to treat their claim

24  and they're not filing proofs of claim, but there is a proof

25  of claim of record right now at least for the attorney's fees

B-74

1  if not for anything else.  So, they are creditors right now
2  who can object if your plan can't encompass that payment.
3  The reality is, unless you refinance, if this claim is a
4  priority claim and it has to be paid in bankruptcy, if it is,
5  then you're going to have to have enough money through either
6  the refinance or your ongoing income to make that claim and
7  pay it in full through the bankruptcy.  That's what the law
8  requires, and when they point that out, they're correct.
9  That is what the law requires.  To the extent that it's a
10  priority claim, it has to be paid.  I'm not sure that the
11  whole $37,000 is a priority claim.  I don't know.

12       MR. BUCHANAN: To my understanding, the lawyers, if
13  they foresee - foresaw me having a claim for the Bankruptcy
14  Court, had foresaw, had placed any claim against the estate
15  in the Bankruptcy Court and this dates back two years, they
16  should have been able to put in a pending claim at that time,
17  and now because the way this ruling is drafted, it does not
18  support - it does not entail any support issues -

19       THE COURT: Mr. Dignon, could you stay, please.

20       MR. BUCHANAN: I just had a claim.  You were absent
21  for a minute, if you don't mind.  These claims do not - This
22  court order was not issued encumbering on any support issues.
23  So, therefore, it should be discharge-able.  The attorneys
24  did not foresee and file a pending claim that they didn't
25  know about within the time period, and they had not done so

B-75

1  until the late period had expired, I believe, I don't know,

2  it's 3002 of the rules, gives them 30 days from the time that

3  the court issues an order.  They put it in, I think it's, I

4  don't know almost 40 days late.

5          THE COURT: Okay, let me take a look.  I'm not

6  exactly sure what the 30 —

7          MR. BUCHANAN: I referenced that in my claim here,

8  Your Honor.

9          THE COURT: Yes, you did, but I don't think I

10 brought the papers with me, but I did see it, and -

11         MR. BUCHANAN: Okay.

12         THE COURT: Okay.  All this is saying is that in the

13 Chapter 13, a proof of claim has to be filed within 90 days

14 after the date that's first set for the meeting of creditors,

15 but of course, in this instance, the claim wasn't known at

16 that time because even relief from stay hadn't even been

17 given then, and then it says that an unsecured claim that

18 arises in favor of an entity or becomes allowable as a result

19 of a judgment can file it within 30 days after the judgment

20 becomes final.  The court order is still subject to appeal,

21 and so it's not a final order until the appeal period runs

22 under this scenario.   So, I think the proof of claim is

23 timely.

24         MR. BUCHANAN: Which court order is not subject to

25 appeal?

B-76

1    THE COURT: The state court order that awarded the

2    attorney's fees is subject to an appeal.

3    MR. BUCHANAN: Appeals process is over, Your Honor.

4    I've already done it.

5    THE COURT: You filed an appeal.

6    MR. BUCHANAN: Filed an appeal -

7    THE COURT: Then it's not even final -

8    MR. BUCHANAN: And they dismissed it.

9    THE COURT: Okay, so it's dismissed.  The 30 days to

10   file the proof of claims runs from the day that the order was

11   entered that dismissed the appeal.  That's when the claim

12   became final, and so, I believe, that the proof of claim is

13   timely filed.  Okay, Mr. Tyler -

14   MR. TYLER: Yes, Your Honor.

15   THE COURT:  - your proof of claim; what's it for?

16   MR. TYLER: The two Family Court orders, which are,

17   an equitable division of the real property of husband and

18   wife and the order for their sale and attorney's fees accrued

19   on all of those Family Court proceedings -

20   THE COURT: Okay.

21   MR. TYLER:  - that were the subject of the second

22   order that we were just talking about.

23   THE COURT: All right, I'm sorry.  When I asked what

24   it was for, is it filed as an unsecured claim or a priority

25   claim?  Your attorney fee request.

B-77

1          MR. TYLER: The -

2          MR. BUCHANAN: It's not -

3          MR. TYLER:  We simply filed the court order so -

4          THE COURT: Oh, you haven't filed a formal proof of

5     claim.

6          MR. TYLER: We haven't put a proof of claim form on

7     top of it.

8          MR. BUCHANAN: So, it's not properly filed, Your

9     Honor.

10          THE COURT: No, you're going to have to file an

11     actual proof of claim form, I think.

12          MR. BUCHANAN: And 30 days is up.

13          THE COURT: Mr. Buchanan, 30 days is up.  They're

14     going to file a proof of claim form -

15          MR. BUCHANAN: Okay.

16          THE COURT: They filed the order.  We need to get

17     this resolved one way or another.  I think -

18          MR. TYLER: It's specified if it's priority.

19          THE COURT: Well, I think the issue is, it probably

20     isn't.  If it's not affiliated with obtaining the support

21     order then it isn't going to be a priority in a Chapter 13.

22     It will just be a general unsecured claim that follows the

23     equitable distribution.  So I think you should get it filed.

24     At this point, I don't know that this plan is going to

25     provide any distribution for unsecured creditors anyway, so,

B-78

1  I think we should just get it filed, get it of record so that

2  Mr. Buchanan can take a look at it.  If he has some objection

3  to the claim, other than the fact that it's based on a court

4  order, you know, because it is based on a court order, this

5  Court is not going to go behind the state court to determine

6  what the attorney's fees were that were allowable.  Okay, Mr.

7  Dignon, Mr. Buchanan apparently is apparently still waiting

8  for a payoff number for MERS.  Is there anyway that I can get

9  that information?

10  MR. DIGNON: Your Honor, my impression was that Mr.

11  Buchanan had a payoff and had an issue with some corporate

12  advances on that.  I spoke to him briefly in the lobby here

13  last month, and I requested a breakdown.  Admittedly, I did

14  not see and I'm not sure whether or not he received it.  If

15  he hasn't then I'll make sure that he gets it.

16  THE COURT: Okay, please, I would like an order,

17  please, if I need one that requires your client to get this

18  information.  I have Mr. Buchanan on a very short time frame

19  to be able to refinance this property.  So if there is no

20  dispute, he needs to know what the numbers are.  Mr.

21  Buchanan, if you've got the payoff - you said it went up from

22  like 92- to 98,000.  I understand you don't have the document

23  in front of you.  Assume, for this purpose, that the payoff

24  number is 98,000, because if you're incorrect about what the

25  corporate advances are all about and they turn out to be

B-79

 1   allowed, you're going to need to include that number in the

 2   refinance.  If you're correct, and the number goes down, then

 3   it will reduce it, but it's not going to reduce it probably

 4   by a significant enough amount, that $6,000, that that will

 5   stop your ability to refinance.

 6          MR. BUCHANAN: I understand, Your Honor, and I took

 7   some notes about holding those funds in escrow if there are

 8   any question from the other parties.

 9          MR. DIGNON: May I be excused, Your Honor?

10          THE COURT: Yes, sir, thank you.

11          MR. BUCHANAN: Thanks.

12          THE COURT: Mr. Dignon, can you see if - can you

13   meet with Mr. Buchanan?  You understand what the issue is

14   that he has with the corporate advances, so all you need is

15   some information from your client?

16          MR. DIGNON: As I said, we spoke last month in the

17   lobby.  He showed me the payoff.  He had initially said that

18   there was an inflated interest figure, the principle amount

19   showed somewhere in the neighborhood, I believe, of about 86-

20   to 88,000.  There was $6,000 in accrued interest and another

21   $6,000 and change in corporate advances.  And he pointed to

22   the corporate advancement was the number that he was

23   disputing.  I said, Okay, I'll get you a breakdown of the

24   corporate advances, and -

25          THE COURT: That hasn't happened.

B-80

```
 1              MR. DIGNON: I don't know.  Like I said, when I went
 2    back to my office, I instructed my paralegal to forward Mr.
 3    Buchanan a breakdown of the corporate advances.  I know they
 4    didn't go through my hands.  Mr. Buchanan is indicating that
 5    he hasn't received them, so I will go back to my office, and
 6    I will take appropriate action.
 7              THE COURT: Okay, can you please get that
 8    information to him within a week?
 9              MR. DIGNON: Certainly, Your Honor.
10              THE COURT: All right, thank you.
11              MR. DIGNON: Thank you.
12              THE COURT: Okay, Mr. Tyler, if you could please
13    just file the formal proofs of claim, I understand that you
14    may be treating this as a post-petition claim, and therefore,
15    you don't think you need to file a formal proof.  I think you
16    need to file a formal proof in this instance so that we have
17    a record of what the claims are, and they're not going to be
18    subject to some later dispute.  So, attach the court orders
19    if you need to to the proof of claim form and get them filed.
20    Please make sure you serve them on Mr. Buchanan, so he has
21    record of what they are.  Mr. Buchanan, I do not see a basis
22    for sanctions.  The court has not done anything that this
23    Court did not anticipate that the court would do, and by
24    taking some action before my order for relief from stay was
25    entered, which I'm not even sure is correct, because it
```

B - 81

1   appears that the Family Court was very cognizant of the fact

2   that the bankruptcy was filed and wasn't doing anything until

3   the relief from stay was granted, but in the event that

4   something did happen before the relief from stay, it's all

5   incorporated into that relief from stay order now.  The whole

6   purpose was to let the court go forward and issue its orders.

7   I don't see a basis for sanctions.  You need to work on

8   getting this property refinanced because next month is it.

9           MR. BUCHANAN: I will, Your Honor.  This being

10  delayed on how much I was being paid - I had to pay MERS was

11  a problem and then not having the ambiguity with my ex-wife

12  having - knowing how much to pay her, and I believe under

13  12(b)(6) I don't know how I can get away from that.  I just

14  don't know how I'm going to get around it because all the

15  banks I've talked to want to know a firm amount, what the

16  liabilities are.  I also have - there's the Southern States

17  issue I'm going to have to go get Southern States to - a

18  payoff them and maybe Mr. Tyler can help me with that because

19  his client's been paying most on that bill.

20          THE COURT: Okay, well, if your client is paying the

21  bill that Mr. Buchanan has to refinance, can you get a payoff

22  number?

23          MR. BUCHANAN: The problem -

24          MR. TYLER: It's a judgment against both of them.

25          MR. BUCHANAN: It's a judgment against both of us -

B-82

| | |
|---|---|
| 1 | MR. TYLER: They've garnished Mrs. Buchanan's pay to |
| 2 | the tune of $675 a month, and she's on the hook for it.  Mr. |
| 3 | Buchanan has kept his head down and Southern States hasn't |
| 4 | been able to do anything to him. |
| 5 | MR. BUCHANAN: Well, that's regardless of the reason |
| 6 | they haven't - they have not judged on that, Your Honor. |
| 7 | THE COURT: But it's not a mortgage, it's a judgment |
| 8 | creditor. |
| 9 | MR. TYLER: It's a judgment lien. |
| 10 | MR. BUCHANAN: It's a judgment lien. |
| 11 | THE COURT: A judgment lien, okay, so, whether |
| 12 | that's going to have to be satisfied as part of the refinance |
| 13 | or not, I don't know.  I mean, if somebody is going to |
| 14 | substitute themselves for the mortgage, it's possible that |
| 15 | that judgment lien will remain behind the new mortgage |
| 16 | anyway. |
| 17 | MR. BUCHANAN: Well, I don't think the bank will - |
| 18 | THE COURT: No?  Not a refinance? |
| 19 | MR. BUCHANAN:  - put up with that.  I have to |
| 20 | refinance it if he's going to be satisfied, I'm sure I'm |
| 21 | going to have to refinance it all the way out. |
| 22 | THE COURT: Okay, well, then, can you find our, Mr. |
| 23 | Tyler, how much is still owed on that judgment and provide |
| 24 | that information to Mr. Buchanan? |
| 25 | MR. BUCHANAN: The original was $25,000 is what the |

B-85

1   claim was for Southern States filed with the Bankruptcy

2   Court, roughly, and there's interest and so forth has gone,

3   accrued on that.  I don't know how much it is, and the person

4   I have my contact point at Southern States, he doesn't know

5   how much it is either.

6           THE COURT: Well, okay.

7           MR. TYLER: I'm just saying that the judgment is

8   against both spouses.

9           THE COURT: Yes.

10           MR. TYLER: He has as much ability to get it paid

11   off as my client does and it's not fair to make us work for

12   him, but -

13           THE COURT: Mr. Buchanan, you need to -

14           MR. BUCHANAN: I'll try to get the payoff, Your

15   Honor.

16           THE COURT:  - take the action to get the payoff,

17   please.  If you can find out how much your client has paid on

18   this lien so that we can get to the end of this, I would like

19   to see Mrs. Buchanan paid what she's owed and unless we get

20   some cooperation, she may never be paid what's she owed.  So,

21   please, could you try to help get a payoff.

22           MR. TYLER: Thank you.

23           THE COURT: All right, I'm going to enter an order

24   that will deny the motions for sanctions, as I've stated on

25   the record, and whatever other motions you've filed, they'll

B - 84

20

1  get scheduled, Mr. Buchanan.

2            MR. TYLER: Thank you.

3            (Whereupon at 11:20 a.m., the hearing in this

4  matter was concluded for this date.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18            I, Elaine M. Ryan, approved transcriber for the

19  United States Courts, certify that the foregoing is a correct

20  transcript from the electronic sound recording of the

21  proceedings in the above-entitled matter.

22

23  *Elaine M. Ryan*                         April 5, 2007
    Elaine M. Ryan
    2801 Faulkland Road
    Wilmington, DE 19808
    (302) 683-0221

B-85

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In Re:                                )
DAVID J. BUCHANAN                     )      Chapter 13
                    Debtors           )      Case No.04-12419-JKF
                                      )

## ORDER

The Court, having considered the November 1, 2006 Motion for Sale of Real Estate of
ex-wife Barbara H. Buchanan, and after notice and a hearing held on **November 21, 2006,**

**IT IS SO ORDERED this 1ˢᵗ day of December, 2006 that:**

1.  The interests of David J. Buchanan and Barbara H. Buchanan in the real property
    located near Laurel, Delaware, Sussex County, Tax Parcel Numbers 2-31-19.00-
    46.03 and 2-32-9.00-15.06 may be sold pursuant to the 4/4/06 Decision and Order
    of the Delaware Family Court as follows.

2.  The real estate is hereby listed for sale by Cooper Realty, Seaford DE for an 8%
    commission bur for the price and other terms and conditions that Cooper Realty
    recommends.

3.  Debtor and Barbara H. Buchanan must sign a listing agreement in accordance
    with this Order and must sign any contract, amendment, deed, settlement sheet,
    affidavit, or other document necessary to settle the said sale.

4.  If either owner fails to sign any of the above required documents, on 10 days
    notice, the Clerk of the Family Court shall sign for either party.

5.  Both owners shall cooperate with the listing, showing, sale and settlement of the
    real property by Cooper Realty. Debtor shall permit access to the real estate during

B- 86

normal selling hours by Cooper Realty, its agents or co-agents, with or without a
prospect to show the property on a 24 hour telephone call notice to David J.
Buchanan (302) 875-1362.

6.    If no contract to sell is signed by 2/28/07, movant may, with the advice and
direction of Cooper Realty, select a Delaware licensed auctioneer to sell the real
estate at public auction.

7.    Complete and full relief from stay is granted to the parties so that the Family
Court may take any and all action it deems appropriate to resolve the equitable
distribution action between David J. Buchanan and Barbara H. Buchanan and to
permit execution and distribution on any orders or judgments entered therein.

8.    The relief from stay order previously entered in favor of MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS/WASHINGTON MUTUAL is now
in effect and is no longer stayed.

9.    The bankruptcy case is **DISMISSED with PREJUDICE** and Debtor is
**BARRED** from filing any other bankruptcy petition until **November 23, 2008** for
the reasons expressed on the record at the hearing on November 21, 2006.

Judith K. Fitzgerald

Judge Judith K. Fitzgerald
United States Bankruptcy Judge

B-87

CERTIFICATE OF SERVICE

I, James B. Tyler, III, do hereby certify that I caused to be mailed to:

> Mr. David J. Buchanan
> 34806 Hudson Rd.
> Laurel, DE 19956

> Michael B. Joseph, Chapter 13 Trustee
> P.O. Box 1351
> Wilmington, DE 19899-1351

true and correct copies of the foregoing BRIEF IN OPPOSITION TO APPEAL and APPENDIX

FOR BRIEF IN OPPOSITION TO APPEAL by inserting the said copies into a postage-paid

envelope(s) so addressed and depositing said envelope(s) at a United States Postal Service

receptacle for the deposit of mail located in Georgetown, Delaware, on this 2nd day of May, 2007.

JAMES B. TYLER, III
DE Bar No. 530
211 E. Market Street
P.O. Box 555
Georgetown, DE  19947
(302) 856-6397
Attorney for Appellee, Barbara H. Buchanan